# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## MIAMI DIVISION

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, DONALD J. TRUMP JR., ERIC TRUMP, AND THE TRUMP ORGANIZATION, LLC. | No. _____ |
| *Plaintiffs,* | |
| *v.* | JURY TRIAL DEMANDED |
| INTERNAL REVENUE SERVICE AND U.S. DEPARTMENT OF THE TREASURY | |
| *Defendants.* | |

## **COMPLAINT**

1.      President Donald J. Trump is the Founder and former Chief Executive Officer of the Trump Organization. President Trump served as the 45th President of the United States, and is the 47th President of the United States. President Trump brings this suit in his personal capacity.

2.      Donald J. Trump Jr. is an Executive Vice President at The Trump Organization, where he works to expand the company's real estate, retail, commercial, hotel, and golf interests.

3.      Eric Trump is an Executive Vice President of the Trump Organization. He oversees all aspects of the management and operation of the global real estate business, including new project acquisition, development, and construction.

4.      The Trump Organization is the preeminent developer of some of the most valuable and prized luxury real estate assets in the world, including five-star luxury hotels, championship golf courses, global realty services, residential & commercial buildings, property management, entertainment, dining, retail, and more.

5.      The Trump Organization includes The Trump Organization, LLC, as well as 418

other entities that received notices from Defendant U.S. Department of the Treasury's Internal Revenue Service ("IRS") between December 2024 and May 2025 ("The Trump Organization").

6.       At all relevant times, President Donald J. Trump, Donald Trump Jr., Eric Trump, and The Trump Organization, LLC ("Plaintiffs") filed tax returns with the IRS, which contained confidential, personal financial information.

7.       From May 2019 through at least September 2020, former IRS employee Charles "Chaz" Littlejohn, who was jointly employed by the IRS and/or one of its contractors, illegally obtained access to, and disclosed Plaintiffs' tax returns and return information to the *New York Times*, *ProPublica*, and other leftist media outlets. *See Information*, *U.S.A. v. Littlejohn*, Case No. 1:23-cr-00343-ACR (D.D.C. Sept. 29, 2023), ECF No. 1 ("Criminal Information").

8.       Defendants had a duty to safeguard and protect Plaintiffs' confidential tax returns and related tax return information from such unauthorized inspection and public disclosure. *See* 26 U.S.C. § 6103, 5 U.S.C. § 552a. Accordingly, Defendants were obligated to have appropriate technical, employee screening, security, and monitoring systems to prevent Littlejohn's unlawful conduct.

9.       Defendants failed to take such mandatory precautions.

10.     Mr. Littlejohn has admitted that he disclosed to outlet *ProPublica* "Trump information [that] included all businesses that he had owned." *Plaintiff's Notice of Filing Redacted Version of ECF 111-2 in Compliance with Court Order (ECF 114)*, *Kenneth C. Griffin v. Internal Revenue Service and U.S. Department of the Treasury*, Case No. 22-cv-24023 (S.D. Fla. Apr. 25, 2024), ECF No. 119 Exhibit 1 (Deposition of Charles Littlejohn) ("Littlejohn Dep.") at 200. *ProPublica* then falsely reported that Plaintiffs' leaked confidential tax returns contained "versions of fraud," Heather Vogell, *Never Before Seen Trump Tax Documents Show Major Inconsistencies*,

(Oct. 16, 2019), https://tinyurl.com/4x9nak4e, and falsely characterized Plaintiffs' accounting firm as having engaged in "fraud, misconduct or malpractice," Peter Elkind, Meg Cramer, and Doris Burke, *Meet the Shadowy Accountants Who Do Trump's Taxes and Help Him Seem Richer Than He Is*, *ProPublica* (May 6, 2020), https://tinyurl.com/4pwea2hk.

11.     Defendants have caused Plaintiffs reputational and financial harm, public embarrassment, unfairly tarnished their business reputations, portrayed them in a false light, and negatively affected President Trump, and the other Plaintiffs' public standing. Joshua D. Blank, *Presidential Tax Transparency,* 40 Yale L. & Pol'y Rev. 1, 55 (2021) (describing how public claims about the President's taxes inform voters' electoral choices). Defendants' failures have caused significant and irreparable harm to Plaintiffs, their reputations, and their substantial financial interests.

12.     This Court has already held these alleged facts sufficient to support Defendants' liability for violations of section 6103 of the Internal Revenue Code. *Order Den. in Part and Granting in Part Mot. to Dismiss*, *Kenneth C. Griffin v. Internal Revenue Service and U.S. Department of the Treasury*, Case No. 22-cv-24023 (S.D. Fla. Apr. 22, 2024), ECF No. 108 at 1 ("April Order"). The IRS "acknowledges that it failed to prevent Mr. Littlejohn's criminal conduct and unlawful disclosure of Mr. Griffin's confidential data." IRS, News Releases, No. IR-2024-172, *IRS statement as part of the resolution of Kenneth C. Griffin v. IRS, Case No. 22-cv-24023* (S.D. Fla.), (June 25, 2024), https://perma.cc/4T62-6HWG. As to Plaintiffs, the facts are even more egregious and warrant swift and sweeping relief to remedy Defendants' breach of Plaintiffs' rights under federal law.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction under 28 U.S.C. §§ 1331, 1340, 1346, 26 U.S.C. § 7431(a), and 5 U.S.C. § 552a(g)(1)(D).

14.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in this judicial district.

## PARTIES

15.     Plaintiff President Donald Trump is a citizen of the United States and is a resident of Florida.

16.     Plaintiffs Donald Trump Jr. and Eric Trump each reside in Palm Beach County, Florida, and lead and operate Trump Organization LLC and its affiliated entities from Palm Beach County, Florida, specifically Jupiter, Florida.

