# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br><br> INTERNAL REVENUE SERVICE, *et al.*, <br><br> *Defendants*. | Case No. 26-cv-20609-WILLIAMS/LETT |

**BRIEF OF *AMICI CURIAE*
93 MEMBERS OF THE UNITED STATES HOUSE OF REPRESENTATIVES**

**TABLE OF CONTENTS**

**Pages**

INTEREST OF *AMICI CURIAE* ............................................................................................... 1

INTRODUCTION ...................................................................................................................... 2

ARGUMENT.............................................................................................................................. 3

I.    The Court Lacks Subject Matter Jurisdiction Over This Collusive Lawsuit. .......................... 3

    A.  President Trump Is on Both Sides of This Litigation. ........................................................ 4

    B.  The DOJ's Failure to Raise Meritorious Arguments Shows that the Parties Are Not Adversaries. ...................................................................................................................... 7

II.   The DOJ Lacks Authority to Settle This Collusive Suit. ......................................................... 12

CONCLUSION........................................................................................................................... 16

APPENDIX: LIST OF *AMICI CURIAE*

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,
    300 U.S. 227 (1937) ................................................................................................................. 3

*Aloe Vera of Am., Inc. v. United States*,
    699 F.3d 1153 (9th Cir. 2012) ................................................................................................. 8

*Blumenthal v. Trump*,
    373 F. Supp. 3d 191 (D.D.C. 2019) ....................................................................................... 14

*Cincinnati Soap Co. v. United States*,
    301 U.S. 308 (1937) .............................................................................................................. 14

*D.C. v. Trump*,
    315 F. Supp. 3d 875 (D. Md. 2018) ...................................................................................... 14

*E. Tennessee, V. & G. R. Co. v. S. Tel. Co.*,
    125 U.S. 695 (1888) ................................................................................................................ 3

*FAA v. Cooper*,
    566 U.S. 284 (2012) .............................................................................................................. 12

*Flast v. Cohen*,
    392 U.S. 83 (1968) .................................................................................................................. 3

*Gardner v. United States*,
    213 F.3d 735 (D.C. Cir. 2000) .............................................................................................. 12

*Glenn v. Aiken*,
    569 N.E.2d 783 (Mass. 1991) ................................................................................................ 9

*Griffin v. IRS*,
    730 F. Supp. 3d 1312 (S.D. Fla. 2024) .......................................................................... *passim*

*Griffin v. IRS*,
    No. 1:22-cv-24023 (S.D. Fla. Dec. 13, 2022) ................................................................ *passim*

*Hobbs v. United States* ex rel. *Russell*,
    209 F.3d 408 (5th Cir. 2000) ................................................................................................ 11

*Isom v. Bulso*,
    No. 20-14074, 2022 WL 682215 (11th Cir. Mar. 8, 2022) .................................................... 3

*Lane v. Pena*,
 518 U.S. 187 (1996).............................................................................................. 9

*Lord v. Veazie*,
 49 U.S. 251 (1850)............................................................................................... 4

*MacNeil v. Booz Allen Hamilton, Inc.*,
 No. 8:25-cv-00963 (D. Md. Mar. 24, 2025)........................................................... 8

*Miller v. United States*,
 66 F.3d 220 (9th Cir. 1995).................................................................................. 11

*Moore* v. *Charlotte-Mecklenburg Bd. Of Educ.*,
 402 U.S. 47 (1971)............................................................................................... 4

*Muskrat v. United States*,
 219 U.S. 346 (1911)............................................................................................. 3

*Myers v. United States*,
 272 U.S. 52 (1926)............................................................................................... 5

*Nat'l Org. for Marriage, Inc. v. United States*,
 24 F. Supp. 3d 518 (E.D. Va. 2014) ..................................................................... 11

*People v. Turner*,
 5 N.Y.3d 476 (2005)............................................................................................. 9

*Reeside v. Walker*,
 52 U.S. (11 How.) 272 (1850)............................................................................... 14

*S. Spring Hill Gold Mining Co. v. Amador Medean Gold Mining Co.*,
 145 U.S. 300 (1892).............................................................................................. 4

*Safe Harbor Int'l LLC v. Booz Allen Hamilton, Inc.*,
 No. 8:25-cv-00139 (D. Md. Jan. 14, 2025)...................................................... 8, 10

*Siddiqui v. United States*,
 359 F.3d 1200 (9th Cir. 2004)............................................................................... 11

*Simer v. Rios*,
 661 F.2d 655 (7th Cir. 1981).................................................................................. 15

*Snider v. United States*,
 468 F.3d 500 (8th Cir. 2006).................................................................................. 11

*Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control*,
    623 F.3d 1371 (11th Cir. 2010) ............................................................... 12

*Tijerina v. Walters*,
    821 F.2d 789 (D.C. Cir. 1987) .................................................................. 11

*United States v. Littlejohn*,
    No. 1:23-cr-00343 (D.D.C. Sep. 29, 2023)............................................... 8, 9

*United States v. Johnson*,
    319 U.S. 302 (1943).................................................................................. 3

*Waetzig v. Halliburton Energy Servs., Inc.*,
    604 U.S. 305 (2025)................................................................................. 15

*Warren v. Booz Allen Hamilton, Inc.*,
    No. 24-cv-01252-LKG, 2025 WL 580362 (D. Md. Feb. 21, 2025)........................ 8

**Statutes**

5 U.S.C. § 552a(g)(1)(5) ................................................................................ 11

26 U.S.C. § 6103 ..............................................................................*passim*

26 U.S.C. § 7122(a) ................................................................................... 15

26 U.S.C. § 7217.......................................................................................... 15

26 U.S.C. § 7431.......................................................................................*passim*

26 U.S.C. § 7803............................................................................................ 5

28 U.S.C. § 2414................................................................................... 13, 15

31 U.S.C. § 1304........................................................................................... 12

**Other Authorities**

Att'y Gen, *General Policy Regarding Zealous Advocacy on Behalf of the United States*
    (Feb. 5, 2025)................................................................................................6

*Authority of the United States to Enter Settlements Limiting the Future Exercise of*
    *Executive Branch Discretion*, 23 Op. O.LC. 126 (1999)........................................ 13

Brief of Amicus Curiae Booz Allen Hamilton Inc. in Support of Appellee, *United States v. Littlejohn*, No. 24-3019 (D.C. Cir. Jul. 14, 2025) .................................................. 9

Dep't of the Interior, *National Park Service: Bureau Highlights, FY 2026 Budget in Brief* (2025), https://www.doi.gov/sites/default/files/documents/2025-06/fy26bibnps508 .pdf ...................................................................................................................... 10

Exec. Order No. 14215, 90 Fed. Reg. 10447 (Feb. 24, 2025) ..................................... 4, 5

IRS, Publication 4639, *Disclosure & Privacy Law Reference Guide* (Rev 10-2012), https://www.irs.gov/pub/irs-pdf/p4639.pdf.............................................................. 11

Peace Corps, *The Peace Corps' Congressional Budget Justification: Fiscal Year 2026* (2026), https://files.peacecorps.gov/documents/CBJ_FY2026_Final.pdf.............................. 10

Press Release, U.S. Dep't of Justice, Office of Public Affairs, *Former IRS Contractor Sentenced for Disclosing Tax Return Information to News Organizations* (Jan. 29, 2024), https://www.justice.gov/archives/opa/pr/former-irs-contractor-sentenced-disclosing-tax-return-information-news-organizations.............................................. 9

