**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

PRESIDENT DONALD J. TRUMP, *et al.*,

    *Plaintiffs*,

v.                            Case No. 26-cv-20609-WILLIAMS/LETT

INTERNAL REVENUE SERVICE, *et al.*,

    *Defendants*.

**MOTION FOR RELIEF FROM JUDGMENT OR ORDER, OR, IN THE
ALTERNATIVE, FOR LEAVE TO APPEAR AS *AMICI CURIAE* BY THIRTY-FIVE
FORMER FEDERAL JUDGES**

## **TABLE OF CONTENTS**

I.     INTEREST OF MOVANTS/*AMICI CURIAE* ........................................................................ 1

II.    INTRODUCTION ............................................................................................................ 2

III.   ARGUMENT................................................................................................................... 5

      A.    A Voluntary Dismissal with Prejudice Is Subject to Rule 60................................ 5

      B.    Non-Parties May Move Under Rule 60. ................................................................. 6

      C.    The Court *Sua Sponte* May Investigate Whether a Fraud Has Been Perpetrated on the Court. ...................................................................................... 8

      D.    The Parties' Actions Constituted a Fraud on the Court that Merits Voiding the Dismissal Under Rule 60(d)................................................................................. 9

      E.    In the Alternative, the Court Should Void the Dismissal Under Rule 60(b). ........ 12

      F.    Reopening the Case Would Preserve the Status Quo............................................ 12

IV.   CONCLUSION.............................................................................................................. 13

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affordable Aerial Photography, Inc. v. Ditommaso*,
  No. 22-80030-CV, 2023 WL 11796994 (S.D. Fla. Nov. 9, 2023) ...........................................9

*BLOM Bank SAL v. Honickman*,
  605 U.S. 204 (2025)..............................................................................................................12

*Booker v. Dugger*,
  825 F.2d 281 (11th Cir. 1987) ..............................................................................................10

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)..................................................................................................................8

*Citibank, N.A. v. Data Lease Fin. Corp.*,
  904 F.2d 1498 (11th Cir. 1990) ..............................................................................................5

*Fort Knox Music Inc. v. Baptiste*,
  257 F.3d 108 (2d Cir. 2001)................................................................................................1, 9

*Griffin v. IRS*,
  No. 22-cv-24023, ECF No. 58 (S.D. Fla. Nov. 27, 2023) .....................................................11

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*,
  322 U.S. 238 (1944)................................................................................................................8

*Kem Mfg. Corp. v. Wilder*,
  817 F.2d 1517 (11th Cir. 1987) .....................................................................................1, 6, 7

*Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*,
  168 F.3d 347 (9th Cir. 1999) ..................................................................................................9

*Kinnear-Weed Corp. v. Humble Oil & Ref. Co.*,
  441 F.2d 631 (5th Cir. 1971) ................................................................................................10

*In re Levander*,
  180 F.3d 1114 (9th Cir. 1999) ................................................................................................9

*McDowell v. Celebrezze*,
  310 F.2d 43 (5th Cir. 1962) ....................................................................................................8

*Randall v. Merrill Lynch*,
  820 F.2d 1317 (D.C. Cir. 1987)..............................................................................................5

*Safe Harbor Int'l, LLC v. IRS*,
  No. 25-cv-139, ECF No. 31 (D. Md. July 23, 2025) ...............................................11

*Schmier v. McDonald's LLC*,
  569 F.3d 1240 (10th Cir. 2009) ........................................................................5

*Silverstein v. Silverstein*,
  No. 07-cv-4057, 2025 WL 3003328 (E.D. La. Oct. 27, 2025) ..................................7

*Southerland v. Irons*,
  628 F.2d 978 (6th Cir. 1980) ............................................................................7

*United States v. Hudson*,
  7 Cranch 32 (1812) .........................................................................................8

*United States v. Jacobs*,
  298 F.2d 469 (4th Cir. 1961) ............................................................................9

*Universal Oil Products Co. v. Root Refining Co.*,
  328 U.S. 575 (1946) ........................................................................................8

*Waetzig v. Halliburton Energy Servs., Inc.*,
  604 U.S. 305 (2025) ........................................................................................6

*Warfield v. AlliedSignal TBS Holdings, Inc.*,
  267 F.3d 538 (6th Cir. 2001) ............................................................................5

*Wellington v. MTGLQ Investors, LP*,
  No. 23-2101, 2024 WL 1573948 (10th Cir. Apr. 11, 2024) .....................................7

