**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.:** 1:26-cv-20609-WILLIAMS/LETT

PRESIDENT DONALD J. TRUMP, et al.,

      Plaintiffs,

v.

INTERNAL REVENUE SERVICE, et al.,

      Defendants,

_____/

**MOTION FOR LEAVE TO FILE BRIEF AMICUS CURIAE OF COREY J. BIAZZO, ESQ. IN SUPPORT OF REOPENING AND LIMITED REVIEW OF SETTLEMENT AUTHORITY**

Corey J. Biazzo, Esq. ("Amicus"), a member of the Bar of this Court and nonparty to this action, respectfully moves for leave to file the proposed Brief Amicus Curiae attached as Exhibit A in support of the Court's exercise of authority to reopen this matter for limited review of the statutory and appropriations-law authority for the purported settlement and Anti-Weaponization Fund. In support, Amicus states as follows:

## I.    INTRODUCTION

1. This case presents substantial questions concerning the use of a voluntary dismissal and purported settlement as the legal predicate for a $1.776 billion Anti-Weaponization Fund funded through the Judgment Fund.

2. Existing amici and movants have already addressed Article III adversity, separation of powers, professional conflicts, the Domestic Emoluments Clause, alleged defects in Plaintiffs' claims, and Rule 60 relief. Amicus does not seek to repeat those arguments.

3. Amicus seeks leave to file a concise brief addressing a distinct statutory and appropriations-law issue: whether the Judgment Fund, 31 U.S.C. § 1304, 28 U.S.C. § 2414, the Purpose Statute, the advance-payment statute, public-money custody rules, and related fiscal statutes permit the Executive Branch to use a settlement of this case to capitalize a future-claimant compensation program whose corpus expressly does not represent the value of Plaintiffs' current claims.

1

4. The proposed brief is timely. The Court has ordered Plaintiffs to respond to serious allegations concerning collusion, adverseness, deception, and fraud on the Court by June 12, 2026. Amicus files now so the Court and parties can consider the statutory-authority issue before that response and any reply are submitted.

5. The proposed brief does not seek to introduce evidence, expand the record improperly, obtain party status, or participate in discovery. It relies on publicly filed or attached settlement materials, statutes, regulations, and legal authorities relevant to the Court's existing inquiry.

## II.   AMICUS'S INTEREST

6. Corey J. Biazzo is a civil litigation attorney, constitutional scholar, United States Navy veteran, and founder of Biazzo Law, PLLC. Through Biazzo Law and its Government Oversight Program, Amicus works on public-facing constitutional accountability, government transparency, public fiscal accountability, and civic legal education.

7. Amicus has briefed courts on matters involving separation of powers, federalism, structural constitutional safeguards, and enforceable constitutional limits. Amicus has a professional and civic interest in ensuring that federal spending occurs only pursuant to valid congressional appropriations.

8. Amicus does not represent any party in this action and seeks to assist the Court with a narrow issue that has not been fully developed in the existing amicus filings: the fiscal-law limits on using a compromise settlement as a vehicle to create and capitalize a future-claimant compensation fund.

## III.   LEGAL STANDARD

9. District courts possess inherent authority to allow amicus participation where doing so may assist the Court. *See In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1249 n.34 (11th Cir. 2006); *Resort Timeshare Resales, Inc. v. Stuart*, 764 F. Supp. 1495, 1500-01 (S.D. Fla. 1991).

10. The decision whether to allow amicus participation rests within the Court's discretion. Courts commonly consider whether the proposed brief is timely, useful, non-duplicative, and unlikely to prejudice the parties or disrupt the schedule.

## IV.   ARGUMENT

11. The proposed brief will assist the Court because it addresses a statutory and appropriations-law issue that bears directly on whether the purported settlement may be treated as a lawful predicate for drawing funds from the Treasury.

