**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, DONALD J. TRUMP JR., ERIC TRUMP, AND THE TRUMP ORGANIZATION, LLC,<br><br>*Plaintiffs,*<br><br>v.<br><br>INTERNAL REVENUE SERVICE AND U.S. DEPARTMENT OF THE TREASURY<br><br>*Defendants.* | No. 1:26-cv-20609-KMW |

**PLAINTIFFS' RESPONSE TO THE COURT'S MAY 29, 2026 ORDER AND IN FURTHER OPPOSITION TO THE MOTION OF THIRTY-FIVE FORMER FEDERAL JUDGES FOR RELIEF FROM THE ORDER OF DISMISSAL**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 5

BACKGROUND .................................................................................................................... 6

ARGUMENT ......................................................................................................................... 8

I.     This Court Had Nothing to Adjudicate With Respect to Plaintiffs' Voluntary Dismissal under Rule 41(a)(1)(A)(i). ................................................................................ 8

A.     This Court Lacks Any Authority To Review the Parties' Settlement. ......................... 9

B.     Rule 60 Does Not Authorize This Court To Review the Parties' Settlement. ............. 9

    1.     Movants Lack Standing. .......................................................................................... 9

    2.     Movants Fail To Show Clear and Convincing Evidence of Fraud. ......................... 11

    3.     This Court Does Not Have the Authority To Review a Settlement Providing for the Voluntary Dismissal of a Case Before It. ..................................................... 12

C.     Rule 11 Has No Application Here. ............................................................................ 13

II.     The Settlement Was Not Collusive Because the United States Has Inherent Settlement Authority Outside Litigation. ................................................................... 15

III.     Movants' Motion Should Be Denied, and Any Further Intrusion Into Matters Beyond the Court's Jurisdiction Would Warrant Extraordinary Relief. ................... 17

IV.     The Record Confirms that Plaintiffs' Claims Had Independent Merit, That the Parties Were Truly Adverse, and that There is No Evidence of Collusion. ............... 17

A.     Plaintiffs' Claims Had Independent Merit. ................................................................ 18

B.     The Parties Were Truly Adverse. ............................................................................. 19

C.     Movants Offer No Evidence of Collusion or Fraud. .................................................. 20

CONCLUSION .................................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

**Supreme Court**

*Cheney v. U.S. District Court*, 542 U.S. 367 (2004)........................................................................17

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990).....................................................6, 13, 14

*INS v. Chadha*, 462 U.S. 919 (1983) ................................................................................................20

*Margolin v. Nat'l Ass'n of Immigration Judges*, 608 U.S. ____ (2026).......................................17

*Marino v. Ortiz*, 484 U.S. 301 (1988).................................................................................................6

*United States v. Beggerly*, 524 U.S. 38 (1998) ...............................................................................11

*United States v. Nixon*, 418 U.S. 683 (1974) ...................................................................................19

*United States v. Sineneng-Smith*, 590 U.S. 371 (2020) .................................................................17

*United States v. Windsor*, 570 U.S. 744 (2013) ...............................................................................19

*Waetzig v. Halliburton Energy Services, Inc.*, 604 U.S. 305 (2025) .......................................10, 11

*Willy v. Coastal Corp.*, 503 U.S. 131 (1992)...................................................................................13

**U.S. Courts of Appeals**

*Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272 (11th Cir. 2012)....................................5, 8

*Booker v. Dugger*, 825 F.2d 281, 283–84 (11th Cir. 1987).............................................................20

*Driessen v. Univ. of Miami Sch. of L. Child. & Youth L. Clinic*, 835 F. App'x 489 (11th Cir. 2020) ....................................................................................................................................................12

*Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251 (11th Cir. 2003) ..............................................14

*Kem Manufacturing Corp. v. Wilder*, 817 F.2d 1517 (11th Cir. 1987) .................................6, 9, 10

*Matthews v. Gaither*, 902 F.2d 877 (11th Cir. 1990)........................................................................9

*McDowell v. Celebrezze*, 310 F.2d 43 (5th Cir. 1962) ...................................................................15

*Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir. 1978)...........................................................8, 12

*Salem Pointe Capital, LLC v. BEP Rarity Bay, LLC*, 854 Fed. Appx. 688 (6th Cir. 2021)..........10

*S.E.C. v. ESM Group, Inc.*, 835 F.2d 270 (11th Cir. 1988) ..............................................................8

*Travelers Indemnity Co. v. Gore*, 761 F.2d 1549 (11th Cir. 1985) ..................................................8

*United States v. $70,670.00 in U.S. Currency*, 929 F.3d 1293 (11th Cir. 2019) ...........................10

**U.S. District Courts**

*Bleecher v. Nightingale Nurses*, No. 07-80378-CIV, 2010 WL 3834655 (S.D. Fla. Sept. 28, 2010) ....................................................................................................................................................11

*Circuitronix, LLC v. Shenzhen Kinwong Elec. Co.*, No. 17-22462-CIV, 2020 WL 8459195 (S.D. Fla. Aug. 14, 2020) ............................................................................................................................11

*In re Walker*, 356 B.R. 861 (Bankr. S.D. Fla. 2006) ......................................................................12

*Judith v. Commonwealth of the N. Mariana Islands*, No. 611CV1927ORL28KRS, 2012 WL 13136859 (M.D. Fla. May 25, 2012) ...............................................................................10

*Rismed Oncology Sys., Inc. v. Baron*, 297 F.R.D. 637 (N.D. Ala. 2014) .....................................10

*United States Dominion, Inc. v. Herring Networks, Inc.*, No. 1:21-cv-02130-CJN-MAU (D.D.C. Oct. 3, 2025) ..............................................................................................................................8, 9

*Griffin v. Internal Revenue Service,* Case No. 22-cv-24023 (S.D. Fla. Apr. 22, 2024) ....11, 18, 19

*U.S.A. v. Littlejohn*, Case No. 1:23-cr-00343-ACR (D.D.C. Sept. 29, 2023)................................18

