IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

PRESIDENT DONALD J. TRUMP, *et al.*,

      *Plaintiffs*,

      v.

INTERNAL REVENUE SERVICE, *et al.*,

      *Defendants*.

Case No. 26-cv-20609-WILLIAMS/LETT

**REPLY IN SUPPORT OF MOTION FOR RELIEF FROM JUDGMENT OR ORDER, OR, IN THE ALTERNATIVE, FOR LEAVE TO APPEAR AS *AMICI CURIAE* BY THIRTY-FIVE FORMER FEDERAL JUDGES**

**TABLE OF CONTENTS**

ARGUMENT........................................................................................................... 1

I.  Plaintiffs' Merits Arguments Miss the Point: The Evidence Before the
Court Is Clear and Convincing, and More than Enough to Warrant Further
Investigation...................................................................................................... 1

    A.  The Settlement's Context and Contents Are Evidence of Fraud................. 1

    B.  The Evidence of Collusion and Lack of True Adversity Is Strong. ............ 3

II.  This Court Has Expansive Authority to Investigate Fraud Perpetrated
Upon It. ............................................................................................................. 4

III.  If the Court Determines There Has Been a Fraud on the Court, It Has
Authority to Issue Appropriate Relief................................................................. 7

    A.  The Court Has Power Under Rule 11 to Impose Sanctions. ....................... 7

    B.  The Court Has Authority Under Rule 60 to Vacate the Rule 41 Dismissal. 8

    C.  The Court Has Inherent Powers to Remedy a Fraud on the Court. ............ 9

CONCLUSION .................................................................................................... 10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. Alderman*,
   158 F.3d 516 (11th Cir. 1998) ........................................................................................7

*Bleecher v. Nightingale Nurses*,
   2010 WL 3834655 (S.D. Fla. Sept. 28, 2010) ................................................................7

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991)...................................................................................................5, 9, 10

*Cheney v. U.S. Dist. Court*,
   542 U.S. 367 (2004)........................................................................................................6

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990)......................................................................................................6, 7

*Duran v. Carris*,
   238 F.3d 1268 (10th Cir. 2001) .....................................................................................5

*Estrada v. FTS USA*,
   810 F. App'x 743 (11th Cir. 2020) ................................................................................8

*Fort Knox Music Inc. v. Baptiste*,
   257 F.3d 108 (2d Cir. 2001)............................................................................................9

*Fox v. Acadia State Bank*,
   937 F.2d 1566 (11th Cir. 1991) .....................................................................................7

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*,
   322 U.S. 238 (1944).....................................................................................................6, 10

*In re E.I. DuPont De Nemours & Co.–Benlate Litig.*,
   99 F.3d 363 (11th Cir. 1996) .......................................................................................5, 6

*Johnson v. 27th Ave. Caraf, Inc.*,
   9 F.4th 1300 (11th Cir. 2021) ........................................................................................8

*JTR Enterprises, LLC v. An Unknown Quantity*,
   93 F. Supp. 3d 1331 (S.D. Fla. 2015) ...........................................................................10

*Laremont-Lopez v. Se. Tidewater Opportunity Ctr.*,
   968 F. Supp. 1075 (E.D. Va. 1997) ...............................................................................5

*Love v. Wal-Mart Stores, Inc.*,
   865 F.3d 1322 (11th Cir. 2017) (Anderson, J., concurring) ....................................................9

*Martin v. Automobili Lamborghini Exclusive, Inc.*,
   307 F.3d 1332 (11th Cir. 2002) ...........................................................................................5

*Massengale v. Ray*,
   267 F.3d 1298 (11th Cir. 2001) ...........................................................................................8

*McDowell v. Celebrezze*,
   310 F.2d 43 (5th Cir. 1962) .................................................................................................9

*Root Refining Co. v. Universal Oil Products Co.*,
   169 F.2d 514 (3d Cir. 1948).............................................................................................5, 6

*Rozier v. Ford Motor Co.*,
   573 F.2d 1332 (5th Cir. 1978) .............................................................................................9

*Sciaretta v. Lincoln Nat'l Life Ins. Co.*,
   778 F.3d 1205 (11th Cir. 2015) .........................................................................................10

*Spence-Parker v. Maryland Ins. Grp.*,
   937 F. Supp. 551 (E.D. Va. 1996) .....................................................................................10

*Sullivan v. Tobin*,
   42 App. D.C. 430 (D.C. Cir. 1914)....................................................................................10

*Travelers Indem. Co. v. Gore*,
   761 F.2d 1549 (11th Cir. 1985) ...........................................................................................8

*Trump v. Clinton*,
   653 F. Supp. 3d 1198 (S.D. Fla. 2023) ..............................................................................10

