# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-cv-20609-WILLIAMS/LETT**

PRESIDENT DONALD J. TRUMP, et al.,

      Plaintiffs,

          v.

INTERNAL REVENUE SERVICE, et al.,

      Defendants.

**BRIEF OF AMICI CURIAE**
**FORMER GOVERNMENT OFFICIALS**
**AND PUBLIC INTEREST ORGANIZATIONS**

**TABLE OF CONTENTS**

STATEMENT OF INTEREST..................................................................................................... 1

INTRODUCTION .................................................................................................................. 3

BACKGROUND .................................................................................................................... 5

ARGUMENT ......................................................................................................................... 6

I.  The President cannot directly or indirectly interfere with tax audits. ................................ 7

II.  The Attorney General lacks authority to settle tax cases that have not been
referred to DOJ. .................................................................................................. 10

III.  Other statutes do not authorize the Attorney General to release Plaintiffs' and
unspecified taxpayers' tax liability. ................................................................... 12

IV.  Giving the President the benefit of a broad release of all liability violates the
Domestic Emoluments Clause. ........................................................................... 14

CONCLUSION..................................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*Blumenthal v. Trump*,
   373 F. Supp. 3d 191 (D.D.C. 2019)................................................................... 15

*D. Ginsberg & Sons v. Popkin*,
   285 U.S. 204 (1932).......................................................................................... 13

*District of Columbia v. Trump*,
   315 F. Supp. 3d 875 (D. Md. 2018)............................................................. 15, 16

*Griffin v. IRS*,
   No. 22-cv-24023 (S.D. Fla. Dec. 13, 2022)...................................................... 16

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
   566 U.S. 639 (2012).......................................................................................... 13

*Safe Harbor Int'l, LLC, v. IRS*,
   8:25-cv-139 (D. Md. July 23, 2025) .................................................................. 16

*Wagner v. Comm'r*,
   60 T.C.M. (CCH) 551, 1990 WL 118036 (T.C. 1990)..................................... 11

*Warren v. Booz Allen Hamilton*,
   No. 8:24-cv-1252 (D. Md. Apr. 29, 2024).......................................................... 16

**Constitution**

U.S. Const. art. II, § 1, cl. 7 ...................................................................................... 15

**Statutes**

26 U.S.C. § 7122............................................................................................ 10, 11, 13

26 U.S.C. § 7217................................................................................................ 8, 9, 16

26 U.S.C. § 7431........................................................................................................ 11

26 U.S.C. § 7602(a) ................................................................................................... 10

26 U.S.C. § 7701(a)(11)(B) ....................................................................................... 10

26 U.S.C. § 7701(a)(12)............................................................................................. 10

26 U.S.C. § 7803(a)(3)(J) ............................................................................................ 4

26 U.S.C. §§ 6301-6344 ............................................................................................ 13

28 U.S.C. § 2414 .................................................................................................................... 14

28 U.S.C. § 2672 .................................................................................................................... 13

28 U.S.C. § 2677 .................................................................................................................... 13

31 U.S.C. § 1304 .................................................................................................................... 14

31 U.S.C. § 3711 .................................................................................................................... 13

31 U.S.C. § 3711(d) ............................................................................................................... 13

5 U.S.C. § 552a ...................................................................................................................... 11

Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-
206, 112 Stat. 685 (1998) .................................................................................................. 8

**Regulations**

31 C.F.R. § 900.3(b) .............................................................................................................. 13

31 C.F.R. § 900.4 ................................................................................................................... 13

**Rules**

R. Regulating Fla. Bar 4-1.4, comment ................................................................................. 9

**Other Authorities**

38 U.S. Op. Atty. Gen. 98 (1934) .......................................................................................... 12

Alexander Hamilton, Federalist Papers No. 73 ...................................................................... 15

Chief Counsel Directive Manual § 34.6.1.3 .......................................................................... 12

DOJ, Justice Manual § 4-3.400 .............................................................................................. 12

Internal Revenue Manual § 34.6.2 ......................................................................................... 12

Internal Revenue Manual, § 3.28.3.5.3 .................................................................................... 7

Internal Revenue Manual, § 4.2.1.15 ....................................................................................... 7

U.S. Gov't Accountability Off., GAO-08-978SP,
Principles of Federal Appropriations Law (3d ed., Vol. III, Sept. 2008) ............................ 14

## STATEMENT OF INTEREST

Amici are four former officials from the Department of Justice and the IRS, with decades of experience in federal tax law, including experience overseeing tax settlements, and two public-interest organizations.[1] This Court previously granted Amici leave to file briefs as amici curiae. D.E. 28. This brief addresses important tax law issues raised by the unprecedented "Settlement Agreement" in this case to aid the Court in its consideration of the motion to reopen. D.E. 63.

