IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

FILED BY _____ D.C.

JUN 1 8 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

| | | |
|---|---|---|
| Donald. J. Trump, in his individual capacity, et al., *Plaintiffs,* | ) ) ) ) | |
| v. | ) ) ) | NO. 26-20609-CV-WILLIAMS |
| Internal Revenue Service, et al., *Defendants.* | ) ) ) ) | |

## INTERVENOR'S BRIEF IN SUPPORT OF HIS MOTIONS TO AMEND THE CAPTION, TO JOIN, OPPOSING REOPENING, TO STRIKE, AND ORDERING SPECIFIC PERFORMANCE

### I. The Caption that Launched a Thousand Sophistries[1]

Contrary to disinformation on social- and legacy media and lying pundits, Donald J. Trump did not bring the instant case in his official capacity. See Plaintiffs' Compl. ¶ 1, sentence 2 ("Trump brings this suit in his personal capacity"). Though, inartful, and not complying with standard legal usage, the Complaint attempted to convey that Donald J. Trump was suing the IRS, et al. for Privacy Act violations in his *individual capacity* rather than official capacity as President.

Intervenor moves to amend the caption (as above) accordingly.

---

[1] My apologies to Christopher Marlowe for the ungainly paraphrase.

1

This case's botched caption is not simply a matter of grammar. First, the recently-created immunity of President Trump extends only to his official acts and not to conduct by Trump as an individual.  If, as tribal sophists claim, that Donald Trump "deceived" this Court, then he would be exposed to  criminal charges under federal statutes governing the conduct of parties in federal court proceedings. See, e.g., 18 U.S. Code § 401 (perjury), 18 U.S. 18 U.S. Code § 1503 (corruptly influencing the administration of justice), and 18 U.S. Code § 1512 (obstruction of justice Code § 1621 (false declarations).

Second, the original misleading caption helped spawned a deluge of sophistical[2] claims that the President sued himself, see Anna Bower, Eric Columbus, "The President Who Sued Himself," *Lawfare* (May 20, 2026), or one part of the Executive Branch (i.e., President Trump) sued other parts of the Executive Branch (i.e., the IRS, Treasury), see, e.g.,

---

[2]      Intervenor submits that the thirty-five retired judges ("The 35") who injected themselves into Judge Leonie Brinkema's case, particularly the ring-leaders Michael Luttig and Shira Scheindlin should be bar-disciplined - even disbarred - for knowingly misrepresenting the holding in *Kem Mfg. Corp. v. Wilder*, 817 F.2d 1517 (11th Cir. 1987) to gain standing they knew or should have known they lacked. Whether Judge Brinkema should sanction "The 35" under Rule 11 or the Justice Department should bring criminal charges against them under 18 U.S. Code §§ 401, 1503, 1512, 1621 is for the Judge and Justice to decide.

https://www.cbsnews.com/news/trump-sues-irs-treasury-10-billion-letting-tax-returns-leak/ (visited June 3, 2026) (stating, *"President* Trump is suing the Internal Revenue Service and Treasury Department for at least $10 billion")(emphasis added).

In turn, false claims the President sued himself or the Executive sued the Executive generated a flood of factually and legally baseless claims that Judge Williams' court lacked jurisdiction because there was no case or controversy. But even, assuming arguendo, that the Executive sued the Executive, that would not, per se, render the matter unjusticiable. See https://adlaw.jotwell.com/when-agencies-sue-each-other/ (visited June 1, 2026); Jonathan Adler, "When One Federal Agency Sues Another in Federal Court," Reason (June 20, 2020) (discussing whether "the case belong[s] in federal court" if "the U.S. Postal Service and the Postal Regulatory Commission disagree.")

Contrary to fake news, "The Donald" aspect of this case involves an *individual* suing the IRS, not the POTUS suing himself or the Executive suing the Executive. Consequently, if this case is not justiciable, injusticiability results from the case being time-barred (the two-year

3

statute of limitation ran)[3] - the Complaint was filed one-day late.[4]  But settlement prior to the Judge holding the case time barred renders the Complaint's timeliness moot. Beyond that, even if Plaintiff Donald Trump filed late, his sons, who discovered harm later, timely filed. Thus, if, hypothetically, Judge Willaims had reached issues of justiciability during the motions phase, the rest of the Complaint would have been justiciable.

But these Parties, like many others, settled before substantive rulings.

## II. Intervenor Moves to Join Pursuant to Rule 19(a)(1)(B)(i)

Intervenor moves to join under FRCP Rule 19 because his "absence will impede the Intervenor's ability to protect his interest" and gain the relief sought in his Fund claim – i.e., money and an apology from USDA.

