**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, DONALD J. TRUMP JR., ERIC TRUMP, AND THE TRUMP ORGANIZATION, LLC, <br><br> *Plaintiffs,* <br><br> v. <br><br> INTERNAL REVENUE SERVICE, UNITED STATES DEPARTMENT OF THE TREASURY, <br><br> *Defendants.* | No. 1:26-cv-20609-WILLIAMS/LETT |

**BRIEF OF AMICUS CURIAE TWENTY-THREE STATE ATTORNEYS GENERAL**
**CONCERNING AMICI-MOVANTS' MOTION**
**FOR RELIEF FROM THE ORDER OF DISMISSAL**

**TABLE OF CONTENTS**

**Page**

Introduction and Interest of Amici ....................................................................................1

Argument ...........................................................................................................................2

     A.     The Department of Justice's pre-settlement conduct was inconsistent with legitimate defense of sovereign interests ...............................................................3

          B.     The substance of the Settlement Agreement is inconsistent with legitimate efforts by a sovereign to resolve litigation.................................5

               1.     Attorneys representing a sovereign have clear obligations to act in the public interest when settling claims ............................5

               2.     The procedural and substantive irregularities with the Settlement Agreement and Addendum evince fraud upon this Court....................................................................................7

          C.     The parties' conduct in litigating and settling this case constitutes an end run around constitutional limitations on executive power .............10

Conclusion .......................................................................................................................11

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*California v. Wright*
No. 3:26-cv-01417 (N.D. Cal. Feb. 28, 2026) ...........................................................................10

*Ebrahimi v. City of Huntsville Bd. of Educ.*
114 F.3d 162 (11th Cir. 1997) ...................................................................................................3

*Griffin v. IRS*
No. 22-cv-24023, Dkt. 78 (S.D. Fla. Nov. 27, 2023) .................................................................4

*Illinois v. Fed. Emerg. Mgmt. Agency*
No. 1:25-cv-00206 (D.R.I., May 13, 2025) ...............................................................................10

*New York v. Admin. for Child. and Fams.*
No.1:26-cv-00172 (S.D.N.Y., Jan. 28, 2026) ...........................................................................10

*New York v. Trump*
No. 1:25-cv-00039-JJM-PAS (D.R.I. Jan. 28, 2025)................................................................10

*Rozier v. Ford Motor Co.*
573 F.2d 1332 (5th Cir. 1978) ...................................................................................................2

*Safe Harbor Int'l v. IRS*
No. 25-cv-139, Dkt. 31 (D. Md. July 23, 2025) .........................................................................4

*Travelers Indem. Co. v. Gore*
761 F.2d 1549 (11th Cir. 1985) .................................................................................................1

*U.S. Dep't. of Navy v. Fed. Lab. Rel. Auth.*
665 F.3d 1339 (D.C. Cir. 2012) (Kavanaugh, J.)......................................................................8

*Washington v. US Dep't of Educ.*
No. 2:25-cv-01228 (W.D. Wash., June 30, 2025) .....................................................................10

**STATUTES**

United States Code, Title 5
§ 552a(g)(4) ...............................................................................................................................9

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

United States Code Title 26

§ 7122(a) .........................................................................................................................6

§ 7431(c) .........................................................................................................................9

§ 7431(d) .........................................................................................................................4

United States Code, Title 28

§ 2414 ..........................................................................................................................6, 7

Federal Appropriations Law

14-35 (3d ed. 2008) ........................................................................................................6

**CONSTITUTIONAL PROVISIONS**

United States Constitution, Article I

§ 1 ................................................................................................................................10

§ 8 ................................................................................................................................10

§ 9 ................................................................................................................................10

United States Constitution

Article III ........................................................................................................................3

**COURT RULES**

Federal Rules of Civil Procedure

Rule 41(a)(1)(A)(i) ...........................................................................................................3

Rule 60 .........................................................................................................................1, 2

**OTHER AUTHORITIES**

Attorney General Opinion 38-94 (1933) .............................................................................6

Attorney General Opinion 38-98 (1934) .............................................................................6

Attorney Gerneral Opinion 23-18 (1900) ...........................................................................6

