**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

PRESIDENT DONALD J. TRUMP, DONALD J. TRUMP JR., ERIC TRUMP, AND THE TRUMP ORGANIZATION, LLC,

        *Plaintiffs*,

v.

INTERNAL REVENUE SERVICE AND U.S. DEPARTMENT OF THE TREASURY,

        *Defendants*.

No. 1:26-cv-20609-KMW

<u>**PLAINTIFFS' AND THEIR ATTORNEYS' MEMORANDUM IN OPPOSITION TO THE FEE PETITIONS FILED BY FORMER GOVERNMENT OFFICIALS AND PUBLIC INTEREST ORGANIZATIONS AND THIRTY-FIVE FORMER FEDERAL JUDGES**</u>

Pursuant to the Court's July 13, 2026, order, Plaintiffs President Donald J. Trump, Donald J. Trump Jr., Eric Trump, and The Trump Organization, LLC ("Plaintiffs"), with their attorneys Alejandro Brito and Daniel Epstein ("Attorneys"), respectfully file this opposition to Former Government Officials and Public Interest Organizations' Verified Memorandum in Support of Reimbursement, D.E.111, and to Memorandum of Thirty-Five Former Federal Judges for Reimbursement of Attorneys' Fees, D.E.112.

## INTRODUCTION

At the outset, Plaintiffs and their Attorneys object to being required to litigate the amount of monetary sanctions that the Court lacked authority to impose.  After Plaintiffs dismissed this case with prejudice, volunteer *amici* urged the Court to improperly reopen it, wrongly accused the Parties of collusion and fraud, and supplied the false narrative the Court ultimately adopted.  The Court then improperly invited those same non-parties to submit bills for their political advocacy. Plaintiffs and their Attorneys respond only out of an abundance of caution and without waiving their pending challenges to the Sanctions Order, D.E.106, or to the Court's authority to continue these proceedings.

*Amici* are not entitled to fees or costs under the circumstances of this case.  Even the Court-appointed *amici* declined any reimbursement—likely because the Supreme Court has, for more than eight decades, held that *amici* are not entitled to compensation.  *Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575, 581 (1946).  This Court nonetheless, and in violation of longstanding precedent, invited certain *amici* to submit fee petitions.  The Former Government Officials fail to devote a single sentence in their petition to their entitlement for fees, instead conceding that "courts do not typically award fees for amicus briefs."  D.E.111 at 9.  The Thirty-Five Former Federal Judges half-heartedly, and wrongfully, argue they are entitled to fees because this case is "extraordinary."  D.E.112 at 4.  A fee award here is inappropriate because *amici* are not parties, as well as because the Court has no basis in its inherent authority or the common law to award fees and costs.  Moreover, *amici* did not comply with Local Rule 7.3, which requires a pre-motion conferral and a bill of costs.

## RELEVANT PROCEDURAL HISTORY

Plaintiffs sued the Internal Revenue Service and Treasury Department ("Defendants") pursuant to 26 U.S.C. § 7431, seeking damages for the unauthorized disclosure of their confidential tax return information by federal felon, and now-imprisoned former IRS employee-

contractor, Charles Littlejohn.  D.E.1.  From 2019 to 2020, Littlejohn unlawfully obtained Plaintiffs' tax returns and disclosed them to the media.  *Id.* ¶¶ 6-7, 10, 53-64.  Littlejohn ultimately pled guilty and was sentenced to the statutory maximum of sixty months in prison.  *Id.* ¶ 35; D.E.106 at 4.  The IRS itself admitted that "it failed to prevent Mr. Littlejohn's criminal conduct and unlawful disclosure."  D.E.1 ¶ 12.  Plaintiffs timely filed the Complaint on January 29, 2026. D.E.1.  On May 18, 2026, Plaintiffs voluntarily dismissed this case with prejudice.  D.E.52. Contemporaneously, the Parties reached a settlement.  D.E.106 at 6-7.

Before Plaintiffs dismissed the case, three separate groups of non-parties voluntarily inserted themselves into this litigation as *amici*.  On February 5, 2026—just one week after the Complaint was filed—Former Government Officials and Public Interest Organizations ("Former Government Officials") filed a Motion for Leave to File Brief as *Amici Curiae*.  D.E.7.  Then, on February 12, 2026, Citizens for Responsibility and Ethics in Washington ("CREW") and Public Citizen filed a Motion for Leave to File Brief as *Amici Curiae*.  D.E.15.  None of the Parties opposed these motions, and the Court granted them by default.  D.E.28.  On April 29, 2026, after the Court questioned subject matter jurisdiction, the Court *sua sponte* appointed attorneys from Debevoise & Plimpton LLP, Munger Tolles & Olson LLP, and Selendy Gay PLLC as *amici* to assist in analyzing whether the Court had jurisdiction.  D.E.43.  Of these three groups, only the Court-appointed *amici* were directed by the Court to participate; the Former Government Officials and CREW/Public Citizen volunteered on their own accord.  The Court-appointed *amici* filed their memorandum on May 14, 2026.  D.E.45.