17.     Plaintiff, The Trump Organization LLC is a limited liability company with its principal place of business at 115 Eagle Tree Terrace, Jupiter, Florida. Its officers include Eric Trump, a resident of Florida; and Donald J. Trump, Jr., a resident of Florida. Trump Miami Resort Management LLC, Trump Miami Resort Management Member Corp., The Miami Restaurant Hospitality Member Corp, and THC Miami Restaurant Hospitality LLC (together with the Trump Organization LLC, the "Trump Entities") are all located in Miami, Florida, within this Division.

18.     Defendant U.S. Department of the Treasury is an Executive Department of the United States of America that oversees the IRS and the Treasury Inspector General for Tax Administration ("TIGTA"). Defendants, as the United States, are proper party defendants in this action and have waived sovereign immunity under 26 U.S.C. § 7431 and 5 U.S.C. § 552a(g)(1)(D).

19.     Defendant Internal Revenue Service is a bureau of the U.S. Department of the

Treasury responsible for administering and enforcing the Internal Revenue Code.

**FACTS**

I.      **The IRS is Responsible for Charles Littlejohn's Actions**

20.      "In or about September 2017 . . . and—in February 2018—[Mr. Littlejohn was] granted [ ] access to unmasked taxpayer data." *Government's Sentencing Mem.*, *U.S.A. v. Littlejohn*, Case No. 1:23-cr-00343 (D.D.C. Jan. 16, 2024), ECF No. 23 at 2 ("Government's Sentencing Memorandum"); Richard Rubin, *IRS Leaker Sought Job With Aim of Releasing Trump Tax Returns, DOJ Says*, WALL ST. J. (Jan. 16, 2024), https://archive.is/ItQSG.

21.      Mr. Littlejohn was authorized, under 26 U.S.C. § 6103(n), "to access vast amounts of unmasked taxpayer data, including tax returns and return information, on IRS databases." Government's Sentencing Memorandum at 2. "After applying to work as an IRS consultant with the intention of accessing and disclosing tax returns, [Mr. Littlejohn] weaponized his access to unmasked taxpayer data to further his own personal, political agenda, believing that he was above the law." *Id.* at 1.

22.      At all relevant times, Mr. Littlejohn was an officer or employee, joint employee, and contractor of the United States by virtue of his work for the IRS.

23.      Mr. Littlejohn had staff-like access to tax returns and confidential tax return information, and Defendants exercised the power to control the detailed physical performance of his work. April Order at 2, 6; *see also* Internal Revenue Manual ("IRM") § 7.11.13.1.1(3) (Feb. 12, 2018) ("All IRS employees (including managers, executives *and contractors*) are responsible for protecting the confidentiality and privacy of taxpayer information to which they have access.") (emphasis added), https://tinyurl.com/muc75h6r. Mr. Littlejohn testified that he "work[ed] at the IRS." Littlejohn Dep. at 204 ¶ 17.

24.     The IRS (including IRS Contracting Officer Representatives) exercised extensive, detailed, day-to-day supervision of Mr. Littlejohn's work. April Order at 2, 6 (describing the IRS's "supervision and control" of Littlejohn). IRS Contracting Officer Representatives are "IRS employees who oversee day-to-day operations of contracts and contractors." U.S. GOVERNMENT ACCOUNTABILITY OFFICE, GAO- 23-105395, SECURITY OF TAXPAYER INFORMATION, IRS NEEDS TO ADDRESS CRITICAL SAFEGUARD WEAKNESSES, at 35 (August 2023), https://tinyurl.com/yrbvzvrn.

25.     The IRS's supervision and control included "managing the scope and purpose of Mr. Littlejohn's daily tasks and projects; ensuring that Mr. Littlejohn completed required training, monitoring Mr. Littlejohn's technical performance; ensuring Mr. Littlejohn was aware of data safeguards and appropriately protecting taxpayer information; and exercising control over the parameters of Mr. Littlejohn's access to IRS data and confidential tax return information." April Order at 2 (replacing "his" with "Mr. Littlejohn").

26.     During Mr. Littlejohn's employment, joint employment, and contractor status, "the IRS also had authority to both reprimand and terminate Littlejohn." *Id*. According to the IRS, all IRS employees—*i.e.*, "all IRS personnel," which "[a]lso includes all contractors who have staff-like access"—"may be subject to administrative penalties for the willful and unauthorized attempted access of their own or another taxpayer's records." *See* IRM § 10.5.5.1.6(2) and (3); IRM § 10.5.5.2(2). IRS administrative penalties include, but are not limited to, the removal and suspension of employees.

27.     These facts more than support the "plausible inference that Littlejohn was an employee of the United States." *Revenue Service and U.S. Department of the Treasury*, Case No. 22-cv-24023 (S.D. Fla. Apr. 22, 2024), ECF No. 108 at 6.

28.     Indeed, Mr. Littlejohn testified that his work for the IRS was his "full-time job"

from May 2019 through at least September 2020.  Littlejohn Dep. at 264 ¶ 7.

29.     At all relevant times, Mr. Littlejohn's work at the IRS was supervised by Paul Wight, Supervisory Management and Program Analyst at the Department of Treasury. *Id*. at 265 ¶¶ 11-15.

30.     Mr. Littlejohn testified that Mr. Wight directed his work. *Id*. at 301 ¶ 7-9.

31.     Due to Mr. Littlejohn's employment, joint employment, and contractor status, the IRS had a duty to oversee and control his access to and removal of records. 36 C.F.R. §§ 1222.32(a) & (b) establishes that the IRS must oversee and control contractor, employee, or joint employee records and that such records are federal records for which unlawful removal requires actions for recovery by the executive branch. *See, e.g.,* 44 U.S.C. § 3106.