Press Release, U.S. Dep't of the Treasury, *Treasury Cancels Contracts with Booz Allen Hamilton* (Jan. 26, 2026), https://home.treasury.gov/news/press-releases/sb0371 .................. 9

*Settlement Authority of the United States in Oil Shale Cases*, 4 Op. O.L.C. 756 (1980) ............. 14

U.S. Gov't Accountability Off., GAO-08-978SP, 3 *Principles of Federal Appropriations Law* (3d ed. 2008) ...................................................................................................... 13

Vivian S. Chu & Brian T. Yeh, Cong. Research Serv., R42835, The Judgment Fund: History, Administration, and Common Usage (2013) ........................................... 13

**Rules**

Fed. R. Civ. P. 11.......................................................................................................... 16

Fed. R. Civ. P. 60.......................................................................................................... 15

**Regulations**

31 C.F.R. § 256.1 ......................................................................................................... 13

**Constitutional Provisions**

U.S. Const. art. I, § 7, cl. 1............................................................................................ 1

U.S. Const. art. I, § 9, cl. 7.................................................................................. 1, 14, 15

U.S. Const. art. II, § 1, cl 7 ................................................................................. 1, 14

U.S. Const. art. III, § 2 ........................................................................................ 1, 3

**Media**

Andrew Duehren & Alan Feuer, *Justice Dept. Officials Consider Settling Trump Suit Against I.R.S.*, N.Y. Times (May 12, 2026), https://www.nytimes.com/2026/05/12 /business/trump-suit-irs.html ...................................................................... 2, 12

Andrew Duehren *et al.*, *Trump is Removing I.R.S. Chief 2 Months After He Was Confirmed*, N.Y. Times (Aug. 8, 2025), https://www.nytimes.com/2025/08/08/us /politics/trump-billy-long-irs-commissioner.html......................................... 5

Ashleigh Fields, *Blanche: Americans should be 'happy' about Trump directives to DOJ*, The Hill (Apr. 14, 2026), https://thehill.com/homenews/administration/5830966- trump-blanche-doj-comments ........................................................................ 6

Brian Bennett, *3 Ways Trump's Wealth Has Soared Since He Returned to Office*, Time (Dec. 29, 2025), https://time.com/7342470/trump-net-worth-wealth-crypto ......................... 11

Eric Katz, *Trump admin. tells judge it can fire at least some career feds at any time for any reason*, Gov. Executive (Jul. 17, 2025), https://www.govexec.com/management /2025/07/trump-admin-tells-judge-it-can-fire-least-some-career-feds-any-time-any- reason/406797 ................................................................................................. 5

Jason Powell & Sasha Frank-Stempel, *DOGE's big illusion: the heavy costs of the Trump administration's so-called efficiency*, Citizens for Resp. & Ethics in Washington (June 23, 2025), https://www.citizensforethics.org/reports-investigations/crew- reports/doges-big-illusion-the-heavy-costs-of-the-trump-administrations-so-called- efficiency........................................................................................................ 10

Katelyn Polantz *et al.*, *Exclusive: Acting AG Todd Blanche was told last year to recuse from Justice Department matters involving Trump*, CNN (May 14, 2026), https://www.cnn.com/2026/05/14/politics/todd-blanche-recusal-trump-investigations- brennan............................................................................................................ 6

Katherine Faulders *et al.*, *Trump poised to drop IRS suit, launch $1.7B 'weaponization' fund for allies: Sources*, ABC News (May 14, 2026), https://abcnews.com/US/trump- poised-drop-irs-suit-launch-17b-weaponization/story?id=132962661 ......................... 2, 12, 15

Kelly Phillips Erb, *IRS Enforcement Takes Another Big Hit as Budget Request Shrinks*, Forbes (Apr. 22, 2026), https://www.forbes.com/sites/kellyphillipserb/2026/04/22/irs- enforcement-takes-another-big-hit-as-budget-request-shrinks .............................. 10

Ken Dilanian, *Pam Bondi reshapes the DOJ around Trump's priorities*, NBC News (Mar. 14, 2025), https://www.nbcnews.com/politics/justice-department/s-trumps-justice-department-now-rcna195289 .................................................................................. 6

Kristen Holmes *et al.*, *US Attorney Erik Seibert under pressure from Trump tells staff he will be resigning, source says*, CNN (Sep. 20, 2025), https://www.cnn.com/2025/09 /19/politics/trump-letitia-james-fire-us-attorney.......................................................... 5

Lisa Rubin, *Todd Blanche's first press conference reveals DOJ's new primary client: Trump*, MS.NOW (Apr. 8, 2026), https://www.ms.now/news/news-analysis/todd-blanches-first-press-conference-reveals-dojs-new-primary-client-president-trump................ 6

NTD, *Trump Attorney Reacts to Former IRS Contractor Pleading Guilty to Stealing Trump's Tax Returns* (Oct. 12, 2023), https://www.youtube.com/watch?v= 1tO1kqufniY ...................................................................................................................... 8

Rachel Dobkin, *DOJ considers settling Trump's IRS lawsuit which could send taxpayer money directly to the President's pockets: report*, The Independent (May 13, 2026), https://www.the-independent.com/news/world/americas/us-politics/doj-settles-trump-irs-lawsuit-tax-b2975451.html...................................................................................... 14

*Read the full transcript: President Trump interviewed by 'NBC Nightly News' anchor Tom Llamas*, NBC News (Feb. 4, 2026), https://www.nbcnews.com/politics/trump-administration/trump-interview-nbc-news-extend-transcript-tom-llamas-super-bowl-2026-rcna257410 ............................................................................................................ 7

Rebecca Beitsch & Brett Samuels, *Trump ignites pressure campaign on Pam Bondi to target rivals*, The Hill (Sep. 22, 2025), https://thehill.com/homenews/administration /5516496-trump-calls-for-rival-prosecutions.............................................................. 5

Rebecca Beitsch, *Blanche boasts of having 'cleaned house' at DOJ, FBI following Trump prosecutions*, The Hill (Mar. 26, 2026), https://thehill.com/homenews/administration /5802553-todd-blanche-cpac-doj-fbi-firings................................................................. 6

Rebecca Beitsch, *Blanche says only Trump knows why Bondi was fired, defends president's vision for DOJ*, The Hill (Apr. 7, 2026), https://thehill.com/homenews /administration/5820066-blanche-bondi-trump-press-conference........................................... 7

Ry Rivard & Matt Friedman, *After Alina Habba's exit, more drama in New Jersey prosecutor's office*, Politico (Jan. 22, 2026), https://www.politico.com/news/2026/01 /22/after-habba-more-drama-in-new-jersey-prosecutors-office-00740923 ........................... 5

Scott Dance, *Extra Scrutiny of FEMA Aid to States Has Created a $17 Billion Bottleneck*, N.Y. Times (Jan. 27, 2026), https://www.nytimes.com/2026/01/27/climate/fema-aid-kristi-noem.html.................................................................................................... 10

White House, *President Trump Gaggles with Press on Air Force One En Route Palm
    Beach, FL* (Jan. 31, 2026), https://www.youtube.com/live/IvgGnWcxRhE ........................ 3, 7

**INTEREST OF *AMICI CURIAE***

*Amici curiae* are 93 Members of the United States House of Representatives. A full list of *amici* is listed in the attached Appendix.

*Amici* are interested in this case because they took an oath to uphold and defend the Constitution. They also have a strong interest in ensuring that acts of Congress are faithfully executed by the Executive Branch.