*Whitmore v. Symons Int'l Grp., Inc.*,
  No. 1:09-cv-391, 2012 WL 1098631 (S.D. Ind. Mar. 30, 2012) ..............................11

**Statutes**

28 U.S.C. § 1655................................................................................................6

28 U.S.C. § 2414..............................................................................................4, 13

31 U.S.C. § 1304..............................................................................................4, 13

**Rules**

Fed. R. Civ. P. 60................................................................................... *passim*

Fed. R. Civ. P. 60(b) .............................................................................. *passim*

Fed. R. Civ. P. 60(d) .............................................................................. *passim*

iii

**Regulations**

31 C.F.R. § 256.1(a)(1) .................................................................................................12

31 C.F.R. § 256.1(b) .....................................................................................................13

**Other Authorities**

11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §
     2870 (3d ed.) .............................................................................................1, 4, 8, 9

Federal Appropriations Law 14-35 (3d ed. 2008) ........................................................13

## I.     INTEREST OF MOVANTS/*AMICI CURIAE*

Movants are 35 former federal judges. A full list of Movants is listed in the attached Appendix. Movants are filing this motion because they have dedicated their professional lives to the administration of justice. The purported "settlement" that the parties never placed before this Court raises profound questions about the parties' candor toward the Court and manipulation of the judicial system, which threatens to undermine confidence in the administration of justice. As former judges, Movants have an interest in bringing to the Court's attention these concerns and the availability of relief under Rule 60 of the Federal Rules of Civil Procedure, which allows the Court to set aside the judgment and reopen the case.

Movants file directly under Rule 60 and in the alternative request leave to file as *amici curiae*. With respect to the former, the Eleventh Circuit has allowed that in "extraordinary circumstances," a non-party may raise a challenge of fraud on the court through Rule 60 even when the non-party's interests are not directly affected by the judgment. *See Kem Mfg. Corp. v. Wilder*, 817 F.2d 1517, 1521 (11th Cir. 1987). As explained below, the circumstances presented here are plainly extraordinary.

Alternatively, Movants seek leave to file as *amici*. The Court indisputably has the authority under Rule 60 to reopen a proceeding *sua sponte*. *See, e.g.*, *Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108, 111 (2d Cir. 2001); 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2870 (3d ed.). Should the Court take that route, Movants seek permission to file this brief as *amici* in the reopened matter. In either case, Movants ask the Court to exercise its authority under Rule 60 to set aside the judgment in this lawsuit, allowing the Court to resume its inquiry into whether there is an actual underlying case or controversy, or whether, to the contrary, this "case" that the parties purport to have "settled" is itself a fraud on the Court.

1

## II.     INTRODUCTION

On May 18, 2026, this Court dismissed this action with prejudice (ECF No. 62) in response to Plaintiffs' Notice of Voluntary Dismissal with Prejudice (the "Notice," ECF No. 52), filed earlier that day. The Court expressly noted in its Order dismissing the case that "the Notice does not reference any settlement or include a stipulation of settlement," and thus "there is no settlement of record."[1] The Court further noted that Defendants "neither submitted any settlement documents nor filed any documents ensuring that settlement was appropriate where there was an outstanding question as to whether an actual case or controversy existed."[2]

The Court was deceived. Despite Plaintiffs not having mentioned any settlement in their Notice, the Department of Justice ("DOJ") publicly announced a "settlement" of this action shortly after Plaintiffs filed their dismissal. That "settlement" commandeers the contrived sum of $1.776 billion from the United States Treasury, to be handed out to recipients chosen by a commission effectively controlled by the President.[3] The DOJ is calling this the "Anti-Weaponization Fund." The day after the "settlement" containing the Anti-Weaponization Fund was announced, the DOJ announced that it had subsequently agreed to release "any and all claims . . . whether presently known or unknown, that—as of the Effective Date of the Settlement Agreement—have been or could have been asserted by [the United States] against any of the Plaintiffs or related or affiliated individuals . . . or parties . . . by reason of, with respect to, in connection with, or which arise out of . . . any matters currently pending or that could be pending . . . before Defendants or other agencies or departments."[4] The plain language of this extremely broad provision sweeps in Internal Revenue Service ("IRS") audits of Plaintiffs' tax returns and all other claims the United States

---

[1] ECF No. 62 at 2.
[2] *Id.* at 2-3.
[3] *See* Ex. A, Settlement Agreement.
[4] Ex. B, Addendum to Settlement Agreement, at ¶ C.