12. The proposed brief is not duplicative. CREW and Public Citizen addressed separation-of-powers concerns, conflicts, and the Domestic Emoluments Clause. Former government officials and public interest organizations addressed the legal deficiencies in Plaintiffs' statutory claims. Court-appointed amici addressed Article III adversity. The thirty-five former federal judges addressed Rule 60 and fraud-on-the-court concerns. Amicus addresses a different question: whether, even apart from those issues, the Executive Branch has statutory authority to capitalize the Anti-Weaponization Fund through the Judgment Fund and related settlement statutes.

13. The proposed brief is concise and limited. It does not ask the Court to decide every downstream challenge to the Fund. It proposes limited record development and preservation of the status quo while the Court determines whether this case may lawfully be used as a Judgment Fund predicate.

14. Granting leave will not prejudice any party. The proposed brief is attached, Amicus requests no oral argument, no discovery, no intervention, no extension of time, and no alteration of the schedule.

15. No counsel for any party authored the proposed brief in whole or in part. No party, party's counsel, or person other than Amicus contributed money intended to fund preparing or submitting the proposed brief.

## V.     LOCAL RULE 7.1(a)(3) CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), Amicus certifies that, before filing this motion, he made reasonable, good-faith efforts to confer with counsel for Plaintiffs, Defendants, the non-party movants, and other counsel who may be affected by the relief requested.

Specifically, on Saturday, May 30, 2026, at approximately 5:26 p.m. Eastern, Amicus emailed counsel for Plaintiffs, Defendants, the non-party movants, and existing amici/court-appointed amici. The email attached the proposed Motion for Leave to File Brief Amicus Curiae, the proposed Brief Amicus Curiae, and the Proposed Order. Amicus requested that counsel advise whether their respective clients consented to, opposed, or took no position on the requested leave to file, and requested a response by Monday, June 1, 2026, at 12:00 p.m. Eastern. Amicus also offered to confer by telephone or videoconference.

The non-party movants, the court-appointed amici, amici CREW and Public Citizen, and amici former government officials and public interest organizations each advised that they take no position on the requested leave to file. Plaintiffs did not respond before filing. Defendants did not respond before filing. No counsel who responded indicated opposition to the requested relief.

3

## VI.    CONCLUSION

For the foregoing reasons, Amicus respectfully requests that the Court grant this motion and permit Amicus to file the proposed Brief Amicus Curiae attached as Exhibit A.

June 2, 2026                                     Respectfully Submitted,

                                                 /s/ Corey J. Biazzo
                                                 Corey J. Biazzo, Esq.
                                                 Amicus Curiae
                                                 Attorney Bar Number 1016148
                                                 corey@biazzolaw.com
                                                 9801 Lakeview Lane
                                                 Parkland, Florida 33076
                                                 (703) 297-5777

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 2, 2026, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will serve all counsel of record by electronic notice.

                                                 /s/ Corey J. Biazzo
                                                 Corey J. Biazzo, Esq.

4

# EXHIBIT A

**Proposed Brief Amicus Curiae of Corey J. Biazzo, Esq. In Support of
Reopening and Limited Review of Settlement Authority**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**Case No.:** 1:26-cv-20609-WILLIAMS/LETT

PRESIDENT DONALD J. TRUMP, et al.,

     Plaintiffs,

v.

INTERNAL REVENUE SERVICE, et al.,

     Defendants,

_____/

## BRIEF AMICUS CURIAE OF COREY J. BIAZZO, ESQ. IN SUPPORT OF REOPENING AND LIMITED REVIEW OF SETTLEMENT AUTHORITY

Corey J. Biazzo, Esq.
Amicus Curiae
Attorney Bar Number 1016148
corey@biazzolaw.com
9801 Lakeview Lane
Parkland, Florida 33076
(703) 297-5777

June 2, 2026

1

Table of Contents

TABLE OF AUTHORITIES...............................................................................2

INTEREST OF AMICUS...............................................................................4

SUMMARY OF ARGUMENT.........................................................................5

ARGUMENT.................................................................................................6

I. THE ANTI-WEAPONIZATION FUND PRESENTS A DISTINCT
APPROPRIATIONS PROBLEM....................................................................6