*United States v. Sec'y, Fla. Dep't of Corr.*, No. 12-22958-CIV, 2020 WL 4926159 (S.D. Fla. Aug. 20, 2020) ....................................................................................................................10

**Statutes**

5 U.S.C. § 552a ............................................................................................................................6, 18

26 U.S.C. § 6103 ..........................................................................................................................16, 18

26 U.S.C. § 7122 ..........................................................................................................................15, 19

26 U.S.C. § 7431 ......................................................................................................................6, 16, 18

28 U.S.C. § 2414 .............................................................................................................6, 7, 14, 15, 16

28 U.S.C. § 2672 ...............................................................................................................6, 7, 14, 15

28 U.S.C. § 2677 ...............................................................................................................6, 7, 14, 15

31 U.S.C. § 1304 .............................................................................................................6, 7, 14, 15, 16

31 U.S.C. § 3711 ..........................................................................................................................15, 19

31 U.S.C. § 3730(b)(1) ........................................................................................................................9

**Rules**

Fed. R. Civ. P. 11 .............................................................................................................6, 13, 14, 15

Fed. R. Civ. P. 23(e) ...........................................................................................................................9

Fed. R. Civ. P. 23.1(c) ........................................................................................................................9

Fed. R. Civ. P. 41(a)(1) .............................................................................................................. passim

Fed. R. Civ. P. 60(b) ..........................................................................................................6, 10, 12, 13

Fed. R. Civ. P. 60(d)(3) ................................................................................................................11, 12

**Regulations**

31 C.F.R. § 256.1(a)(1) ................................................................................................................16, 17

**Other Authorities**

Alan J. Belsky, *Frivolous Filings and the Penalty of Sanctions*, 22 U. Balt. L.F. 3 (1992)..........14

*Amendments to the Federal Rules of Civil Procedure*, 146 F.R.D. 401 (1993) ............................13

IRS News Release No. IR-2024-172 (June 25, 2024) ....................................................................18

Jerold S. Solovy et al., *Sanctions Under Rule 11* (Jenner & Block Practice Series 2010)............14

Steven S. Gensler, 2 *Federal Rules of Civil Procedure, Rules and Commentary* § 60:22 (2025) 13

7 Moore's Federal Practice ¶ 60.33 ..................................................................................................8

4

## PRELIMINARY STATEMENT

We write to respond to a baseless motion to reopen a case that was lawfully and properly dismissed. The fact that Movants are former federal judges only makes their frivolous motion all the more damaging to our rule of law. Movants should be above making what is a transparently political filing intended to gin up press attention to a fully proper government settlement that they knowingly have no standing to challenge. Movants were not parties to any litigation with Plaintiffs; they had never expressed any interest in the case until they filed their motion; and they have no legally cognizable interest in it.

On May 18, 2026, Plaintiffs filed the Notice of Voluntary Dismissal with Prejudice of this action. (DE 52.) They did so pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), which expressly provides that "the plaintiff may dismiss an action *without a court order* by filing: (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." (emphasis added). This Court's ministerial act of ordering the dismissal of Plaintiffs' action on the same day did not transform Plaintiffs' self-executing procedural right to dismiss under Rule 41(a)(1)(A)(i) into a judgment subject to collateral attack by non-parties simply because those non-parties disagree with a related settlement.

Remarkably, Movants ask this Court to do something that no federal court has the power to do, or has ever done—to reopen a case terminated (DE 62) by a self-executing Rule 41(a)(1) notice (DE 52), at the behest of strangers to the litigation, in order to scrutinize an Executive Branch settlement that this Court does not have any jurisdiction to review. Movants misread the one decision on which their standing theory rests, misunderstand what was actually "before" this Court, and wrongly presume that the Court has the power to review a government settlement not before it, contrary to decades of settled federal practice.

As explained herein, Movants' requested relief—the improper reopening of this Court's Order dismissing this action and the review of the parties' related settlement—should be denied for multiple, independent reasons.

First, the self-executing nature of Rule 41(a)(1)(A)(i) dismissal divested this Court of jurisdiction over the merits the instant the Notice of Dismissal was filed. *See* Order Closing Case (DE 62) at *1, n. 1 ("Once a notice of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A) is filed, the Court 'is stripped of jurisdiction.' [ ] The dismissal is self-executing and effective immediately upon the filing of the notice of dismissal.") (internal citations omitted); *Anago Franchising, Inc.*

5

*v. Shaz, LLC*, 677 F.3d 1272, 1278 (11th Cir. 2012). The Court had no discretion to grant or deny the dismissal, no motion to weigh, and no adjudicative function that could have been corrupted. There was therefore no "fraud on the court" within the meaning of the doctrine, and no basis for the Court to exercise any form of ancillary jurisdiction over an unfiled settlement agreement between private parties and the Executive Branch—an agreement that the Department of Justice had independent statutory authority to enter regardless of whether this case was ever filed. *See* 28 U.S.C. §§ 2414, 2672, 2677; 31 U.S.C. § 1304.

Second, nonparty Movants lack standing to invoke Federal Rule of Civil Procedure 60(b), or to prompt any collateral inquiry under Federal Rule of Civil Procedure 11, which governs frivolous filings. *See Kem Manufacturing Corp. v. Wilder*, 817 F.2d 1517, 1521 (11th Cir. 1987) (nonparty standing under Rule 60 requires that the nonparty's legal rights or interests be directly affected by the judgment). Movants' claimed interest in "the administration of justice" is the paradigmatic abstract grievance that the Eleventh Circuit in *Kem* and its progeny reject. Because Movants had no right to appeal the self-executing Rule 41(a)(1)(A)(i) dismissal, they likewise cannot collaterally attack it. *Marino v. Ortiz*, 484 U.S. 301, 304 (1988); Fed. R. Civ. P. 60(b) (relief available only to "a party or its legal representative").