*United States v. Adams*,
   Dkt. 177, No. 1:24-cr-556 (S.D.N.Y. Apr. 2, 2025)............................................................6

*United States v. Beggerly*,
   524 U.S. 38 (1998).............................................................................................................2

*United States v. Nixon*,
   418 U.S. 683 (1974)...........................................................................................................2

*Universal Oil Prods. Co. v. Root Refining Co.*,
   328 U.S. 575 (1946).....................................................................................................1, 5, 6

*Waetzig v. Halliburton Energy Servs., Inc.*,
   604 U.S. 305 (2025)...........................................................................................................9

iii

**Statutes**

26 U.S.C. § 7122 ................................................................................................................3

28 U.S.C. § 1927 ................................................................................................................5

28 U.S.C. § 2414 ................................................................................................................3

31 U.S.C. § 3711 ................................................................................................................3

31 U.S.C. § 3711(c) ...........................................................................................................3

**Rules**

Fed. R. Civ. P. 11 ....................................................................................................... *passim*

Fed. R. Civ. P. 53 ...............................................................................................................5

Fed. R. Civ. P. 54 ...............................................................................................................9

Fed. R. Civ. P. 54(a) ..........................................................................................................9

Fed. R. Civ. P. 60 ....................................................................................................... *passim*

Plaintiffs' filing only underscores the need to investigate whether the parties have perpetrated a fraud on this Court and corrupted the integrity of the judicial process. After Plaintiffs filed the lawsuit, they moved this Court—with Defendants' consent—to exercise its "inherent authority" to pause proceedings for the parties to engage in "discussions designed to resolve this matter." Dkt. 40. This device postponed Defendants' obligations to answer or move for dismissal. When this Court directed the parties to address whether the parties to this case were actually adverse, they evaded their obligation to respond. Dkt. 41. Two days before the Court's deadline, they signed "settlement" papers that invoked this lawsuit as the premise for the settlement, and Plaintiffs filed a Rule 41(a) dismissal notice purporting to strip the Court of all power to investigate and decide whether the rationale for the settlement was a collusive and non-adversarial lawsuit. Plaintiffs even warned the Court that "[u]pon the filing of this Notice, no judicial analysis is appropriate . . . ." Dkt. 52 at 2. There is reason to believe the parties used this suit and subsequent settlement to give cover for a give-away to the lead Plaintiff, who also controls the Defendants. Plaintiffs now seek to complete that deeply concerning process by insisting that the Court can do nothing.

Plaintiffs are wrong. Their attack on Movants' standing and motivation is irrelevant; the Court has broad *sua sponte* authority to unearth potential fraud on the Court, a power that is "beyond question." *Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946). Plaintiffs' attempted defense of the merits of their suit and validity of the settlement is self-defeating. And Federal Rules of Civil Procedure 11 and 60 along with the Court's inherent authority supply it with options for appropriate relief.

<strong>ARGUMENT</strong>

**I.     Plaintiffs' Merits Arguments Miss the Point: The Evidence Before the Court Is Clear and Convincing, and More than Enough to Warrant Further Investigation.**

At issue here are the parties' extraordinary actions: an obviously collusive suit; an unprecedented, clearly unwarranted settlement premised on the supposed legitimacy of that suit; active steps to prevent the Court from scrutinizing the legitimacy of their invocation of the judicial process; and now, the Justice Department unilaterally walking away from the huge settlement slush fund, even as it keeps the Plaintiffs' broad personal release.

**A. The Settlement's Context and Contents Are Evidence of Fraud.**

Plaintiffs' assertion that "[t]he fact that a settlement was negotiated and announced after the dismissal does not transform this lawful procedural act into some sort of fraud," Opp. at 11, is

1

factually wrong and conceptually misguided.[1] As a factual matter, the notice of dismissal was an express condition of the signed settlement though it is unknown whether the dismissal came before or after the settlement was signed. *See* Dkt. 63-1 § XI.

In any event, Movants are not contending that every time a settlement is negotiated or announced after a case is dismissed, fraud had to have occurred, or that "filing a Rule 41 dismissal without disclosing settlement terms constitutes a 'fraud on the court'" Opp. at 8. To the contrary, Movants' concern is that the unique facts before the Court in *this* case strongly indicate possible corruption of the judicial process and fraud on the court. The unprecedented settlement is evidence of that fraud in this case. After all, here, unlike in the vast run of cases (including the *Dominion* case, Opp. at 8-9), the Plaintiff controls the Defendants. The Court therefore rightly expressed serious concerns about collusion and lack of adversity and established a process to probe it; the parties then entered into a "settlement," premised on this very lawsuit, unlocking almost $2 billion from the Judgment Fund and granting releases far in excess of normal releases afforded by the Department of Justice; the Plaintiffs contrived to preserve their right to dismiss unilaterally and then dismissed the suit in a transparent effort to terminate the Court's inquiry; and then, when criticized, Defendants purported to walk away from major portions of the settlement unilaterally.