**John Koskinen** served as the 48th Commissioner of the Internal Revenue Service. He was confirmed to the position by the Senate in 2013, and he served in the position until his term expired in 2017. Prior to his service as the Commissioner, he served in a number of positions in the public and private sector, including as the non-executive chairman of the Federal Home Loan Mortgage Corporation (Freddie Mac) from 2008 to 2012.

**Kathryn Keneally** served as the Assistant Attorney General for the U.S. Department of Justice's Tax Division. She was confirmed to the position by the Senate in 2012, and she served in the position until 2014. Prior to her service in the Department of Justice, she practiced tax law in private practice for 30 years and served as chair of the American Bar Association's Section of Taxation's Committees on Civil and Criminal Tax Penalties and Standards of Tax Practice.

**Nina Olson** served as the National Taxpayer Advocate from 2001 to 2019. In that role, she led the Taxpayer Advocate Service, an independent organization within the Internal Revenue Service. Prior to serving in that role, she had over two decades of experience representing individual taxpayers at all levels of income and founded the first independent low-income taxpayer clinic in the country.

**Gilbert Rothenberg** served as the Chief of the U.S. Department of Justice, Tax Division, Appellate Section from 2004 until 2019. He joined the Department as a line attorney in the Appellate Section in 1975 and served in the Section until his retirement in 2019.

---

[1] No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money intended to fund this brief. No person other than Amici, their members, and their counsel contributed money to fund this brief.

1

**Common Cause** is a nonpartisan, grassroots organization dedicated to upholding the core values of American democracy by working to create open, honest, and accountable government that serves the public interest. Common Cause has nearly 1 million members, 22 state offices, and a presence in all fifty states and the District of Columbia.[2]

**Project On Government Oversight (POGO)** is a nonpartisan, independent watchdog that investigates, exposes, and champions reforms on systemic corruption, abuse of power, and waste. POGO envisions a federal government that is effective and accountable—governed by just laws, operating with integrity, and committed to serving the public. Government ethics and public trust in the federal government are at the heart of POGO's mission.

---

[2] Common Cause is also a plaintiff in a case challenging the Anti-Weaponization Fund, *Floyd v. Department of Justice*, 1:26-cv-1399-LMB (E.D. Va. filed May 22, 2026).

**INTRODUCTION**

The initial filing of this wrongful disclosure lawsuit, in which the President of the United States sued Executive Branch agencies and officials he controls, was unprecedented. What came next is even more astonishing. On May 18, 2026, the parties signed a "Settlement Agreement" in which Plaintiffs agreed to drop their tax disclosure claims against the Internal Revenue Service ("IRS") and two administrative Federal Tort Claims Act ("FTCA") claims against the Department of Justice ("DOJ") in exchange for an apology and DOJ's agreement that the Acting Attorney General would issue an order establishing a $1.776 billion "Anti-Weaponization Fund." D.E. 63-1. That same day, Acting Attorney General Todd Blanche issued an order establishing the Fund. D.E. 63-3. The next day, Acting AG Blanche issued another order—signed by Blanche alone and not addressed in the previous day's Settlement Agreement—that shields the President, his family, their businesses, and an undefined universe of affiliates from any federal tax audit or investigation, and absolves them of liability for *any* claims the federal government may have had as of May 18, 2026 (the "Immunity Order"). D.E. 63-2.

The Immunity Order prohibits the United States from pursuing "any and all claims" or "requests for any relief," including "examinations or similar or related reviews" against President Trump, Donald Trump, Jr., Eric Trump, the Trump Organization, and "related or affiliated individuals (including without limitation family or others filing jointly), or parties including trusts, parent, sister, or related companies, affiliates, and subsidiaries." The order covers all claims "whether presently known or unknown," that, as of May 18, 2026, "have been or could have been asserted by Defendants" related to "any matters currently pending or that could be pending (including tax returns filed before the Effective Date [May 18, 2026]) before Defendants or other agencies or departments." While there is some ambiguity as to the scope of the release because it is poorly drafted, the Immunity Order appears to cover not just tax liability, but also any non-tax issues that would be handled by "other agencies or departments" besides the IRS. Within a month after Acting AG Blanche issued the Immunity Order, President Trump nominated Blanche to be Attorney General.