---

[3]    Donald Trump's claim was timely if filed on or before two-years (731 days) after he discovered injury. The Complaint alleges that "Trump did not discover the numerous violations. . . in connection with his personal tax returns until January 29, 2024." Pl. Compl. ¶ 76. But Judge Williams could find, based on averment in the to the contrary, e.g., Pl. Compl. ¶¶ 73-75, 77-78, that Plaintiff Trump actually or constructively discovered the injuries caused by the Privacy Act violations earlier than January 26, 2024.

[4]    Because Plaintiffs filed electronically, under FRCP Rule 5, the Complaint was filed on the date the Clerk of Courts actually received the Complaint. Plugging January 29, 2024 (the alleged date Donald Trump discovered the harm) and January 29, 2026 (the Clerk's receipt date) into an online "days-between-dates" calculator - https://www.timeanddate.com/date/duration.html – yields 732 days, see Ex. 2, rendering the Complaint untimely.

### III. Intervenor's Motions Opposing Reopening and to Strike

Federal district court cases are not open houses into which any interested passersby may stroll. Like the well-pleaded complaint rule associated with *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908); the statutory threshold of $75,000 in total damages in diversity cases, and the enhanced pleadings requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), Rule 60 performs a crucial gatekeeping function that prevents federal judges from drowning in a flood of paper. In the three cases related to Trump's privacy no such Rule 60 gatekeeping has occurred.

Although Intervenor agrees that unfound claims have been made, frivolous pleadings submitted, and baseless law suits filed for improper, justice-obstructing purposes in *Trump, Floyd*, and *Dunne & Hodges* as part of coordinated "collusive efforts" to deceive and defraud the Judges in those cases, such chicanery has not been aimed at gaining or defending the Settlement Agreement, but *derailing* it. See Order DE 65.

Intervenor agrees the Judge should impose Rule 11 sanctions – but not against the Parties. The Judge should sanction the 35 retired judges ("The 35") who colluded to file a frivolous motion to reopen, see DE 61.

Because the Motion to Reopen, DE 61, rests on a collusive attempt by "The 35" to dupe this court into granting them standing through their knowing and intentional misrepresentation of *Kem*, their motion should not only be denied (for want to standing to file that or any other motion) but also stricken. This deceptive, collusive conduct, which warrants both Rule 11 Sanctions and bar-disciplinary-referrals by Judge Williams, rests at pointed out in Footnote 3 above, on fraudulently misrepresenting Kem, in facial violation of The 35's ethical duty of candor with this tribunal.

> [They] completely misstate[] the holding of the authority on which it primarily relies. As noted by Steven Duffield, the motion claims that . . . *Kem Manufacturing v. Wilder*, stands for the proposition that nonparties can allege fraud to get settled cases reopened. *It does no such thing.* To begin with *Kem* is distinguishable in that the movant in *Kem* actually did have some privity of interest in the case. There, the parties to the underlying case had reached a settlement that was quite high. Kem, it turned out, was an indemnitor to the liable party. . . . Former judges, of course, have far less notional standing to object than an indemnitor. See Michael Fragoso, "An Extraordinary Circumstance," *The National Review*, (May 28, 2026) at https://www.nationalreview.com/bench-memos/an-extraordinary-circumstance/ (visited June 1, 2026) (emphases added)

Since they lack standing under Rule 60 and *Kem* to file motions of any type, the motion of The 35 to reopen, DEE 61, should be denied sua

6

sponte without a hearing, stricken from the record, and serve as the basis of thirty-five Rule 11 sanctions and 35 bar-disciplinary referrals.

## IV.   Parties Need *Not* Await Substantive Rulings in the Motions Phase to Negotiate or Reach Settlement Agreements

Intervenor's niche is settling federal cases – he settles 96%. As a *Kumho Tires/Daubert* expert on federal settlement, Intervenor challenges a number of claims by The 35 as false, frivolous or meritless.

First, the Settlement Agreement is not "purported", see Order DE 65, citing DE 63 at p. 9.  The fact that these 35 bystanders don't fancy the Settlement Agreement does not render it "purported.  It is real.

Second, settlements can occur literally at any time and need not wait for Administrative Judges (during exhaustion of administrative remedies) or a Magistrate Judge or Article III judge to rule on motions (e.g., whether a case was justiciable). For instance, in federal EEOC and mixed MSPB/EEOC cases, many settlements occur in the informal (intake) stage or just after the formal phase ends. Indeed, one of the main reason parties settle before case reach court is uncertainty and risk regarding adverse rulings on motions by an ADJ, MJ or Judge.

Third, parroting" The 35," social- and legacy media has been awash with ridiculous claims that the lawfulness of the Settlement Agreement

7

should be reopened because it was "a product of collusion," DE 63 at 9.By their very nature, *all* settlements, unless reached under duress or undo influence, are "collusive." -All settlements require cooperation of by parties and their counsels. They do not fall like manna from Heaven.