POLITICO (June 10, 2026 at 5:55 E.T.)
https://www.politico.com/news/2026/06/10/doj-official-sought-
weaponization-fund-patrick-davis-00955341?nid=0000014f-1646-d88f-a1cf-
5f46b7bd0000&nname=playbook&nrid=0000014e-f10e-dd93-ad7f-
f90fd9e10000 .............................................................................................................8

Restatement (Second) of Contracts

§ 74 (A.L.I. 1981) ...........................................................................................................6

**INTRODUCTION AND INTEREST OF AMICI**

The case underlying the Rule 60 motion before the Court is no ordinary lawsuit. As the Court has already observed, the circumstances of this case, including the potential lack of adversity between the parties, are highly unusual. The conduct of the parties during this litigation makes clear that the Court was correct to raise jurisdictional questions, and the "settlement" that purports to resolve the case is further evidence that the litigation has been colored by fraud from the beginning. That "settlement" is not a reasonable resolution of the claims asserted here. Instead, it is a mechanism to enrich President Trump's political allies and attempt to immunize the Trump family from legitimate law enforcement, all at the expense of American taxpayers.

The U.S. Department of Justice (led by Acting Attorney General Todd Blanche) executed that settlement just two days before the parties were due to answer questions the Court had raised about jurisdiction. Instead of explaining how this lawsuit constituted a case or controversy, the Justice Department executed agreements with President Trump and his family that purported to settle the case, providing them with a windfall in exchange for dismissing legally meritless claims. Within weeks, President Trump nominated Acting Attorney General Blanche to be Attorney General of the United States. Put simply, the parties' conduct has revealed that the litigation was nothing more than a corrupt effort to "defile the court itself" through a collusive sham lawsuit. *Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1551 (11th Cir. 1985).

*Amici*, the Attorneys General of California and Twenty-Two other States, offer a unique viewpoint that may aid the Court in deciding amici-movants' motion to set aside the judgment and reopen the case.

*First,* as Attorneys General, *amici* are the chief legal officers of their respective States and entrusted with the responsibility to vigorously—but ethically—advance their States' sovereign interests. In that capacity, *amici* routinely defend legal claims that seek compensation from the public fisc, negotiating and executing settlements to resolve those cases where appropriate. Thus, *amici* are uniquely well situated to advise the Court of the many deeply troubling and highly irregular aspects of the conduct of the litigation and the subsequent settlement of the President's

1

claims, particularly in the context of claims brought against a sovereign entity. *Amici* are charged with representing sovereign interests in state and federal courts every day, giving them a unique vantage point to offer with respect to this litigation.

**Second**, *amici* maintain a strong interest in the lawful and ethical administration of the federal government, with which each of their States interacts in myriad ways. *Amici* have regularly litigated to ensure that the executive branch stays within its constitutional bounds. They are thus uniquely attuned to how the collusive lawsuit and settlement here amount to an end-run around clear constitutional limits to President Trump's authority. This collusive settlement undermines the separation of powers in ways that will harm *amici* and will threaten public confidence in the fair and equitable administration of justice.

**ARGUMENT**

*Amici* are the chief legal officers of their respective States. Collectively, they possess unparalleled experience managing defensive litigation on behalf of sovereign entities and negotiating agreements to resolve claims without judicial intervention. That experience provides *amici* with a unique perspective on the conduct of this litigation and the terms of the settlement that accompanied Plaintiffs' voluntary dismissal. Based on this experience, the litigation and settlement here amount to "egregious misconduct" that warrants judicial relief. *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978) (quotation omitted) (reversing district court denial of Rule 60 motion for "fraud on the court").

The parties' conduct makes clear that they manufactured a lawsuit for the sole purpose of executing a collusive settlement to benefit the Trump family and enrich President Donald Trump's political allies, in an end-run around constitutional limits on executive power. The President sued agencies whose leadership serve at his pleasure so that the Justice Department would be able to use its settlement authority to provide him and his allies with an unlawful and unethical windfall. The President then executed a hasty voluntary dismissal to secure that settlement before the Court could determine whether there was in fact a justiciable controversy. The law and substance of the Settlement Agreement and subsequent Addendum lay bare the

2

parties' fraudulent scheme to manufacture a giveaway of nearly $1.8 billion to allies of the President, and a purported grant of sweeping legal immunity to the Trump family, despite both being untethered to the claims asserted in the case and unsupported by consideration to the United States.