After Plaintiffs voluntarily dismissed the case, and after the Court cancelled all briefing deadlines and closed the case, D.E.62, a fourth group of non-parties attempted to enter the proceedings.  On May 27, 2026, thirty-five former federal judges ("Former Federal Judges") filed a Motion for Relief from Judgment or Order under Rule 60, or, in the Alternative, for Leave to Appear as *Amici Curiae*.  D.E.63.  Like the initial *amici*, the Former Federal Judges were not appointed by the Court; they inserted themselves voluntarily, falsely asserting that the Parties' settlement constituted "a fraud on the Court."  *Id.* at 5.  The Court subsequently ordered Plaintiffs to respond to the Former Federal Judges' motion, permitting the Former Federal Judges to file a reply.  D.E.65.  Plaintiffs filed a timely response, arguing *inter alia* that the Court lacked authority to review the Settlement Agreement and that the Complaint was meritorious.  D.E.89.  The Former Federal Judges filed a reply on June 19, 2026.  D.E.94.

2

On July 13, 2026, the Court issued the 56-page Sanctions Order.  D.E.106.  Through the Sanctions Order, the Court invited "the initial *amici*—whose appearance was not contested by any Party—and the thirty-five former Federal Judges, whose briefing precipitated th[at] Order," to file memoranda "regarding any appropriate reimbursement."  *Id.* at 53.  Plaintiffs and their Attorneys have filed a timely Notice of Appeal, and an expedited motion to stay all proceedings in this Court arising under the Sanctions Order.

On July 27, 2026, two fee petitions were filed in response to the Court's invitation.  The Former Government Officials filed a Verified Memorandum in Support of Reimbursement seeking $39,000.00 in attorneys' fees for 78 hours of work performed by three attorneys from Democracy Forward Foundation at a rate of $500 per hour.  D.E.111 at 3-4.  The Former Government Officials seek fees for preparation of their initial *amicus* brief, which they voluntarily and unilaterally filed on February 5, 2026.  *Id.* at 1-2.  Second, the Former Federal Judges filed a Memorandum for Reimbursement of Attorneys' Fees seeking a nominal fee of $1 for each of their four law firms, plus $4,500 in *pro hac vice* admission fees and $106.83 in mailing costs, for a total of $4,606.83.  D.E.112. As set forth below, the fee petitions are improper, without merit, and must be denied.

## **DISCUSSION**

*Amici* are not entitled to fees for two independent reasons.  First, they are volunteer non-parties.  Neither group was appointed by the Court or promised compensation; each chose to participate for its own (political) purposes and assumed its own costs.  Second, the Court cannot invoke inherent authority to transform those voluntary expenditures into a monetary sanction against Plaintiffs.  Such improper action by the Court would circumvent both the settled rule that volunteer *amici* bear their own fees, and the Supreme Court's command that inherent power be exercised with restraint.

I.      *Amici* **Are Not Entitled to Fees and Costs**

     A.      *Amici* **Cannot Obtain Fees and Costs Because They Are Not Parties**

Both fee petitions fail as a matter of law because *amici* are not parties, and therefore they cannot recover attorneys' fees and costs.  The Supreme Court, the Eleventh Circuit, and basic principles of judicial administration all confirm that participation as an *amicus*—whether by court invitation or voluntary appearance—neither confers party status nor entitles *amici* to compensation.

3

It is well established that volunteer *amici* have no entitlement to fees and costs. More than 80 years ago, in *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575 (1946), the Supreme Court reversed an award of fees and costs to *amici*. There, *amici* offered to assist the trial court's investigation into a potentially fraudulent judgment. *Id.* at 577-78. After a special master concluded the judgment was fraudulent, the Third Circuit Court directed the lower court to vacate the judgment on that ground. *Id.* at 579-80. *Amici* sought to have their fees and costs taxed against the plaintiff, and the Third Circuit awarded $100,000 in attorneys' fees and $54,606.57 in costs. *Id.* at 579. The Supreme Court reversed, holding that "***compensation is not the normal reward of those who offer [amicus] services***." *Id.* at 581 (emphasis added). The Court also reasoned that where the *amici* "formally served the court," but "were in fact in the pay of private clients," it was not appropriate for them to receive fees and costs, regardless of whether the *amici* purport to "represent the public interest in the administration of justice." *Id.*