## II.     Defendants Willfully Failed to Establish Appropriate Administrative, Technical, and Physical Safeguards to Ensure the Security and Confidentiality of Plaintiffs' Confidential Tax Return Information, Compounding the Risk of Unauthorized Inspection and Disclosure.

32.     "Every year from 2010 through 2020, the Treasury Inspector General for Tax Administration ("TIGTA") has warned the IRS about security deficiencies related to the protection of taxpayers' confidential tax return information." *Id.* at 1; ¶¶ 8-9, 26, 28-31, 64.

33.     "Many of these deficiencies went uncorrected and . . . allowed Littlejohn to misappropriate the information, upload it to a private website, and then disclose it[.]" *Id.*

34.     "The IRS also disclosed [Plaintiffs'] confidential tax return information to Littlejohn regardless of whether Littlejohn completed or was up to date with all [of] his purportedly required privacy and data-security training." *Id.*

35.     "In October 2023, a few weeks after being criminally charged for the disclosures, Littlejohn pleaded guilty to a violation of 26 U.S.C. § 7213(a) for the unlawful disclosure of confidential tax return information," including Plaintiffs' confidential tax returns and related return

information. *Id*. at 3.

36.      In Mr. Littlejohn's own words, to disclose Plaintiffs' tax returns, he "made use of a private website that I could log into and I could upload the return data and then – you know, on my IRS computer, I could do that. And then, on a separate computer, I could log in and download the data." Littlejohn Dep. at 142.

37.      Mr. Littlejohn has admitted that the IRS did "not block creating a private website" on IRS computers. *Id*. Before Mr. Littlejohn stole Plaintiffs' returns via a private website on an IRS computer or computers, he tested the viability of using such a website by having "uploaded an image file to a website that I had control over, and it worked." *Id*. at 143.

38.      As a result of Defendants' incomplete and failed compliance procedures set forth in 5 U.S.C. § 552a (the "Privacy Act"), among other failures and procedure violations, it only took "[a] few hours" for Mr. Littlejohn to take Plaintiffs' tax returns into his personal custody. *Id*. at 145.

39.      Defendants' Privacy Act compliance and other security procedures were so insufficient that it took three years for the IRS to detect that Littlejohn breached the confidentiality and security protections of Plaintiffs' confidential tax returns and related tax information. *Id*. at 146-47 ¶¶ 19-22, and 1-8.

40.      Once Mr. Littlejohn uploaded Plaintiffs' tax returns and return information onto his private website, he placed them "on a flash drive" in his house. *Id*. at 148.

41.      From October 2019 until at least January 2020, Mr. Littlejohn repeatedly accessed IRS data to illegally provide additional information to the *New York Times* and *ProPublica,* which was all undetected by Defendants despite his initial breach several months earlier. *Id*. at 160, 163-64.

42.     Because the IRS tax return data lacked proper encryption, Mr. Littlejohn was able to put Plaintiffs' confidential tax return information as a draft in an e-mail account, and then provide the *New York Times* and *ProPublica* with login information to the account, in order to unlawfully retrieve the return information. *Id*. at 165.

43.     The IRS continued its failure to implement appropriate safeguards through at least Fiscal Year 2020 (ending September 30, 2020). In its *Annual Assessment of the Internal Revenue Service's Information Technology Program for Fiscal Year 2020*, the Treasury Inspector General for Tax Administration reported that 54% of the employees audited had unnecessary access to the IRS Centralized Authorization File, which houses tax information authorizations. *See* TREASURY INSPECTOR GENERAL FOR TAX ADMINISTRATION, REFERENCE NO. 2021-20-001, ANNUAL ASSESSMENT OF THE INTERNAL REVENUE SERVICE'S INFORMATION TECHNOLOGY PROGRAM FOR FISCAL YEAR 2020 (Oct. 30, 2020), https://tinyurl.com/bdysc8b3.

44.     Similarly, the Treasury Inspector General for Tax Administration has found that the IRS failed to establish safeguards to *detect*, let alone prevent, unauthorized access to confidential tax return information.

45.     Indeed, on July 31, 2020, the Treasury Inspector General for Tax Administration revealed that "the IRS could not provide an accurate inventory of all applications that store or process taxpayer data and [Personally Identifiable Information]." *See* TREASURY INSPECTOR GENERAL FOR TAX ADMINISTRATION, REFERENCE NO. 2020-20-033, MOST INTERNAL REVENUE SERVICE APPLICATIONS DO NOT HAVE SUFFICIENT AUDIT TRAILS TO DETECT UNAUTHORIZED ACCESS TO SENSITIVE INFORMATION at 2 (July 31, 2020), https://tinyurl.com/3rythsr3.

46.     Notwithstanding all of these data security failures, the IRS put, and continued to put long after this breach, Plaintiffs' and other United States taxpayers' confidential tax return

information at risk. Defendants failed to implement effective training, including training mandated for Mr. Littlejohn, to protect Plaintiffs' confidential tax returns and return information.

47.     Defendants' failure to establish necessary administrative, technical, and physical safeguards over its systems of records allowed Mr. Littlejohn to exploit these failures in order to repeatedly inspect and misappropriate Plaintiffs' confidential tax return information, and to unlawfully disclose that information to the *New York Times, ProPublica*, and others for widespread, unlawful publication.