The President is attempting to undermine the Constitution by bringing this collusive suit against the federal government contrary to the requirement that federal courts may only hear "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. Congress has enacted laws governing the specific circumstances under which individuals and entities may sue the United States for unauthorized disclosure of their tax return information. The Department of Justice ("DOJ") is entrusted with defending the United States against claims under these laws and ensuring that the statutory requirements are met before money is paid. Here, however, the DOJ has colluded with President Trump and his allies and, in so doing, abdicated these responsibilities. The parties' actions, therefore, have frustrated Congress' purpose in enacting these laws.

Moreover, Congress has a strong interest in ensuring that the Executive Branch properly guards the public fisc. That includes complying with the Constitution's commands that "[a]ll Bills for raising Revenue shall originate in the House of Representatives," U.S. Const. art. I, § 7, cl. 1, "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law . . . ," *id.* art. I, § 9, cl. 7, and forbidding the President from "receiv[ing] within [his term] any other Emolument from the United States" than compensation approved by Congress, *id.* art. II, § 1, cl 7. Should this lawsuit achieve Plaintiffs' desired ends, it would result in the improper and unconstitutional transfer of taxpayer dollars into the pockets of the President, his family, and his allies. Having taken oaths to uphold and defend the Constitution, the movants cannot stand by and let the Constitution's provisions and prohibitions, including the express bar on Presidential profiteering, go ignored.

With this brief, *amici* aim to assist the Court by explaining why this matter is a collusive suit that fails Article III's case or controversy requirement. They bring the unique perspective of current members of Congress in a lawsuit that raises serious questions about the separation of powers, the Origination Clause, the Appropriations Clause, and the Emoluments Clause. No

1

person, other than *amici curiae* and their counsel, authored this brief in whole or in part or contributed funds intended to fund the preparing or submitting of this brief.

## INTRODUCTION

President Donald J. Trump, his sons, and the Trump Organization (belatedly) filed this lawsuit, alleging that the disclosure of their tax return information by Charles Littlejohn, a government contractor who leaked tax return information associated with more than 400,000 taxpayers, somehow caused the President and his sons $10 billion in damages. Never in the history of the United States has a sitting President sought a monetary settlement from the government he leads—let alone sought many billions of dollars in taxpayer funds. The President seeks damages from the citizens he purports to represent equal to nearly the entire budget he proposed for the Internal Revenue Service ("IRS") itself. $10 billion could fully fund almost the entire annual budget for federal child welfare spending or the National Cancer Institute for a year. Or it could be used to purchase childcare for a million young families. Instead of serving these worthy purposes, the President instead asks this Court to allow him to use collusive litigation to force the American people to put that money into his pockets, and the pockets of his family and friends.

This Court appropriately recognized the extraordinary nature of this suit in which a sitting President seeks to coerce agencies he controls to pay him taxpayer money. It ordered briefing on whether the case presented a "Case" or "Controversy" under Article III of the Constitution, including through the appointment of *amici* to assist the Court in identifying the applicable law governing this issue. ECF No. 41; ECF No. 43. Since then, public reporting has indicated that Plaintiffs and Defendants (represented by the DOJ under leadership appointed by President Trump himself) are negotiating a settlement.[1]

The unprecedented posture of this suit fundamentally disregards Article III's case or controversy requirement and raises the specter of corruption unparalleled in American history. No controversy can exist when the plaintiff controls the defendant, as President Trump does here, nor

---

[1] Andrew Duehren & Alan Feuer, *Justice Dept. Officials Consider Settling Trump Suit Against I.R.S.*, N.Y. Times (May 12, 2026), https://www.nytimes.com/2026/05/12/business/trump-suit-irs.html; Katherine Faulders *et al.*, *Trump poised to drop IRS suit, launch $1.7B 'weaponization' fund for allies: Sources*, ABC News (May 14, 2026), https://abcnews.com/US/trump-poised-drop-irs-suit-launch-17b-weaponization/story?id=132962661.

2

when, as here, the lead Plaintiff openly states that he intends "to work out a settlement with myself."[2]

This Court should immediately dismiss this case for lack of subject matter jurisdiction. Article III of the Constitution requires it to do so because, so long as President Trump is in office, the collusion between the parties has eliminated any justiciable case or controversy. No court—state or federal—would have jurisdiction as a result. The Court should also make clear that any purported settlement between the parties, and any related voluntary dismissal, intended to avoid the Court's scrutiny would contravene the DOJ's settlement authority and the Constitution.

ARGUMENT

## I.   The Court Lacks Subject Matter Jurisdiction Over This Collusive Lawsuit.

As this Court has rightfully acknowledged, federal courts are "courts of limited jurisdiction" and Article III of the Constitution limits them to adjudicating "Cases" or "Controversies." ECF No. 41, at 2 (quoting *Isom v. Bulso*, No. 20-14074, 2022 WL 682215, at \*4 (11th Cir. Mar. 8, 2022) & U.S. Const. art. III, § 2). That limit on judicial authority is critical to maintaining the separation of powers among our branches of government, including the Legislative Branch in which *amici* serve.

The case or controversy requirement necessitates the existence of adverseness: "a dispute between parties who face each other in an adversary proceeding." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 242 (1937). The judicial power extends only to "the right to determine actual controversies arising between adverse litigants." *Muskrat v. United States*, 219 U.S. 346, 361 (1911). A case must be dismissed if it is "not in any real sense adversar[ial]" as a safeguard against placing "the public interest . . . at hazard[.]" *United States v. Johnson*, 319 U.S. 302, 305 (1943).

Collusive lawsuits such as this one must be dismissed because they lack the adverseness required to satisfy Article III. *Id.*; *see also Flast v. Cohen*, 392 U.S. 83, 100 (1968) (describing adverseness as prohibiting suits that are "friendly," "feigned," or "collusive"). The Supreme Court of the United States has repeatedly dismissed cases where there is no "real controversy" between the parties, including when the same party is on both sides of the case. *E. Tennessee, V. & G. R. Co. v. S. Tel. Co.*, 125 U.S. 695, 695 (1888) (there is no real controversy when one party is

---

[2] White House, *President Trump Gaggles with Press on Air Force One En Route Palm Beach, FL*, at 02:40 (Jan. 31, 2026), https://www.youtube.com/live/IvgGnWcxRhE.

3

"practically both plaintiff and defendant"); *see also S. Spring Hill Gold Mining Co. v. Amador Medean Gold Mining Co.*, 145 U.S. 300, 301 (1892) (refusing to "determine a controversy" in "an agreed case gotten up by collusion"); *Moore* v. *Charlotte-Mecklenburg Bd. Of Educ.*, 402 U.S. 47, 48 (1971) (finding "no case or controversy within the meaning of Art. III" when "both litigants desire precisely the same result"); *Lord v. Veazie*, 49 U.S. 251, 255 (1850) (condemning a lawsuit where "the plaintiff and defendant have the same interest" as "in contempt of the court, and highly reprehensible").[3]

The President's blatant self-dealing makes this matter a collusive suit. President Trump's presence on both sides of the litigation, and his own blunt statements about his ability to control the case, show that Plaintiffs and Defendants are not adversaries. And the DOJ's failure to raise numerous, clearly meritorious arguments for dismissal—which it has raised in other cases involving essentially identical facts—provide further support for the conclusion that this is a collusive suit. This Court should immediately dismiss this case for lack of subject matter jurisdiction.