might have against Plaintiffs—extraordinary benefits for which no consideration was provided to the government.[5]

The parties to this case are using this lawsuit as the legal justification for these actions. This is not speculation; the parties themselves have proclaimed it, repeatedly. For starters, the DOJ implemented all of the actions described above via a document expressly titled "Settlement Agreement," captioned with this case's caption, plus a three-paragraph addendum that references that "Settlement Agreement" in its first paragraph and in its third paragraph purports to "forever bar[] and preclude[]" the United States from pursuing claims that could have been asserted "by Defendants against any of the Plaintiffs" in this case.[6] The "Settlement Agreement" was signed by Associate Attorney General Stanley Woodward the same day Plaintiffs filed their Notice; in fact, Plaintiffs' filing of the Notice was expressly required by the "Settlement Agreement."[7] The addendum granting the extraordinarily broad releases to the President and his family and businesses was signed by Acting Attorney General Todd Blanche the next day, May 19.[8] Yet none of the parties filed either of these documents with the Court. In addition, shortly after announcing

---

[5] *Id.*

[6] *See* Ex. A, Settlement Agreement; Ex. B, Addendum to Settlement Agreement.

[7] Ex. A, Settlement Agreement, at 5.

[8] *See* Ex. B, Addendum to Settlement Agreement. On its face, the creation of the Fund and the purported release violate established DOJ policies in many ways. The Justice Manual 4-3.400 requires that any compromise entered by the DOJ be "specifically limited to the immediate subject matter of the claim which was in fact compromised. In no case should a general release be issued to the debtor . . . ." It further provides that substantial settlements of claims under the Federal Tort Claims Act ("FTCA"), like the one here, "must receive explicit and advance approval through the Civil Division of the Department of Justice . . . . Requests are expected to demonstrate a thorough, thoughtful exploration of any issues relating to jurisdiction, liability, and damages, with the ultimate goal of ensuring that a proposed settlement is in the best interests of the United States." *Id.* 4-3.432; *see also* Ex. A, Settlement Agreement, at 1-2 (releasing President Trump's pending FTCA claims). The settlement is not limited to the claims in this lawsuit; the Department has issued a purported general release; and there is every reason to believe that the "thoughtful exploration" mandated by the Justice Manual has not occurred.

3

the "settlement," the Acting Attorney General issued an order creating the "Anti-Weaponization Fund."[9] That order—which references the "Settlement Agreement" in this case—explicitly identifies the Judgment Fund statute, 31 U.S.C. § 1304, under which Congress has authorized appropriations for payments of settlements against the United States, and 28 U.S.C. § 2414, which authorizes payments of "final" judgments against the United States including compromise settlements and "imminent" claims, as the statutory bases for the creation of the Anti-Weaponization Fund.[10] Payments purportedly made pursuant to these statutes in the absence of a genuine case or controversy are not authorized.

Movants submit that this "settlement" is a product of collusion and is itself a fraud on the Court. But the Court need not decide that ultimate issue now. At this juncture, Movants request only that the Court exercise its powers under Rule 60 to set aside its order ending the case based upon Plaintiffs' voluntary dismissal. That will allow the Court to commence an inquiry into whether the Court was deceived, including with respect to the existence of an underlying case or controversy and any purported arms-length negotiations undertaken to resolve it. As set forth below, this Court has the power under Rule 60 to determine whether there has been a "corruption of the judicial process itself," 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2870 (3d ed.), and may set aside a judgment and reopen a case under Rule 60(d)(3), as well as other subsections of Rule 60, whether by this motion or *sua sponte*. Doing so will allow judicial review of the extraordinary—and historically unprecedented—circumstances presented by this litigation and by the collusive "settlement" that invokes this litigation as the legal justification for its terms.

---

[9] *See* Ex. C, Anti-Weaponization Fund Order.
[10] *Id.* at ¶ G.

### III.    ARGUMENT

This Court may review the Notice and order of dismissal under Rule 60 and void them on multiple grounds. As an initial matter, a voluntary dismissal with prejudice is a final act subject to Rule 60 review. Non-parties, such as Movants, may seek Rule 60(d) relief, and even if they could not, this Court can issue relief under Rule 60 *sua sponte*. Regardless of the Court's path to review under Rule 60(d), the parties' hurried dismissal of this case, carried out to enact the unprecedented "settlement" before the Court could answer the critical "outstanding question as to whether an actual case or controversy existed,"[11] itself constitutes a fraud on the Court and on this proceeding, and thus should be set aside. Finally, even if the Court declines to set aside the dismissal as a fraud on the Court under Rule 60(d), it may do so *sua sponte* under Rule 60(b).