II. THE JUDGMENT FUND DOES NOT AUTHORIZE A FUTURE-CLAIMANT
COMPENSATION PROGRAM.......................................................................7

III. OTHER FISCAL STATUTES CONFIRM THAT THE FUND CANNOT BE
CAPITALIZED BY SETTLEMENT LABEL....................................................8

IV. DEPARTMENT OF JUSTICE SETTLEMENT AUTHORITY CANNOT
CREATE A NEW SPENDING
PROGRAM..................................................................................................10

V. LIMITED RELIEF IS APPROPRIATE......................................................11

CONCLUSION............................................................................................12

CERTIFICATE OF SERVICE.......................................................................13

Table of Authorities

CASES

*Biden v. Nebraska,*
143 S. Ct. 2355 (2023) ............................................................................11

*Cincinnati Soap Co. v. United States,*
301 U.S. 308 (1937) ..................................................................................7

*Clinton v. City of New York,*
524 U.S. 417 (1998) ................................................................................11

Office of Pers. Mgmt. v. Richmond,
496 U.S. 414 (1990) ..................................................................................7

*Reeside v. Walker,*
52 U.S. (11 How.) 272 (1850) ............................................................................7

*Train v. City of New York,*
420 U.S. 35 (1975) ............................................................................................11

*Youngstown Sheet & Tube Co. v. Sawyer,*
343 U.S. 579 (1952) ...........................................................................................8

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 9, cl. 7 ...............................................................................6

## STATUTES

28 U.S.C. § 2414 .........................................................................................6, 8, 13

31 U.S.C. § 1301(a) .....................................................................................6, 9, 13

31 U.S.C. § 1304 .............................................................................................6, 9

31 U.S.C. § 1304(a) ............................................................................................8

31 U.S.C. § 1341(a) .....................................................................................11, 13

31 U.S.C. § 1501 ..........................................................................................7, 13

31 U.S.C. § 1501(a) ..........................................................................................10

31 U.S.C. § 3302 ..........................................................................................6, 13

31 U.S.C. § 3302(a) ..........................................................................................10

31 U.S.C. § 3302(b) ..........................................................................................10

31 U.S.C. § 3302(c) ..........................................................................................10

31 U.S.C. § 3324 ................................................................................................6

31 U.S.C. § 3324(b) ..........................................................................................10

## OTHER AUTHORITIES

Justice Manual § 4-3.320 ..................................................................................11

Justice Manual § 4-3.400 ...............................................................................11

Justice Manual § 4-3.432 ...............................................................................11

Settlement Agreement § III.A .......................................................................7, 8

Settlement Agreement §§ III.C, IV ..................................................................7

Settlement Agreement § IV.A .........................................................................8

Settlement Agreement §§ IV.C-E ....................................................................8

Settlement Agreement § IV.H .........................................................................8

Settlement Agreement § V.C .........................................................................12

Settlement Agreement § VI.B .........................................................................8

INTEREST OF AMICUS[1]

Corey J. Biazzo, Esq. is a civil litigation attorney, constitutional scholar, United States Navy veteran, and founder of Biazzo Law, PLLC. Through Biazzo Law and its Government Oversight Program, Amicus works on public-facing constitutional accountability, government transparency, public fiscal accountability, and civic legal education.

Amicus has briefed courts on matters involving separation of powers, federalism, structural constitutional safeguards, and enforceable constitutional limits. Amicus has a professional and civic interest in ensuring that no branch of the federal government may use litigation form, settlement labels, or administrative mechanisms to draw money from the Treasury in a manner not authorized by Congress.

No counsel for any party authored this brief in whole or in part, and no person or entity, other than Amicus, contributed money intended to fund preparing or submitting this brief. Amicus does not seek party status, discovery, oral argument, or any further participation unless requested by the Court. Amicus writes only to address a distinct statutory and appropriations-law issue raised by the settlement documents now before the Court.