Third, Movants never invoked Rule 11—the only recognized collateral mechanism that can survive a voluntary dismissal. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–96 (1990). Their election to proceed solely under Rule 60 confirms that this is not a genuine concern about attorney misconduct in a filing, but an effort to manufacture nonparty standing where none exists. And, in any event, there is no basis for Rule 11 sanctions here. Movants' motion must be denied.

## BACKGROUND

On January 29, 2026, Plaintiffs—President Donald J. Trump, Donald J. Trump, Jr., Eric Trump, and The Trump Organization, LLC—filed their Complaint against the Internal Revenue Service and the United States Department of the Treasury. (DE 1.) The Complaint asserted claims under 26 U.S.C. § 7431 and the Privacy Act, 5 U.S.C. § 552a, based on a former IRS employee and/or contractor—Charles Littlejohn—who was criminally convicted of unlawfully accessing and disclosing Plaintiffs' confidential tax return information spanning more than 15 years. Plaintiffs sought at least 10 billion dollars in damages for those concrete, statutory injuries. Further,

6

two Federal Tort Claims Act claims filed by President Trump are included in the settlement agreement in this case.

Before any Defendant answered or otherwise responded to the Complaint, Plaintiffs sought additional time to pursue a resolution of this action. As their Consent Motion for a 90-Day Extension explained, "[g]ood cause exists to grant an extension in this matter while the Parties engage in discussions designed to resolve this matter and to avoid protracted litigation." (DE 40 at 2.) No Defendant ever filed an answer, a motion for summary judgment, or any other responsive pleading—at any point in this case.

On May 18, 2026, Plaintiffs exercised their unqualified right under Rule 41(a)(1)(A)(i) and filed a Notice of Voluntary Dismissal with Prejudice. (DE 52.) That filing was self-executing: it terminated this action by its own force the instant it was filed, without any order of—or adjudication by—this Court. The Court entered its Order Closing Case the same day. (DE 62.) Contemporaneously, the United States and Plaintiffs resolved their dispute through a settlement, as they had every right to do.

Because the dismissal required no answer, no motion, and no judicial act, the posture of this case is no different than if Plaintiffs had never filed this suit at all. There was nothing for the Court to adjudicate, and nothing the Court did adjudicate. Further, as shown below, the United States possesses independent statutory authority to compromise and settle claims such as these administratively—with or without a pending lawsuit—and routinely does so. See 28 U.S.C. §§ 2414, 2672, 2677; 31 U.S.C. § 1304. These U.S. Code sections work together to govern how the federal government handles, settles, and pays tort claims and judgments against the United States. These authorities permit the United States to enter into administrative settlements and provide a permanent funding mechanism through the Judgment Fund, so Congress does not need to pass a specific appropriation for every payment. Indeed, two Federal Tort Claims Act claims were part of the settlement agreement in this case.

Weeks after the case was closed, Movants—thirty-five former federal judges who were never parties to this action and never sought to participate in it while it was pending—filed the motion now before the Court. Invoking Rule 60, they ask this Court to improperly reopen a closed case and to scrutinize a settlement they dislike, but have no standing to challenge. (DE 63.) On May 29, 2026, the Court directed Plaintiffs to respond (the "May 29 Order"). Plaintiffs submit this response and further oppose Movants' motion for the reasons set forth below.

## ARGUMENT

I.      **This Court Had Nothing to Adjudicate With Respect to Plaintiffs' Voluntary Dismissal under Rule 41(a)(1)(A)(i).**

By its terms, Rule 41(a)(1)(A)(i), titled "Voluntary Dismissal," expressly provides that "the plaintiff may dismiss an action *without a court order* by filing: (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment."  (emphasis added). Thus, the filing of a voluntary dismissal is self-executing and terminates a case "without order of the court." *Anago,* 677 F.3d at 1278. As a result, once Plaintiffs filed their "Voluntary Dismissal" pursuant to Rule 41(a)(1)(A), this Court lost all power to adjudicate this action. The case was dismissed. The Court had no discretion to grant or deny the dismissal. There was no motion to weigh, no merits question to decide, and no "decision" to be influenced.

By contrast, the fraud-on-the-court doctrine, which Movants purport to rely on, is reserved for "that species of fraud which does or attempts to defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *Travelers Indemnity Co. v. Gore*, 761 F.2d 1549, 1551 (11th Cir. 1985) (citing 7 MOORE'S FEDERAL PRACTICE ¶ 60.33.); *see S.E.C. v. ESM Group, Inc.*, 835 F.2d 270, 273–74 (11th Cir. 1988). To prevail, a movant must show by clear and convincing evidence "an unconscionable plan designed to improperly influence the court in its decision." *See Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978). Where, as here, the Court never had anything to decide, there is no decision to corrupt, and the doctrine simply does not apply.

There is more. Movants are wrong in claiming that nondisclosure of a related government settlement in a Rule 41 notice somehow constituted fraud. There is no requirement that a party disclose or attach a settlement when it dismisses an action under Rule 41(a)(1). Parties routinely settle and then file bare notices of dismissal that disclose nothing about the settlement's existence or terms. That is entirely ordinary, proper practice.

In fact, Movants' own counsel, Susman Godfrey L.L.P., filed such a Rule 41(a)(1)(A)(ii) stipulation of dismissal with prejudice in *U.S. Dominion, Inc. v. Herring Networks, Inc.*, No. 1:21-cv-02130-CJN-MAU (D.D.C. Oct. 3, 2025) (ECF No. 280), one of the most closely watched defamation cases in the country. That stipulation disclosed no settlement, attached no settlement agreement, and referenced no payment—notwithstanding widely reported terms. Several of the same Susman Godfrey lawyers who signed the *Dominion* dismissal now appear on this frivolous

Motion. If filing a Rule 41 dismissal without disclosing settlement terms constitutes a "fraud on the court" (which is not the case), then by Movants' own logic, their own counsel perpetrated such a fraud months earlier in *Dominion*.