Elsewhere, Plaintiffs observe that the Government is permitted to take different positions in different cases, Opp. at 11, is permitted to settle cases, Opp. at 19, and is not required to raise every available defense, Opp. at 20. All of this misses the point. Here, where the same party controls both sides of the litigation; where an apparently collusive suit was employed to confer enormous benefits from the defendant United States to the Plaintiffs; where the parties took several steps to avoid judicial scrutiny of their actions; and where settlement terms have since been unilaterally abandoned, the settlement becomes relevant to the Court's inquiry whether a fraud has occurred. None of the cases Plaintiffs mention involved such facts. In fact, in *United States v. Nixon*, 418 U.S. 683 (1974), the plaintiff (there, the Special Prosecutor) was expressly insulated from presidential control. *Id.* at 694-95. Here, as the Court has already observed, Plaintiff has asserted complete control over the Defendants. *See* Dkt. 41 at 3 n.2 ("One such employee of the

---

[1] Plaintiffs' citation to *United States v. Beggerly*, 524 U.S. 38, 47 (1998) is puzzling as it says nothing about settlements negotiated or announced after a dismissal. *Beggerly* is about the availability of "independent actions" outside of Rule 60; the Court expressly declined to decide whether the facts of that case meet the standard for Rule 60(b)(3). *Id.* at 47.

executive branch, the Attorney General, has a statutory obligation to defend the IRS when it is hailed into court, but then is ostensibly required by executive mandate to adhere to the President's opinion on a matter of law in such a case.").

That the Government may settle claims outside of litigation does not help the Plaintiffs. First, that is not what happened here. As Movants have pointed out, the parties expressly affirmed that this lawsuit was the purported legal justification for their "settlement." Mot. at 3-4. If Plaintiffs believe they can effectuate all the parts of their "settlement" without the existence of this lawsuit, they would not have tried so mightily to evade this Court's inquiry into lack of jurisdiction. Second, no authority permits the Government to settle truly non-adverse cases. The statute permitting the Attorney General to settle "imminent litigation," for example, does not extend such authority to situations where there is no actual dispute to "compromise." 28 U.S.C. § 2414. The same is true for the statutes authorizing the compromise of tax liabilities and federal claims. *See* 26 U.S.C. § 7122; 31 U.S.C. § 3711. For all these statutes, it beggars belief that Congress intended to open the Treasury to "settlements" orchestrated by the same party controlling both sides of the collusive "dispute." *See, e.g.*, 31 U.S.C. § 3711(c) ("A compromise under this section is final and conclusive ***unless gotten by fraud***, misrepresentation, presenting a false claim, or mutual mistake of fact.").

To be clear, Movants are not contending that "a settlement is unlawful unless tethered to a live, fully adversarial case in which the court has confirmed its jurisdiction." Opp. at 15. Movants are making a much narrower point: the Attorney General cannot unlock the Judgment Fund, or provide any other consideration premised on litigation risk, where the party opposing the Government also controls the relevant Government defendants and counsel. Plaintiffs can cite no case to the contrary. And their complaint that "Movants' characterization of the [Internal Revenue Service] as 'effectively controlled by the President' is a contested characterization, not an established legal finding," Opp. at 16, merely highlights the obvious need for the Court to complete the investigation and analysis that Plaintiffs tried to short-circuit with their Rule 41(a) dismissal.

**B. The Evidence of Collusion and Lack of True Adversity Is Strong.**

Since Movants filed their motion, evidence of collusion and fraud on the Court has only gotten stronger. Just one week later, the Department of Justice claimed it would no longer create the $1.776 billion "Weaponization Fund." That one "side" of the purported dispute could unilaterally scrap a material term without even so much as a revised written agreement makes it

3

crystal clear that these parties were never adverse.[2] Instead, this suit was collusive from the start: the same person controlled it on both sides of the "v": President Trump. *See* Dkt. 41 at 3; Dkt. 45 at 2-6, 9-14; Dkt. 54-1 at 4-7. DOJ's failure to raise dispositive winning defenses while "settling" the case for an astronomical sum of taxpayer dollars and extraordinarily broad releases to plaintiffs just days before having to answer this Court's questions about collusiveness is further evidence of both collusion and fraud on the court.