The Immunity Order is an unprecedented and breathtakingly improper attempt by the President and the Acting AG to bestow broad civil and criminal immunity upon President Trump, his family, and their vast network of hundreds of businesses and undefined affiliates for all conduct (both tax and non-tax) that occurred before May 18, 2026. Amici submit this brief to address the tax law issues implicated by the Immunity Order. The Internal Revenue Code prohibits the President from asking the IRS, either directly or indirectly, to end audits of particular taxpayers, including the President's own audits. Nor can the President or Acting AG Blanche use DOJ's statutory settlement authorities as cover for an otherwise unlawful act. The Attorney General's authority to settle tax cases is limited to cases that are referred to the DOJ, and there is no indication that the IRS followed its own referral procedures to allow the Attorney General to release all tax liabilities for an unknown number of taxpayers for all previous tax years. None of the other settlement authorities on which Plaintiffs rely provide authority for the Immunity Order. Finally, the Constitution independently bars Acting AG Blanche, on behalf of the United States, from giving President Trump emoluments, which courts have defined as any profit, gain, or advantage. The unprecedented Immunity Order is a brazen, but ultimately illegal, gift to President Trump.

Taxpayers have a right to a "fair and just tax system," where all filers are treated equally regardless of political affiliation or the office they hold. 26 U.S.C. § 7803(a)(3)(J). The President of the United States is obligated to pay taxes he owes, just like every other American. If the Immunity Order is allowed to stand, it will enshrine two separate tax codes, one for President Trump, his family, and his "affiliates," and another for every other American. It opens the door for President Trump and future presidents to avoid scrutiny of their taxes while in office and absolve themselves and favored individuals of wrongdoing. This Immunity Order sends the regrettable and dangerous message that powerful people can wield their influence not only to avoid having their tax returns reviewed at all, but to place themselves above the laws that govern every other American.

## BACKGROUND

President Donald Trump, his family, and the Trump Organization own a sprawling array of hundreds of business interests that have been subject to (and could be subject to) a wide variety of federal investigations and enforcement actions, both now and in the future.

As of 2024, the IRS was reportedly investigating President Trump for writing off losses from a Chicago tower twice, shielding himself from over $100 million in tax liability.[3] And an investigation by the House Ways and Means Committee in 2022 found a number of inconsistencies in President Trump's tax records, including unsubstantiated charitable contributions, questionable carryover of losses, potential evasion of the gift tax, unsupported unreimbursed expense deductions, and other improprieties totaling tens of millions of dollars.[4] Public reporting and investigation of his previous tax returns show substantial gaps between the earnings figures President Trump touted in financial disclosures and the losses he claimed on tax forms, as well as inconsistent business expense claims that misleadingly lowered President Trump's tax liabilities.[5] President Trump's companies were also convicted of criminal tax fraud in New York state court in 2022.[6]

The Trump Organization oversees hundreds of business entities[7] across industries, including hospitality, cryptocurrency, communications, and fusion power,[8] each of which is

---

[3] Ross Buettner and Paul Kiel, *Trump May Owe $100 Million from Double-Dip Tax Breaks, Audit Shows*, N.Y. Times (May 11, 2024), https://perma.cc/JC9M-ST8G.

[4] *Report on the Internal Revenue Service's Mandatory Audit Program Under the Prior Administration (2017-2020)*, H. Comm. On Ways & Means 22 (Dec. 20, 2022), https://perma.cc/69BT-HY3U.

[5] Russ Buettner et al., *Long-Concealed Records Show Trump's Chronic Losses and Years of Tax Avoidance*, N.Y. Times (Sep. 27, 2020), https://perma.cc/HA4L-VTJ4.

[6] Andrea Bernstein, et al., *Former President Donald Trump's company is found guilty of criminal tax fraud*, NPR (Dec. 6, 2022), https://www.npr.org/2022/12/06/1140756394/former-president-donald-trumps-company-found-guilty-criminal-tax-fraud.

[7] *See* Compl., Prayer for Relief ¶ C, D.E. 1 (referencing "418 Trump Organization-affiliated entities").

[8] *See, e.g.*, David Uberti et al., *The Trump Family Business Empire is Growing. We Mapped Out 268 Pieces of It*, Wall Street Journal (Dec. 18, 2025), https://perma.cc/4VVB-X6BT.

5

subject to federal regulation and oversight. For example, the Trump family's cryptocurrency company, World Liberty Financial, has been accused of fraud by one of its investors.[9] White House officials may have made government deals favorable to those who invested into World Liberty Financial.[10] President Trump has made thousands of individual stock trades while in office, raising questions about whether he unlawfully used knowledge about forthcoming government action to benefit active stock trading.[11] And the Pentagon authorized a $620 million loan to a small startup linked to Donald Trump, Jr., allegedly pushed by White House officials, raising questions about whether the White House interfered with Department of Defense contracting.[12]

The Immunity Order would shield the President, his family and their businesses, and potentially hundreds of unidentified "related" or "affiliated" individuals and businesses from federal audit, investigation, and prosecution related to any of such potential wrongdoing, as well as any wrongful conduct yet to be discovered. Under this order, the IRS and all other federal agencies, including the Securities and Exchange Commission (SEC) or the Department of Defense or inspector general offices, would have to drop investigations that might be ongoing regardless of their merit, and would be barred from investigating any other conduct that occurred before May 18, 2026.