## V. The Acting Attorney General Cannot Scrap the Fund

The Acting Attorney General in not a signatory to the Agreement. He is not positioned, as a delegatee, to scrap the Fund. See Eric Tucker, Alanna Durkin Richer, "Trump Administration is *Scrapping* $1.8B fund Meant to Compensate President's Allies, Blanche Says," *AP* (June 3, 2026) at https://apnews.com/article/blanche-fund-justice-department-january-6-c06a4aa4a1052055bc67c4a0a54984e (visited June 4, 2026) (emphasis added). Indeed, even Parties to the Settlement Agreement, for example Plaintiff Donald Trump, can unilaterally scrap it.

## VI. As a Third-Party Beneficiary of the Settlement Agreement, Intervenor Seeks Specific Performance by the Fund

Florida contract common law governs here. "The doctrine of third-party beneficiaries provides that under certain circumstances, a person may sue to enforce a contract, even though the person is not a party to the contract." *Mendez v. Hampton Court Nursing Ctr., LLC*, 203 So. 3d 146 (Fla. 2016). The Settlement Agreement expressed the intent of

Donald j. Trump, in his individual capacity, his sons and their LLC, along with the IRS and Treasury to benefit Weaponization Fund claimants like the Intervenor. See, generally, "The parties' intention governs contract construction and interpretation; the best evidence of intent is the contract's plain language." *Whitley v. Royal Trails Prop. Owners' Ass'n, Inc., 910 So. 2d 381* (Fla. 5th DCA 2005). "A party is an intended beneficiary only if the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong." *Dingle v. Dellinger*, 134 So. 3d 484 (Fla. 5th DCA 2014). However, "[a] person who is not a party to a contract may not sue for breach of that contract where that person receives only an incidental or consequential benefit from the contract." *Taylor Woodrow Homes Fla., Inc. v. 4/46–A Corp.*, 850 So.2d 536 (Fla. 5th DCA 2003).

Given the Florida law, the Intervenor, as a Third Party Beneficiary would have the right to enforce the Agreement in the event the Parties or the delegate (the Acting A.G.) breach - "[T]he third-party beneficiary doctrine enables a non-contracting party to enforce a contract against a contracting party—not the other way around." *Mendez* id.

9

When the Parties reached the Settlement Agreement, Third Party Beneficiaries acquired rights the Parties cannot unilaterally extinguish. The rights of Third-Party Beneficiaries – i.e., Weaponization Fund Claimants – include equitable relief (specific performance) if the Parties to the Agreement or their delegatee - the Acting Attorney General - fail to perform the promises, duties, and obligations of the Agreement.

To date, despite the best efforts of Democratic and Republican "Fund Haters," Trump has not "TACO-ed.[5] See Sarah Ferris, Aileen Graef, Alison Main, Manu Raju, Adam Cancryn, "Trump tells CNN He Doesn't Know if $1.8 Billion Fund is Dead, Calling it 'a Beautiful Thing'" CNN,  But if Trump signals he will scrap the fund, that signal would constitute anticipatory breach. To prevent that scenario, Intervenor moves for specific performance - timely implementation of the Fund.

## VII. Conclusion

Intervenor respectfully moves that Judge Williams order the Caption amended as above, deny reopening of the case and order the case closed, order DE 63 stricken, and, prior to her closure of this case, order the Parties and the delegatee to timely and specifically perform under the Agreement.

---

[5]  Apologies to the President for use of an acronym he despises.

10

Respectfully Submitted,

 /S/   *Glenn Stephens*   **6/04/2026**
Glenn Stephens III Ph.D., Esq.
Stephens Arbitration, Mediation & Settlement (SAMS)
Post Office Box 120  Gilbertsville PA 19525
StephensArbMedStlmt@gmail.com

11

## CERTIFICATE OF SERVICE

On June 4, 2026, the above was mailed to the Court and Plaintiff Trump.

*/S/  Glenn Stephens  6/04/2026*
Glenn Stephens III Ph.D., Esq.
Stephens Arbitration, Mediation & Settlement (SAMS)
Post Office Box 120  Gilbertsville PA 19525
StephensArbMedStlmt@gmail.com

PRESS FIRMLY TO SEAL



UNITED STATES POSTAL SERVICE ® | PRIORITY MAIL ®

Glenn Stephens III Ph.D. J.D.
P.O. Box 120
Gilbertsville PA 19525

■ Expected delivery date specified for domestic use.
■ Domestic shipments include $100 of insurance (restrictions apply).*
■ USPS Tracking® service included for domestic and many international destinations.
■ Limited international insurance.**
■ When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at *http://pe.usps.com*.
** See International Mail Manual at *http://pe.usps.com* for availability and limitations of coverage.

Hon. Judge Williams
c/o Clerk of Courts
re: 26-20609
US District Court S. Fla.
400 N. Main Street
Miami Florida
33128



FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

JUN 18 2026

TRACKED ■ INSURED

To schedule free Package Pickup, scan the QR code.



PS00001000014

EP14F November 2025
OD: 12 1/2 x 9 1/2



USPS.COM/PICKUP

SKNA