The parties' conduct is fundamentally incompatible with the legitimate defense and compromise of claims against a sovereign entity. The conduct is instead evidence of a scheme to manipulate the Attorney General's settlement authority and commandeer the machinery of the judicial system to skirt constitutional limits on executive power, with the goal of enriching President Trump, his family, and his allies. The Court should not countenance such malfeasance.

### A.   The Department of Justice's pre-settlement conduct was inconsistent with legitimate defense of sovereign interests

The parties' conduct in this litigation make clear that Acting Attorney General Blanche and the Justice Department refused to defend the interests of the United States against President Trump, at whose pleasure Blanche serves. In January, Plaintiffs President Trump, his sons Donald Jr. and Eric Trump, and the Trump Organization sued the U.S. Department of the Treasury and the Internal Revenue Service asserting claims related to the disclosure of their tax returns and return information to media outlets. Dkt. No. 1. The Court recognized that the parties' likely lack of adversity raised a threshold jurisdictional question under Article III and acknowledged its "independent obligation to police the constitutional and statutory limits on [its] jurisdiction[,]" *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997), ordering the parties to brief the question of whether a case or controversy existed in this matter. Dkt. No. 41. The parties were to file their briefs on that question by May 20.

Rather than answer the Court's question, the parties evaded it. On May 18, two days before the briefs were due, Plaintiffs voluntarily dismissed their claims with prejudice under Rule 41(a)(1)(A)(i). Dkt. No. 52. Hours later, the Justice Department publicly announced a purported "settlement" pursuant to which the Department would establish a $1.776 billion "Anti-

3

Weaponization Fund" for supposed victims of "lawfare" and "weaponization" from Democratic elected officials (the "Settlement Agreement"). *See* Dkt. No. 63, Ex. A.

The next day, the Department publicly announced an Addendum to the Settlement Agreement. Dkt. No. 63, Ex. B (Addendum to Settlement Agreement). The Addendum, executed only by Acting Attorney General Blanche, purports to bar the United States from ever investigating or punishing the Trumps and other "related or affiliated individuals, or parties including trusts, parent, sister, or related companies, affiliates and subsidiaries" for "(1) any matters that were raised or could have been raised in the Case or the Pending Agency Claims; (2) Lawfare and/or Weaponization; or (3) any matters currently pending or that could be pending (including tax returns filed before the Effective Date) before Defendants or other agencies or departments." *Id.* at ¶ C. This provision would immunize President Trump, his family, his businesses, and perhaps others from government investigations, enforcement actions, or prosecution relating to conduct predating May 19, 2026. Neither the Settlement Agreement nor the Addendum were ever filed with the Court. *See* Dkt. No. 65 at 1. The Trumps purportedly received all these benefits and protections while a separate litigant with substantially identical claims only received an apology. *See* Dkt. No. 63, Ex. A at § III.A.

Stunningly, the Justice Department refused to assert several robust substantive defenses to the President's claims, including defenses the IRS previously asserted in litigation stemming from disclosure of other taxpayers' information by the *same* federal contractor who allegedly leaked the President's information. *See* Dkt 65 at 3 n.3; *Griffin v. IRS*, No. 22-cv-24023, Dkt. No. 78, (S.D. Fla. Nov. 27, 2023) (arguing in motion to dismiss that contractor was not an "officer or employee of the IRS"); *Safe Harbor Int'l v. IRS*, No. 25-cv-139, Dkt. No. 31 (D. Md. July 23, 2025) (same). Nor did the Department seek to dismiss the case as time barred under 26 U.S.C. § 7431(d), despite it being a straightforward argument. The Department similarly failed to make any arguments concerning the limits on statutory damages, the plain defects with the Plaintiffs' Privacy Act claims, or the lack of any waiver of sovereign immunity (given that the documents at issue were leaked by a contractor, not a government employee). *See* Dkt. No. 7-1.