The Eleventh Circuit reinforced this principle in *Glassroth v. Moore*, 347 F.3d 916 (11th Cir. 2003). There, the Eleventh Circuit reviewed the award of fees to a prevailing party whose attorneys enlisted organizations to appear as *amici* and supervised the preparation of their briefs. *Id.* at 918-19. The court held that a "group that files an amicus brief on the winning side is not entitled to attorney's fees and expenses as a prevailing party, ***because it is not a party***." *Id.* at 919 (emphasis added). So too here.[1]

The same principles apply in this case. Because *amici* may not recover fees where they have assisted the court in an investigation, and where they appear on the winning side of a civil rights action with a fee-shifting statute, as in *Universal Oil* and *Glassroth*, *amici* certainly may not recover fees in these proceedings. The *amici* in this case submitted briefs, but at no point did any of them become parties to this litigation. They had no claims, asserted no rights, bore no obligations, and were subject to no judgment. *See Nuclear Regulatory Commission v. Texas*, 605 U.S. 665, 674-78 (2025) ("By way of comparison, participation by amici in a court proceeding does not make the amici parties, even if the court invited such participation."). Their participation, however beneficial the Court may have found it, did not transform them into parties entitled to the benefits and burdens of being a party, including the recovery of fees and costs.

---

[1] Other circuit courts have applied this principle to deny fee awards for amicus brief. *See, e.g.*, *Morales v. Turman*, 820 F.2d 728, 731 (5th Cir. 1987); *Carson v. Dep't of Energy*, 64 F. App'x 234, 239-40 (Fed. Cir. 2003).

Moreover, *amici* participated voluntarily.  The Former Government Officials unilaterally filed their motion for leave to appear on February 5, 2026.  D.E.7; D.E.111 at 2.  They were never appointed by the Court.  They were never directed to brief any issue.  They chose to participate on their own volition, and their attorneys performed the work without billing their clients.  D.E.111 at 8.  The Former Federal Judges likewise were not appointed by the Court.  They voluntarily filed an unsuccessful Motion for Relief from Judgment on May 27, 2026, nine days after the case had been dismissed and closed.  D.E.63.

The Former Federal Judges even concede "fee orders have ordinarily applied to *amici* whose participation was formally appointed by the court," but citing a case where fees were not awarded. D.E.112 at 6 (citing *Morales v. Turman*, 820 F.2d 728, 731 (5th Cir. 1987)).  They managed to find one case where an unappointed *amicus* group was permitted to seek fees, but that opinion did not cite to *Universal Oil* at all, and the issue was not raised on appeal.  *Russell v. Bd. of Plumbing Examiners of Cnty. of Westchester*, 74 F. Supp. 2d 349, 351 (S.D.N.Y. 1999), *aff'd on other grounds*, 1 F. App'x 38 (2d Cir. 2001).

### B.     The Court's Inherent Authority Cannot Be Used as an End-Run Around the Non-Party Rule

The Court invited *amici* to submit fee petitions based on the Court's inherent authority to punish.  However, inherent authority cannot override blackletter law.  Neither fee petition seeks compensation for any loss that Plaintiffs caused, because no such loss exists, and the cases *amici* cite do not come close to supporting awarding fees or costs to non-parties under these circumstances.  The Supreme Court has cautioned that inherent authority "must be exercised with restraint and discretion," precisely because of its potency and potential for overreach.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

Rule 11 prohibits monetary sanctions imposed on the court's own initiative after a voluntary dismissal.  *See* Fed. R. Civ. P. 11(c)(5)(B); D.E.106 at 45.  Acknowledging this, the Court here invoked its inherent authority to award monetary sanctions, including *amici*'s fees.  D.E.106 at 52-53.  But if the Court's inherent authority could be invoked to award the precise monetary relief that Rule 11 forbids, which also runs contrary to *Universal Oil*, for the reasons explained *supra*, the exception would impermissibly swallow the rule.  Permitting inherent authority to circumvent Rule 11(c)(5)(B) whenever a court characterizes a fee award as an inherent authority sanction would render that Rule's limitation a nullity.