### III.     Defendants Failed to Appropriately Screen Mr. Littlejohn and Failed to Properly Safeguard Plaintiffs' 6103-protected Information

48.     At all relevant times, Mr. Littlejohn was authorized, even though he should not have been, under 26 U.S.C. § 6103(n), "to access vast amounts of unmasked taxpayer data, including tax returns and return information, on IRS databases." Government's Sentencing Memorandum at 2.

49.     Because Defendants did not properly screen Mr. Littlejohn, they failed to determine that Mr. Littlejohn posed a risk to protected taxpayer information, including Plaintiffs' confidential tax returns and related tax information.

50.     Because Defendants did not institute proper controls and safeguards over Mr. Littlejohn's activities, he was able to engage in the unauthorized disclosure of Plaintiffs' confidential tax returns and related information to, among others, the *New York Times* and *ProPublica* for widespread, unlawful publication.

51.     To illustrate, if Defendants had ensured that Mr. Littlejohn had all IRS-based information in his possession connected to IRS-approved cybersecurity programs, they would have detected that Mr. Littlejohn was removing Plaintiffs' taxpayer information from his devices, prevented Mr. Littlejohn from leaving his office of employment carrying taxpayer records with

him for the purpose of disclosing them at a location in Gallaudet University, and detected and prohibited his use of a burner phone to orally disclose 6103-protected information. *See* ¶¶ 53-64, *infra*.

### IV.    Defendants' Privacy Act Violations Emboldened Mr. Littlejohn to Repeatedly and Unlawfully Inspect and Disclose Plaintiffs' Confidential Tax Returns and Tax Return Information.

52.     "After applying to work as an IRS consultant with the intention of accessing and disclosing tax returns, [Mr. Littlejohn] weaponized his access to unmasked taxpayer data to further his own personal, political agenda, believing that he was above the law."  Government's Sentencing Memorandum at 1.

53.     On or around April or May 2019, Mr. Littlejohn disclosed Plaintiffs' confidential tax returns and/or return information to the *New York Times*. Littlejohn Dep. at 123, 140 ¶ 1.

54.     In response to the *New York Times'* continuous negative reporting regarding the Plaintiffs, Mr. Littlejohn decided to disclose Plaintiffs' confidential tax returns to the media outlet through its Signal account. Littlejohn Dep., *supra* at 148 ¶ 13-18 and 149 ¶1-4. Mr. Littlejohn then intentionally and maliciously disclosed those materials to the *New York Times* for unlawful, widespread publication. Mr. Littlejohn took Plaintiffs' confidential tax returns and related tax information, and illegally disclosed them in-person to *New York Times* reporters Susanne Craig and Russ Buettner at the Kellogg Business Center on the Gallaudet University campus. *Id*. at 152. Subsequently, in July 2019, Mr. Littlejohn met with the *New York Times* reporters and their editor at a safehouse in New York City to discuss providing legally protected materials to the reporters. *Id*. at 155. In October 2019, Mr. Littlejohn unlawfully provided the *New York Times* with a flash drive of several years of Plaintiffs' tax returns, and allowed the *New York Times* to illegally download those returns onto its computer. *Id*. at 160.

55.     In or around September 2020, Mr. Littlejohn contacted a second media outlet,

*ProPublica*, to discuss the possibility of unlawfully providing them with the confidential tax information in his possession, including Plaintiffs' confidential tax returns and related information. *Factual Basis for Plea*, *U.S.A. v. Littlejohn*, Case No. 1:23-cr-00343 (D.D.C. Oct. 12, 2023), ECF No. 9 ("Factual Basis for Plea") at 3.

56.     In or around that time, Mr. Littlejohn illegally provided Plaintiffs' confidential tax returns and related tax information to *ProPublica* by mailing it on a password-protected personal data storage device. *Id.*

57.     In or around November 2020, Mr. Littlejohn unlawfully provided the password-protected data storage device password to a *ProPublica* journalist, who proceeded to illegally access Plaintiffs' confidential tax returns and related tax information. *Id.*

58.     Mr. Littlejohn later admitted that he disclosed to *ProPublica* "Trump information [that] included all businesses that he had owned."  Littlejohn Dep. at 200.

59.     From as early as April 2019 until at least September 2020, based on deposition testimony, Littlejohn Dep. at 166-69, Mr. Littlejohn exploited Defendants' data integrity failures to repeatedly and unlawfully disclose Plaintiffs' confidential tax returns and related tax information.

60.     Defendants' failure to "ensure that all Windows computers connected to its network were authorized and compliant with security policy" allowed Mr. Littlejohn to use virtual machines that simulated physical computers to avoid IRS protocols designed to detect and prevent large downloads or uploads from IRS devices or systems.

61.     Further, Defendants' failure to use adequate encryption allowed Mr. Littlejohn to illegally store and to transmit Plaintiffs' confidential tax returns and tax information to the *New York Times* and *ProPublica* on a personal data storage device.

62.     According to court documents, "Littlejohn accessed tax returns associated with [Plaintiffs] – and related individuals and entities – on an IRS database after using broad search parameters designed to conceal the true purpose of his queries. He then evaded IRS protocols established to detect and prevent large downloads or uploads from IRS devices or systems." *See,* e.g., U.S. Department of Justice, Press Release, https://tinyurl.com/2vjru7z7 (paraphrasing filings).

63.     "Littlejohn then saved the tax returns to multiple personal storage devices, including an iPod, before contacting [the *New York Times*]. Between August 2019 and October 2019, Littlejohn provided [the *New York Times*] with the tax return information associated with [Plaintiffs]. Littlejohn then stole additional tax return information related to [Plaintiffs] and provided it to [the *New York Times*]. In September 2020, [the *New York Times*] published a series of articles about [Plaintiffs'] tax returns." Criminal Division of the U.S. Department of Justice, Case Summary, *United States v. Charles E. Littlejohn,* https://tinyurl.com/5n7b4fpz.