### A.     President Trump Is on Both Sides of This Litigation.

In this case, there is no distinction between Donald Trump as President and Donald Trump in his "personal capacity."[4] Compl. ¶ 1. Instead, the President has repeatedly claimed far-reaching Executive power and frequently sought to use that power to further his own personal interests. He cannot pretend that officials at the IRS and the Department of the Treasury—and their lawyers at the DOJ—operate independently from him for purposes of this case.

The President has continually asserted a maximalist view of his own Executive authority, foreclosing any possible argument that the agencies appearing here as Defendants have autonomy or independence from him. Only a month after assuming office, he issued an Executive Order stating that "executive branch officials," "remain subject to the President's ongoing supervision and control." Exec. Order No. 14215, § 1, 90 Fed. Reg. 10447, 10448 (Feb. 24, 2025). The Order also proclaimed that "[t]he President and the Attorney General, subject to the President's supervision and control, shall provide authoritative interpretations of law for the executive

---

[3] For additional legal analysis on the case and controversy requirement of Article III, see the Memorandum of Court-Appointed *Amici Curiae*, ECF No. 45.

[4] Paradoxically, even though the President purports to bring this suit in his "personal capacity," the case caption identifies him as "President Donald. J. Trump."

branch." *Id.* § 7, 90 Fed. Reg. at 10448. The President thus prohibited employees of the Executive Branch from "advanc[ing] an interpretation of the law as the position of the United States that contravenes the President or the Attorney General's opinion," which included "positions advanced in litigation." *Id.* § 7, 90 Fed. Reg. at 10448-49.

The agencies named as Defendants here are subject to that Executive Order. The Secretary of the Treasury is a member of the President's Cabinet and, therefore, his "alter ego." *Myers v. United States*, 272 U.S. 52, 133 (1926). The IRS Commissioner is appointed by the President, and the President may remove him at will. 26 U.S.C. §§ 7803(a)(1)(B), (D). Just last year, President Trump exercised his authority to remove the IRS Commissioner only two months after the Commissioner was confirmed to the position.[5]

Similarly, through the Executive Order and in other ways, the President has exerted far-reaching control over the DOJ, which should be defending the present suit and has the primary responsibility to determine what arguments will be made and whether settlement would be appropriate and in the interests of the United States. President Trump has fired his Attorney General, forced out United States Attorneys of whom he disapproved, and refused to replace United States Attorneys through the statutorily-mandated confirmation process.[6] He has invoked his Executive power under the Constitution to fire line attorneys without cause.[7] And, he has ordered DOJ officials to prosecute his perceived political adversaries.[8] As a symbolic

---

[5] Andrew Duehren *et al.*, *Trump is Removing I.R.S. Chief 2 Months After He Was Confirmed*, N.Y. Times (Aug. 8, 2025), https://www.nytimes.com/2025/08/08/us/politics/trump-billy-long-irs-commissioner.html.

[6] *See, e.g.*, Kristen Holmes *et al.*, *US Attorney Erik Seibert under pressure from Trump tells staff he will be resigning, source says*, CNN (Sep. 20, 2025), https://www.cnn.com/2025/09/201920/politics/trump-letitia-james-fire-us-attorney; Ry Rivard & Matt Friedman, *After Alina Habba's exit, more drama in New Jersey prosecutor's office*, Politico (Jan. 22, 2026), https://www.politico.com/news/2026/01/22/after-habba-more-drama-in-new-jersey-prosecutors-office-00740923.

[7] Eric Katz, *Trump admin. tells judge it can fire at least some career feds at any time for any reason*, Gov. Executive (Jul. 17, 2025), https://www.govexec.com/management/2025/07/trump-admin-tells-judge-it-can-fire-least-some-career-feds-any-time-any-reason/406797.

[8] *See, e.g.*, Rebecca Beitsch & Brett Samuels, *Trump ignites pressure campaign on Pam Bondi to target rivals*, The Hill (Sep. 22, 2025), https://thehill.com/homenews/administration/5516496-trump-calls-for-rival-prosecutions.

representation of President Trump's complete control over the DOJ, a banner portraying his face now hangs outside the Main Justice building in Washington, D.C.

The DOJ has also made clear that it welcomes direct control by President Trump. Guidance issued to DOJ lawyers shortly after President Trump took office warned that they could face discipline if they "deprive[d] the President of the benefit of *his* lawyers."[9] In public statements, former Attorney General Pam Bondi vowed to root out DOJ employees who were insufficiently loyal to President Trump.[10] Current officials at the highest levels of the DOJ have also affirmed their allegiance to President Trump's personal interests. For example, Todd Blanche, the Acting Attorney General, was President Trump's *personal lawyer* prior to assuming office. After joining the DOJ, Mr. Blanche was told by the DOJ's "top ethics lawyer" that Mr. Blanche should recuse himself from cases involving President Trump in his personal capacity; that official was fired in July.[11] Mr. Blanche has bragged about firing individuals who worked on the criminal prosecutions of President Trump,[12] even declaring that these purges were consistent with ethical duties.[13] He has defended President Trump's micromanagement of the DOJ, including his directives related to criminal prosecutions—stating that such communications "should make every American happy."[14]

---

[9] Att'y Gen, *General Policy Regarding Zealous Advocacy on Behalf of the United States* (Feb. 5, 2025) (emphasis added).

[10] Ken Dilanian, *Pam Bondi reshapes the DOJ around Trump's priorities*, NBC News (Mar. 14, 2025), https://www.nbcnews.com/politics/justice-department/s-trumps-justice-department-now-rcna195289.

[11] Katelyn Polantz *et al.*, *Exclusive: Acting AG Todd Blanche was told last year to recuse from Justice Department matters involving Trump*, CNN (May 14, 2026), https://www.cnn.com/2026/05/14/politics/todd-blanche-recusal-trump-investigations-brennan.

[12] *See* Rebecca Beitsch, *Blanche boasts of having 'cleaned house' at DOJ, FBI following Trump prosecutions*, The Hill (Mar. 26, 2026), https://thehill.com/homenews/administration/5802553-todd-blanche-cpac-doj-fbi-firings.

[13] Lisa Rubin, *Todd Blanche's first press conference reveals DOJ's new primary client: Trump*, MS.NOW (Apr. 8, 2026), https://www.ms.now/news/news-analysis/todd-blanches-first-press-conference-reveals-dojs-new-primary-client-president-trump.

[14] Ashleigh Fields, *Blanche: Americans should be 'happy' about Trump directives to DOJ*, The Hill (Apr. 14, 2026), https://thehill.com/homenews/administration/5830966-trump-blanche-doj-comments.

Upon assuming the Acting Attorney General role, one of Mr. Blanche's first public statements was: "I love working for President Trump."[15]

And if it were not entirely clear the degree to which he exercises control over the DOJ, the President has even outright admitted that he views this case as an opportunity to control both sides of the negotiation and obtain a windfall at the expense of the American taxpayer. Days after the suit was filed, President Trump told the press "I'm supposed to work out a settlement with myself."[16] When asked in a different interview what he would tell Treasury Secretary Scott Bessent and then-Attorney General Bondi, President Trump stated that he would "tell 'em to pay me."[17] Yet, the parties want this Court to believe the farce that the DOJ can faithfully and independently litigate the claims brought by President Trump and his relatives.