### A.    A Voluntary Dismissal with Prejudice Is Subject to Rule 60.

Plaintiffs' voluntary dismissal with prejudice under Rule 41(a)(1)(A)(i) is subject to review under Rule 60. Rule 60 provides for review of a "final judgment, order, or proceeding." Fed. R. Civ. P. 60(b); *see also* Fed. R. Civ. P. 60(d). A dismissal with prejudice "at any stage of a judicial proceeding, normally constitutes a final judgment on the merits which bars a later suit on the same cause of action." *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501-02 (11th Cir. 1990) (citation and internal quotation marks omitted). Thus, because they are akin to final judgments, courts have held that voluntary dismissals with prejudice are reviewable under Rule 60. *See, e.g.*, *Schmier v. McDonald's LLC*, 569 F.3d 1240, 1242 (10th Cir. 2009) ("A voluntary dismissal with prejudice operates as a final adjudication on the merits . . . and is thus a final judgment[.]" (cleaned up)); *Warfield v. AlliedSignal TBS Holdings, Inc.*, 267 F.3d 538, 541-42 (6th Cir. 2001) (reviewing a voluntary dismissal with prejudice under Rule 60); *Randall v. Merrill Lynch*, 820 F.2d 1317,

---

[11] ECF No. 62 at 3.

1320 (D.C. Cir. 1987) ("Rule 60(b) allows a court to relieve a party from a 'final judgment' for any reason justifying relief. Because the voluntary dismissal in this case operated as an adjudication on the merits, it was a 'final judgment' under Rule 60(b).").

Rule 60 review is still available even if—as Plaintiffs noted in the Notice—a Rule 41(a)(1) voluntary dismissal purportedly deprives the court of jurisdiction over the case. *See* ECF No. 52 at 1-2 (collecting cases). The Supreme Court reached that very conclusion last year in *Waetzig v. Halliburton Energy Servs., Inc.*, when it unanimously held that a voluntary dismissal (there, *without* prejudice) under Rule 41(a)(1)(A)(i)—the precise provision invoked by Plaintiffs in their Notice—was a "final judgment, order, or proceeding" subject to review under Rule 60. 604 U.S. 305, 307, 308 (2025).

**B.      Non-Parties May Move Under Rule 60.**

Rule 60(d) is titled "Other Powers to Grant Relief" and provides that Rule 60 "does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding; (2) grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or (3) set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d).

The Eleventh Circuit has long recognized that non-parties can bring a motion under Rule 60 based on fraud on the court, and further recognized that in "extraordinary circumstances," the non-party need not prove his or her "interests are directly affected by the final judgment[]" to do so. *See Kem*, 817 F.2d at 1521. *Kem* was decided before the 2007 amendments to Rule 60, and so addressed then-Rule 60(b), which at the time was where the relevant language—which provided that Rule 60 "does not limit the power of a court to entertain an independent action . . . to set aside a judgment for fraud upon the court"—was located. That language is now located in Rule 60(d),[12]

---

[12] This language was moved into subsection (d) as part of the 2007 amendments, which were "intended to be stylistic only." Fed. R. Civ. P. 60, advisory committee's note (2007).

but *Kem*'s holding regarding non-party standing to bring Rule 60 motions based on fraud on the court remains good law.

The Eleventh Circuit is not alone. In another pre-2007-amendments case, the Sixth Circuit found in *Southerland v. Irons*, 628 F.2d 978, 980 (6th Cir. 1980), that "Rule 60(b) by its own terms does not limit the court's power to set aside a judgment induced by fraud. Furthermore, a claim of fraud on the court may be raised by a non-party." Post-2007, the Tenth Circuit found that "an 'independent action' under Rule 60[d] may be brought by one who was not a party to the original action." *Wellington v. MTGLQ Investors, LP*, No. 23-2101, 2024 WL 1573948, at *2 (10th Cir. Apr. 11, 2024) (citation omitted) (nonprecedential); *see also Silverstein v. Silverstein*, No. 07-cv-4057, 2025 WL 3003328, at *3 (E.D. La. Oct. 27, 2025) (finding that "[c]ourts have interpreted Rule 60(d)(3) to mean that a claim of fraud on the court may be raised by a non-party" (citation omitted)).