---

[1] No counsel for any party authored this brief in whole or in part, and no person or entity, other than Biazzo has contributed money that was intended to fund preparing or submitting the brief.

4

SUMMARY OF ARGUMENT

This case now presents a statutory problem separate from, and narrower than, the constitutional and Rule 60 issues already raised by other amici and movants. The Court need not decide today whether the underlying taxpayer-disclosure claims were meritorious. Nor need it decide today whether the parties acted with subjective bad faith. There is a threshold appropriations question: whether the Department of Justice may use a settlement of this dismissed case as a legal mechanism to capitalize a $1.776 billion future-claimant compensation program.

The answer is no. The Judgment Fund is a permanent, indefinite appropriation, but it is not a blank check. Congress appropriated that fund to pay final judgments, awards, compromise settlements, interest, and costs when statutory prerequisites are satisfied. 31 U.S.C. § 1304. Congress also authorized payment of compromise settlements of claims referred to the Attorney General for defense of imminent litigation or suits against the United States. 28 U.S.C. § 2414. Those statutes pay actual liabilities or actual compromises of claims. They do not authorize the Executive Branch to create a claims facility for unidentified future claimants, place a lump sum corpus into an outside account, and then allow an executive-created board to distribute money according to discretionary standards.

The settlement agreement itself demonstrates the problem. It states that Plaintiffs receive no monetary payment. It further states that the Anti-Weaponization Fund corpus "does not represent the value of any current claim by Plaintiffs," but instead is based on the "projected valuation of future claimants' claims." That language is dispositive for appropriations purposes. A payment that is not measured by the compromise of the plaintiffs' claims cannot be justified as a Judgment Fund payment of those claims.

Other fiscal statutes confirm the same conclusion. The Purpose Statute requires appropriations to be applied only to the objects for which they were made. 31 U.S.C. § 1301(a). The advance-payment statute allows advances of public money only when specifically authorized. 31 U.S.C. § 3324. The Miscellaneous Receipts Act and public-money custody rules require public money to remain in lawful Treasury custody and to be deposited as Congress directed. 31 U.S.C. § 3302. And the recording statute requires an obligation to be supported by a written instrument for a purpose authorized by law. 31 U.S.C. § 1501. None of those statutes permits the Executive Branch to convert a case settlement into a standing political compensation program.

The appropriate remedy is narrow. The Court should permit filing of this brief, reopen or preserve the case for limited review of settlement authority, and require the parties and relevant federal components to produce the settlement-approval and Judgment Fund submission record. The Court should further make clear that, until that review is complete, the dismissal in this case may not be used as a final Judgment Fund predicate for the Anti-Weaponization Fund.

5

## ARGUMENT

## I.   THE ANTI-WEAPONIZATION FUND PRESENTS A DISTINCT APPROPRIATIONS PROBLEM

Other amici have addressed important issues: Article III adversity, the President's control over both sides of the litigation, the Domestic Emoluments Clause, flaws in the taxpayer-disclosure and Privacy Act claims, and Rule 60 relief. Amicus does not repeat those arguments. The narrower point here is that, even if a real case existed and even if some settlement authority existed, the settlement documents appear to exceed the statutes that allow money to be drawn from the Treasury.

That issue matters because the Appropriations Clause is not a technicality. "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. art. I, § 9, cl. 7. The Clause is a structural safeguard. It protects Congress' exclusive authority over the public fisc and prevents the Executive Branch from creating spending programs by unilateral action. *See Reeside v. Walker*, 52 U.S. (11 How.) 272, 291 (1850); *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937); *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424-28 (1990).