### A. This Court Lacks Any Authority To Review the Parties' Settlement.

A district court has no roving authority to review or approve a settlement between private parties and the government in ordinary litigation; it does not pass on the wisdom, adequacy, or legality of a Rule 41 dismissal. Judicial approval of a settlement is the exception—reserved for discrete categories such as certified class actions (Fed. R. Civ. P. 23(e)), derivative suits (Fed. R. Civ. P. 23.1(c)), and *qui tam* actions (31 U.S.C. § 3730(b)(1))—not the rule for ordinary litigation between the government and private parties. *See Matthews v. Gaither*, 902 F.2d 877, 880 (11th Cir. 1990) (a Rule 41(a)(1) dismissal is effective automatically and requires no judicial action or approval). Because this Court had no power to review the settlement here, there was no judicial act that could have been procured through deception.

### B. Rule 60 Does Not Authorize This Court To Review the Parties' Settlement.

#### 1. Movants Lack Standing.

To try to falsely manufacture standing here, Movants miscite *Kem Manufacturing Corp. v. Wilder*, 817 F.2d 1517 (11th Cir. 1987), for the legally baseless proposition that a nonparty may bring a fraud-on-the-court challenge under Rule 60 to a voluntary settlement under Rule 41(a)(1)(A)(i) in "extraordinary circumstances," *even when the nonparty's interests are not directly affected by the judgment*. In fact, *Kem* holds directly to the contrary: a nonparty "only has standing to raise a challenge of fraud on the court *if the nonparty's interests are directly affected by the final judgment*." 817 F.2d at 1521 (emphasis added). The Eleventh Circuit *affirmed the denial* of nonparty standing in *Kem* itself, because an alleged indemnitor whose exposure in a separate state-court proceeding might be affected by the federal judgment was not directly affected—the judgment did not bind him, did not address his obligations, and did not touch his property or legal rights. The Eleventh Circuit stressed that "directly" is not an elastic word: in no case had a nonparty been granted standing unless that nonparty's rights were directly compromised by the final judgment. *Id.*

Movants have contorted the holding in *Kem*. The "extraordinary circumstances" language that they quote does not announce a freestanding exception that dispenses with the "directly

9

affected" requirement. To the contrary, the Eleventh Circuit used "directly affected" as the operative test and applied it to deny standing. Lower courts in this Circuit have uniformly reached the same conclusion. *See, e.g., Judith v. Commonwealth of the N. Mariana Islands*, No. 611CV1927ORL28KRS, 2012 WL 13136859, at *5 (M.D. Fla. May 25, 2012) (nonparties have standing to assert fraud on the court only when their interests are directly affected); *Rismed Oncology Sys., Inc. v. Baron*, 297 F.R.D. 637, 655 (N.D. Ala. 2014), *aff'd sub nom. Rismed Oncology Sys., Inc. v. Rangel Baron*, No. CV-13-S-310-NE, 2014 WL 12607796 (N.D. Ala. Oct. 7, 2014), and *aff'd*, 638 F. App'x 800 (11th Cir. 2015) (same); *United States v. Sec'y, Fla. Dep't of Corr.*, No. 12-22958-CIV, 2020 WL 4926159, at *2 (S.D. Fla. Aug. 20, 2020) (same).

Moreover, Movants cannot satisfy the "extraordinary circumstances" standard. They are thirty-five private citizens who once held judicial office. Not one of them is a party to this action or has any relationship to the government settlement they apparently dislike. Simply put, none of them has any legal right, property interest, or enforceable obligation that the voluntary dismissal here "directly affects." *Id.* (collecting cases); *accord Salem Pointe Capital, LLC v. BEP Rarity Bay, LLC*, 854 Fed. Appx. 688, 701 (6th Cir. 2021) (narrow exceptions under Rule 60(b) exist only where a nonparty is in privity with a party or where the nonparty's interests are directly affected by the judgment). Movants' alleged stake—their generalized interest in "the administration of justice" and public "confidence" in the courts—is the paradigmatic abstract grievance that does not support standing, much less provide standing to challenge a voluntary settlement under Rule 41(a)(1)(A)(i). Since a concrete indemnity exposure in collateral litigation was insufficient in *Kem*, Movants' generic concerns are plainly insufficient to confer standing to challenge such a settlement.

Lastly, this Circuit would still require them to show a "clear legal prejudice" to challenge the Rule 41 dismissal. *United States v. $70,670.00 in U.S. Currency*, 929 F.3d 1293, 1302 (11th Cir. 2019). No such showing has been made.

Movants wrongly attempt to lean on *Waetzig v. Halliburton Energy Services, Inc.*, 604 U.S. 305 (2025), for the proposition that a Rule 41(a) voluntary dismissal is a "final proceeding" subject to Rule 60. *Waetzig* establishes only that a *party* may invoke Rule 60 to be relieved from dismissal of a case. It says nothing about *nonparty* standing, which remains governed by *Kem*'s "directly affected" requirement. *Waetzig* opened the door for litigants such as the plaintiff in that case; it did not open it for strangers. Also, applying *Kem* to the *Waetzig* framework only sharpens the problem

10

for Movants: to reopen a Rule 41 dismissal, a nonparty would have to show that the dismissal proceeding itself directly affected the nonparty's legal rights—a showing not satisfied by generalized institutional concern, and not satisfied here. Further, the *Waetzig* Court's reasoning was specific to the procedural posture in that case and does not automatically extend to all voluntary dismissals in all contexts. Additionally, even if Rule 60 review is technically available, which it is not, the threshold question is whether the movants have standing to invoke it, and whether the specific grounds asserted—fraud on the court—are supported by clear and convincing evidence. *Circuitronix, LLC v. Shenzhen Kinwong Elec. Co.*, No. 17-22462-CIV, 2020 WL 8459195, at *2 (S.D. Fla. Aug. 14, 2020), report and recommendation adopted, No. 17-CV-22462-UU, 2020 WL 7767546 (S.D. Fla. Dec. 30, 2020). The answer to both questions is a resounding no. The mere availability of Rule 60 as a procedural vehicle, which does not exist here in the first place, would not resolve whether the substantive requirements for relief are met.