Indeed, Plaintiffs' briefing only proves Movants' point. Plaintiffs' argument that civil defendants routinely settle rather than litigate based on "the entirely rational conclusion that the cost of defense exceeds the cost of settlement," Opp. at 20, is laughable given the facts of this case: a settlement worth nearly $1.8 billion in taxpayer funds plus a capacious and extraordinary general release that purports to forfeit claims for substantial sums in unpaid taxes and other potential damages and fines. This monumental relief dwarfs any conceivable "cost of defense." And on the identity of the parties, Plaintiffs' only response is suggesting that including the President's sons and business in the lawsuit somehow solves the problem. *See* Opp. at 19. It does not. The individual plaintiffs are (1) from the same family who (2) are business partners with the same financial interests and counsel, that (3) own or manage the corporate plaintiff. More importantly, Plaintiffs have no answer for the fact that the lead Plaintiff, President Trump, directs and controls the Defendants. That alone renders this lawsuit non-adversarial, collusive, and jurisdictionally improper. Finally, Plaintiffs' attempts to beef up the merits of their underlying claims come up short. Conspicuously absent is any explanation of how they could overcome the statute of limitations defense that would eviscerate liability. *See, e.g.*, Dkt. 54-1 at 7-9. The decision by Defendants to agree to an unprecedented monetary settlement and release rather than assert obviously winning defenses is strong evidence of collusion.

## II.   This Court Has Expansive Authority to Investigate Fraud Perpetrated Upon It.

This Court has expansive authority to *investigate* alleged fraud upon it. That authority—unaddressed by Plaintiffs—is separate and independent from the determination of *consequences* that the Court may impose to remedy fraud. *See infra* Section III (describing potential remedies). Given the significant evidence that this lawsuit is collusive and the parties have committed fraud on the court, the Court should conduct investigatory proceedings.

---

[2] *See* Hailey Fuchs & Jordan Carney, *'Anti-Weaponization Fund' is dead, acting AG says*, Politico (Jun. 2, 2026), https://www.politico.com/news/2026/06/02/todd-blanche-anti-weaponization-fund-00947083.

A federal court possesses the inherent power to determine whether its own processes have been subverted by fraud. The Supreme Court has described that power as "beyond question," explaining that "[t]he power to unearth such a fraud is the power to unearth it effectively." *Universal Oil Prods.*, 328 U.S. at 580. A court "may bring before it by appropriate means all those who may be affected by the outcome of its investigation" as long as "the usual safeguards of adversary proceedings" are observed. *Id.* A federal court's inherent powers flow from its control over "the orderly and expeditious disposition of cases," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)). Thus, "[e]very district court 'has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud.'" *In re E.I. DuPont De Nemours & Co.–Benlate Litig.*, 99 F.3d 363, 367 (11th Cir. 1996) (quoting *Chambers*, 501 U.S. at 44); *see also id.* (concluding that district court had jurisdiction to investigate fraud in a case that was dismissed). Importantly, the court's inherent authority augments but is independent of authorities under statutes and court rules, such as the Federal Rules of Civil Procedure and 28 U.S.C. § 1927. *Chambers*, 501 U.S. at 46 ("[W]hereas each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses"; "[a]t the very least," it "fill[s] in the interstices.").

The Court's inherent authority provides it with a wide range of investigative tools to determine whether it has been a victim of fraud. It can hold evidentiary and show cause hearings to make factual findings. *See, e.g.*, *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1334-36 (11th Cir. 2002) (affirming in part the imposition of sanctions after "many hearings" and the issuance of a 50-page report as to fraud on the court); *DuPont*, 99 F.3d at 366-67 (multi-day show cause hearing prior to issuing sanctions). It can inquire into the conduct of non-parties, including attorneys, who have not entered an appearance before the Court. *See Root Ref. Co.*, 169 F.2d at 518 ("A federal court may bring before it by appropriate means all those who may be affected by the outcome of its investigation."); *see also Duran v. Carris*, 238 F.3d 1268, 1271 (10th Cir. 2001) (describing show cause order to non-signing attorney for ghost writing *pro se* brief); *Laremont-Lopez v. Se. Tidewater Opportunity Ctr.*, 968 F. Supp. 1075, 1078 (E.D. Va. 1997) (same). And it can appoint a special master or *amici* to help administer and facilitate the fraud inquiry. *See Universal Oil Prods. Co.*, 328 U.S. at 580-81 (discussing appointment of special master and *amici* in fraud inquiries); Fed. R. Civ. P. 53(a)(1)(B) (allowing court to appoint a special master to "make or recommend findings of fact on issues to be decided without a jury" if warranted

5

by "some exceptional condition"); *see also United States v. Adams*, Dkt. 177, No. 1:24-cr-556 (S.D.N.Y. Apr. 2, 2025), at 23-24 (appointment of *amici* in criminal case to ensure adversity).