## ARGUMENT

In Plaintiffs' attempt to defend the Settlement Agreement and Immunity Order as not collusive, they contend that DOJ has authority to enter settlements and routinely does so. D.E. 89

---

[9] *Sun v. World Liberty Financial, LLC*, 3:26-cv-03360, D.E. 1 (N.D. Cal. Apr. 21, 2026).

[10] *See*, *e.g.*, Eric Lipton et al., *Anatomy of Two Giant Deals: The U.A.E. Got Chips. The Trump Team Got Crypto Riches*, N.Y. Times (Sep. 15, 2025), https://perma.cc/937H-BKZB.

[11] *See* Emily Peck, *Trader in Chief*, Axios (May 19, 2026), https://perma.cc/S7MS-53D3.

[12] Robert Faturechi, *The White House Intervened to Get a $620 Million Deal for a Company Tied to Donald Trump*, ProPublica (May 28, 2026), https://www.propublica.org/article/donald-trump-jr-vulcan-deal-white-house.

at 15-17.[13] The extremely broad release of claims in the Immunity Order—in particular, the release of tax liability claims and termination of audits—is neither authorized nor routine. In Amici's many years of federal tax experience, including overseeing many tax settlements at DOJ, this is decidedly *not* "how government settlements work." D.E. 89 at 15.

*First*, the Immunity Order violates provisions of the Internal Revenue Code that were established to prevent political interference in the tax system and prohibit the President and high-level Executive Branch officials from interfering with tax audits. *Second*, none of the Attorney General's statutory settlement authorities permit the Immunity Order, and long-standing principles prevent DOJ from entering into a settlement that reaches conduct far beyond that at issue in the lawsuit. *Finally*, the Immunity Order violates the Domestic Emoluments Clause. Acting AG Blanche settled a weak, time-barred unauthorized disclosure claim to give President Trump a vastly disproportionate gift of total immunity from tax and non-tax liability. *See* D.E. 33 (explaining this lawsuit's numerous defects).

## I.      **The President cannot directly or indirectly interfere with tax audits.**

Since 1977, the IRS has required that the President and Vice President's tax returns be examined each year. *See* Internal Revenue Manual, § 3.28.3.5.3  (mandatory examination); *id.* § 4.2.1.15 (04-23-2014)   (describing   processes   and   procedures   for   doing   so), https://perma.cc/5MDX-8S8Z. By making this examination mandatory, the IRS insulates the process from political interference to ensure that individual IRS employees are not asked to determine whether to conduct or drop an examination of the President or Vice President's tax returns. Thus, President Trump, like every President since 1977, is subject to a mandatory audit of his taxes each year he is in office.

---

[13] Plaintiffs' argument assumes that the Immunity Order is part of the Settlement Agreement even though it is not mentioned in the Settlement Agreement document and is not signed by Plaintiffs.

In 1996, the National Archives and Records Administration released recordings of President Nixon in May 1971.[14] Congress and the American people heard President Nixon explain to his aides that he wanted "to be sure" his next IRS Commissioner was "a ruthless son of a bitch, that he will do what he's told, that every income tax return I want to see I see, that he will go after our enemies and not our friends."[15] President Nixon lamented IRS investigations into Republican politicians, and asked, "When the Christ are they going to go after some Democrats?"[16] In the wake of those disturbing revelations, Congress passed section 7217 with overwhelming bipartisan support to prohibit the President, Vice President, White House employees, and cabinet-level officials (including the Secretary of the Treasury, although excluding the Attorney General) from "request[ing], directly or indirectly, any officer or employee of the Internal Revenue Service to conduct *or terminate* an audit or other investigation of any particular taxpayer." Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 1105, 112 Stat. 685, 711 (1998) (codified as amended at 26 U.S.C. § 7217 (emphasis added)). As the Joint Committee on Taxation explained, even "the perception that it is possible that high-level Executive Branch influence over taxpayer audits and collection activity could occur has a negative influence on taxpayers' views of the tax system," and Congress accordingly prohibited political influence over audits.[17]

The Immunity Order violates 26 U.S.C. § 7217, under which the President and other high-level executive branch officials are prohibited from interfering with tax audits, including the mandatory yearly audits of the President's tax returns. As the result of an agreement with the

---

[14] *See* Notice of opening of materials, 61 Fed. Reg. 53,460 (Oct. 11, 1996) (notifying public of intent to open White House tapes concerning, in part, abuse of governmental power covering a period of February 1971 to April 1972).