Many of these readily available defenses are jurisdictional, and dismissal based on any of them would have resulted in effectively *zero* expenditure of taxpayer money.

Based on *amici*'s long experience as chief law officers, the Justice Department's conduct is inconsistent with legitimate efforts to defend a lawsuit under these circumstances. The Department refused to mount any genuine defense to Plaintiffs' claims or to test their validity, despite the availability of numerous independent grounds for dismissal. Nor did Defendants appear to engage in any fact gathering regarding the scope of purported damages or other relief. In short, the Department did not take *any* meaningful steps to safeguard public funds or to ensure that any settlement was in the best interests of the taxpayers. In *amici*'s experience, no public law department with the responsibility for defending sovereign interests and public funds would plausibly litigate as Acting Attorney General Blanche and the Department of Justice did here. The Department's conduct strongly suggests that the litigation was a collusive fraud engineered to violate the constitutional limits on presidential authority under the veneer of a settlement.

### B. The substance of the Settlement Agreement is inconsistent with legitimate efforts by a sovereign to resolve litigation

The substance of the Settlement Agreement and Addendum executed by the parties provides additional confirmation of what their pre-settlement conduct demonstrated: this was a collusive suit designed to manufacture a windfall for President Trump, his family, business partners, and supporters.

### 1. Attorneys representing a sovereign have clear obligations to act in the public interest when settling claims

*Amici* have a unique vantage point on settlements of claims. As the Attorneys General of their respective States, *amici* routinely enter compromise settlements with claimants on behalf of their governments. The compromise settlements entered by *amici* affect the rights and safety of their constituents and the financial well-being of their States. In entering such settlements, *amici* are keenly aware of the responsibility they bear to exercise their authority in accordance with law and with fundamental ethical principles. *Amici* must exercise their settlement authority fairly and only enter settlements commensurate with the potential liability at issue. They may not confer

5

benefits on third parties wholly unrelated to the litigation nor make decisions based on partisan politics and self-dealing.

These common-sense principles are baked into the Justice Department's own guidelines and statutory authorizations. For example, the Attorney General's settlement authority, set forth in 28 U.S.C. § 2414, is limited to claims on which there is a bona fide dispute as to a question of fact or law. *See, e.g.*, GAO, 3 Principles of Federal Appropriations Law 14-35 (3d ed. 2008) (to invoke authority under § 2414, agency "must be confronted with a genuine disagreement or impasse," meaning that "[t]here must be a legitimate dispute over either liability or amount"); *see also* 38 Op. Att'y Gen. 98, 99 (1934) (must be a "bona fide dispute as to either a question of fact or of law"); 38 Op. Att'y Gen. 94, 96 (1933), *quoting* 23 Op. Att'y Gen. 18, 20 (1900) (claim "must in some way be doubtful" to be validly compromised). Settlements must also comply with the limitations on relief applicable to judgments available on the underlying causes of action. 28 U.S.C. § 2414 (claims "shall be settled and paid in a manner similar to judgments in like causes . . ."). The Attorney General cannot settle claims that are legally meritless, or in circumstances where there is no genuine dispute as consideration for a settlement, or where they lack statutory authority to do so.[1]

The Department imposes additional common-sense limits on settlement authority that are consistent with the heavy responsibility of public representation. The Attorney General's authority to settle claims extends only to matters that have been referred to the Department for prosecution or defense. *See* 38 Op. Att'y Gen. 98, 98 (1934) (Attorney General has "power to compromise cases referred to the Department of Justice"); 26 U.S.C. § 7122(a) (Attorney General may compromise claims arising under internal revenue laws only "after reference to the Department of Justice for prosecution or defense"). And the Justice Manual requires that compromise settlements be "specifically limited to the immediate subject matter of the claim

---

[1] These authorities also reflect a settled principle of contract law: "the surrender of a claim or defense which proves to be invalid is not consideration unless: (a) the claim or defense is in fact doubtful because of uncertainty as to the facts or the law, or (b) the forbearing or surrendering party believes that the claim or defense may be fairly determined to be valid." Restatement (Second) of Contracts § 74 (A.L.I. 1981).

which was in fact compromised. In no case should a general release be issued to the debtor[.]" Justice Manual 4-3.400.