To invoke inherent authority, the Former Federal Judges principally rely on *Chambers v.*

5

*NASCO, Inc.*, 501 U.S. 32 (1991), but that decision does not authorize an award here.  The fee remedy that the Court in *Chambers* approved *ran between adversaries*—not to non-party volunteers.  *Id.* at 35, 54.  Under the American Rule, each litigant "must bear [its] own attorney's fees and cannot have them assessed against the loser."  *Id.* at 45; *id.* at 59 (Scalia, J., dissenting).  A court's inherent power to shift fees is a narrow exception to that rule, and *Chambers* did not analyze awards to nonparties.  *Id.* at 35.  *Chambers* did not endorse compensating non-party volunteers; indeed, the opinion relied on *Universal Oil*, which distinguished the role of *amici*, as discussed *supra*.  *Chambers*, 501 U.S. at 46; *Universal Oil*, 328 U.S. at 581.

The other two decisions on which the Former Federal Judges rely—*Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017), and *Barnes v. Dalton*, 158 F.3d 1212 (11th Cir. 1998)—reinforce the same limitation.  Both treat an inherent-authority fee sanction as compensation to the opposing litigant, not *amici*.  *Goodyear*, 581 U.S. at 108 (holding that an award extending to fees "that would have been incurred without [a party's bad faith] misconduct . . . crosses the boundary from compensation to punishment"); *Barnes*, 158 F.3d at 1215 (affirming a sanction to plaintiff measured by the opposing party's own out-of-pocket expert costs).  Neither of these decisions supports non-party *amici*'s demand for fees and costs.  *See A. Hirsh, Inc. v. United States*, 948 F.2d 1240, 1250-51 (Fed. Cir. 1991) (Michel, J.) (denying fees to an amicus because they were caused by its own voluntary appearance rather than the opposing party's conduct).

The requested one-dollar awards confirm that the Former Federal Judges seek political symbolism, not compensation.  A nominal, symbolic payment does not reimburse any loss; it is an expression of liability.  *See, e.g.*, *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 115 F.4th 1266, 1286 (11th Cir. 2024) (assessing nominal damages claim when there is an alleged violation of a constitutional right); *see also Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("[L]iability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant.").  Such nominal sanctions are manifestly inappropriate for the same reasons explained throughout this brief.

The Supreme Court has made clear that a fee award under a court's inherent authority must be "calibrate[d] to [the] damages caused by" the conduct at issue, and that a causal link must exist "between the litigant's misbehavior and legal fees paid by the opposing party."  *Goodyear*, 581

6

U.S. at 108.  In other words, the complaining party may recover "only the portion of his fees that he would not have paid but for" the misconduct.  *Id.* at 109 (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)).  When a party "would have incurred [an] expense in any event[,] he has suffered no incremental harm," and "the court lacks a basis for shifting the expense."  *Id.* (quoting *Fox*, 563 U.S. at 836).  The *amici* did not incur any damages, thus they clearly are neither entitled to fees under inherent authority, nor under any other theory.

The Former Federal Judges also point to common law in support, but it does not help them.  *See* D.E.112, at 5-6.  Under the traditional common-law rule, two conditions must be satisfied for fee-shifting in favor of *amici*: (1) the court must have appointed the *amicus* (not merely permitted voluntary participation), and (2) the *amicus* must have rendered services beneficial to the resolution of the questions presented, with the fee directed to be paid by the party responsible for the situation that prompted the appointment.  The D.C. Circuit discussed this doctrine in *Schneider v. Lockheed Aircraft Corp.*, 658 F.2d 835 (D.C. Cir. 1981), but ultimately reversed the district court's award of attorney's fees to *amici*, finding that the second condition was not satisfied.  *Id.* at 854, 858.  The court held that "any taxation against [a party] of the amicus curiae fees *is contrary to clear legal precedent* and inappropriate in these cases" because the fees could not properly be assessed due to lack of causation between the *amicus*'s participation and resulting fees.  *Id.* at 854 (emphasis added); *see also Miller-Wohl Co. v. Comm'r of Lab. & Indus. State of Mont.*, 694 F.2d 203, 205 (9th Cir. 1982) (holding that "admirably fulfilling the role of amicus does not, however, entitle [one] to compensation"); *Morales*, 820 F.2d at 733 (5th Cir. 1987) (reversing fee award because *amici* were volunteers).

Also missing here is a causal link between Plaintiffs' filings and the fees *amici* voluntarily incurred, like the situation in *Schneider*, 658 F.2d at 854.  "[A] court, when using its inherent sanctioning authority" must "establish a causal link . . . between the litigant's misbehavior and legal fees paid by the opposing party."  *Goodyear*, 581 U.S. at 108.  Here, *amici*'s voluntary, unilateral participation breaks any causal connection between the filing of the Complaint and *amici*'s fees and expenses.  *Amici* got involved in this high-profile case for their own purposes, which is fatal to their fee petitions.  Moreover, for the reasons explained in Plaintiffs' motion to stay, and that will be pursued on appeal, Plaintiffs did not cause *amici*'s decision to voluntarily insert themselves into this case.