64.     The IRS, through Littlejohn, unlawfully disclosed Plaintiffs' confidential tax return information to the *New York Times* on a personal storage device. Eileen Sullivan, *Former Contractor Who Leaked Trump's Tax Returns Sentenced to 5 Years in Prison*, N.Y. TIMES (Jan. 29, 2024), https://tinyurl.com/vyumarcu.

65.     Littlejohn committed these crimes because he considered President Trump to be "dangerous" and a "threat to democracy," and that disclosure was, in Littlejohn's view, necessary due to political "norms." Littlejohn Dep. at 85-87.

66.     In fact, once the IRS granted Mr. Littlejohn access to Plaintiffs' confidential tax returns and related tax information, it was certain that the information would be illegally disclosed, including to the press.

67.     Littlejohn sought employment, joint employment, and contractor status with the IRS with "the goal of getting access to taxpayer information from Donald Trump[.]" *Id.* at 88. When asked, "so you were looking to do something to cause some kind of harm to him?" Mr. Littlejohn responded, "Less about harm, more just about a statement. I mean, there's little harm that can actually be done to him, I think. . . He's shown a remarkable resilience." *Id.* at 90.

68.     Mr. Littlejohn's deposition in *Kenneth C. Griffin v. Internal Revenue Service and U.S. Department of the Treasury*, *supra*, quoted the government's statements at his January 29, 2024, sentencing hearing, where the prosecution stated, "All Americans are obligated to provide an enormous amount of financial information about their private lives to the IRS -- to the government. And in exchange, in turn, what we expect from the government and what we expect from the IRS is that they will secure the data. They will protect the data. The defendant's crime undermined that faith. It undermined that trust." *Id.* at 286 ¶ 7-15.

69.     At that sentencing, Mr. Littlejohn admitted: "I felt that the American people should have the opportunity to see the tax returns of the sitting President before they decided on how they were going to vote." *Id.* at 287 ¶ 3-6. Mr. Littlejohn clearly committed his crimes, which the Defendants allowed to occur, in order to improperly influence the results of the 2020 presidential election.

70.     In his Factual Basis for Plea, Mr. Littlejohn expressly admitted that his "disclosure of the [Plaintiffs] tax returns and return information . . . was knowing and willful." *U.S.A. v. Littlejohn*, Case No. 23-cr-00343, Dkt. No. 9, at ¶ 16.

71.     U.S. District Court Judge Ana C. Reyes, at sentencing, expressly found: "Mr. Littlejohn's targeting of a sitting President of the United States is part of a three-year criminal scheme, including working with reporters to help him understand the tax returns, deciding again

and again and again to take the law into his own hands." *Id*. at 289 ¶ 7-12.

72.     Judge Reyes further found that Mr. Littlejohn sought to harm President Trump: "Despite what Mr. Littlejohn argues, I find it implausible that he did not intend to harm at least some taxpayers. Indeed, he provided the returns to the *New York Times* and *ProPublica* so that they could write articles about Mr. Trump and wealthy individuals." *Id*. at 291 ¶ 16-21.

73.     Because of Defendants' wrongful conduct, Plaintiffs were subject to, among many others, at least eight ("8") separate stories in the *New York Times* which wrongly and specifically alleged various improprieties related to Plaintiffs' financial records and taxpayer history, including:

- False allegations that President Trump engaged in "tax avoidance," Russ Buettner, Susanne Craig, and Mike McIntire, *Long-Concealed Records Show Trump's Chronic Losses and Years of Tax Avoidance,* N.Y. Times (Sept. 27, 2020), https://tinyurl.com/yhhvep2d;

- False allegations that President Trump "reduced his tax bill with questionable measures," David Leonhardt, *18 Revelations from a Trove of Trump Tax Records*, N.Y. Times (Sept. 27, 2020), https://tinyurl.com/w93vrbty;

- False allegations that President Trump "suffered heavy business losses," Charlie Smart, *Here Are the Key Numbers From Trump's Tax Returns*, N.Y. Times, (Dec. 21, 2022), https://tinyurl.com/46pfw63b;

- False allegations regarding the specifics of existence of various IRS audits of Defendants; Jim Tankersley, Susanne Craig and

Russ Buettner, *Trump Tax Returns Undermine His Image as a Successful Entrepreneur*, N.Y. Times (Dec. 30, 2022), https://tinyurl.com/mvbv7m22;

- False allegations regarding President Trump's charitable contributions; Jim Tankersley, Susanne Craig and Russ Buettner, *Key Takeaways From Trump's Tax Returns*, N.Y. Times, (Dec. 30, 2022), https://tinyurl.com/bdf5nwfs;

- False allegations that President Trump's returns and information had "red flags," Jim Tankersley, Susanne Craig and Russ Buettner, *Trump's Taxes: Red Flags, Big Losses, and a Windfall From His Father*, N.Y. Times, (Dec. 21, 2022), https://tinyurl.com/muz53b7x;

- False allegations that President Trump "paid no federal income taxes in 11 of 18 years", Trump's Taxes: I.R.S. Didn't Audit Trump for 2 Years in Office, House Committee Says, N.Y. Times (Dec. 20, 2022), https://tinyurl.com/yu4as6zf; and

- False allegations that President Trump paid "$750 in federal income taxes in 2017", Russ Buettner, Mike McIntire, Susanne Craig and Keith Collins, *Trump Paid $750 in Federal Income Taxes in 2017. Here's the Math.*, N.Y. Times (Sept. 29, 2020), https://tinyurl.com/2pcywfm6.