**B.      The DOJ's Failure to Raise Meritorious Arguments Shows that the Parties Are Not Adversaries.**

The collusive nature of the suit is also evident in the DOJ's actions—or lack thereof. In other cases stemming from Mr. Littlejohn's disclosure of tax information, the DOJ has presented a plethora of defenses. Yet here, the DOJ has been engaged in extensive settlement negotiations without first asserting these obvious, and dispositive, defenses. It has accordingly failed to present winning arguments for dismissal, several of which it has raised in prior litigation. Specifically, the DOJ has failed to defend against this suit by arguing (1) the claims under 26 U.S.C. § 6103 and § 7431(a)(1) are time-barred, the United States and its agencies are not the proper Defendants, and there are no facts to support Plaintiffs' $10 billion damages claim; and (2) the Privacy Act claims are also time-barred, preempted, and should be dismissed for failure to plead actual damages.

**1.      Plaintiffs' Claims for Unauthorized Disclosure of Tax Returns Are Time-Barred, Name the Wrong Defendants, and Do Not Support Plaintiffs' $10 Billion Damages Demand.**

Plaintiffs' claims for unauthorized disclosure of their tax returns are barred by a two-year statute of limitations that began, at the latest, in October 2023—and likely much earlier. *See* 26

---

[15] Rebecca Beitsch, *Blanche says only Trump knows why Bondi was fired, defends president's vision for DOJ*, The Hill (Apr. 7, 2026), https://thehill.com/homenews/administration/5820066-blanche-bondi-trump-press-conference.

[16] *See supra* note 2.

[17] *Read the full transcript: President Trump interviewed by 'NBC Nightly News' anchor Tom Llamas*, NBC News (Feb. 4, 2026), https://www.nbcnews.com/politics/trump-administration/trump-interview-nbc-news-extend-transcript-tom-llamas-super-bowl-2026-rcna257410.

7

U.S.C. § 7431(d). The relevant news articles containing Plaintiffs' tax return information were published between 2019 and 2022. *See* Compl. ¶¶ 73-75. Moreover, the Information in Mr. Littlejohn's criminal case was publicly filed in September 2023. *See* Information, *United States v. Littlejohn*, No. 1:23-cr-00343, ECF No. 1 (D.D.C. Sep. 29, 2023). The next month, October 2023, Mr. Littlejohn pled guilty to disclosing Plaintiffs' tax return information. Transcript of Plea Hrg., *United States v. Littlejohn*, No. 1:23-cr-00343, ECF No. 13 (Oct. 23, 2023). President Trump's personal lawyer, Alina Habba, appeared at the plea hearing "on behalf of President Trump" and identified President Trump as a victim of the crime. *Id.* at 14:22-16:10. Outside the courthouse that same day, Ms. Habba told the press that she had "spok[en]" with President Trump "right before" the hearing.[18] Thus, Plaintiffs were on notice about the unauthorized disclosure no later than October 2023. *See, e.g.*, *Aloe Vera of Am., Inc. v. United States*, 699 F.3d 1153, 1159 (9th Cir. 2012) ("date of discovery" for purposes of § 7431(d) is "when a plaintiff knows or reasonably should know of an allegedly unauthorized inspection or disclosure"). They filed their claims more than two years later, in January 2026, with Plaintiff Trump in control of the Executive Branch.

Indeed, some of the 400,000+ other individuals and entities affected by Mr. Littlejohn's conduct filed suit well before Plaintiffs. *See, e.g.*, *Griffin v. IRS*, 730 F. Supp. 3d 1312 (S.D. Fla. 2024); *Warren v. Booz Allen Hamilton, Inc.*, No. 24-cv-01252-LKG, 2025 WL 580362 (D. Md. Feb. 21, 2025); *Safe Harbor Int'l LLC v. Booz Allen Hamilton, Inc.*, No. 8:25-cv-00139 (D. Md. Jan. 14, 2025); *MacNeil v. Booz Allen Hamilton, Inc.*, No. 8:25-cv-00963 (D. Md. Mar. 24, 2025). In at least one of those cases, the plaintiff specifically alleged that he discovered the unauthorized disclosure in September 2023, when the contractor's criminal Information was filed. *See* Compl. ¶ 59, *MacNeil v. Booz Allen Hamilton, Inc.*, ECF No. 1, No. 8:25-cv-00963 (D. Md. Mar. 24, 2025). Similarly, in another case, both parties, and the court, assumed that the latest date the limitations period could have started was September 2023. *Warren*, 2025 WL 580362, at *6. Even then, the court was skeptical that the plaintiff did not know about his cause of action sooner given the public articles containing his tax information.[19] *Id.* at *5-*6.

Unlike that case, this case presents no "close question[s]." *Id.* Plaintiffs' claims are untimely and the DOJ's failure to assert that they are time-barred—an obvious defense in any late-

---

[18] NTD, *Trump Attorney Reacts to Former IRS Contractor Pleading Guilty to Stealing Trump's Tax Returns*, at 02:50 (Oct. 12, 2023), https://www.youtube.com/watch?v=1tO1kqufniY.

[19] The *Warren* court ultimately denied the motion to dismiss. *Id.*

filed litigation, especially so when billions of public dollars are sought—indicates it does not intend to represent interests adversarial to Plaintiffs. The failure to raise an "obviously winning affirmative defense" in a civil case could form the basis for a malpractice claim. *See Glenn v. Aiken*, 569 N.E.2d 783, 787 (Mass. 1991). And, the failure to raise an affirmative defense—either because of incompetence or collusion—would support an ineffective assistance of counsel claim in a criminal case. *Cf. People v. Turner*, 5 N.Y.3d 476, 481 (2005) (holding that counsel's "failure to raise a defense as clear-cut and completely dispositive as a statute of limitations . . . is hard to reconcile with a defendant's constitutional right to the effective assistance of counsel").

The government also has a colorable argument that Plaintiffs have sued the wrong Defendants under the wrong statute. Section 7431(a)(1) provides a cause of action for disclosures by "officer[s] or employee[s] of the United States." Mr. Littlejohn, however, was a contractor and, therefore, was not an "officer or employee" of the government.[20] *Id.* Defendants, thus, should have brought suit against Mr. Littlejohn under § 7431(a)(2) which provides for suit against "any person who is not an officer or employee of the United States."

These are not mere semantics. Section 7431(a)(1) operates as a limited waiver of sovereign immunity and must be strictly construed "in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996). Because Mr. Littlejohn was not an "officer or employee of the United States," the federal government has not waived sovereign immunity for suits based on his actions. The DOJ has made this argument in other cases involving Mr. Littlejohn's conduct. *See, e.g.*, United States' Mot. to Dismiss, *Griffin v. IRS*, No. 1:22-cv-24023, ECF No. 58, at 6-12 (S.D. Fla. Nov. 27, 2023). While one court did not credit the argument at the motion to dismiss stage, *Griffin*, 730 F. Supp. 3d at 1317-20, less than a year ago, the DOJ argued that decision was wrong because it failed to

---

[20] Statements by the DOJ, the Department of the Treasury, and Booz Allen Hamilton Inc.—Mr. Littlejohn's former employer—make clear that Mr. Littlejohn was a contractor and not an "officer or employee of the United States." *See* Press Release, U.S. Dep't of Justice, Office of Public Affairs, *Former IRS Contractor Sentenced for Disclosing Tax Return Information to News Organizations* (Jan. 29, 2024), https://www.justice.gov/archives/opa/pr/former-irs-contractor-sentenced-disclosing-tax-return-information-news-organizations; Brief of Amicus Curiae Booz Allen Hamilton Inc. in Support of Appellee, *United States v. Littlejohn*, No. 24-3019, at 1 (D.C. Cir. Jul. 14, 2025) ("Littlejohn not only abused his role as a contractor for the Internal Revenue Service by exploiting security flaws in the IRS systems—he betrayed Booz Allen, his employer, and harmed Booz Allen's reputation."); Press Release, U.S. Dep't of the Treasury, *Treasury Cancels Contracts with Booz Allen Hamilton* (Jan. 26, 2026), https://home.treasury.gov/news/press-releases/sb0371.

consider "legal questions [that] are the bedrock of statutory interpretation th[e] Court must perform to determine whether the United States waived its sovereign immunity," United States's Mot. to Dismiss, *Safe Harbor Int'l v. United States*, No. 8:25-cv-00139-LKG, ECF No. 31, at 14 (D. Md. Jul. 23, 2025). Moreover, the discovery process in *Griffin* has only strengthened the claim that Mr. Littlejohn was not a government employee: when he was deposed in that case, Mr. Littlejohn stated that he was "never" an employee of the IRS or the United States. Littlejohn Dep., *Griffin v. IRS*, No. 1:22-cv-24023, ECF No. 119-1, at 308:3-14 (S.D. Fla. Nov. 27, 2023). Nevertheless, despite its position in prior filings, the DOJ has declined to litigate these same issues here.