This case is an "extraordinary circumstance[]" meriting non-party relief under *Kem.* As set forth above, the parties here dismissed this case before the Court could complete its inquiry into whether there was an actual case or controversy, and then cited their "settlement" of this case as the legal justification for looting the federal treasury of $1.776 billion dollars and purporting to release all possible federal claims against President Trump, his family, and his businesses. In other words, the parties used the proceedings before this Court as a legal pretext while trying to deprive this Court of the opportunity to determine whether this was a real case or controversy in the first place. To insist that only a party may challenge such a scheme under Rule 60 would be, in effect, to reward and immunize such collusion from judicial scrutiny, since the parties to such a scheme will obviously never challenge the fraud. That is not the law.

C.     **The Court *Sua Sponte* May Investigate Whether a Fraud Has Been Perpetrated on the Court.**

Even if the Court declines to entertain a non-party motion under Rule 60, it has the authority to issue *sua sponte* relief where, as here, the parties have effectuated a fraud upon the Court. Rule 60(d) specifically states that it does not "limit a court's power to . . . set aside a judgment for fraud on the court," Fed. R. Civ. P. 60(d)(3), and the Supreme Court has long recognized that courts have certain inherent powers that cannot be displaced by statute or the Rules of Civil Procedure. *See, e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). These inherent powers flow from "the nature of [the] institution" and "cannot be dispensed with . . . because they are necessary to the exercise of all others[.]" *United States v. Hudson*, 7 Cranch 32, 34 (1812). The court's inherent powers include, as relevant here, the power to vacate a judgment upon proof that it was procured by fraud, *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944), or conduct an investigation to determine whether a fraud upon the court has been committed, *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946)  ("The inherent power of a federal court to investigate whether a judgment was obtained by fraud, is beyond question."). Thus, the Court has the authority to *sua sponte* invalidate the voluntary dismissal. As Wright and Miller explains:

> Although a party may bring the matter to the attention of the court, this is not essential, and the court may proceed on its own motion. The fact that there are no adversary parties on the claim of fraud on the court does not deprive the court of jurisdiction. Since the original judgment, by hypothesis, must have been given in a "case or controversy," the court continues to have ancillary jurisdiction to determine whether it has been the victim of a fraud.

11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2870 (3d ed.) (citations omitted).

As courts around the country have repeatedly held, the Court also has authority to void the voluntary dismissal *sua sponte* under Rule 60(b). *See McDowell v. Celebrezze*, 310 F.2d 43, 44

8

(5th Cir. 1962); *see also, e.g.*, *Fort Knox Music*, 257 F.3d at 111; *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 350-51 (9th Cir. 1999); *United States v. Jacobs*, 298 F.2d 469, 472 (4th Cir. 1961). One such court explained that, even though Rule 60(b) states that it must be initiated "on motion," it does not specify that such motion must be made by a party. *Kingvision*, 168 F.3d at 351. And consistent with the court's inherent powers, "[t]he rule need not necessarily be read as depriving the court of the power to act in the interest of justice in an unusual case in which its attention has been directed to the necessity for relief by means other than a motion." *Jacobs*, 298 F.2d at 472. Thus, this Court can, and should, entertain relief under Rule 60(b) *sua sponte*.

**D.    The Parties' Actions Constituted a Fraud on the Court that Merits Voiding the Dismissal Under Rule 60(d).**

A court may set aside a judgment under Rule 60(d)(3) for a fraud on the court that "does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *Affordable Aerial Photography, Inc. v. Ditommaso*, No. 22-80030-CV, 2023 WL 11796994, at *3 (S.D. Fla. Nov. 9, 2023) (quoting *Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1551 (11th Cir. 1985)); *see also In re Levander*, 180 F.3d 1114, 1119 (9th Cir. 1999) ("To constitute fraud on the court, the alleged misconduct must harm the integrity of the judicial process." (internal quotation and alteration omitted)); 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2870 (3d ed.) ("The cases in which it has been found that there was, or might have been, a 'fraud upon the court,' for the most part, have been cases in which there was the most egregious conduct involving a corruption of the judicial process itself." (internal quotation marks omitted)).