The settlement documents place that safeguard squarely at issue. The settlement agreement provides that Plaintiffs will receive a formal apology and "will not receive any monetary payment or damages of any kind." Settlement Agreement § III.A. But the same agreement creates an Anti-Weaponization Fund to hear and redress claims of "others who, like Plaintiffs," assert harm from "Lawfare" and "Weaponization." Id. §§ III.C, IV. The agreement further provides that the Fund corpus "does not represent the value of any current claim by Plaintiffs," but is instead based on projected future claims. Id. § IV.A.

That is not an ordinary settlement feature. It is the creation of a new federal compensation mechanism. The Fund may determine its own procedures, make those procedures public only "in whole or in part," issue formal apologies, issue monetary relief, request evidence, consult federal agencies, and report confidentially to the Attorney General. Id. §§ IV.C-E. It ceases processing claims in 2028, and any remaining balance is to be transferred to Commerce, Interior, or another federal account designated by the President. Id. § IV.H. The Agreement also provides that Fund determinations are subject to no appeal, arbitration, or judicial review. Id. § VI.B.

Those provisions raise fiscal questions that are independent of whether the underlying complaint was timely, whether Littlejohn was an employee, whether statutory damages were available, or whether Rule 60 applies. The question is whether Congress appropriated money for this specific use. It did not.

## II.     THE JUDGMENT FUND DOES NOT AUTHORIZE A FUTURE-CLAIMANT COMPENSATION PROGRAM

The Judgment Fund is not a general executive relief fund. Section 1304 appropriates "[n]ecessary amounts" to pay "final judgments, awards, compromise settlements, and interest and costs" only when payment is not otherwise provided for, payment is certified by the Secretary of the Treasury, and the judgment, award, or settlement is payable under one of the enumerated authorities. 31 U.S.C. § 1304(a). One such authority is 28 U.S.C. § 2414. But section 2414 does not authorize all payments labeled settlements. It authorizes payment of "compromise settlements of claims referred to the Attorney General for defense of imminent litigation or suits against the United States." 28 U.S.C. § 2414.

The Anti-Weaponization Fund fails those requirements on the face of the settlement documents. The Fund corpus is not a final settlement payment to Plaintiffs. Plaintiffs receive no monetary payment. The corpus is not based on a court judgment. It is not based on any award to identified claimants. It is not based on a final compromise of identified future claimants' claims because those claims have not yet been submitted, evaluated, accepted, denied, or compromised. It is instead a pre-funded administrative pool for future claims by unknown persons and entities.

That distinction is dispositive. A compromise settlement resolves a claim. It is not a legislative grant program. It is not a revolving account. It is not an advance capitalization of a board that will later decide who should receive money. If Congress wants to create a broad compensation fund for people alleging improper government targeting, Congress may do so. But the Executive Branch may not create that program by attaching it to a settlement agreement and invoking section 1304.

The settlement's reliance on Deepwater Horizon does not cure the defect. That private mass-tort claims facility was created in the context of private party liability and private funding. It did not draw money from the United States Treasury under the Judgment Fund. The federal fiscal question here is different: whether public money can be drawn from a permanent appropriation for a purpose Congress did not authorize. Private settlement practice cannot expand a federal appropriation.

Nor does the settlement's label control. *Youngstown* teaches that executive power must come from the Constitution or from an act of Congress. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952). Section 1304 and section 2414 provide limited settlement-payment authority. They do not allow the Executive Branch to transform a lawsuit into a mechanism for appropriating billions of dollars to future claimants whose claims have not yet matured into any payment obligation.

7

### III.   OTHER FISCAL STATUTES CONFIRM THAT THE FUND CANNOT BE CAPITALIZED BY SETTLEMENT LABEL

Even if the Judgment Fund statutes were ambiguous, the rest of Title 31 confirms that the Anti-Weaponization Fund cannot be capitalized in the manner contemplated by the settlement documents.