### 2. Movants Fail To Show Clear and Convincing Evidence of Fraud.

Beyond their lack of standing, Movants fail to satisfy the clear and convincing evidence standard required to establish fraud on the court under Rule 60(d)(3). Fraud on the court requires egregious conduct that corrupts the judicial process itself—not merely a settlement to which Movants object. *See Bleecher v. Nightingale Nurses*, No. 07-80378-CIV, 2010 WL 3834655 (S.D. Fla. Sept. 28, 2010). The Federal Rules grant a plaintiff the absolute right to voluntarily dismiss a complaint under Rule 41(a)(1)(A)(i) before an answer is filed. The fact that a settlement was negotiated and announced after the dismissal does not transform this lawful procedural act into some sort of fraud. *United States v. Beggerly*, 524 U.S. 38, 47 (1998).

Movants' reliance on the government's litigation positions in *Safe Harbor International* and *Griffin v. IRS* ignores the fact that the government routinely takes different positions in different cases, under Department of Justice leadership, based on the specific facts, parties, and settlement value presented—litigation decisions are made case by case. Critically, Movants present no evidence that any officer of the court made a false representation to the Court or that the Court was deceived into acting contrary to what it would have done with full information—the Court was aware of the outstanding jurisdictional question when it granted the dismissal, which it was obligated to do, and chose to do so anyway.

Movants' requested relief is also incoherent. Movants ask the Court to reopen a case they simultaneously insist the Court lacked jurisdiction to hear. But if the Court lacked jurisdiction, the

11

only thing it could do upon reopening is dismiss again—this time for want of jurisdiction. Either way the case ends, and either way the settlement, which does not depend on this Court's jurisdiction, stands. Movants thus seek an elaborate procedural exercise that changes nothing except to invite the Court to opine on matters outside its power.

3. **This Court Does Not Have the Authority To Review a Settlement Providing for the Voluntary Dismissal of a Case Before It.**

The Court's inherent power to act *sua sponte* under Rule 60(b) and Rule 60(d)(3) is reserved for cases where the court itself has been directly defrauded or where the integrity of its own proceedings has been demonstrably compromised. Here, the Court was not deceived—it expressly noted on May 18, 2026, that the Notice of Voluntary Dismissal did not reference any settlement, and that an outstanding question existed as to whether a case or controversy existed. The Court was therefore fully aware of the relevant circumstances at the time of dismissal, and chose to grant the dismissal as mandated by Rule 41(a)(1)(A)(i). *Sua sponte* relief is most appropriate where the court acted in ignorance of the fraud; where the court acted with full awareness of the circumstances, the case for *sua sponte* intervention is considerably weaker.

The Eleventh Circuit has addressed the standard for fraud on the court under Rule 60(d)(3), holding that an adverse ruling that a party characterizes as improper does not constitute the kind of "egregious misconduct" necessary to constitute fraud on the court. *Driessen v. Univ. of Miami Sch. of L. Child. & Youth L. Clinic*, 835 F. App'x 489, 492 (11th Cir. 2020). The Court's analysis underscores that not every procedural irregularity or unfavorable outcome qualifies as fraud on the court that warrants relief under Rule 60(d)(3). Movants' total mischaracterization of the voluntary dismissal as fraudulent, therefore, does not meet the demanding standard required to invoke the court's power to set aside a judgment, which does not exist here in the first place.

Moreover, Plaintiffs' actions do not constitute "egregious misconduct." This Court and this Circuit have determined that "only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated will constitute fraud upon the court.… Less egregious misconduct such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court." *In re Walker*, 356 B.R. 861, 868 (Bankr. S.D. Fla. 2006), *aff'd sub nom. Walker v. Lundborg*, No. 06-80810-CIV, 2007 WL 9701963 (S.D. Fla. Aug. 17, 2007), *aff'd sub nom. In re Walker*, 309 F. App'x 293 (11th Cir. 2009) (citing *Rozier,* 573 F.2d at 1338).

12

Movants claim that "[a]s courts around the country have repeatedly held, the Court also has authority to void the voluntary dismissal *sua sponte* under Rule 60(b)" and cite four circuit court decisions. *See* (DE 63) at *8-9. But none of those involved voluntary dismissals by plaintiffs. Movants' particular reliance on *McDowell* is misleading. That decision made clear that a court's power to provide relief "on its own motion" is bound by those circumstances where there is a "party or his legal representative" to be relieved. *McDowell v. Celebrezze*, 310 F.2d 43, 44 (5th Cir. 1962).

This Court does not have the inherent power to reopen self-executing voluntary dismissals under Rule 41 based on the objections of persons who have no cognizable interest in the underlying litigation, other than their vague objection to the settlement's terms. Indeed, Movants concede, as they must, that Rule 60(b)(3) seeks to prevent precisely the sort of fraud that prejudices *parties*. *See* STEVEN S. GENSLER, 2 FEDERAL RULES OF CIVIL PROCEDURE, RULES AND COMMENTARY § 60:22 (2025).

## C. Rule 11 Has No Application Here.

It is telling that the Movants did not move under Rule 11. Rule 11 is the recognized collateral mechanism that survives a Rule 41 dismissal and does not depend on subject-matter jurisdiction over the merits. *Cooter,* 496 U.S. at 395–96; *Willy v. Coastal Corp.*, 503 U.S. 131 (1992). But Rule 11 may be invoked only by a *party* (or by the court *sua sponte* under a procedural posture that does not exist here), and it carries a 21-day safe-harbor requirement. *See* Fed. R. Civ. P. 11(c)(2).