Contrary to Plaintiffs' suggestions, the Court's investigatory power is not defeated by a voluntary dismissal. The court retains jurisdiction to vindicate its integrity even after the underlying action has ended. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) (explaining in Rule 11 context that "whether the attorney has abused the judicial process" may be determined "after the principal suit has been terminated"); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944) ("[For] after-discovered fraud, relief will be granted against judgments regardless of the term of their entry."); *DuPont*, 99 F.3d at 365-68 (upholding district court's authority to commence investigation a year and a half after settlement and dismissal). The Third Circuit made this point clear in *Root Refining Co. v. Universal Oil Products Co.*, 169 F.2d 514 (3d Cir. 1948), by upholding "the inherent power of a court to inquire into the integrity of its own judgments." *Id.* at 521. Even when a prior case "has been terminated by a judgment," the judgment's "freedom from fraud may always be the subject of further judicial inquiry." *Id.* at 521-22. Were it otherwise, a court would be powerless to vindicate the integrity of the court system or deter misconduct merely because the perpetrators of the fraud acted quickly to dismiss the case.[3]

Plaintiffs also spill much ink on whether Movants have standing, Dkt. No. 89 at 9-11, but that is a red herring. As previously stated, the Court has *sua sponte* power to investigate fraud perpetrated upon it—under its inherent authority, Rule 11, or Rule 60. Dkt. No. 63 at 8. That power does not depend on any litigant's motion or standing. After all, the Court's ability to vindicate its own interest in the integrity of the judicial process "does not concern only private parties." *Hazel-Atlas Glass*, 322 U.S. at 246; *see also Universal Oil*, 328 U.S. at 580 (noting inquiry into fraud initiated by nonparties). Movants' submissions serve only to bring the relevant facts to the Court's attention, and Movants' status has no bearing on the Court's *sua sponte* authority. Regardless, Movants have standing due to the extraordinary circumstances of this case. Mot. at 6-7. Finally, Plaintiffs argue that a court cannot act if no "officer of the court made a false representation" or if

---

[3] Plaintiffs are thus wrong to threaten that even "inquiring into the settlement" would be subject to a petition for a writ of mandamus. Dkt. No. 89 at 17. "[T]o ensure that the writ will not be used as a substitute for the regular appeals process," mandamus requires a showing of "no other adequate means to attain the relief." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004) (citations omitted). The court's inquiry develops the record on which any later consequence will turn; the inquiry is not itself the imposition of a consequence that could be subject to mandamus or appeal.

a court has not been "deceived into acting contrary to what it would have done with full information." Opp. at 11. But contriving to dismiss a collusive lawsuit to avoid judicial scrutiny while invoking that same lawsuit to provide legal and political cover to a massive give-away "settlement" is certainly evidence of "egregious conduct that corrupts the judicial process itself." Opp. at 11.[4] Moreover, in presenting the suit as within the contours of Article III, Plaintiffs may well have made material misrepresentations or omissions.

III.   **If the Court Determines There Has Been a Fraud on the Court, It Has Authority to Issue Appropriate Relief.**

Plaintiffs acknowledge that the Court has "inherent power to act *sua sponte*" when the integrity of its own proceedings have been demonstrably compromised. Opp. at 12. Movants agree. Should the Court's investigation reach that conclusion on the facts, the Court has ample authority under Rule 11, Rule 60, and its inherent authority to issue remedies.

**A. The Court Has Power Under Rule 11 to Impose Sanctions.**

Rule 11(b) authorizes sanctions for a range of bad faith conduct, including where a submission was "filed in bad faith for an improper purpose" under Rule 11(b)(1); the pleadings were "based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law" under Rule 11(b)(2); or there was "no reasonable factual basis" for the pleadings under Rule 11(b)(3). *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). A bad faith or improper purpose might include collusively filing a lawsuit with claims subject to multiple dispositive defenses solely to provide cover for a collusive settlement.

Plaintiffs are wrong to assert that the Court cannot consider Rule 11 sanctions on its own initiative simply "because Plaintiffs' dismissal and settlement preceded any show-cause order." Opp. at 14. "[A] voluntary dismissal does not expunge the Rule 11 violation." *Cooter*, 496 U.S. at 394-95. "[A] plaintiff's voluntary dismissal of an action under Rule 41(a)(1)(i) does not deprive a district court of jurisdiction to impose Rule 11 sanctions." *Fox v. Acadia State Bank*, 937 F.2d 1566, 1569 n.2 (11th Cir. 1991). Rule 11(c)(5), on which Plaintiffs rely, addresses only "*monetary* sanctions." Rule 11(c)(3), however, specifically provides that "[o]n its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has

---

[4] Plaintiffs appear to cite *Bleecher v. Nightingale Nurses*, 2010 WL 3834655 (S.D. Fla. Sept. 28, 2010), for the supposed proposition that "[f]raud on the court requires egregious conduct that corrupts the judicial process itself," Opp. at 11. *Bleecher* does not mention "fraud on the court," "egregious conduct," or "corrupt[ing] the judicial process" or anything close to it.