[15] Richard M. Nixon, et al., *Conversation 498-015*, Richard Nixon Presidential Library and Museum, at 37:40 (May 13, 1971), https://www.nixonlibrary.gov/white-house-tapes/498/conversation-498-015.

[16] *Id.*

[17] Staff of J. Comm. On Tax'n, 105th Cong., *General Explanation of Tax Legislation Enacted in 1998*, JCS-6-98, at 44 (1998), https://perma.cc/HND4-XR37.

President, the Acting AG has issued an order that requires the IRS to terminate any ongoing audits and would bar the IRS from beginning or continuing any audits of the President, his family, and their businesses for returns filed before May 18, 2026. While the Attorney General is not one of the officers precluded by section 721 from making requests of the IRS, *see* 26 U.S.C. § 7217(e)(2), he cannot do for the President what the President cannot do for himself. Section 7217 prohibits the President from either "directly or indirectly" asking the IRS to terminate any taxpayer's audit, including his own.

News reporting indicates that President Trump's White House advisors and the President himself reviewed drafts of the Settlement Agreement and that the President specifically discussed audits.  This plainly suggests that officials covered by section 7217, including the President himself, sought to influence the Immunity Order.[18] Indeed, Acting AG Blanche was asked by CNN "whose idea was this audit addendum," "who came up with it," "did they ask for it," "did you think of it," and Blanche responded: "The President has outside counsel and there are counsel at the Department of Justice, not me, and there was negotiations … and part of those negotiations included a discussion around any pending audits."[19] Nor can President Trump hide behind his lawyers, who had an ethical duty to convey all settlement agreement terms to him and receive his approval before finalizing any settlement. *See* R. Regulating Fla. Bar 4-1.4, comment ("a lawyer who receives from opposing counsel an offer of settlement in a civil controversy … must promptly inform the client of its substance"). Any such Presidential approval, however, would run directly afoul of the prohibitions contained in section 7217.

---

[18] Alan Feuer, et al., *Inside the Deal to Drop Trump's $10 Billion Suit Against the I.R.S.*, N.Y. Times (May 30, 2026), https://perma.cc/3LL6-HMCV.

[19] Paula Reid, et al., *Blanche insists violent conduct will be weighed when applying for new anti-weaponization fund payouts*, CNN (May 21, 2026), https://perma.cc/F3AV-CHFZ.

II.     **The Attorney General lacks authority to settle tax cases that have not been referred to DOJ.**

Plaintiffs cite 26 U.S.C. § 7122, a provision that governs the settlement of tax cases, as authority for the government's settlement here. As a preliminary matter, it is not at all clear that the Immunity Order is even part of the Settlement Agreement. The Settlement Agreement's merger clause states that the agreement constitutes "the entire agreement of the Parties," unless modified by "written agreement of the Parties." D.E. 63-1, Part VII. The merger clause includes "accompanying orders by the Attorney General" as part of the settlement, *id.*, but the Settlement Agreement only references the "orders by the Attorney General" that establish the Anti-Weaponization Fund and appoint the Fund's members, *see id.* Part IV. In the Settlement Agreement, there is no mention of the Attorney General issuing any other order, let alone one extending broad civil and criminal immunity to the President, his family, and their business affiliates. And if the Immunity Order is not part of a settlement agreement, there is nothing to justify it. Indeed, it is well-established that the power to examine tax returns belongs to the Treasury Secretary, not the Attorney General. 26 U.S.C. § 7602(a).[20]

Even if the Immunity Order is considered part of the settlement, the Acting Attorney General—the only signatory on the Immunity Order—does not have authority to enter into a compromise settlement agreement under 26 U.S.C. § 7122 unless the IRS first refers a "civil or criminal case arising under the internal revenue laws" to DOJ "for prosecution or defense." 26 U.S.C. § 7122(a) ("the Attorney General or his delegate may compromise any such case *after* reference to the Department of Justice for prosecution or defense.") (emphasis added).  Here, there is no evidence that the IRS has referred any cases to DOJ involving tax liability or audits of any of the Plaintiffs in this suit, let alone any cases involving the tax liability or audits of unknown

---

[20] The Secretary cannot delegate that authority to the Attorney General. *See* 26 U.S.C. § 7701(a)(11)(B) ("The term 'Secretary' means the Secretary of the Treasury or his delegate."); *id.* § 7701(a)(12) (defining "or his delegate," "when used with reference to the Secretary of the Treasury," to mean "any officer, employee, or agency *of the Treasury Department*" (emphasis added)).