### 2. The procedural and substantive irregularities with the Settlement Agreement and Addendum evince fraud upon this Court

The Settlement Agreement and Addendum contravene all of these limitations on the Attorney General's settlement authority, which flow from good-governance first principles. The provisions of these agreements are anathema to the responsible and ethical resolution of claims against a sovereign and make clear that this litigation was a fraud on the Court.

*First*, the Settlement Agreement and Addendum contain no legitimate consideration for the benefits conferred on Plaintiffs, because Plaintiffs' released claims had no value. As explained *supra*, and in the Brief of Amici Curiae Former Government and Public Interest Organizations, Dkt. No. 7-1, Plaintiffs' claims suffer from numerous fatal legal deficiencies. Plaintiffs' release of legally unviable claims is not consideration for the establishment of the Anti-Weaponization Fund or the immunity provisions in the Addendum. The settlement thus fails to comport with § 2414.

*Second*, even if Plaintiffs' released claims had merit, the benefits Plaintiffs received under the Settlement Agreement and Addendum are wholly untethered to the estimated value of those claims. With respect to the Anti-Weaponization Fund, the Department has not even tried to explain how the $1.776 billion capitalization amount bears any relationship to what Plaintiffs might be owed for their claims. Indeed, the Settlement Agreement expressly disclaims any connection between the Fund's capitalization amount and the value of any claims brought by Plaintiffs. *See* Dkt. No. 63, Ex. A § IV.A (the Fund's capitalization "does not represent the value of any current claim by Plaintiffs," but is instead "based on the projected valuation of future [Fund] claimants' claims."). Without reciprocal benefits to the parties, this "settlement" is an outright gift of taxpayer money to President Trump and his political allies, an appropriation of

7

federal funds without Congressional approval.[2] *U.S. Dep't. of Navy v. Fed. Labor Rel. Auth.*, 665 F.3d 1339, 1347 (D.C. Cir. 2012) (Kavanaugh, J.) ("The power over the purse was one of the most important authorities allocated to Congress in the Constitution's 'necessary partition of power among several departments.'" (quoting THE FEDERALIST NO. 51, at 320 (James Madison) (Clinton Rossiter ed. 1961)). This is not a lawful resolution of legal claims.

The immunity provision is a similarly flagrant violation of basic consideration requirements. The Addendum does not even attempt to claim that the grant of immunity is reasonable compensation for the claims Plaintiffs dismissed. And the timing of the Addendum suggests that it was granted in exchange for *no consideration at all*. To the extent the parties viewed the Settlement Agreement itself as encompassing adequate consideration on both sides, the Addendum—which was executed the following day as a separate document, signed only by Acting Attorney General Blanche—attempts to grant sweeping legal immunity to President Trump, his family, and his businesses for no identified additional consideration. Rather than being offered in exchange for consideration from Plaintiffs, the Addendum's grant of immunity would simply offer a gratuitous benefit lavished on President Trump and his family by the Justice Department. Based on *amici*'s experience settling cases on behalf of sovereigns, such a sweeping release of future claims that forecloses a separate federal agency from exercising enforcement authority—apparently for no consideration at all—is a shocking deviation from accepted practice and suggests that this lawsuit is a fraud perpetrated upon the Court.

***Third***, the Settlement Agreement and Addendum attempt to provide benefits that are wholly unrelated in substance to the claims asserted by Plaintiffs in this litigation, contravening basic legal, policy, and ethical limitations placed on the subject matter of compromise

---

[2] And recent reporting has shed light on the tangled web of self-dealing woven into the Fund: a top official at the Department of Justice—the very agency that negotiated the Settlement Agreement and is charged with establishing the Fund—reportedly planned to make a claim on his own behalf for payment from the Fund, on a concocted theory of "lawfare" dating to his time as a congressional staffer. Daniel Lippman, *Top DOJ official planned to make a claim with Trump's 'Anti-Weaponization Fund*, POLITICO (June 10, 2026 at 5:55 E.T.) https://www.politico.com/news/2026/06/10/doj-official-sought-weaponization-fund-patrick-davis-00955341?nid=0000014f-1646-d88f-a1cf-5f46b7bd0000&nname=playbook&nrid=0000014e-f10e-dd93-ad7f-f90fd9e10000.