Finally, *amici*'s fee demands fail because their briefs were built on inadmissible evidence.

Such work was not compensable.  The role of *amici* is circumscribed to avoid inundating the courts with immaterial matter: an amicus brief must "bring[] relevant matter to the attention of the Court" or else it "simply burdens . . . the Court."  Fed. R. App. P. 29 advisory committee's note (quoting Sup. Ct. R. 37.1).  This role necessarily limits the kind of factual assertions that an *amicus* may present.  In general, factual assertions may be either "adjudicative facts"—those "developed in a particular case"—or "legislative facts"—"established truths, facts or pronouncements that do not change from case to case but apply universally."  *Robinson v. Liberty Mut. Ins. Co.*, 958 F.3d 1137, 1142 (11th Cir. 2020).

For facts outside the record, an *amicus* should present only the kind of contextual, legislative-type information about which it has firsthand expertise—such as how an industry or policy operates beyond the specific interaction between the parties—or judicially noticeable facts.  *See, e.g.*, *Ryan v. CFTC*, 125 F.3d 1062, 1064 (7th Cir. 1997) (Posner, J.) ("We are not helped by an amicus curiae's expression of a 'strongly held view' about the weight of the evidence[.]");  *Ringside Inc. v. Cincinnati Ins. Co.*, No. 20-CV-01709, 2021 WL 5305836, at *1-3 (D. Or. Nov. 15, 2021) (explaining that *amici*'s usual role is "assisting in a case of general public interest, supplementing the efforts of counsel, and drawing the court's attention to law that escaped consideration"—not presenting factual background).  Accordingly, where *amici* venture beyond the record with factual assertions that are neither grounded in their own firsthand expertise nor subject to judicial notice, they exceed the proper bounds of *amicus* participation.

In this case, *amici* did just that: they exceeded the proper bounds of participation.  Their contribution consisted of, based on their own subjective views, "warn[ing]" the Court that this case "could lead to a collusive settlement," wrongly alleging that Plaintiffs' claims were "time-barred," and falsely asserting that the damages sought were "legally and factually unsupported."  D.E.111 at 2.  The Former Federal Judges similarly describe their contribution as having "raised issues of fact and law."  D.E.112 at 4.  However, none of these observations by the *amici* were supported by first-hand knowledge of the underlying events or judicially noticeable facts.  *See, e.g.*, D.E.33 at 4-6 & nn.4-11 (citing news articles for contested factual propositions); D.E.94 at 4 & n.2.  The *amici* had no involvement in the negotiation of the settlement, no access to non-public information about the parties' conduct, and no personal knowledge of any fact relevant to the Court's wrongful sanctions analysis.  They relied entirely on false inferences drawn from public filings, news reports, and legal argument available to any interested observer.  If reading and repackaging those

materials created a right to compensation, the Court could just as readily reimburse the newspapers that published them.  Obviously, that would be absolutely improper.  Public commentary does not become compensable legal work merely because the Court later found it subjectively persuasive.

In sum, the Former Government Officials and Former Federal Judges acted as volunteers, choosing to participate in this litigation of their own accord, and thus are not entitled to compensation.  *See A. Hirsh, Inc.*, 948 F.2d at 1250-51 (denying fees to an *amicus* because its costs were caused by its own voluntary appearance rather than the opposing party's conduct).

## CONCLUSION

For the foregoing reasons, Plaintiffs and their Attorneys respectfully request that the Court deny *amici*'s requests for fees and costs.

Dated: August 3, 2026

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Christopher G. Oprison*
Christopher G. Oprison (FBN 0122080)
200 South Biscayne Blvd., Suite 2500
Miami, FL 33131
Telephone: (305) 423-8522
Facsimile: (305) 437-8131
chris.oprison@dlapiper.com

*Counsel for Plaintiffs President Donald J. Trump, Donald J. Trump Jr., Eric Trump, The Trump Organization, LLC, Alejandro Brito, and Daniel Epstein*

9

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 3, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF. I further certify that the foregoing document is being served on Defendants by U.S. Mail at the following addresses:

U.S. Department of the Treasury
Attention: Secretary of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

U.S. Attorney's Office Southern District of Florida
99 N.E. 4th Street
Miami, FL 33132

Internal Revenue Service
Attention: Commissioner of Internal Revenue
1111 Constitution Avenue, NW
Washington, D.C. 20224

*/s/ Christopher G. Oprison*
Christopher G. Oprison