74.     Likewise, *ProPublica* published at least 50 articles as a result of Defendant's unlawful disclosures, many of which contained false and inflammatory claims about Defendants'

confidential tax documents.  *See* Government's Sentencing Memorandum at 4.

75.     For instance, *ProPublica* falsely reported that President Trump's unlawfully leaked tax information contained "versions of fraud," Heather Vogell, *Never Before Seen Trump Tax Documents Show Major Inconsistencies* (Oct. 16, 2019), https://tinyurl.com/4x9nak4e; and mischaracterized his accounting firm as having engaged in "fraud, misconduct or malpractice," Peter Elkind, Meg Cramer, and Doris Burke, *Meet the Shadowy Accountants Who Do Trump's Taxes and Help Him Seem Richer Than He Is*, *ProPublica* (May 6, 2020), https://perma.cc/2FYA-W7UA.

76.     President Trump did not discover the numerous violations of § 6103 that were committed in connection with his personal tax returns until January 29, 2024, when the IRS sent a letter addressed to "Donald J. Trump and Melania," that stated, "We're providing you this letter to notify you that an Internal Revenue Service (IRS) contractor has been charged with the unauthorized inspection or disclosure of your tax return or return information between 2018 and 2020."

77.     When the first relevant *New York Times* story was released on September 27, 2020, Plaintiffs had no reason to believe that an unauthorized disclosure had occurred for at least two reasons. First, the *New York Times* reporting did not state that the information came from the IRS, and second, the IRS Commissioner supposedly investigated and found that the disclosure did not come from the IRS. Littlejohn Dep., *infra* at 172.

78.     Eric Trump did not discover the numerous violations of § 6103 that were committed in connection with his personal tax returns until December 16, 2024, when he received from Defendants relevant notices pursuant to Internal Revenue Code § 7431.

79.     The § 7431 notice received by Eric Trump informed that "[a]n Internal Revenue

Service (IRS) contractor has been charged with the unauthorized inspection or disclosure of your tax return or return information, between 2018 and 2020," and included an annexed copy of the Criminal Information against Mr. Littlejohn.

80.     Donald Trump, Jr. did not discover the numerous violations of § 6103 that were committed in connection with his personal tax returns until December 16, 2024, when he first received from Defendants relevant notices pursuant to Internal Revenue Code § 7431.

81.     The § 7431 notice received by Donald Trump, Jr. informed that "[a]n Internal Revenue Service (IRS) contractor has been charged with the unauthorized inspection or disclosure of your tax return or return information, between 2018 and 2020," and included an annexed copy of the Criminal Information against Mr. Littlejohn.

82.     To date, the Trump Organization continues to receive notices from Defendants pursuant to Internal Revenue Code § 7431.

83.     The notices that were sent to Plaintiffs disclosed numerous violations of § 6103 that were committed in connection with The Trump Organization's corporate tax returns, as well as the corporate tax returns of subsidiaries of, and/or fully owned affiliates of, the Trump Organization.

84.     Between December 2024 and May 12, 2025, the Trump Organization received § 7431 notices with respect to 418 Trump Entities.

85.     All § 7431 notices received by the Trump Organization informed that "[a]n Internal Revenue Service (IRS) contractor has been charged with the unauthorized inspection or disclosure of your tax return or return information, between 2018 and 2020," and included an annexed copy of the Criminal Information against Mr. Littlejohn.

86.     Plaintiffs were not able to bring an action against an unknowable, indeterminate defendant to vindicate their rights until such notification occurred—which, in this case, was

pursuant to the statutory requirement imposed upon the Secretary of the Treasury to notify a taxpayer "as soon as practicable" if "any person is criminally charged by indictment or information with inspection or disclosure of" that taxpayer's return or return information. 26 U.S.C. § 7431(e). 26 U.S.C. § 7431(e) provides the Defendants' notice requirement to Plaintiffs, while 26 U.S.C. § 7431(d) governs the two-year time period within which Plaintiffs must generally file their action pursuant to 26 U.S.C. § 7431(a)(1).

87.    All conditions precedent to this action have been performed, excused, or waived.

## CLAIMS FOR RELIEF

### Count I - Violations of 26 U.S.C. § 6103 and 26 U.S.C. § 7431(a)(1)

88.    Plaintiffs repeat each of Paragraphs 1 to 87 as if fully alleged herein.

89.    26 U.S.C. § 6103 provides that tax "[r]eturns and return information shall be confidential" and prohibits disclosure and inspection by United States employees and other defined persons, except as specifically authorized by law." *Id*. § 6103(a)(3).

90.    Under 26 U.S.C. § 6103(a), no such person who has received tax returns or return information "shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section." The statute defines "officer or employee" as a former officer or employee. *Id.*

91.    Section 6103(a) provides that, with limited exceptions, federal tax "[r]eturns and return information shall be confidential," and it imposes this confidentiality obligation on, among other persons, federal contractors who receive access to returns or return information. 26 U.S.C. § 6103(a)(2).

92.    "Return" is defined as:

[A]ny tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this

title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.

26 U.S.C. § 6103(b)(1).

93.     "Return information" includes:

[A] taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense.

26 U.S.C. § 6103(b)(2)(A).

94.     "[D]isclosure" means "the making known to any person in any manner whatever a return or return information." 26 U.S.C. § 6103(b)(8).