Plaintiffs also have not adequately supported their outrageous damages claim for $10 billion under § 6103 and § 7431(a)(1). As an initial matter, a claim for $10 billion in damages—an amount roughly equivalent to the entire proposed budget of the IRS for Fiscal Year 2027[21]—is absurd on its face. To put this amount into perspective, $10 billion could similarly support countless other taxpayer-funded priorities. For instance, it exceeds the entirety of the $7.3 billion in cumulative federal funding the Consumer Financial Protection Bureau has received since its formation in 2011.[22] The proposed settlement amount would equal 80 percent of the grants distributed by the Federal Emergency Management Agency every year, 20 years' worth of the Peace Corps budget, or nearly five years of the National Park Service's budget.[23] Plaintiffs make no attempt—nor could they—to justify this exorbitant damages estimate, and the DOJ has not pushed back on Plaintiffs' claim.

Plaintiffs' damages claim therefore fail as a matter of law. Section 7431(c)(1)(A) only allows plaintiffs to recover $1,000 for each unauthorized disclosure and, here, Plaintiffs do not

---

[21] Kelly Phillips Erb, *IRS Enforcement Takes Another Big Hit as Budget Request Shrinks*, Forbes (Apr. 22, 2026), https://www.forbes.com/sites/kellyphillipserb/2026/04/22/irs-enforcement-takes-another-big-hit-as-budget-request-shrinks.

[22] Jason Powell & Sasha Frank-Stempel, *DOGE's big illusion: the heavy costs of the Trump administration's so-called efficiency*, Citizens for Resp. & Ethics in Washington (June 23, 2025), https://www.citizensforethics.org/reports-investigations/crew-reports/doges-big-illusion-the-heavy-costs-of-the-trump-administrations-so-called-efficiency.

[23] *See* Scott Dance, *Extra Scrutiny of FEMA Aid to States Has Created a $17 Billion Bottleneck*, N.Y. Times (Jan. 27, 2026), https://www.nytimes.com/2026/01/27/climate/fema-aid-kristi-noem.html; Peace Corps, *The Peace Corps' Congressional Budget Justification: Fiscal Year 2026*, at 2 (2026), https://files.peacecorps.gov/documents/CBJ_FY2026_Final.pdf; Dep't of the Interior, *National Park Service: Bureau Highlights, FY 2026 Budget in Brief*, at 1 (2025), https://www.doi.gov/sites/default/files/documents/2025-06/fy26bibnps508.pdf.

identify anywhere near 10,000,000 unauthorized disclosures by Mr. Littlejohn. *See Miller v. United States*, 66 F.3d 220, 223-24 (9th Cir. 1995) (only initial acts of disclosure, rather than secondary acts of dissemination in, for example, newspapers, count for purposes of calculating damages); *Snider v. United States*, 468 F.3d 500, 508-09 (8th Cir. 2006) (same). The DOJ's failure to make this argument is particularly egregious because the IRS has stated, contrary to Plaintiffs' position here, Compl. ¶ 104, "the United States should not be held responsible for redisclosures of return information, *e.g.*, to a newspaper's subscribers."[24] The DOJ has inexplicably chosen not to defend the IRS's position here.

And while § 7431(c)(1)(B) provides that plaintiffs may obtain actual and punitive damages when those damages are greater than the amount calculated under § 7431(c)(1)(A), Plaintiffs do not identify *how* they were damaged at all by the disclosures, let alone allege any facts sufficient to conclude that the unauthorized disclosures were the but-for and proximate cause of any harm. *Nat'l Org. for Marriage, Inc. v. United States*, 24 F. Supp. 3d 518, 529 (E.D. Va. 2014) (actual damages showing under § 7431(c) incorporates "the common law elements of causation—actual and proximate cause"). Indeed, since the disclosures, President Trump has won an election and his net worth has reportedly nearly doubled, belying any claims that he was harmed as a result of Mr. Littlejohn's acts.[25] Further, Plaintiffs' failure to plead actual damages precludes them from obtaining punitive damages under the statute. *See, e.g.*, *Siddiqui v. United States*, 359 F.3d 1200, 1204 (9th Cir. 2004).

### 2. Plaintiffs' Privacy Act Claims Are Time-Barred, Preempted, and Should Be Dismissed for Failure to Plead Actual Damages.

Finally, the DOJ has not pressed meritorious arguments in support of dismissing Plaintiffs' Privacy Act claims. Like the claims for unauthorized disclosure of tax returns discussed above, the Privacy Act claims are subject to a two-year statute of limitations. 5 U.S.C. § 552a(g)(1)(5); *Tijerina v. Walters*, 821 F.2d 789, 797 (D.C. Cir. 1987) (cause of action under the Privacy Act arises when the plaintiff knows or has reason to know of adverse action). Additionally, they are preempted by § 6103 and § 7431. *See, e.g.*, *Hobbs v. United States* ex rel. *Russell*, 209 F.3d 408, 411 (5th Cir. 2000) ("[T]he majority of courts that have considered the interaction of § 6103 with

---

[24] IRS, Publication 4639, *Disclosure & Privacy Law Reference Guide* (Rev 10-2012), at 1-26, https://www.irs.gov/pub/irs-pdf/p4639.pdf.

[25] Brian Bennett, *3 Ways Trump's Wealth Has Soared Since He Returned to Office*, Time (Dec. 29, 2025), https://time.com/7342470/trump-net-worth-wealth-crypto.

the Privacy Act . . . have concluded that § 6103 and § 7431 provide the exclusive remedy for disclosures of tax return information."); *Gardner v. United States*, 213 F.3d 735, 742 (D.C. Cir. 2000) ("[T]he Internal Revenue Code preempts the Privacy Act for remedies for disclosure of tax information."). Further, the Privacy Act claims are doomed by Plaintiffs' failure to plead actual damages. *FAA v. Cooper*, 566 U.S. 284, 295 (2012) (plaintiff must prove "at least some 'actual damages'" to recover under the Privacy Act); *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control*, 623 F.3d 1371, 1381 (11th Cir. 2010) (identifying actual damages as an element of Privacy Act claims).