9

Fraud on the court is established by clear and convincing evidence. *See, e.g., Booker v. Dugger*, 825 F.2d 281, 283 (11th Cir. 1987); *Kinnear-Weed Corp. v. Humble Oil & Ref. Co.,* 441 F.2d 631, 636 (5th Cir. 1971). Here, it is undisputed that this Court did not have the Settlement Agreement in front of it at the time Plaintiffs filed the Notice. The Settlement Agreement establishing the Anti-Weaponization Fund was not before the Court and the broad purported release of Plaintiffs' known and unknown liabilities was neither announced nor publicly released until after the case had been dismissed. It is also undisputed that Plaintiffs filed the Notice before the Court received briefing it had ordered regarding whether an actual case or controversy existed. In such circumstances, setting aside the Notice and reopening the case in order to determine whether an actual case or controversy existed is necessary to ensure that the parties have not corrupted the judicial process, and to prevent federal courts from providing cover to a collusive settlement. Indeed, the corruption of the judicial process is exactly what happened here. The parties have used this lawsuit—which was never an adversarial proceeding over which the Court even had jurisdiction—as a means to allow a "commission" controlled by the President to dole out $1.776 billion in taxpayer dollars without constitutional or congressional authority to do so, and to confer unlawful private benefits to the President and his family by purportedly prohibiting the United States from prosecuting any and all claims against them. And the parties have plainly tried to shield this conduct from necessary judicial scrutiny by short-circuiting this Court's inquiry into whether the lawsuit is in fact an actual case or controversy by filing the Rule 41(a)(1) Notice before they announced the "settlement"—clearly in hopes of preventing the Court from ever completing that inquiry, which, if it comes out against the parties, will undo their collusive "settlement."

The sequence of events that led to Plaintiffs' voluntary dismissal with prejudice makes this strategy self-evident. Shortly after the Court requested briefing on whether the Court had subject-

10

matter jurisdiction over this functionally non-adversarial proceeding, the government entered into a "settlement agreement" with Plaintiffs that required Plaintiffs to immediately dismiss this case (thus terminating the Court's "case or controversy" inquiry), and that purported to bind the United States to a stunningly broad release of potential claims and to pay billions of dollars before even trying to defend against Plaintiffs' claims. *See supra*; ECF No. 45 at 8–14. That the government has actively opposed nearly identical claims brought by different plaintiffs against the IRS only emphasizes the fraudulent nature of the "settlement" reached here. *See, e.g.*, *Safe Harbor Int'l, LLC v. IRS*, No. 25-cv-139, ECF No. 31, at 1 (D. Md. July 23, 2025) (government's motion to dismiss claim "for the unlawful inspection and disclosure of [plaintiffs'] return information"); *Griffin v. IRS*, No. 22-cv-24023, ECF No. 58 (S.D. Fla. Nov. 27, 2023) (government's motion to dismiss claim relating to disclosure of "return information" on ground that the discloser, Charles Littlejohn, was a contractor and thus "not an officer or employee of the IRS"). And the fact that the government never asserted even basic defenses, including that the claims were clearly untimely or that the alleged discloser here (Mr. Littlejohn, the same contractor as in *Griffin*) was not a government employee, only strengthens the conclusion that the litigation was collusive from the start and that its goal was to obtain legal authority for the purported "settlements."

Accordingly, because "[t]he parties' 'collusive' activity perpetrated a fraud on the judicial machinery itself, by fostering an appearance that the litigation involved adverse parties, when, in fact, it did not," the Court should void its prior dismissal and reopen the case to assess in due course whether a fraud occurred. *Whitmore v. Symons Int'l Grp., Inc.*, No. 1:09-cv-391, 2012 WL 1098631, at *9 (S.D. Ind. Mar. 30, 2012) (granting intervenor's Rule 60(d)(3) motion to set aside a judgment collusively procured by the parties and to reopen the case).

**E.      In the Alternative, the Court Should Void the Dismissal Under Rule 60(b).**

If the Court is not inclined to void its prior dismissal under Rule 60(d), it should do so *sua sponte* under Rule 60(b), on multiple grounds. Both of the following provides ample basis for the Court to reopen this case.

*First*, Rule 60(b)(3) allows the Court to void a "final judgment, order, or proceeding" for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." As discussed above, the parties' collusive dismissal and clandestine out-of-court settlement constitute a clear fraud on the court.

*Second*, Rule 60(b)(6), a catch-all provision, allows the Court to void its dismissal for "any other reason that justifies relief." While this provision only applies in "extraordinary circumstances," *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 212–13 (2025), certainly the use of a collusive lawsuit to reach a settlement that includes the provision of billions of dollars in Treasury funds and grants the President and his family a release from any and all claims by the United States qualifies as such an "extraordinary circumstance." The unprecedentedly fraudulent scheme here more than warrants voiding the dismissal.