First, the Purpose Statute provides that "[a]ppropriations shall be applied only to the objects for which the appropriations were made except as otherwise provided by law." 31 U.S.C. § 1301(a). The object of the Judgment Fund is payment of qualifying judgments, awards, and compromise settlements. It is not the creation of a new administrative compensation program for future claimants alleging "Lawfare" or "Weaponization." Where Congress has created compensation programs, it has done so by statute and has supplied eligibility criteria, funding rules, reporting rules, and review mechanisms. The settlement agreement supplies those rules itself. That is the problem.

Second, the advance-payment statute provides that "[a]n advance of public money may be made only if it is authorized by a specific appropriation or other law," subject to exceptions not applicable here. 31 U.S.C. § 3324(b). A $1.776 billion transfer into a designated account before any claimant has received a final award or settlement is, in substance, an advance of public money. The settlement does not identify a specific statute authorizing advance capitalization of this claims facility. Section 1304 pays qualifying final settlements. It does not authorize an advance drawdown for claims that may be presented later.

Third, the public-money custody rules and the Miscellaneous Receipts Act cut against the fund structure. Section 3302 provides that an official or agent of the United States having custody or possession of public money must keep it safe and, except as provided by law, may not lend, use, deposit, or exchange it. 31 U.S.C. § 3302(a). A government official or agent receiving money for the Government from any source must deposit it in the Treasury as soon as practicable. 31 U.S.C. § 3302(b). And a person having custody of public money must deposit it in the Treasury or with a depositary designated by the Secretary of the Treasury. 31 U.S.C. § 3302(c).

The settlement attempts to avoid those controls by directing a lump-sum transfer to a Designated Account and then stating, through the Attorney General order, that the United States has no liability for safeguarding the funds after deposit. That creates a dilemma. If the money remains public money, then it remains subject to the custody, deposit, purpose, and accounting rules Congress imposed. If the money is no longer public money once transferred, then the transfer is not a payment of a final judgment or settlement to a claimant; it is an unauthorized grant of Treasury funds to an executive-created fund.

8

Fourth, section 1501 requires that an obligation of the United States be supported by documentary evidence of a binding agreement "for a purpose authorized by law," a grant or subsidy "authorized by law," a liability that may result from pending litigation, or another legal liability against an available appropriation or fund. 31 U.S.C. § 1501(a). Unknown future claimants have not yet established legal liability. The settlement's projection of their claims is not itself a legal liability. An executive prediction of future claims cannot be recorded as an obligation against the Judgment Fund unless Congress has made that object available.

Fifth, the Antideficiency Act forbids federal officers from making or authorizing expenditures or obligations exceeding an available appropriation or before an appropriation is made unless authorized by law. 31 U.S.C. § 1341(a). If section 1304 does not authorize the Fund corpus, then no settlement label can cure the lack of available appropriations. The Executive cannot spend first and locate an appropriation later.

These statutes reflect a single constitutional principle: public money must remain under congressional control. The Anti-Weaponization Fund reverses that principle. It begins with a private settlement label, draws public money from a limited appropriation, places the money into a discretionary account, and then lets an executive-created body distribute funds under standards the agreement itself creates.

## IV.    DEPARTMENT OF JUSTICE SETTLEMENT AUTHORITY CANNOT CREATE A NEW SPENDING PROGRAM

The Attorney General has broad authority to conduct and compromise litigation involving the United States. But broad authority is not unlimited authority. The Department of Justice may compromise claims; it may not create new appropriations. It may settle cases; it may not use the settlement power to legislate a compensation program.

DOJ's own settlement framework reflects this limitation. The Justice Manual explains that defensive civil settlements above ordinary delegated authority require attention to the source of funds, settlement value, agency recommendation, and why compromise is in the interests of the United States. JM § 4-3.320. It also provides that the scope of a compromise should be specifically limited to the immediate subject matter of the claim compromised and that general releases should not be issued. JM § 4-3.400. For FTCA compromises, requests are expected to reflect thorough attention to jurisdiction, liability, and damages, with the goal of ensuring that settlement is in the best interests of the United States. JM § 4-3.432.