The Movants are not parties and could not satisfy the safe harbor. The Court's own initiative fares no better: even a *sua sponte* sanction is barred here, because Rule 11(c)(5)(B) bars a court from imposing a monetary sanction on its own initiative "unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims." No show-cause order was issued before Plaintiffs' May 18 Notice (DE 52) and the contemporaneous settlement— and none now can. The Advisory Committee made the rationale explicit: "Parties settling a case should not be subsequently faced with an unexpected order from the court leading to monetary sanctions that might have affected their willingness to settle or voluntarily dismiss a case." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment, *Amendments to the Federal Rules of Civil Procedure*, 146 F.R.D. 401, 592 (1993).

The Eleventh Circuit reviews court-initiated Rule 11 sanctions with "particular stringency," confining them to conduct "akin to contempt." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003); *see also* Jerold S. Solovy et al., *Sanctions Under Rule 11*, at 137 (Jenner & Block Practice Series 2010) (collecting authority that no *sua sponte* sanctions proceeding may be instituted after a case is settled or voluntarily dismissed). That limitation is deliberate. *Cooter & Gell* confirmed that a court retains power to entertain a *party's* Rule 11 motion notwithstanding a Rule 41(a)(1) dismissal, but the 1993 amendment separately constrained what a court may do on its own initiative, barring *sua sponte* monetary sanctions imposed after a settlement or voluntary dismissal. As contemporaneous commentary on the amendment explained, the new *sua sponte* provision "prohibits courts from imposing Rule 11 sanctions *sua sponte* after a case has been settled or voluntarily dismissed" unless the court issued the requisite show-cause order before settlement. Alan J. Belsky, *Frivolous Filings and the Penalty of Sanctions*, 22 U. Balt. L.F. 3, 8 (1992). No such show-cause order was issued.

The distinction is dispositive here: even if a party could have pursued Rule 11—and none has—the Court could not now reach the same end on its own initiative, because Plaintiffs' dismissal and settlement preceded any show-cause order. Movants' decision to bypass the one collateral tool actually designed to address attorney misconduct after dismissal, in favor of a Rule 60 vehicle that requires the party or directly-affected nonparty status they lack, confirms that the Movants' Motion is not a vindication of the Court's integrity but an attempt to manufacture standing where none exists. Stripped to its essence, any *sua sponte* theory that the Court might entertain reduces to two propositions, and neither supports the requested relief. The first is that the parties settled without submitting the agreement for the Court's review. But the Court had no authority to review or approve that settlement in the first place; a power that does not exist cannot have been evaded, and its non-exercise is neither a Rule 11 violation nor a fraud on the court. The second is that the litigation was collusive. It was not—Plaintiffs alleged a concrete statutory injury against a named defendant, and adversity does not evaporate merely because the parties agree on a legal question. And even if the suit were viewed as collusive (which it was not), the consequence would be dismissal for want of a case or controversy—precisely the posture of being finished that this case already occupies—not reopening to undo a settlement the Court never had power to review and that the Executive had independent authority to make. *See* 28 U.S.C. §§ 2414, 2672, 2677; 31 U.S.C. § 1304 (hereinafter "DOJ Settlement Authorities"). There is, in short, no credible

Rule 11 approach, and no credible fraud-on-the-court approach—only disagreement with an Executive settlement, which is not a basis for relief.

## II. The Settlement Was Not Collusive Because the United States Has Inherent Settlement Authority Outside Litigation.

Movants say that the "Settlement Agreement establishing the Anti-Weaponization Fund was not before the Court and the broad purported release of Plaintiffs' known and unknown liabilities was neither announced nor publicly released until after the case had been dismissed." Movants' Motion at 10. This informs their requested improper relief: "Setting aside the Notice and reopening the case in order to determine whether an actual case or controversy existed[.]" *Id*.

Movants' theory rests on the notion that a settlement is unlawful unless tethered to a live, fully adversarial case in which the court has confirmed its jurisdiction. That is not how government settlements work, and it never has been. The Department of Justice routinely compromises claims that are never litigated. *See* DOJ Settlement Authorities, *supra*. Under the Federal Tort Claims Act ("FTCA"), for example, agencies and the Attorney General routinely settle *administrative* claims before any suit is filed; the entire FTCA scheme presupposes pre-litigation settlement. *See* 28 U.S.C. § 2672 (administrative adjustment of claims); 28 U.S.C. § 2677 (compromise). Indeed, two FTCA claims were part of the settlement agreement in this case.

The Attorney General's authority under 28 U.S.C. § 2414 likewise extends to "compromise settlements" of claims and "imminent litigation" against the United States, and the Judgment Fund, 31 U.S.C. § 1304, has for decades been the appropriations source for settlements—including settlements of matters resolved without protracted, contested litigation.

Because the government can and routinely settles claims with or without a lawsuit, it is irrelevant whether Movants believe that this case presented a robust case or controversy. Regardless of whether Plaintiffs had ever filed this action, the Government and the Plaintiffs still had the power to resolve all disputes between the parties. *See* 26 U.S.C. § 7122 (authorizing compromise of tax liabilities); 31 U.S.C. § 3711 (authorizing compromise of federal claims). The Court had pre-dismissal awareness that settlement was likely. Order at 3, n.3. Further, as this Court was also aware, the Parties' Consent Motion for a 90-Day Extension and Incorporated Memorandum of Law ("Consent Motion," DE 40) stated, "Good cause exists to grant an extension in this matter while the Parties engage in discussions designed to resolve this matter and to avoid protracted litigation." Consent Motion at 2.

15

Movants' theory about the legal validity of the settlement under 28 U.S.C. § 2414 and 31 U.S.C. § 1304 is beyond the scope of the Rule 60 motion before this Court. Whether the settlement satisfies the statutory requirements for use of the Judgment Fund is a question for the Executive Branch, or, potentially, for a court with proper jurisdiction over a challenge to the settlement itself—not for this Court in the context of a Rule 60 motion filed by non-parties who lack standing. Tellingly, Movants acknowledge that "the Court need not decide that ultimate issue now," thereby conceding that the merits of the settlement's validity are not properly before the Court at this stage. *See, e.g.,* DE 63 at 4.