7

not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). And Rule 11(c)(5)(B) imposes only a narrow limit on that power, namely that the court may not impose "a *monetary sanction . . .* on its own initiative, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement." Under the plain language of the Rule, therefore, the Court may *sua sponte* issue a show-cause order to consider *non-monetary* sanctions after a voluntary dismissal or settlement.

The Court has at its disposal a wide range of nonmonetary sanctions, including "striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; . . . referring the matter to disciplinary authorities," as well as ordering the "dismissal of a claim, preclusion of a defense, or preparation of amended pleadings." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. Rule 11 empowers courts to impose sanctions sufficient "to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Courts have significant discretion in fashioning those sanctions. *See, e.g.*, *Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001) ("[T]he type of sanction to be imposed lies within the district court's sound exercise of discretion." (citation omitted)).

Rule 11 also "permits the court to consider whether other attorneys in the firm, co-counsel, other law firms, or the party itself should be held accountable for their part in causing a violation." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment; *see also Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1315 (11th Cir. 2021) ("[W]here the client . . . is the 'mastermind' behind the frivolous case, sanctions against a client are appropriate."). When appropriate, the court can determine "whether the sanction should be imposed on such persons, firms, or parties either in addition to or, in unusual circumstances, instead of the person actually making the presentation to the court." *Id.*; *see also Estrada v. FTS USA*, 810 F. App'x 743, 744 (11th Cir. 2020) (affirming Rule 11 sanctions on attorney and "his firm"). Thus, non-appearing lawyers who colluded with appearing lawyers or parties to violate Rule 11 may still be subject to the Court's authority.

**B. The Court Has Authority Under Rule 60 to Vacate the Rule 41 Dismissal.**

Plaintiffs concede that the Court has "inherent power to act *sua sponte* under Rule 60(b) and Rule 60(d)(3)" where the facts support it. Opp. at 12. That includes an action "which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication[.]" *Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1551 (11th Cir. 1985) (quoting 7 Moore's Federal Practice ¶ 60.33). It also encompasses an "unconscionable plan

8

or scheme" perpetrated upon the court. *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978) (quoting *England v. Doyle*, 281 F.2d 304, 309 (9th Cir. 1960)).

The Court plainly has the power to act *sua sponte* pursuant to Rule 60(d)(3), which states that Rule 60 "does not limit a court's power to . . . set aside a judgment for fraud on the court."[5] Fed. R. Civ. P. 60(d)(3). As Movants have stated, "courts around the country have repeatedly held" that "the Court also has authority to void the voluntary dismissal *sua sponte* under Rule 60(b)." Mot. at 8; *see, e.g.*, *Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108, 110-11 (2d Cir. 2001).

Moreover, any suggestion that "voluntary dismissals by plaintiffs" would strip courts of their ability to act *sua sponte* under Rule 60(b), Opp. at 13, is wrong. *Waetzig v. Halliburton Energy Servs., Inc.*, 604 U.S. 305 (2025), squarely held that Rule 41 dismissals are subject to Rule 60(b), making clear that Rule 41(a) dismissals "count[] as . . . 'final proceeding[s]' under Rule 60(b)." Thus, "[w]hen the requirements of Rule 60(b) are satisfied, a district court may relieve a party from such a dismissal and reopen the case." *Id.; see* also *Love v. Wal-Mart Stores, Inc.,* 865 F.3d 1322, 1327-28 (11th Cir. 2017) (Anderson, J., concurring) ("[I]t is broadly accepted that courts retain jurisdiction to consider motions to reopen the judgment under Rule 60(b) after a Rule 41(a)(1) dismissal."). Nothing in the Supreme Court's reasoning suggests limiting the Court's *sua sponte* authority to act under Rule 60(b). *See generally Waetzig*, 604 U.S. at 319. Thus, if the Court finds there has been a fraud on the Court, it can set aside the dismissal under either Rule 60(b) or Rule 60(d)(3). And contrary to Plaintiffs' contention, Opp. at 13, the Fifth Circuit's ruling in *McDowell v. Celebrezze*, 310 F.2d 43 (5th Cir. 1962), never suggests that reconsideration must be in response to the objections of a party. The *McDowell* district court acted on its own motion, and the Court of Appeals emphasized that the "[j]udge on his own and in time face[d] up to the error and correct[ed] it by effective action." 310 F.2d at 44. Thus, *McDowell* concluded that "on motion" for the purposes of Rule 60 can include a *sua sponte* "Notice of Rehearing." *Id.*