"related" or "affiliated" taxpayers for all previous tax years. Without such a referral, the Acting AG had no authority to issue the Immunity Order releasing all tax claims and terminating tax audits of the President, his family, and all unnamed affiliated businesses. *See Wagner v. Comm'r*, 60 T.C.M. (CCH) 551, 1990 WL 118036, at *4 (T.C. 1990) ("Section 7122(a) gives the Attorney General 'or his delegate' the authority to compromise civil and criminal tax cases referred to the Department of Justice, but not tax cases which have not been referred to the Department.").

Nor could this lawsuit have provided the basis for the Immunity Order. Plaintiffs sued the Department of Treasury and the IRS for an unlawful disclosure of confidential taxpayer information. *See* 26 U.S.C. § 7431; 5 U.S.C. § 552a. The tax liabilities of the President, his sons, the Trump Organization, and all "related" or "affiliated" individuals or businesses were never at issue in the case Plaintiffs filed, and therefore cannot be said to have been referred to DOJ for prosecution or defense. Without a referral, the Acting AG had no authority to enter into a compromise agreement that encompassed tax liabilities and ongoing IRS audits for all such taxpayers prior to 2026. In *Wagner*, for example, the Tax Court held that the DOJ lacked the authority to "enter into a compromise agreement" that would have absolved Mr. Wagner's "civil income tax liabilities for the years 1979, 1980, and 1981" because those years "were not referred to the Department of Justice" and "the only matter referred to the Department of Justice was petitioner's violation of section 7206(2)," which prohibits aiding in preparing others' false tax returns. 1990 WL 118036, at *3-4. Here, too, the existence of an unauthorized disclosure case does not open the door for the Acting AG to settle tax issues having nothing to do with this case, including releasing unknown claims against unknown non-parties. Any contrary argument would eviscerate the "case" and "reference" requirements in section 7122.

While referrals are typically not public, it is implausible that the IRS would have referred to DOJ all of the Plaintiffs' and unknown related and affiliated taxpayers' income tax liabilities for all years on all issues. The IRS has detailed procedures for referrals. *See* Internal Revenue

11

Manual § 34.6.2.[21] For each such referral, the IRS Chief Counsel Directive Manual requires an attorney in the IRS's Office of Chief Counsel to provide a suit recommendation letter to DOJ. This process involves gathering detailed information and going through layers of reviews. Chief Counsel Directive Manual § 34.6.1.3.[22] Particularly for recent tax years that may not have been audited yet or for unknown taxpayers, this process could not have already been undertaken, let alone concluded.

The germaneness limitation on the Acting AG's settlement authority under section 7122 accords with DOJ's longstanding practice and guidance. DOJ has long followed a germaneness principle when settling matters beyond a particular case. *See* 38 U.S. Op. Atty. Gen. 98, 102 (1934). This limitation is also reflected in DOJ's Justice Manual, which provides that, when the United States releases its claims against a debtor owing money to the United States, the scope of a compromise should be "specifically limited to the immediate subject matter of the claim which was in fact compromised. In no case should a general release be issued to the debtor since it is not possible to know whether the debtor owes debts to other agencies such as the Internal Revenue Service." U.S. Dep't of Just., Justice Manual § 4-3.400.[23] Any release of the United States' claim "should be narrowly drawn, limited to the specific debt that is compromised, and should contain a specific reservation of the United States' right to proceed against other obligors." *Id*.

III.   <u>**Other statutes do not authorize the Attorney General to release Plaintiffs' and unspecified taxpayers' tax liability.**</u>

Plaintiffs cite several other statutes in support of the federal government's authority to settle this case, but none of them not authorize the Attorney General to release the tax liability of Plaintiffs and affiliated taxpayers.

---

[21] *Types of suits,* IRS, https://perma.cc/J6FC-32KZ.

[22] *Affirmative Litigation*, IRS, https://perma.cc/2GGB-V4FT.

[23] *Consummation of Compromise of Claims of the United States—Generally*, DOJ (April 2018), https://perma.cc/46D6-6T8Q.

First, Plaintiffs cite 31 U.S.C. § 3711, D.E. 89 at 15, which addresses federal agencies' collection of debt owed to the United States. According to DOJ and Treasury, however, the compromise procedures in section 3711 only apply to nontax debts. *See* 31 U.S.C. § 3711(d) (providing that agency heads act under their own regulations and the standards prescribed by the Attorney General and Secretary of the Treasury); 31 C.F.R. § 900.3(b) (providing that 31 C.F.R. Parts 900 to 904, including Part 902 addressing compromises of claims, "do not apply to tax debts"). Compromise of tax debts is governed by tax-specific statutes and regulations, and consistent with the canon that the specific governs over the general, section 3711 would not displace those tax-specific statutes. *See* 31 C.F.R. § 900.4 ("[T]he laws and regulations that are specifically applicable to claims collection activities of a particular agency generally take precedence over parts 900-904 of this chapter."); 26 U.S.C. §§ 6301-6344 (addressing tax collection). *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (the "general/specific . . . canon has full application . . . to statutes such as the one here, in which a general authorization and a more limited, specific authorization exist side-by-side"); *D. Ginsberg & Sons v. Popkin*, 285 U.S. 204, 208 (1932) ("Specific terms prevail over the general in the same or another statute which otherwise might be controlling.").