settlements. The Anti-Weaponization Fund established by the Settlement Agreement is supplied with an arbitrary amount of taxpayer funds created for an ill-defined and unrelated group of third-party beneficiaries of whom none have asserted claims in this litigation. Dkt. No. 63, Ex. A § IV. The Fund bears no relationship to any injury President Trump may have suffered from the release of his tax returns six years ago. Similarly, the sweeping grant of immunity to Plaintiffs purports to shield them from any IRS investigations of tax returns filed as of the date of the addendum to the Agreement, as well as from other known and unknown claims that the United States may have against Plaintiffs. Dkt. No. 63, Ex. B ¶ C. Those IRS investigations, and any liability that may result therefrom, do not relate in any way to the leaking of President Trump's tax returns, nor is there any public indication that the IRS has even referred claims from such investigations to the Justice Department. The Department's decision to enter a settlement to resolve the civil claims in this litigation should not be used as cover to resolve wholly distinct matters of tax liability that have are not in any way at issue in this case.[3]

**Fourth**, the timing of the publication of the Settlement Agreement and Addendum suggests that the parties intended to deceive the Court. Not only did the parties refuse to place those documents before the Court; they conspicuously declined to make them public until after the Court closed the case. The full picture of the parties' scheme—the creation of a new funding program to compensate President Trump's political allies and a stunningly broad grant of immunity to President Trump and his family—was not in front of the Court when it granted the dismissal of the case.

Based on *amici*'s significant experience litigating and settling claims against sovereign entities, the Settlement Agreement and Addendum do not reflect the fair and honest resolution of claims against the United States. They instead reflect a collusive scheme to commandeer the machinery of the judicial system to benefit the President, his family, and his allies. Such conduct

---

[3] The provisions establishing the Fund and granting President Trump and his family immunity are also impermissible forms of relief for Plaintiffs' claims, which are limited to actual or statutory damages paid to Plaintiffs and, in some circumstances, attorney's fees. 26 U.S.C. § 7431(c); 5 U.S.C. § 552a(g)(4).

is antithetical to the professional standards that *amici* as chief law officers follow, and that the Acting Attorney General of the United States is also bound to follow.

### C.   The parties' conduct in litigating and settling this case constitutes an end run around constitutional limitations on executive power

Taken together, the parties' conduct in the course of this litigation, and the substance of the Settlement Agreement and Addendum, lay bare an attempted end-run around constitutional limits on executive authority. The Constitution vests the power of the purse with Congress. U.S. CONST. art. I, §§ 1, 8, 9. Collusive suits and settlements, like the Settlement Agreement here, use litigation to dole out money from the Treasury Department's Judgment Fund without meaningful limitations or any need to negotiate with Congress.

This Court should not countenance such a scheme. An Executive unbound by basic constitutional constraints on the use of public funds is one that will misuse or abuse the federal fisc for its own benefit at the expense of *amici's* citizens. Here, that abuse would open a backdoor through which the President could shovel public funds to his friends and family. And an Executive that succeeds in using the guise of litigation and settlement to skirt constitutional limits on spending is unlikely to stop there. *Amici*, among others, have taken on responsibility for ensuring that the executive branch stays within the bounds of its constitutional authority.[4] Permitting the parties to succeed in their scheme here would vitiate those efforts.

Were the parties to succeed in their scheme, public trust in the judicial process would suffer. Corruption, self-dealing, deception, and fraud, in the service of skirting constitutional limits and enriching the President, does grave damage to public trust in the rule of law and in the judicial process. It will undermine confidence in the court system and the ability of courts to ensure that no individual is above the law. It will also erode confidence in the Justice Department, and public officials more broadly, diminishing Americans' belief that our leaders