95.     The IRS's Internal Revenue Manual § 10.5.5.1.6(2) defines "[e]mployee" as "all IRS personnel," including "all contractors who have staff-like access." The Internal Revenue Manual § 10.5.5.1.6(3) defines "staff-like access" to mean "when a contracted individual is granted access to IRS facilities or IRS systems, or has opportunity to be exposed to IRS information."

96.     The Internal Revenue Manual defines "[e]mployee" as "all IRS personnel," including "all contractors who have staff-like access." *See IRS Unauthorized Access, Attempted Access, Or Inspection of Taxpayer Records ("UNAX") Program Policy, Guidance, and Requirements ("UNAX Policy")*, IRM § 10.5.5.1.6(2).

97.     According to the IRS, "staff-like access" means "when a contracted individual is granted access to IRS facilities or IRS systems, or has opportunity to be exposed to IRS

20

information." *See id.* § 10.5.5.1.6(3).

98.     26 U.S.C. § 6103(n) permits the disclosure of returns and return information to any person "to the extent necessary in connection with the processing, storage, transmission, and reproduction of such returns and return information, the programming, maintenance, repair, testing, and procurement of equipment, and the providing of other services, for purposes of tax administration."

99.     26 C.F.R. § 301.6103(n)-1(b)(2) prohibits such disclosures under 26 U.S.C. § 6103(n) if the disclosure is not "necessary" or, in the alternative, if the services for which the disclosure is made under 26 U.S.C. § 6103(n) can be:

> [R]easonably, properly, or economically performed by disclosure of only parts or portions of a return or if deletion of taxpayer identity information […] reflected on a return would not seriously impair the ability of the employees to perform the service, then only the parts or portions of the return, or only the return with taxpayer identity information deleted, may be disclosed.

100.    26 U.S.C. § 7431 provides taxpayers a private right of action for damages against the United States for the knowing or negligent unauthorized inspection or disclosure of tax return information in violation of 26 U.S.C. § 6103.

101.    An affected taxpayer may bring a civil action for damages "[i]f any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103."

102.    As alleged herein, Defendants, through Mr. Littlejohn, acting as an employee, contractor, and jointly-employed individual of Defendants, repeatedly violated 26 U.S.C. § 6103 from as early as March 2019 through at least September 2020 by unlawfully inspecting Plaintiffs' confidential tax return information and then unlawfully disclosing that information to the *New York*

*Times* and *ProPublica*, with the expectation that this information would be widely published and harm Plaintiffs.

103.     Defendants, through Mr. Littlejohn, knowingly and unlawfully disclosed Plaintiffs' "tax returns and return information dating back *more than 15 years*," from at least 2000 through 2020, to the *New York Times* and *ProPublica*, which the expectation that this information would be widely published and harm Plaintiffs. *See* Information at 1.

104.     Thus, Defendants violated § 6103 in connection with each of the Plaintiffs, including the unlawful inspection and disclosure of numerous confidential tax returns covering the time period of at least 2005 through 2020, to at least two media outlets, *The New York Times* and *ProPublica*. The unlawful disclosure of *each* confidential tax return and/or return information, for *each* year and to *each* outlet, and each time that confidential tax return and/or return information was viewed as a result of the unlawful disclosure constitutes a separate violation of 26 U.S.C. § 6103.  *See, e.g., Snider v. United States* 468 F.3d 500, 508 (8th Cir. 2006) ("Direct disclosures to multiple persons multiplies the harm to the taxpayer . . . one disclosure to two people counts as two separate disclosures.") (citing *Mallas v. United States*, 993 F.2d 1111, 1125 (4th Cir. 1993)); *Minda v. United States*, 851 F.3d 231, 236 (2d Cir. 2017) (noting that 26 U.S.C. § 7431(c) "clearly provides an aggrieved taxpayer $1,000 in statutory damages for 'each act' of unauthorized disclosure."). This information was likely seen by tens of millions of viewers. *See e.g.,* Sarah Diamond, *What Makes a Times Article Go Viral?*, The New York Times, (Mar. 16, 2022), https://tinyurl.com/4v9h3zhr (stating "articles evoking high-arousal emotions like awe, anger, surprise and anxiety were more likely to go viral" and thus "amass[ ] millions of page views") ("Diamond Article").

105.     Those unlawful inspections and disclosures encompassed, among other things, the

wage information, charitable contributions, financial and securities transactions, adjusted gross income, and information sufficient to calculate the purported effective federal income tax rates of President Trump, Eric Trump, and Donald Trump, Jr. The unlawful inspections and disclosures also encompassed sensitive corporate financial information of The Trump Organization and the Trump Entities.

106.    Defendants made these unlawful disclosures knowingly—or at the very least negligently or with gross negligence—because they willfully failed to establish appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiffs' confidential taxpayer information and protect from the exact unlawful disclosures that occurred.

107.    As shown above, Defendants, through Littlejohn, illegally disclosed the confidential return information to the *New York Times* and *ProPublica* with the intent that the *New York Times* and ProPublica would widely publicize the information through its print and online reporting.

108.    Defendants' illegal disclosures of Plaintiffs' tax return information did not result from a "good faith, but erroneous interpretation of section 6103," 26 U.S.C. § 7431(b)(1), but rather from knowing violations, gross negligence, and/or negligence.

109.    Defendants' unlawful disclosures of Plaintiffs' tax return information to the *New York Times* were not "requested by the taxpayer," i.e., Plaintiffs, under 26 U.S.C. § 7431(b)(2).

110.    Therefore, the IRS's disclosure of Plaintiffs' tax return information violated 26 U.S.C. § 6103.

111.    Under 26 U.S.C. § 7431, Plaintiffs are entitled to statutory damages of $1,000 "for *each* act of unauthorized disclosure of a return or return information[.]" 26 U.S.C. § 7431(c)(2).