As with the claims under § 6103 and § 7431, the DOJ has previously sought dismissal of Privacy Act claims regarding Mr. Littlejohn's conduct on these grounds. *See, e.g.*, United States' Mot. to Dismiss, *Griffin v. IRS*, No. 1:22-cv-24023, ECF No. 23, at 6-8 (S.D. Fla. Apr. 25, 2023) (arguing that the plaintiff's Privacy Act claims were preempted by the Internal Revenue Code and that the plaintiff had failed to plead actual damages). And, it found success: one court dismissed a Privacy Act claim for failure to plead actual damages. *Griffin*, 730 F. Supp. 3d at 1321-22. Here, however, the DOJ has plainly abdicated its responsibility and declined to present these arguments to the Court.

The DOJ's refusal to assert routine and obvious defenses—particularly those it has successfully introduced in substantially similar cases—all while it rushes to achieve a collusive settlement apparently at the President's direction, bears out what is otherwise obvious based on President Trump's complete control over Defendants here: this case lacks the necessary adversity to establish an Article III case or controversy.

## II. The DOJ Lacks Authority to Settle This Collusive Suit.

If this Court determines that this is a collusive suit that fails to meet Article III's case or controversy requirement, *see supra* Section I, the DOJ would also lack legal authority to settle it on behalf of the Defendant agencies or the United States. Recent public reporting indicates that the DOJ is considering settling this suit instead of responding to this Court's order regarding whether this case is wanting in jurisdiction.[26] That would be unlawful for several reasons.

*First*, the DOJ lacks statutory and constitutional authority to settle this collusive suit. Congress' appropriations to the Judgment Fund, 31 U.S.C. § 1304, come with specific constraints

---

[26] *See* Duehren & Feuer, *supra* note 1; Faulders *et al.*, *supra* note 1.

that foreclose such a corrupt settlement. One of those express constraints is that "compromise settlements" are only authorized when the settlement is payable pursuant to specific statutes, including the Settlements Authority Statute, 28 U.S.C. § 2414, and other statutes not applicable here. Crucially, under § 2414, the Attorney General has authority only to make "compromise settlements of claims . . . for defense of imminent litigation or suits against the United States, or against its agencies or officials upon obligations or liabilities of the United States . . . ." The regulation enumerating the Department of the Treasury's authority for certifying payment from the Judgment Fund, 31 C.F.R. § 256.1, is in accord: Congress only authorizes "settlement of claims arising under actual or imminent litigation . . . ." *Id.* at § 256.1(b) ("Fiscal Service requires that requests for payment identify the statute that forms the basis of the underlying claim. The award or settlement must comply with the statutory and regulatory requirements that authorize the award or settlement.").

But a feigned or collusive suit over which no court has jurisdiction—to say nothing about one that has been voluntarily dismissed to avoid a jurisdictional ruling—is not "actual or imminent litigation." As the Government Accountability Office ("GAO") explains, the statement in § 2414 "for defense of imminent litigation or suits against the United States" requires that "[t]he agency must be confronted with a genuine disagreement or impasse . . . . There must be a *legitimate* dispute over either liability or amount." U.S. Gov't Accountability Off., GAO-08-978SP, 3 *Principles of Federal Appropriations Law* 14-35 (3d ed. 2008) (emphasis added). After all, "the Judgment Fund is limited to litigative awards, meaning awards that *were or could have been made in a court*." Vivian S. Chu & Brian T. Yeh, Cong. Research Serv., R42835, The Judgment Fund: History, Administration, and Common Usage 6 (2013) (emphasis added)). Because this collusive suit is not a legitimate dispute, and because the award could not have been made in a court, the Judgment Fund is not available and there is no appropriation to settle these claims.

While the Attorney General undoubtedly has broad settlement discretion, that power must be exercised in a "manner that conforms to the specific statutory limits that Congress has imposed upon its exercise." *Authority of the United States to Enter Settlements Limiting the Future Exercise of Executive Branch Discretion*, 23 Op. O.LC. 126, 136 (1999). As the DOJ has previously acknowledged, "it should go without saying that the Attorney General is bound by the duty imposed on the President under Article II of the Constitution to 'take care that the laws be faithfully executed,' and that consequently there may be some forms of settlement that would be foreclosed,

13

as where the settlement would result in action plainly at variance with Congress' intent." *Settlement Authority of the United States in Oil Shale Cases*, 4 Op. O.L.C. 756, 757-78 (1980).

This is certainly a scenario in which settlement would violate constitutional separation of powers. The Appropriations Clause, which provides in relevant part that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law," U.S. Const. art. I, § 9, cl. 7, imposes a strict "restriction upon the disbursing authority of the Executive department," *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937); *see also Reeside v. Walker*, 52 U.S. (11 How.) 272, 291 (1850) ("It is a well-known constitutional provision, that no money can be taken or drawn from the Treasury except under an appropriation by Congress."). That restriction surely applies to an *ultra vires* disbursement of taxpayer dollars to the President for a lawsuit that both lacks any basis in federal jurisdiction and is substantively meritless.

*Second*, any settlement—monetary or otherwise—would violate the Domestic Emoluments Clause of the Constitution. Article II, Section 1, Clause 7 provides that: "The President shall, at stated Times, receive for his Services, a Compensation, which shall neither be encreased nor diminished during the Period for which he shall have been elected, and he shall not receive within that Period any other Emolument from the United States, or any of them." A settlement payment, especially for an unmeritorious claim, "within [the] Period" of the Presidential term in office is a straightforward violation of the Domestic Emoluments Clause. *See D.C. v. Trump*, 315 F. Supp. 3d 875, 889 (D. Md. 2018), *vacated as moot*, 838 F. App'x 789 (4th Cir. 2021) (after extensive textual and historical analysis, finding that the term "emolument" in both the Foreign and Domestic Emoluments Clause "should be interpreted broadly to mean 'profit,' 'gain,' or 'advantage,' essentially covering anything of value); *Blumenthal v. Trump*, 373 F. Supp. 3d 191, 196 (D.D.C. 2019), *vacated as moot*, 949 F.3d 14 (D.C. Cir. 2020) (same). And settlement payments to the President's family or his business that lack a legal basis are no less violative of the Domestic Emoluments Clause. *See id.*

*Third*, should any settlement include a provision that the IRS drop any audits of President Trump, his family, and his businesses, as public reporting has suggested is in contemplation,[27] that

---

[27] Rachel Dobkin, *DOJ considers settling Trump's IRS lawsuit which could send taxpayer money directly to the president's pockets: report*, The Independent (May 13, 2026), https://www.the-independent.com/news/world/americas/us-politics/doj-settles-trump-irs-lawsuit-tax-b2975451.html.

would also exceed the DOJ's authority and would trigger additional prohibitions. For one, the tax liabilities of the President, his family, and his businesses are not at issue in the instant Complaint. The DOJ, therefore, has no authority to enter a compromise settlement in an IRS audit not referred to the Department for prosecution or defense. 26 U.S.C. § 7122(a). And based on publicly available sources, the IRS has not done so. For another, 26 U.S.C. § 7217 expressly prohibits the President from "request[ing], directly or indirectly, any officer or employee of the Internal Revenue Service to conduct or terminate an audit or other investigation of any particular taxpayer with respect to the tax liability of such taxpayer." Violations of this provision are criminal and carry up to five years imprisonment and/or a fine as punishment. *Id.* § 7217(d).

*Fourth*, any purported settlement that includes the creation of a commission to compensate other individuals with similarly meritless claims against the government would also be constitutionally and statutorily inapposite. Indeed, recent reports indicate that President Trump intends to voluntarily dismiss this litigation in exchange for the creation of a $1.7 billion fund to compensate "anyone who alleges they were harmed by the Biden administration . . . ."[28] That approach would be plainly unlawful because any such claimants would not be involved in actual or imminent litigation against the United States. *See* 28 U.S.C. § 2414. Further, third parties making such allegations do not have claims related to the statutory causes of action at issue in this case, which would render any settlement of this kind an unlawful "compromise settlement" of Judgment Fund monies. *Id*. And, most importantly, Congress has not authorized any fund, much less one involving billions of taxpayer dollars, for these purposes. So, any such payment would clearly violate the Appropriations Clause. U.S. Const. art. I, § 9, cl. 7.