**F.      Reopening the Case Would Preserve the Status Quo.**

Should the Court exercise its authority to reopen the case and hold additional proceedings, it would effectively preserve the status quo. Importantly, the Judgment Fund is only available for "final" settlements. 31 C.F.R. § 256.1(a)(1). A settlement premised on a dismissal that has been voided is not "final." Similarly, voiding the Notice and reopening the case would allow the Court to continue its jurisdictional inquiry. And, if the Court ultimately concludes that it did not have jurisdiction and dismissed the case on those grounds, such a dismissal would deprive the parties of their claimed justification for the settlement.

12

To be clear, the parties' settlement was not, and never will be, legally justified. That is because the Acting Attorney General's Order creating the Anti-Weaponization Fund identified the Judgment Fund, 31 U.S.C. § 1304, and the Attorney General's authority to enter "compromise settlements" under 28 U.S.C. § 2414, as the basis for the creation of the Anti-Weaponization Fund. Both of those authorities require the existence of a legitimate litigation and not, as here, one that is collusive, feigned, or fraudulent.

The DOJ is only allowed to enter "compromise settlements of claims"—such as this one— "for defense of imminent litigation or suits against the United States, or against its agencies or officials upon obligations or liabilities of the United States." 28 U.S.C. § 2414. And a feigned or collusive suit is not active or "imminent" litigation against the United States pursuant to which the DOJ is authorized to access the Judgment Fund and § 2414. *See* U.S. Gov't Accountability Off., GAO-08-978SP, 3 *Principles of Federal Appropriations Law* 14-35 (3d ed. 2008) (requiring that "[t]he agency must be confronted with a genuine disagreement or impasse" and "[t]here must be a legitimate dispute over either liability or amount"); 31 C.F.R. § 256.1(b) ("Fiscal Service requires that requests for payment identify the statute that forms the basis of the underlying claim. The award or settlement must comply with the statutory and regulatory requirements that authorize the award or settlement.").

But the Court need not decide those ultimate issues yet. As long as the Court appropriately exercises its authority to reopen the case, it would preserve the status quo and ensure that the "settlement" provisions cannot be carried out while the Court completes the inquiry that was derailed by the voluntary dismissal.

## IV.    CONCLUSION

For the foregoing reasons, the Court should set aside the Notice and order of dismissal and reopen the case for further proceedings.

13

**LOCAL RULE 7.1(a)(3) CERTIFICATION**

Counsel for Movants have made reasonable efforts to confer with all parties given the circumstances. In light of the extraordinary circumstances of this case, any conference would be futile. Nevertheless, counsel for Movants still provided the parties with notice, and sought their position, by emailing Plaintiffs' counsel and the Chief of the Civil Division for the United States Attorney's Office for the Southern District of Florida shortly before filing this motion on May 27, 2026.

14

May 27, 2026

Respectfully submitted,

/s/ Neal S. Manne

Neal S. Manne*
Justin A. Nelson*
Stephen Shackelford, Jr.*
Davida Brook*
Daniel J. Shih*
Zach Savage*
Glenn Bridgman*
Jillian Hewitt*
Nick Carullo*
Russell Rennie*
**SUSMAN GODFREY L.L.P.^**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: 1-713-653-7802
Email: jnelson@susmangodfrey.com

Matthew J. Platkin*
Angela Cai*
Ravi Ramanathan*
Aaron E. Haier*
Conor Bradley*
**PLATKIN LLP**
413 Washington Ave.
Unit 174
Belleville, NJ 07109
Phone: (973) 561-1951
Email: mplatkin@platkinllp.com

*Counsel for Movants / Amici Curiae Judge Michael Luttig (Ret.) and Judge Nancy Gertner (Ret.) only*

Norman L. Eisen*
David W. Ogden*
Stephen A. Jonas*
**DEMOCRACY DEFENDERS ACTION**
600 Pennsylvania Ave. SE #15180
Washington, D.C. 20003
(202) 594-9958
Email: norman@democracydefenders.org

15

**RIVERO MESTRE LLP**
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: dtenjido@riveromestre.com

By: /s/ Andrés Rivero

Andrés Rivero
Florida Bar No. 613819
Daniela Tenjido-Eljaiek
Florida Bar No. 1031531

*Counsel for Movants / Amici Curiae 35
Former Federal Judges*

*\*Pro hac vice motions forthcoming*

*^primary office listed*

16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of May 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which automatically serves all counsel of record for the parties who have appeared.