Those internal policies may not themselves create private rights for every observer. But they illustrate the ordinary legal premise: compromise authority exists to resolve claims based on jurisdiction, liability, damages, litigation risk, and the

9

public interest. It does not exist to enact a policy program that Congress never enacted.

That is especially important here because the Fund's eligibility standard is not tied to the causes of action in the complaint. The complaint concerned alleged unlawful inspection and disclosure of tax-return information and alleged Privacy Act violations. The Fund, by contrast, is open to entities and persons who assert at least one legal claim that they were victims of "Lawfare" or "Weaponization." Settlement Agreement § V.C. That is a broader policy category, not a statutory cause of action Congress paired with a Judgment Fund payment mechanism.

Congress knows how to create compensation schemes for classes of claimants. It did not do so here. The Executive Branch cannot accomplish the same result by declaring that a class-like compensation program is part of a settlement of a case whose plaintiffs receive no money and whose fund corpus expressly does not value their claims.

This Court does not need to resolve every fiscal-law issue now. But it should not allow the dismissal of this case to become the predicate for a Treasury transfer that the statutes do not appear to permit. Courts have a duty to ensure that judicial proceedings are not used as devices to accomplish what the political branches could not lawfully accomplish directly. *See Clinton v. City of New York*, 524 U.S. 417 (1998); *Train v. City of New York*, 420 U.S. 35 (1975); *Biden v. Nebraska*, 143 S. Ct. 2355 (2023).

## V.      LIMITED RELIEF IS APPROPRIATE

The Court can address this matter in a narrow, administrable way. It need not adjudicate the rights of every potential claimant. It need not supervise the Fund. It need not determine today whether every portion of the settlement agreement is void. The immediate question is whether this Court's docket may be used as the legal predicate for a Judgment Fund payment without first determining whether statutory authority exists.

Accordingly, Amicus respectfully submits that the Court should permit this filing and, consistent with the pending Rule 60 motion and the Court's May 29, 2026 Order, require the parties and relevant federal components to provide a complete record concerning settlement authority. That record should include the settlement agreement, addendum, Attorney General order, Treasury certification materials, Judgment Fund payment request forms, DOJ settlement-approval memoranda, agency recommendations or objections, any source-of-funds analysis, and any analysis addressing sections 1301, 1304, 1341, 1501, 3302, 3324, and 2414.

The Court should also make clear that, pending completion of that review, the Rule 41 dismissal and this Court's closing order may not be treated as a final judicial or settlement predicate for any Judgment Fund payment to the Anti-Weaponization Fund. That remedy preserves the status quo. It does not decide final merits. It simply prevents irreversible public-money transfers while the Court completes the inquiry that was interrupted by the voluntary dismissal.

A narrow record-development order is also respectful of the separation of powers. It recognizes DOJ's legitimate authority to settle real cases. It recognizes Treasury's statutory role in certifying payments. But it also recognizes Congress' exclusive power over the purse and this Court's responsibility to ensure that its proceedings are not used to facilitate ultra vires spending.

## CONCLUSION

For the Foregoing reasons, Amicus respectfully submits that the Court should reopen or preserve this matter for limited review of settlement authority, require production of the settlement-approval and Judgment Fund record, and hold that this case may not be used as a final Judgment Fund predicate for the Anti-Weaponization Fund unless and until the Court determines that the settlement rests on valid statutory authority.

June 2, 2026                                        Respectfully Submitted,

                                                   /s/ Corey J. Biazzo
                                                   Corey J. Biazzo, Esq.
                                                   Amicus Curiae
                                                   Attorney Bar Number 1016148
                                                   corey@biazzolaw.com
                                                   9801 Lakeview Lane
                                                   Parkland, Florida 33076
                                                   (703) 297-5777

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 2, 2026, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will serve all counsel of record by electronic notice.

/s/ Corey J. Biazzo
Corey J. Biazzo, Esq.

12