The existence of a genuine case or controversy at the time of filing is a separate question from whether the government's decisions were sound. The IRS was named as a defendant, Plaintiffs alleged concrete injuries from the disclosure of their tax return information (the unauthorized disclosure of return information is independently actionable, *see* 26 U.S.C. §§ 6103, 7431), and the Government's decision to settle rather than litigate does not by itself render the underlying claims fraudulent or the litigation collusive. Movants' characterization of the commission as "effectively controlled by the President," DE 63 at 2, is a contested characterization, not an established legal finding, and cannot support the extraordinary remedy of voiding a final judgment.

Movants assert that voiding the Notice of Voluntary Dismissal and reopening the case would preserve the status quo by rendering the settlement non-final while the Court completes its jurisdictional inquiry. Movants argue that the Judgment Fund is only available for "final" settlements under 31 C.F.R. § 256.1(a)(1), and a settlement premised on a voided dismissal would not be "final." That is wrong as a matter of law. The United States can administratively settle claims without judicial oversight. *See* DOJ Settlement Authorities, *supra*. Movants further argue that if the Court ultimately concludes that it lacked jurisdiction and dismisses on those grounds, such a dismissal would deprive the parties of their claimed justification for the settlement.

But Movants' status quo argument inverts the proper equitable analysis. The voluntary dismissal with prejudice was entered on May 18, 2026, and the settlement was announced shortly thereafter—the status quo as of the filing of this motion is that the case is closed and the settlement exists. Reopening the case does not preserve the status quo; it disrupts it. Moreover, Movants have not sought or obtained a temporary restraining order or a preliminary injunction, neither of which would be appropriate, and there is no basis for the Court to treat the mere filing of a Rule 60 motion

16

as automatically staying the implementation of the settlement. The argument that voiding the dismissal would render the settlement non-final under 31 C.F.R. § 256.1(a)(1) assumes the wrong conclusion—it presupposes that the Court will find fraud on the court, which has not been established. The equitable harm to the United States and to Plaintiffs from reopening a final judgment based on a non-party motion unsupported by clear and convincing evidence of fraud substantially outweighs any speculative benefit from the proposed judicial inquiry.

The validity of the settlement does not depend on this Court's jurisdiction over the dismissed action, and the dismissal did not result from collusion with anyone. Movants' quarrel is with the Executive Branch's exercise of its settlement authority—a quarrel that belongs, if anywhere, to the appropriations process, not to a Rule 60 motion by nonparties.

### III.    Movants' Motion Should Be Denied, and Any Further Intrusion Into Matters Beyond the Court's Jurisdiction Would Warrant Extraordinary Relief.

When all is said and done, Movants' Motion misstates its central authority, asks nonparties to be treated as parties, asks the Court to review a settlement it cannot review, and seeks reopening of a case that it concedes the Court could not hear. Any order granting the Motion—reopening the case, ordering jurisdictional discovery, or otherwise inquiring into the settlement—would exceed the Court's authority and would be subject to immediate correction by petition for writ of mandamus and/or appeal. *See, e.g., Cheney v. U.S. District Court*, 542 U.S. 367 (2004). The two triggers are concrete. Should the Court vacate the dismissal and reopen this terminated action, mandamus would lie at once, because reopening a case divested by a self-executing Rule 41(a)(1)(A)(i) notice exceeds the Court's power. Also, should the Court instead order discovery or any further inquiry into the unfiled settlement, mandamus would equally lie, because the Court has no jurisdiction to investigate a settlement it had no authority to review.

Either potential course sought by Movants would also transgress the party-presentation principle. As the Supreme Court reaffirmed only days ago, "Federal courts are not 'roving commissions' . . . licensed to 'sally forth each day looking for wrongs to right.'" *Margolin v. Nat'l Ass'n of Immigration Judges*, 608 U.S. ____ (2026) at 4 (U.S. May 26, 2026) (per curiam); *see United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020). A Rule 60 motion by nonparties, premised on a settlement the Court cannot review, is an invitation to precisely the roving inquiry the principle forbids. The parties respectfully reserve all rights to seek such relief should the Court depart from the limits of its jurisdiction.

IV.     **The Record Confirms that Plaintiffs' Claims Had Independent Merit, That the Parties Were Truly Adverse, and that There is No Evidence of Collusion.**

Even assuming *arguendo* that this Court has authority to entertain the Motion—which, as demonstrated above, it does not—Movants' charges of collusion, deception, and fraud on the Court fail on their own terms. The record in this case refutes those charges. Plaintiffs' claims rested on established statutory causes of action, the parties occupied inherently adversarial positions, and the decision to resolve the matter through settlement was rational and well within the government's authority. Movants offer nothing but speculation to the contrary.

**A. Plaintiffs' Claims Had Independent Merit.**

This lawsuit was legitimate. Plaintiffs brought claims under 26 U.S.C. § 7431 and the Privacy Act, 5 U.S.C. § 552a, arising from the unauthorized inspection and disclosure of their confidential tax returns by Charles Littlejohn, a former IRS contractor, who acted as an employee and who has been criminally convicted for that conduct. *See* Information, *U.S.A. v. Littlejohn*, Case No. 1:23-cr-00343-ACR (D.D.C. Sept. 29, 2023), ECF No. 1. Mr. Littlejohn admitted that he sought IRS employment specifically to access and disclose President Trump's tax information, and that he provided years of confidential returns to the New York Times and ProPublica for the express purpose of improperly influencing the 2020 presidential election. (Compl. ¶¶ 65–69.)

These were not novel or untested theories. In the related *Griffin v. IRS* matter, this Court already held that substantially identical allegations against the same defendants, arising from the same course of conduct by the same individual, were sufficient to allege such claims for liability under Section 6103. *See* Order Den. in Part and Granting in Part Mot. to Dismiss, *Kenneth C. Griffin v. Internal Revenue Service*, Case No. 22-cv-24023 (S.D. Fla. Apr. 22, 2024), ECF No. 108. Further, the IRS itself publicly acknowledged that it "failed to prevent Mr. Littlejohn's criminal conduct and unlawful disclosure." IRS News Release No. IR-2024-172 (June 25, 2024). The factual and legal foundation for Plaintiffs' claims was substantial. In *Griffin*, the IRS apologized to the Plaintiff, just as the IRS and the United States Government have agreed to apologize to President Trump as part of the settlement over the IRS and FTCA claims.