### C. The Court Has Inherent Powers to Remedy a Fraud on the Court.

Finally, the Court's inherent authority is intended to reach circumstances in which Rule 11 and other mechanisms are insufficient to address the conduct at issue. *Chambers*, 501 U.S. at 50-

---

[5] Eleventh Circuit precedent supports the conclusion that a voluntary dismissal *with* prejudice under Rule 41 is a "judgment" subject to Rule 60(d)(3). Under Rule 54(a) a "judgment" throughout the Federal Rules includes "a decree or any order from which an appeal lies." Fed. R. Civ. P. 54(a). *Love v. Wal-Mart Stores* held that a Rule 41 stipulated dismissal with prejudice was "the judgment or order appealed from[.]" 865 F.3d 1322, 1325 (11th Cir. 2017) (citing Fed. R. App. P. 4).

51. That authority gives courts the power "to punish conduct which abuses the judicial process" and fashion "an appropriate sanction, from dismissal of a lawsuit to an assessment of attorney's fees." *Id.* at 44-45. A court can use its inherent authority to sanction conduct that evinced "bad faith and an attempt to perpetrate a fraud on the court." *Id.* at 51. And the Court does not need to "apply Rules and statutes containing sanctioning provisions to discrete occurrences before invoking inherent power to address remaining instances of sanctionable conduct" in cases "in which all of a litigant's conduct is deemed sanctionable[.]" *Id.*

Precisely because it addresses schemes that fall in the cracks between existing statutory mechanisms, the Court's inherent authority confers broad power to remedy fraudulent conduct and sanction litigants and attorneys, *Trump v. Clinton*, 653 F. Supp. 3d 1198, 1209-10 (S.D. Fla. 2023), and even non-parties, *JTR Enterprises, LLC v. An Unknown Quantity*, 93 F. Supp. 3d 1331, 1366-67 (S.D. Fla. 2015) (finding a non-party could be reached by the court's inherent power to sanction bad-faith litigation conduct); *see also Sciaretta v. Lincoln Nat'l Life Ins. Co.*, 778 F.3d 1205 (11th Cir. 2015) (affirming sanctions issued against a non-party). Under its inherent authority, the Court can invalidate a judgment obtained through a fraud on the court. *Hazel-Atlas Glass*, 322 U.S. at 244-45. A court's power in such cases is expansive: "whatever form the relief has taken in particular cases, the net result in every case has been the same: where the situation has required the court has, in some manner, devitalized the judgment[.]" *Id.* at 254. In considering whether a fraud has occurred, the Court can take into account any "attempt[s] to deprive this Court of jurisdiction by acts of fraud," including acts "performed outside the confines of this Court[.]" *Chambers,* 501 U.S. at 32, 41.

Courts across the country have also affirmed courts' power to address settlements as frauds on the court. *See Spence-Parker v. Maryland Ins. Grp.*, 937 F. Supp. 551, 562 (E.D. Va. 1996) (addressing as "constructive fraud" a consent-decree following a settlement discovered to have been non-adversarial); *Sullivan v. Tobin*, 42 App. D.C. 430, 434-35 (D.C. Cir. 1914) (remedying a collusive settlement where there was no consent decree).

## CONCLUSION

This Court should investigate whether the parties and their counsel have perpetrated a fraud on the court or other sanctionable conduct, which would merit dismissal for lack of subject matter jurisdiction and any other appropriate relief.

June 19, 2026

Respectfully submitted,

/s/ Matthew J. Platkin

Matthew J. Platkin*
Angela Cai*
Ravi Ramanathan*
Aaron E. Haier*
Conor Bradley*
**PLATKIN LLP**
413 Washington Ave.
Unit 174
Belleville, NJ 07109
Phone: (973) 561-1951
Email: mplatkin@platkinllp.com

Neal S. Manne*
Justin A. Nelson*
Stephen Shackelford, Jr.*
Davida Brook*
Daniel J. Shih*
Zach Savage*
Glenn Bridgman*
Jillian Hewitt*
Nick Carullo*
Russell Rennie*
**SUSMAN GODFREY L.L.P.^**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: 1-713-653-7802
Email: jnelson@susmangodfrey.com

*Counsel for Movants / Amici Curiae Judge Michael Luttig (Ret.) and Judge Nancy Gertner (Ret.) only*

Norman L. Eisen*
David W. Ogden*
Stephen A. Jonas*
**DEMOCRACY DEFENDERS ACTION**
600 Pennsylvania Ave. SE #15180
Washington, D.C. 20003
(202) 594-9958
Email: norman@democracydefenders.org

11

**RIVERO MESTRE LLP**
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: dtenjido@riveromestre.com

By: /s/ Andrés Rivero

Andrés Rivero
Florida Bar No. 613819
Daniela Tenjido-Eljaiek
Florida Bar No. 1031531

*Counsel for Movants / Amici Curiae 35
Former Federal Judges*

*\*admitted pro hac vice*

 *^primary office listed*

12

**APPENDIX: LIST OF MOVANTS /** *AMICI CURIAE*

Judge Michael Luttig, U.S. Circuit Judge, U.S. Court of Appeals for the Fourth Circuit (Ret.)