Second, Plaintiffs cite 28 U.S.C. § 2672, D.E. 89 at 15. Under section 2672, a federal agency head may compromise an administrative FTCA claim for money damages, with approval from the Attorney General for compromises exceeding $25,000. But section 2672 must be read in harmony with 26 U.S.C. § 7122, which limits the Attorney General's authority to settle cases "arising under the internal revenue laws" to those cases referred to DOJ. If section 2672 allowed the Attorney General to freely reach out and settle whatever tax issues he wanted, for all taxpayers or tax years, even those far afield from the FTCA claims before him, section 7122's limitation on the Attorney General's authority to settle specific cases would be a dead letter. Plaintiffs also cite 28 U.S.C. § 2677, D.E. 89 at 15, which allows the Attorney General to settle FTCA claims after an action commences. But according to the recitals in the Settlement Agreement, President

13

Trump's two FTCA claims were still pending at the administrative level, so no FTCA action was commenced. D.E. 63-1, Part II.B.

Finally, Plaintiffs cite 28 U.S.C. § 2414 and 31 U.S.C. § 1304. D.E. 89 at 15; *see also* D.E. 63-2 (Acting AG's May 18 order citing these statutes as authority for the Settlement Agreement's "funding of the Anti-Weaponization Fund"). Those statutes are not relevant to the Immunity Order—the focus of this amicus brief—because the Order does not appear to require the United States to make payments. But even if it were relevant, section 2414 provides that "compromise settlements of claims referred to the Attorney General for defense of imminent litigation or suits against the United States" or "its agencies or officials … shall be settled and paid in a manner similar to judgments in like causes." A compromise settlement "for defense of imminent litigation or suits against the United States" means "[t]he agency must be confronted with a genuine disagreement or impasse" and that "[t]here must be a legitimate dispute over either liability or amount."[24] As Amici previously briefed no such legitimate dispute ever existed: "the complaint has significant defects—it was filed too late, against the wrong party, and for an unsupported and excessive sum of damages—the conflicts of interest make it uncertain whether the Department of Justice will zealously defend the public fisc in the same way that it has against other plaintiffs claiming damages for related events." D.E. 33 at 2; *see also* D.E. 45 at 11-12 (discussing divergence of DOJ's litigation conduct, including DOJ's failure to assert defenses raised in cases involving leaks by Littlejohn).

**IV.   Giving the President the benefit of a broad release of all liability violates the Domestic Emoluments Clause.**

Regardless of whether DOJ had the authority to settle this case, the Immunity Order issued by Acting AG Blanche violates the Constitution's Domestic Emoluments Clause. That Clause provides that "[t]he President shall, at stated Times, receive for his Services, a Compensation, which shall neither be encreased nor diminished during the Period for which he shall have been

---

[24] U.S. Gov't Accountability Off., GAO-08-978SP, Principles of Federal Appropriations Law 14-35 (3d ed., Vol. III, Sept. 2008), https://tinyurl.com/f5y9snye.

elected, and he shall not receive within that Period any other Emolument from the United States, or any of them." U.S. Const. art. II, § 1, cl. 7. Under that Clause, "[n]either the Union, nor any of its members, will be at liberty to give, nor will [the President] be at liberty to receive, any . . . emolument" other than the compensation set at the beginning of his term. Alexander Hamilton, Federalist Papers No. 73. The Clause prevents the federal and state governments from "corrupt[ing the President's] integrity by appealing to his avarice" and "tempt[ing] him by largesses, to surrender at [his] discretion his judgment to their inclinations." *Id.*

An "emolument" is "defined broadly as any profit, gain, or advantage." *Blumenthal v. Trump*, 373 F. Supp. 3d 191, 207 (D.D.C. 2019), *vacated as moot,* 949 F.3d 14 (D.C. Cir. 2020); *accord District of Columbia v. Trump*, 315 F. Supp. 3d 875, 904 (D. Md. 2018), *vacated as moot*, 838 F. App'x 789 (4th Cir. 2021). It is not limited to direct monetary payments. In *District of Columbia*, for example, an acting head of the General Services Administration ("GSA") who had been appointed by President Trump determined that President Trump was in compliance with the lease agreement for the Old Post Office in Washington, D.C., even though the lease agreement explicitly stated that no elected federal official "shall be admitted to any share or part of this Lease, or to any benefit that may arise therefrom" and GSA had previously required President Trump to divest from financial interests in the lease. 315 F. Supp. 3d at 906. President Trump subsequently proposed a budget that would increase GSA's funding while cutting back on other agencies' funding. *Id.* The court recognized that GSA's determination bestowed an emolument on President Trump. *Id.* The court also recognized as an emolument the D.C. government's reduction of the Trump Hotel's tax bill after the Trump Organization re-filed a previously dismissed lawsuit concerning the issue. *Id.* at 906-07.