---

[4] *See, e.g., New York v. Trump*, No. 1:25-cv-00039-JJM-PAS (D.R.I. Jan. 28, 2025) (raising separation of powers and Spending Clause claims); *Washington v. US Dep't of Ed.*, No. 2:25-cv-01228 (W.D. Wash., June 30, 2025) (same); *New York v. Admin. for Children and Families*, No.1:26-cv-00172 (S.D.N.Y., Jan. 28, 2026) (same); *California v. Wright*, No. 3:26-cv-01417 (N.D. Cal. Feb. 28, 2026) (separation of powers claim); *Illinois v. Federal Emerg. Mgmt. Agency*, No. 1:25-cv-00206 (D.R.I., May 13, 2025) (Spending Clause claim).

exercise their authority in the public interest. Every day, *amici* Attorneys General prosecute crimes, enforce statutes that protect public rights, defend their States against claims brought by private and public litigants, and sue the federal government to protect their constituents' rights. *Amici*'s authority to take these actions flows from the confidence and trust placed in them by their constituents. Consequently, *amici* have a vested interest in ensuring that all litigants—but especially senior political leaders—play by the rules, approach the Court with candor, and uphold the highest standards of ethical and professional conduct. This Court should not countenance a scheme that undermines these basic precepts.

## CONCLUSION

The Court should grant all necessary and appropriate relief in order to rectify the fraud perpetrated upon the Court and deter future misconduct by those who have sworn to faithfully uphold and support the rule of law.

Dated:  June 23, 2026

Respectfully Submitted,

ROB BONTA
Attorney General of California

NICHOLAS R. GREEN
Special Litigation Supervisor
DANIEL C. SHEEHAN
Deputy Attorney General, Special Litigation
HARALD KIRN*
Deputy Attorney General

By: */s/Harald H. Kirn*
HARALD H. KIRN*
Deputy Attorney General
California Department of Justice
Telephone: (916) 210-6111
Email: Harald.Kirn@doj.ca.gov

*Pro Hac Vice Forthcoming*

By: /s/ *Randy R. Dow*
Randy R. Dow
Assistant Attorney General
Office of the Maine Attorney General
6 Statehouse Station
Augusta, ME 04333
(207) 441-6832
randy.r.dow@maine.gov
Maine Bar #011178
Florida Bar #0121118

*Counsel for Amicus Curiae*
*Twenty-Three State Attorneys General*

12

# APPENDIX: LIST OF AMICI

ROB BONTA
*Attorney General*
*State of California*
1300 I St.
Sacramento, CA 95818

KRISTIN K. MAYES
*Attorney General*
*State of Arizona*
2005 N. Central Ave.
Phoenix, AZ 85004

PHILIP J. WEISER
*Attorney General*
*State of Colorado*
1300 Broadway, 10th Floor
Denver, CO 80203

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

BRIAN L. SCHWALB
*Attorney General*
*District of Columbia*
400 6th Street NW
Washington, DC 20001

ANNE E. LOPEZ
*Attorney General*
*State of Hawai'i*
425 Queen St.
Honolulu, HI 96813

KWAME RAOUL
*Attorney General*
*State of Illinois*
115 S. LaSalle St.
Chicago, IL 60603

AARON M. FREY
*Attorney General*
*State of Maine*
6 State House Station
Augusta, ME 04333-0006

ANTHONY G. BROWN
*Attorney General*
*State of Maryland*
200 St. Paul Pl.
Baltimore, MD 21202

ANDREA JOY CAMPBELL
*Attorney General*
*State of Massachusetts*
One Ashburton Place, 20th Floor
Boston, MA 02108

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, Michigan 48909

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

JENNIFER DAVENPORT
*Attorney General*
*State of New Jersey*
Richard J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625

13

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

RAÚL TORREZ
*Attorney General*
*State of New Mexico*
408 Galisteo Street
Santa Fe, NM 87501

JEFF JACKSON
*Attorney General*
*State of North Carolina*
114 W. Edenton Street
Raleigh, NC 27603

DAN RAYFIELD
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Main Street
Providence, RI 02903

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

JAY JONES
*Attorney General*
*State of Virginia*
202 N 9th Street
Richmond, VA 23219

CHARITY R. CLARK
Vermont Attorney General
109 State Street
Montpelier, VT 05609

NICHOLAS W. BROWN
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504