112.    Plaintiffs are also entitled to punitive damages under 26 U.S.C. § 7431(c)(1)(B)(ii), because the IRS's unlawful disclosure of their confidential tax return information was either willful or a result of gross negligence.

113.    There are several further aggravating factors that support the award of punitive damages in this case, including, without limitation: (i) the overtly political nature of Defendants' conduct—which was targeted at a then-sitting (and now current) President, his family, and entities bearing his name; (ii) the fact that the unlawful disclosures were committed with the express purpose of influencing and/or interfering with the 2020 presidential election; (iii) the unprecedented size and scope of the breach of privacy and the sheer number of individuals and entities affected (which forced Plaintiffs to have to defend against a meritless civil suit brought by the New York Attorney General based on wrongful interpretation of unauthorized disclosures of their confidential tax returns and related tax information); and (iv) the reckless abandon displayed by Defendants with respect to the complete and utter failure to safeguard the confidential, sensitive, and highly sought-after tax return information of the President of the United States, his family members, and businesses bearing his name.

114.    Plaintiffs are entitled to the costs of the action and reasonable attorney's fees under 26 U.S.C. § 7431(c)(3).

### Count II - Violation of 5 U.S.C. § 552a(e)(10)

115.    Plaintiffs repeat the allegations contained in paragraphs 1 through 87 as if fully alleged herein.

116.    The IRS is an agency within the meaning of the Privacy Act.

117.    The IRS maintained Plaintiffs' records, including his confidential tax return information, in a system of records as defined in the Privacy Act.

118.    The IRS has long been aware of serious deficiencies in its privacy safeguards, including due to repeated notices from the Treasury Inspector General for Tax Administration.

119.    The Privacy Act requires that Defendants "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination[.]" 5 U.S.C. § 552a(e)(5).

120.    Defendants failed to do so with respect to Plaintiffs' tax return information.

121.    Mr. Littlejohn's unlawful disclosure of Plaintiffs' tax returns and related information to *The New York Times* and *ProPublica* caused reputational and financial harm to Plaintiffs and adversely impacted President Trump's support among voters in the 2020 presidential election.

122.    At Mr. Littlejohn's January 29, 2024, criminal sentencing, the prosecutors charged that Mr. Littlejohn's "disclosures were intended to damage his victims' reputations, and through that criminal damage, he sought to influence an election and to reshape our nation's political discourse and political process." Littlejohn Dep. at 285 ¶ 3-7.

123.    As a result of Defendants' repeated violations of the Privacy Act, Plaintiffs incurred substantial financial and other damages, including having to defend against a meritless civil suit brought by the New York Attorney General based on wrongful interpretation of unauthorized disclosures of their confidential tax returns and related tax information.

124.    Plaintiffs will continue to sustain substantial financial, reputational, and other damages as a result of Defendants' repeated violations of the Privacy Act set forth above.

125.    Plaintiffs are therefore entitled to substantial damages under 5 U.S.C. §§ 552a(g)(1)(D), (g)(2)(A), and (g)(4).

## JURY DEMAND

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all claims asserted in this Complaint so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs President Donald Trump, Donald Trump Jr., Eric Trump, and the Trump Organization respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A.  Declaring that Defendants willfully, knowingly, and/or by gross negligence unlawfully accessed and inspected Plaintiffs' confidential tax return information in violation of 26 U.S.C. § 6103;

B.  Declaring that Defendants willfully, knowingly, and/or by gross negligence unlawfully disclosed Plaintiffs' confidential tax return information in violation of 26 U.S.C. § 6103;

C.  Awarding Plaintiffs, pursuant to 26 U.S.C. § 7431(c)(1), the greater of either $1,000 in damages for each unauthorized disclosure of their tax return information, including each subsequent disclosure by third parties, including by the *New York Times*, *ProPublica,* and by many additional print, broadcast, cable, social media and other platforms, which amounts to at least $10,000,000,000.00, *see* Diamond Article, *supra*, or the actual damages sustained by Plaintiffs and all related entities, including each of the 418 Trump Organization-affiliated entities that received notices from the IRS, which also amounts to at least $10,000,000,000.00;

D.  Awarding Plaintiffs reasonable costs and attorney's fees pursuant to 26 U.S.C. § 7431(c)(2)-(3), and as may otherwise be permitted by law;

E.      Awarding Plaintiffs punitive damages pursuant to 26 U.S.C. § 7431(c)(1)(B)(ii) because the unlawful disclosure of their confidential tax returns and return information was either willful or the result of gross negligence;

F.      Ordering Defendants to pay damages under the Privacy Act's damages provision, 5 U.S.C. § 552a(g)(4)(A), for actual damages resulting from the IRS's failure to maintain its records in a confidential manner;

G.      Awarding costs and pre-and post-judgment interest as allowed by law; and

H.      Any such other relief as the Court deems just and proper.

Dated: January 29, 2026         Respectfully submitted,

**BRITO, PLLC**
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Office: 305-614-4071
Fax: 305-440-4385

By: /s/ *Alejandro Brito*
    **ALEJANDRO BRITO**
    Florida Bar No. 098442
    Primary: abrito@britopllc.com
    Secondary: apiriou@britopllc.com
    **IAN MICHAEL CORP**
    Florida Bar No. 1010943
    Primary: icorp@britopllc.com

    **Daniel Z. Epstein**
    D.C. Bar No. 1009132
    Epstein & Co. LLC
    E-mail: dan@epsteinco.co
    *\* Pro Hac Vice Forthcoming*

    *Counsel to Plaintiffs*
    *President Donald J. Trump et al.*