*Finally*, filing a collusive lawsuit only to immediately dismiss it in order to produce a collusive settlement that is illegal multiple times over would not only be legally barred; it would also raise serious questions about whether the parties have manipulated the court system to achieve illicit ends. Should that occur, this Court may wish to exercise its *sua sponte* authority under Federal Rule of Civil Procedure 60 to examine any voluntary dismissal entered to advance such a scheme. *See Simer v. Rios*, 661 F.2d 655, 663 & n.18 (7th Cir. 1981) (collecting cases regarding court's *sua sponte* authority); *Waetzig v. Halliburton Energy Servs., Inc.*, 604 U.S. 305, 315 (2025) ("[A] voluntary dismissal without prejudice counts as a 'proceeding' under Rule 60(b).").

---

[28] Faulders *et al.*, *supra* note 1.

Moreover, such conduct would raise serious questions about whether the parties' submissions in this case—including the Complaint and any dismissal papers—implicate Rule 11(b). Because this Court enjoys plenary power under Rule 11(c)(3) to "order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)," it may wish to examine whether the parties' submission was "presented for any improper purpose," whether "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and whether the "factual contentions," including the demand for $10 billion in damages, have or will likely have "evidentiary support." Fed. R. Civ. P. 11(b).

## CONCLUSION

For the foregoing reasons, the Court should dismiss this collusive lawsuit for lack of jurisdiction.

May 18, 2026

Respectfully submitted,

/s/ Matthew J. Platkin

Matthew J. Platkin*
Angela Cai*
Ravi Ramanathan*
Aaron E. Haier*
Conor Bradley*
**PLATKIN LLP**
413 Washington Ave.
Unit 174
Belleville, NJ 07109
Phone: (973) 561-1951
Email: mplatkin@platkinllp.com

Norman L. Eisen*
David W. Ogden*
Stephen A. Jonas*
**DEMOCRACY DEFENDERS ACTION**
600 Pennsylvania Ave. SE #15180
Washington, D.C. 20003
(202) 594-9958
Email: norman@democracydefenders.org

**RIVERO MESTRE LLP**
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: dtenjido@riveromestre.com

By: */s/* Andrés Rivero

Andrés Rivero
Florida Bar No. 613819
Daniela Tenjido-Eljaiek
Florida Bar No. 1031531

*Counsel for Amici Curiae 93 Members of the
U.S. House of Representatives*

**Pro hac vice* admission pending

17

**APPENDIX: LIST OF *AMICI CURIAE***

**Jamie Raskin**
Representative of Maryland

**Richard E. Neal**
Representative of Massachusetts

**Hakeem Jeffries**
Representative of New York

**Katherine Clark**
Representative of Massachusetts

**Pete Aguilar**
Representative of California

**Joe Neguse**
Representative of Colorado

**Rosa L. DeLauro**
Representative of Connecticut

**Robert Garcia**
Representative of California

**Gabe Amo**
Representative of Rhode Island

**Jake Auchincloss**
Representative of Massachusetts

**Becca Balint**
Representative of Vermont

**Nanette Barragán**
Representative of California

**Wesley Bell**
Representative of Missouri

**Donald S. Beyer Jr.**
Representative of Virginia

**Suzanne Bonamici**
Representative of Oregon

**Brendan F. Boyle**
Representative of Pennsylvania

**Julia Brownley**
Representative of California

**Salud O. Carbajal**
Representative of California

**Sean Casten**
Representative of Illinois

**Kathy Castor**
Representative of Florida

**Judy Chu**
Representative of California

**Steve Cohen**
Representative of Tennessee

**J. Luis Correa**
Representative of California

**Jim Costa**
Representative of California

**Joe Courtney**
Representative of Connecticut

**Jasmine Crockett**
Representative of Texas

**Danny K. Davis**
Representative of Illinois

**Diana DeGette**
Representative of Colorado

**Suzan K. DelBene**
Representative of Washington

**Mark DeSaulnier**
Representative of California

**Maxine Dexter**
Representative of Oregon

**Lloyd Doggett**
Representative of Texas

**Adriano Espaillat**
Representative of New York

**Dwight Evans**
Representative of Pennsylvania

**Lizzie Fletcher**
Representative of Texas

**Bill Foster**
Representative of Illinois

**John Garamendi**
Representative of California

**Jesús G. "Chuy" García**
Representative of Illinois

**Sylvia Garcia**
Representative of Texas

**Dan Goldman**
Representative of New York

**Jimmy Gomez**
Representative of California

**Steven Horsford**
Representative of Nevada

**Jared Huffman**
Representative of California

**Jonathan L. Jackson**
Representative of Illinois

**Pramila Jayapal**
Representative of Washington

**Henry C. "Hank" Johnson, Jr.**
Representative of Georgia

**Sydney Kamlager-Dove**
Representative of California

**William Keating**
Representative of Massachusetts

**Timothy M. Kennedy**
Representative of New York

**John B. Larson**
Representative of Connecticut

2

**Teresa Leger Fernández**
Representative of New Mexico

**Mike Levin**
Representative of California

**Sam T. Liccardo**
Representative of California

**Ted W. Lieu**
Representative of California

**Zoe Lofgren**
Representative of California

**Stephen F. Lynch**
Representative of Massachusetts

**Seth Magaziner**
Representative of Rhode Island

**Lucy McBath**
Representative of Georgia

**James P. McGovern**
Representative of Massachusetts

**Christian Menefee**
Representative of Texas

**Dave Min**
Representative of California

**Gwen S. Moore**
Representative of Wisconsin

**Joseph D. Morelle**
Representative of New York

**Jared Moskowitz**
Representative of Florida

**Seth Moulton**
Representative of Massachusetts

**Jerrold Nadler**
Representative of New York

**Eleanor Holmes Norton**
Representative of the District of
   Columbia

**Johnny Olszewski**
Representative of Maryland

**Jimmy Panetta**
Representative of California

**Nancy Pelosi**
Representative of California

**Scott H. Peters**
Representative of California

**Brittany Pettersen**
Representative of Colorado

**Chellie Pingree**
Representative of Maine

**Stacey E. Plaskett**
Representative of the Virgin Islands

**Mark Pocan**
Representative of Wisconsin

**Delia C. Ramirez**
Representative of Illinois

3

**Luz M. Rivas**
Representative of California

**Deborah K. Ross**
Representative of North Carolina

**Linda T. Sánchez**
Representative of California

**Mary Gay Scanlon**
Representative of Pennsylvania

**Bradley Scott Schneider**
Representative of Illinois

**Kim Schrier**
Representative of Washington

**Terri A. Sewell**
Representative of Alabama

**Greg Stanton**
Representative of Arizona

**Thomas R. Suozzi**
Representative of New York

**Shri Thanedar**
Representative of Michigan

**Mike Thompson**
Representative of California

**Norma J. Torres**
Representative of California

**Lauren Underwood**
Representative of Illinois

**Juan Vargas**
Representative of California

**James Walkinshaw**
Representative of Virginia

**Maxine Waters**
Representative of California

**George T. Whitesides**
Representative of California

4