Pursuant to Southern District of Florida Local Rule 5.2(a), I further certify that I caused the foregoing to be served by certified mail, return receipt requested, on the following governmental entities who are defendants in this action or act as an entity which accepts service on behalf of the defendants in this action: (1) Internal Revenue Service, 1111 Constitution Avenue, NW, Washington, D.C. 20224; (2) United States Office of the Attorney General, 950 Pennsylvania Avenue, NW, Washington, D.C. 20530; and (3) Southern District of Florida United States Attorney's Office, 99 N.E. 4th Street, Miami, FL 33131. Service to these entities was made via mail pursuant to Federal Rule of Civil Procedure 5(b)(2)(C).

/s/ *Andres Rivero*
Andres Rivero

17

**APPENDIX: LIST OF MOVANTS / *AMICI CURIAE***

Judge Michael Luttig, U.S. Circuit Judge, U.S. Court of Appeals for the Fourth Circuit (Ret.)

Judge Nancy Gertner, U.S. District Judge, District of Massachusetts (Ret.)

Chief Judge John W. Bissell, U.S. District Judge, District of New Jersey (Ret.)

Judge Geraldine Soat Brown, U.S. Magistrate Judge, Northern District of Illinois (Ret.)

Chief Judge Rubén Castillo, U.S. District Judge, Northern District of Illinois (Ret.)

Chief Judge U.W. Clemon, U.S. District Judge, Northern District of Alabama (Ret.)

Judge Susan E. Cox, U.S. Magistrate Judge, Northern District of Illinois (Ret.)

Judge Morton Denlow, U.S. Magistrate Judge, Northern District of Illinois (Ret.)

Judge David K. Duncan, U.S. Magistrate Judge, District of Arizona (Ret.)

Chief Judge Sheila Finnegan, U.S. Magistrate Judge, Northern District of Illinois (Ret.)

Judge Jeremy Fogel, U.S. District Judge, Northern District of California (Ret.)

Judge James C. Francis IV, U.S. Magistrate Judge, Southern District of New York (Ret.)

Judge Steven M. Gold, U.S. Magistrate Judge, Eastern District of New York (Ret.)

Judge A. Benjamin Goldgar, U.S. Bankruptcy Judge, Northern District of Illinois (Ret.)

Judge Paul W. Grimm, U.S. District Judge, District of Maryland (Ret.)

Chief Judge Robert Harlan Henry, U.S. Circuit Judge, U.S. Court of Appeals for the Tenth Circuit (Ret.)

Judge Thelton Henderson, U.S. District Judge, Northern District of California (Ret.)

Judge Richard J. Holwell, U.S. District Judge, Southern District of New York (Ret.)

Judge Ellen Segal Huvelle, U.S. District Judge, District of Columbia (Ret.)

Judge John E. Jones III, U.S. District Judge, Middle District of Pennsylvania (Ret.)

Judge Barbara M. G. Lynn, U.S. District Judge, Northern District of Texas (Ret.)

Judge Roanne L. Mann, U.S. Magistrate Judge, Eastern District of New York (Ret.)

1

Judge A. Howard Matz, U.S. District Judge, Central District of California (Ret.)

Chief Judge Paul Michel, U.S. Circuit Judge, U.S. Court of Appeals for the Federal Circuit (Ret.)

Judge Kathleen O'Malley, U.S. Circuit Judge, U.S. Court of Appeals for the Federal Circuit (Ret.)

Judge Brian Owsley, U.S. Magistrate Judge, Southern District of Texas (Ret.)

Judge Philip M. Pro, U.S. District Judge, District of Nevada (Ret.)

Judge Victoria A. Roberts, U.S. District Judge, Eastern District of Michigan (Ret.)

Judge Shira A. Scheindlin, U.S. District Judge, Southern District of New York (Ret.)

Judge Fern M. Smith, U.S. District Judge, Northern District of California (Ret.)

Judge John D. Tinder, U.S. Circuit Judge, U.S. Court of Appeals for the Seventh Circuit (Ret.)

Judge Ursula Ungaro, U.S. District Judge, Southern District of Florida (Ret.)

Judge T. John Ward, U.S. District Judge, Eastern District of Texas (Ret.)

Judge Mark L. Wolf, U.S. District Judge, District of Massachusetts (Ret.)