The Complaint also detailed over a decade of warnings from the Treasury Inspector General for Tax Administration ("TIGTA") regarding IRS's failure to maintain adequate safeguards over taxpayer data, warnings that went unheeded, and directly enabled Mr. Littlejohn's misconduct. (Compl. ¶¶ 32–47.) These were not allegations that the government could wave away,

18

and the notion that the lawsuit was filed solely to manufacture a predetermined settlement ignores the depth of the allegations and factual predicate set forth in the Complaint.

### B. The Parties Were Truly Adverse.

Movants' suggestion that the parties were not truly adverse is contradicted by the nature of the claims, the identity of the parties, and the posture of the litigation. Three of the four Plaintiffs—Donald J. Trump Jr., Eric Trump, and The Trump Organization, LLC—are private citizens and a private entity, respectively. They are not officers or employees of the federal government. They brought suit against federal agencies for the unauthorized disclosure of their confidential tax information. That posture, wherein private plaintiffs sue the United States for statutory violations, is inherently adversarial.

The claims, moreover, presented genuine legal complexity. The question of whether Mr. Littlejohn qualified as an "officer or employee" of the United States, as opposed to merely a contractor, was a contested issue that required application of a joint-employer analysis under federal common law. (Compl. ¶¶ 20–31.) The *Griffin* court addressed this precise question in its order on the motion to dismiss, and the answer was not self-evident. The existence of a genuinely disputed legal question at the threshold of liability undermines the premise that this case was a foregone conclusion from its inception.

That the government ultimately chose to resolve the matter through settlement rather than litigate to judgment does not retroactively render the parties non-adverse. The Department of Justice settles cases against the United States routinely when it determines that settlement serves the interests of the federal government and avoids the costs and uncertainty of continued litigation. *See* 26 U.S.C. § 7122; 31 U.S.C. § 3711. Settlement is not evidence of collusion, which did not exist; it is evidence of a rational litigation decision.

Even on its own terms, Movants' Motion's "no case or controversy" insinuation fails. The Supreme Court has squarely held that Article III adversity persists so long as the defendant has not given the plaintiff the relief it seeks. In *United States v. Windsor*, 570 U.S. 744 (2013), the United States agreed with the plaintiff that the Defense of Marriage Act was unconstitutional, yet the Court found a justiciable controversy because the government continued to enforce the statute and had not refunded the estate tax the plaintiff sought. *Id.* at 757–62. Concrete, unresolved stakes—not disagreement on every legal proposition—supply adversity. Similarly, *United States v. Nixon*, 418 U.S. 683 (1974), rejected the argument that an intra-Executive Branch dispute was

nonjusticiable, holding that genuine adverse interests over a concrete demand sufficed. *Id.* at 692–97. The principle is not new. In *INS v. Chadha*, 462 U.S. 919 (1983), the Court held the controversy justiciable even though the INS agreed with Chadha that the one-house legislative veto was unconstitutional, because concrete adverse consequences continued to flow from the judgment. *Id.* at 939. Movants' implication that shared positions on a legal question necessarily negate jurisdiction is contrary to controlling precedent.

### C. Movants Offer No Evidence of Collusion or Fraud.

Stripped of rhetoric, Movants' allegations of collusion rest entirely on inference and speculation. They point to the government's litigation posture: the absence of filed appearances, the scope of the settlement, and the decision not to assert defenses that were available in parallel litigation. Based on these bare-bones assertions, they ask the Court to wrongly conclude that the entire case was a sham. But none of these facts, individually or collectively, constitute evidence of collusion, much less the clear and convincing evidence required to establish fraud on the court. *See, e.g., Booker v. Dugger*, 825 F.2d 281, 283–84 (11th Cir. 1987) (fraud on the court "must be established by clear and convincing evidence" and "conclusory averments" do not suffice).

The Government's decision not to raise every available defense is a litigation judgment, not a badge of fraud. Defendants in civil cases routinely elect not to contest certain claims for strategic, economic, or institutional reasons, including the entirely rational conclusion that the cost of defense exceeds the cost of settlement. The fact that the IRS may have identified viable defenses in internal memoranda does not mean it was obligated to assert them, and the decision not to do so does not give rise to an inference of collusion. Movants cite no authority whatsoever, and Plaintiffs are aware of none, holding that a defendant's decision to settle rather than litigate available defenses constitutes fraud on the court.

In sum, the Movants' position amounts to the assertion that because they disagree with the government's decision to settle, the settlement must have been collusive. That is not a legal standard. It is a policy objection dressed as a fraud claim, and it does not warrant the extraordinary remedy of reopening a closed case, which, in any event, this Court does not have the power to do.

### CONCLUSION

For the foregoing reasons, Movants' Motion should be summarily denied.

Dated: June 12, 2026                    Respectfully submitted,

**BRITO, PLLC**
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Office: 305-614-4071
Fax: 305-440-4385

By: /s/ Alejandro Brito
ALEJANDRO BRITO
Florida Bar No. 098442
Email: abrito@britopllc.com

/s/ Richard C. Klugh
RICHARD C. KLUGH
Florida Bar No. 305294
Email: rklugh@klughlaw.com

/s/ Daniel Z. Epstein
DANIEL Z. EPSTEIN
D.C. Bar No. 1009132
EPSTEIN & CO. LLC
Email: dan@epsteinco.co

*Counsel to Plaintiffs President*
*Donald J. Trump et al.*

21

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 12, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Alejandro Brito
ALEJANDRO BRITO
Florida Bar No. 098442

22