Judge Nancy Gertner, U.S. District Judge, District of Massachusetts (Ret.)

Chief Judge John W. Bissell, U.S. District Judge, District of New Jersey (Ret.)

Judge Geraldine Soat Brown, U.S. Magistrate Judge, Northern District of Illinois (Ret.)

Chief Judge Rubén Castillo, U.S. District Judge, Northern District of Illinois (Ret.)

Chief Judge U.W. Clemon, U.S. District Judge, Northern District of Alabama (Ret.)

Judge Susan E. Cox, U.S. Magistrate Judge, Northern District of Illinois (Ret.)

Judge Morton Denlow, U.S. Magistrate Judge, Northern District of Illinois (Ret.)

Judge David K. Duncan, U.S. Magistrate Judge, District of Arizona (Ret.)

Chief Judge Sheila Finnegan, U.S. Magistrate Judge, Northern District of Illinois (Ret.)

Judge Jeremy Fogel, U.S. District Judge, Northern District of California (Ret.)

Judge James C. Francis IV, U.S. Magistrate Judge, Southern District of New York (Ret.)

Judge Steven M. Gold, U.S. Magistrate Judge, Eastern District of New York (Ret.)

Judge A. Benjamin Goldgar, U.S. Bankruptcy Judge, Northern District of Illinois (Ret.)

Judge Paul W. Grimm, U.S. District Judge, District of Maryland (Ret.)

Chief Judge Robert Harlan Henry, U.S. Circuit Judge, U.S. Court of Appeals for the Tenth Circuit (Ret.)

Judge Thelton Henderson, U.S. District Judge, Northern District of California (Ret.)

Judge Richard J. Holwell, U.S. District Judge, Southern District of New York (Ret.)

Judge Ellen Segal Huvelle, U.S. District Judge, District of Columbia (Ret.)

Judge John E. Jones III, U.S. District Judge, Middle District of Pennsylvania (Ret.)

Judge Barbara M. G. Lynn, U.S. District Judge, Northern District of Texas (Ret.)

Judge Roanne L. Mann, U.S. Magistrate Judge, Eastern District of New York (Ret.)

1

Judge A. Howard Matz, U.S. District Judge, Central District of California (Ret.)

Chief Judge Paul Michel, U.S. Circuit Judge, U.S. Court of Appeals for the Federal Circuit (Ret.)

Judge Kathleen O'Malley, U.S. Circuit Judge, U.S. Court of Appeals for the Federal Circuit (Ret.)

Judge Brian Owsley, U.S. Magistrate Judge, Southern District of Texas (Ret.)

Judge Philip M. Pro, U.S. District Judge, District of Nevada (Ret.)

Judge Victoria A. Roberts, U.S. District Judge, Eastern District of Michigan (Ret.)

Judge Shira A. Scheindlin, U.S. District Judge, Southern District of New York (Ret.)

Judge Fern M. Smith, U.S. District Judge, Northern District of California (Ret.)

Judge John D. Tinder, U.S. Circuit Judge, U.S. Court of Appeals for the Seventh Circuit (Ret.)

Judge Ursula Ungaro, U.S. District Judge, Southern District of Florida (Ret.)

Judge T. John Ward, U.S. District Judge, Eastern District of Texas (Ret.)

Judge Mark L. Wolf, U.S. District Judge, District of Massachusetts (Ret.)

Judge Lee Yeakel, U.S. District Judge, Western District of Texas (Ret.)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of June 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which automatically serves all counsel of record for the parties who have appeared.

Pursuant to Southern District of Florida Local Rule 5.2(a), I further certify that I caused the foregoing to be served by certified mail, return receipt requested, on the following governmental entities who are defendants in this action or act as an entity which accepts service on behalf of the defendants in this action: (1) Internal Revenue Service, 1111 Constitution Avenue, NW, Washington, D.C. 20224; (2) United States Office of the Attorney General, 950 Pennsylvania Avenue, NW, Washington, D.C. 20530; and (3) Southern District of Florida United States Attorney's Office, 99 N.E. 4th Street, Miami, FL 33131. Service to these entities was made via mail pursuant to Federal Rule of Civil Procedure 5(b)(2)(C).

/s/ Andrés Rivero
Andres Rivero