Here, Acting AG Blanche has similarly used the excuse of settling a weak, time-barred unauthorized disclosure claim to give President Trump a vastly disproportionate and unrelated gift of total immunity from tax and non-tax liability for all conduct known and unknown. The termination of tax audits alone could save his businesses $100 million or more. *See supra* at 5. This appears to be a special deal just for President Trump, as DOJ is continuing to defend other

15

cases involving similar leaks of taxpayer information.[25] The Immunity Order also appears to be designed to "curry[] favor with a sitting President," *District of Columbia*, 315 F. Supp. 3d at 903; less than a month after the Immunity Order, President Trump nominated Todd Blanche for Attorney General.

**CONCLUSION**

The Immunity Order is unlawful. Based on publicly available sources, it violates 26 U.S.C. § 7217 and the Domestic Emoluments Clause. The various settlement statutes cited by Plaintiffs do not save it. Amici provide this explanation to aid the Court's consideration of the tax issues implicated by the Immunity Order and the Court's inquiry into whether the May 18 Settlement Agreement and the subsequent May 19 Immunity Order were collusive. This includes whether the parties inappropriately used this lawsuit as a fig leaf "to provide the imprimatur of legality" for the broad immunity that President Trump and his family, businesses, and affiliates have illegally achieved. D.E. 65 at 3.[26]

Dated: June 22, 2026                                  Respectfully submitted,

                                                      */s/ Gerald E. Greenberg*
                                                      GERALD E. GREENBERG
                                                      Florida Bar No. 440094
                                                      ggreenberg@gsgpa.com
                                                      DANIEL R. WALSH
                                                      Florida Bar No. 0124282

---

[25] As Amici noted previously, DOJ asserted substantial defenses in moving to dismiss claims for unlawful disclosure of taxpayer information, including DOJ's most recent July 2025 motion to dismiss in *Safe Harbor International*. *See Safe Harbor Int'l, LLC, v. IRS*, 8:25-cv-139, D.E. 31 (D. Md. July 23, 2025); *Griffin v. IRS*, No. 22-cv-24023 (S.D. Fla. Dec. 13, 2022); *Warren v. Booz Allen Hamilton*, No. 8:24-cv-1252 (D. Md. Apr. 29, 2024).

[26] If the Court decides to investigate (as 35 former judges urge, *see* D.E. 94 at 4-5), the tax issues outlined in this brief may also guide some of the areas of inquiry. For example, factual inquiry into who was involved in the settlement discussions and whether DOJ and IRS procedures were followed may be helpful for understanding whether the Settlement Agreement and Immunity Order were in compliance with the Internal Revenue Code and internal DOJ and IRS guidance on the settlement of cases.

dwalsh@gsgpa.com
GELBER SCHACHTER & GREENBERG, P.A.
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131
Telephone: (305) 728-0950
E-service: efilings@gsgpa.com

TSUKI HOSHIJIMA*
Massachusetts Bar No. 693765
thoshijima@democracyforward.org
JYOTI JASRASARIA*
jjasrasaria@democracyforward.org
D.C. Bar No. 1671527
POOJA A. BOISTURE*
pboisture@democracyforward.org
New York Bar No. 5104559
CYNTHIA LIAO †
D.C. Bar No. 90036947
cliao@democracyforward.org
LISA NEWMAN † ^
Texas Bar No. 24107878
lnewman@democracyforward.org
AYESHA KHAN*
akhan@democracyforward.org
D.C. Bar No. 426836
ROBIN F. THURSTON*
rthurston@democracyforward.org
D.C. Bar No. 1531399
SKYE L. PERRYMAN*
sperryman@democracyforward.org
D.C. Bar No. 984573
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Telephone: (202) 448-9090

*Admitted *pro hac vice*

† *Pro hac vice* application forthcoming

^ Not admitted to practice law in the District of Columbia; practicing under the supervision of Democracy Forward lawyers who are members of the District of Columbia Bar.

17

*Counsel for Amici Curiae Former Government Officials, Common Cause, and Project on Government Oversight*

18