**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

PRESIDENT DONALD J. TRUMP, *et al.*,

      *Plaintiffs*,

  v.

INTERNAL REVENUE SERVICE, *et al.*,

      *Defendants*.

Case No. 26-cv-20609-WILLIAMS/LETT

**RESPONSE TO EXPEDITED MOTION TO STAY BY
NON-PARTY MOVANTS/*AMICI* 35 FEDERAL JUDGES**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................ii

ARGUMENT .......................................................................................................................... 1

    1.    The Court had ample power to consider and impose Rule 11 sanctions and sanctions under its inherent authority ........................................................................................ 1

    2.    The Court provided ample notice to Plaintiffs and their counsel that sanctions were under consideration and on what grounds............................................................................. 2

    3.    The Order does not improperly rely upon news reports for the truth of the matter asserted. ............................................................................................... 5

    4.    Plaintiffs' First Amendment objection to a single aspect of the Court's order is also unlikely to prevail on appeal........................................................................................ 6

    5.    Plaintiffs Will Not Suffer Irreparable Harm Absent a Stay ............................................. 9

CONCLUSION...................................................................................................................... 11

APPENDIX: LIST OF MOVANTS / *AMICI CURIAE* ...................................................... 1

**TABLE OF AUTHORITIES**

**Cases**

*Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 766 F.2d 715 (2d Cir. 1985) ........... 10

*Attwood v. Singletary*, 105 F.3d 610 (11th Cir. 1997) .................................................................. 2

*Balboa Island Vill. Inn, Inc. v. Lemen*, 40 Cal. 4th 1141 (2007) ..................................................... 8

*Cf. Baker v. Alderman*, 158 F.3d 516 (11th Cir. 1998) ................................................................... 4

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) .............................................................................. 1

*Elrod v. Burns,* 427 U.S. 347 (1976) ........................................................................................... 10

*Fox v. Acadia State Bank,* 937 F. 2d 1566 (11th Cir. 1991) ........................................................... 1

*Gold & Diamond Buyers*, *LLC v. Friedlich*, No. 11-21843-CIV,

    2011 WL 13322791 (S.D. Fla. Sept. 26, 2011) ......................................................................... 8

*Jensen v. Phillips Screw Co.*, 546 F.3d 59 (1st Cir. 2008) ............................................................. 5

*Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300 (11th Cir. 2021) ..................................................... 8

*Kaplan v. DaimlerChrysler*, *A.G.*, 331 F.3d 1251 (11th Cir. 2003) ................................................. 4

*Kingsley Books, Inc. v. Brown*, 354 U.S. 436 (1957) .................................................................... 8

*Kleiner v. First Nat'l Bank of Atl.*, 751 F.2d 1193 (11th Cir. 1985) ................................................ 6

*Laird v. Tatum*, 408 U.S. 1 (1972) .............................................................................................. 10

*Lothschuetz v. Carpenter*, 898 F.2d 1200 (6th Cir. 1990) ............................................................. 8

*Nken v. Holder*, 556 U.S. 418 (2009) ....................................................................................... 1, 9

*Powrzanas v. Jones Util. & Contracting Co.*, 834 F. App'x 500 (11th Cir. 2020) ....................... 3

*Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346 (Fed. Cir. 2003) ...................... 4

*Procup v. Strickland*, 792 F.2d 1069 (11th Cir. 1986) ................................................................... 6

*Riccard v. Prudential Ins. Co.,* 307 F.3d at 1277 (11th Cir. 2002) ............................................. 4, 6

*Saadi v. Maroun*, No. 8:07CV01976T24MAP, 2009 WL 3617788 (M.D. Fla. Nov. 2, 2009) ...... 8

*Scott v. Vantage Corp.*, 64 F.4th 462 (3d Cir. 2023) ...................................................................... 3

*Siegel v. LePore*, 234 F.3d 1163 (11th Cir. 2000) ......................................................................... 9

*Swain v. Junior*, 958 F.3d 1081 (11th Cir. 2020) .......................................................................... 1

*Trump v. Clinton*, No. 22-14102-CV, 2023 WL 1207842 (S.D. Fla. Sept. 15, 2023) .................... 2

*United States v. Alvarez*, 567 U.S. 709 (2012) .............................................................................. 8

*Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244 (11th Cir. 2016) ................................................ 9

**Other Authorities**

Restatement (Second) of Judgments § 29 (1982) ............................................................. 7

Todd Blanche (@DAGToddBlanche), X (Aug. 2, 2026, 10:15 AM) ............................................ 7

**Rules**

Fed. R. Civ. P. 11 ............................................................................................................. 4

Fed. R. Civ. P. 11(c)(1)(B) (2006) (current version at Fed. R. Civ. P. 11(c)(3) ........................... 3

Fed. R. Evid. 201 ............................................................................................................. 5, 6

Non-party movants/amici are 35 former federal judges ("Former Federal Judges") who "have dedicated their professional lives to the administration of justice." Mot. for Relief from J., DE 63 at 1. They submit this brief opposition to Plaintiffs' and their attorneys' (collectively, "Plaintiffs") Expedited Motion to Stay.

## ARGUMENT

A stay is not appropriate because Plaintiffs are not likely to prevail on appeal. The stay application also fails because Plaintiffs have not shown irreparable injury. *See Swain v. Junior*, 958 F.3d 1081, 1088 (11th Cir. 2020) (requiring courts to consider the "'most critical'" factors of whether the party seeking a stay pending appeal "'has made a strong showing that he is likely to succeed on the merits'" and "'whether the applicant will be irreparably injured absent a stay'") (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)). Plaintiffs, as "[t]he party requesting a stay," cannot carry "the burden of showing that the circumstances justify an exercise of that discretion." *Nken*, 556 U.S. at 433–34.

1. **The Court had ample power to consider and impose Rule 11 sanctions and sanctions under its inherent authority**

As the Court correctly held, "a voluntary dismissal does not deprive a district court of jurisdiction to determine whether Rule 11 has been violated and, if so, what sanctions are appropriate." DE 106 at 41 (citing *Fox v. Acadia State Bank,* 937 F. 2d 1566, 1569 n.2 (11th Cir. 1991)). The Supreme Court has recognized the inherent authority of federal courts to punish "conduct which abuses the judicial process" and "fashion an appropriate sanction." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991); *see* Reply in Support of Mot. for Relief from J., DE 94 at 9-10. Here, as the Court noted, the strong evidence of collusion and lack of adversity amply supported the Court's conclusion that "Plaintiffs acted in bad faith and for an improper purpose by 'collusively filing a lawsuit with claims subject to multiple dispositive defenses solely to

1

provide cover for a collusive settlement.'"  DE 106 at 43; *see also* DE 63 at 9-11; DE 94 at 1-4. The Court found that "'[Plaintiffs] pursued this lawsuit in bad faith'" and with "'improper purpose,'" and Rule 11 sanctions were therefore appropriate.  DE 106 at 42 (quoting *Trump v. Clinton*, No. 22-14102-CV, 2023 WL 1207842, at *9 (S.D. Fla. Sept. 15, 2023)).  Plaintiffs cannot show that they are likely to prevail on their argument that the Court erred in reaching that conclusion.

> **2.   The Court provided ample notice to Plaintiffs and their counsel that sanctions were under consideration and on what grounds.**

Plaintiffs' contention that they lacked notice that the Court was considering sanctions and the grounds under consideration is frivolous; they were afforded "notice and an opportunity to respond."  *Attwood v. Singletary*, 105 F.3d 610, 613 (11th Cir. 1997).

Plaintiffs concede, as they must, that "[t]he May 29 Order directed Plaintiffs to respond to accusations of collusion, adversity, deception, and fraud on the Court."  Expedited Mot. to Stay, DE 114 at 12.  Moreover, contrary to their claim, Mr. Brito and Mr. Epstein were put on clear notice that their conduct was directly at issue with the potential for a finding of misconduct. The Court ordered them to respond to the Former Federal Judges' "grievous allegations that Plaintiffs voluntarily dismissed this litigation solely to avoid judicial scrutiny of a lawsuit that 'was collusive from the start' and was only filed to provide the imprimatur of legality for an unlawful settlement."  Order, DE 65 at 3.  The Court explicitly stated that it was acting pursuant to its power to investigate potential Rule 11 violations.  DE 65 at 1 ("A court is empowered to investigate serious misconduct as a collateral issue within the purview of Rule 11").  The Court explained that these acts could open both the attorneys and the parties to sanctions, because Rule 11 "'requires that an attorney or unrepresented party filing a pleading certify that the filing is not presented for any improper purpose,'" *id.* at 2 (quoting *Powrzanas v. Jones Util. & Contracting*

2

*Co.*, 834 F. App'x 500, 507 (11th Cir. 2020) (internal quotation marks omitted)), and because "[a] party's decision to file a frivolous lawsuit for the sole purpose of forcing a settlement may qualify as such an improper purpose," *id* (citing *Scott v. Vantage Corp.*, 64 F.4th 462, 472 (3d Cir. 2023)).

Plaintiffs are also wrong in claiming that they "received no notice of much of the grounds the Court ultimately decided" because "[t]he May 29 Order did not identify the statute of limitations, the damages demand, counsel's prior professional relationships, asserted conflicts or recusal obligations, the legality or scope of the Settlement Agreement, the President's Compensation Clause, or the future use of the Settlement Agreement as potential grounds for sanctions." DE 114 at 12. Contrary to those claims, the Court's May 29 Order identifies the statute of limitations ("the non-party movants assert that Plaintiffs' claims were 'clearly untimely' and therefore untenable"), the legality and scope of the Settlement Agreement and its future use (the Court highlighted allegations that the case involved "an unlawful settlement" that also "includes a 'three-paragraph addendum . . . [that] purports to forever bar[] and preclude[] the United States from pursuing claims that could have been [otherwise] asserted [against] Plaintiffs'"), and points to the "grievous allegations that Plaintiffs voluntarily dismissed this litigation solely to avoid judicial scrutiny of a lawsuit that 'was collusive from the start.'" DE 65 at 3; see *id.* at 3, nn. 2 & 3. The Court's May 29 Order thus put Plaintiffs and their counsel on notice of the allegations at issue and the stakes, and thus fully satisfies the requirements of due process.

Moreover, for the same reason, that Order fully suffices as an order to show-cause within the meaning of Rule 11(c)(1)(B). The Eleventh Circuit has noted that "[w]hile formal compliance with Rule 11(c)(1)(B) is the ideal… we apply a flexible standard, *Riccard,* 307 F.3d

at 1294 n. 14, so in many cases substantial compliance may suffice." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1256–57 (11th Cir. 2003) (citing *Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346, 1354 (Fed. Cir. 2003) (rejecting sanctionee's contention that she should have received a separate show-cause regarding Rule 11 sanctions after receiving a show-order for why she should not be held in contempt  because she "had full notice of the basis of the action the court ultimately took, and the court's 'technical violation' of the notice requirement of Rule 11 does not warrant setting aside the court's sanction")); *see also Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 n. 14 (11th Cir. 2002) (stating that due process "requires only that the sanctionee have fair notice of the possible imposition of sanctions and an opportunity to respond orally or in writing…. The adequacy of notice and hearing depends, to some extent, on the knowledge the party has of the consequences of his own conduct.").  Here, the Court's direction that "it is **ORDERED AND ADJUDGED** that Plaintiffs shall file a response to the Motion (DE 63) on or before June 12, 2026," DE 65 at 3, fully satisfied that flexible standard.

Finally, Plaintiffs actually briefed the Rule 11 issue in their response to the Court's May 29 Order.  Among other things they argued both that non-party movants did not move under Rule 11 and that sua sponte invocation of Rule 11 is inappropriate.  *See* Pl.'s Resp. to the Court's May 29, 2026 Order, DE 89 at 13-15.  They cannot argue that they had no notice of the Rule 11 potential when they briefed that very issue.  Nor did Plaintiffs request additional briefing, argument, or an evidentiary hearing.  *Cf. Baker v. Alderman*, 158 F.3d 516, 526 (11th Cir. 1998) ("There is no requirement that a hearing be conducted before sanctions are awarded.").

Thus, Plaintiffs have failed to demonstrate a likelihood that they will prevail on appeal on this issue.

### 3.   The Order does not improperly rely upon news reports for the truth of the matter asserted.

Nor are Plaintiffs' complaints about the Court's citation of news reports in its Order likely to prevail on appeal.  DE 114 at 8, 12, 13.  To start, the Federal Rules of Evidence do not "necessarily apply to factfinding in the context of sanctions." *Jensen v. Phillips Screw Co.*, 546 F.3d 59, 66 n.5 (1st Cir. 2008).  Moreover, Plaintiffs concede that "[a] court may notice that an article was published," DE 114  at 13, and Rule 201 states that the "court may judicially notice a fact that is not subject to reasonable dispute."  Fed. R. Evid. 201.  That is what the Court did; it noted the publication of news articles and facts that cannot be reasonably disputed.  Plaintiffs make the conclusory allegation that that the Court relied "on news reports for the truth of disputed assertions," DE 114 at 13, but they fail to identify even one such fact.  Nor could they.  The Court's findings are amply supported by facts that did *not* come from news sources: President Trump is the lead Plaintiff and exercises complete control over Defendants and their counsel.  DE 106 at 18-27.  The Complaint was brought after the statute of limitations had expired, and yet the government failed to raise that and other strong defenses despite having done so in other litigation arising from IRS disclosures.  *Id.* at 5, 9.  Defendants "did not endeavor to defend their agencies, safeguard taxpayer monies, or even file an appearance." *Id.* at 24.  And, most crucially, the Court concluded, after extensive analysis of Constitutional authority, existing jurisprudence, President Trump's executive orders, and the parties' conduct in litigating and "settling" this case, that there was no adverseness between Plaintiffs and Defendants.  *Id*. at 13-28.  In short, the Court's Order did not depend on the truth of facts sourced solely from news accounts.

There is similarly no foundation for Plaintiffs' further claim that "[t]he Court also did not provide a meaningful opportunity to be heard required by Rule 201(e)."  DE 114 at 13.  Rule 201

provides that "[o]n timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed.  If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard."  Fed. R. Evid. 201.  Plaintiffs did not request such a hearing as to any specific fact and do not do so now.

> **4.   Plaintiffs' First Amendment objection to a single aspect of the Court's order is also unlikely to prevail on appeal.**

The Order does not infringe the First Amendment.  One provision prohibits parties from "referring to the purported 'settlement agreement' . . . as evidence of a 'settlement' reached in this matter," or "using, offering, admitting, or citing any of its provisions in any  . . . official proceeding as evidence of a 'settlement' reached in this matter."  DE 106 at 47.  That provision is narrowly tailored to redress the bad faith litigation conduct at issue here and is well within the Court's power under Rule 11 and its inherent authority.

As the Court observed, "District Courts have broad discretion to tailor appropriate and reasonable sanctions under Rule 11."  DE 106 at 44 (citing *Riccard,*307 F.3d at 1295 ).  Similarly, the Court has broad "inherent authority to protect the integrity of judicial proceedings."  DE 106 at 48 (citing *Kleiner v. First Nat'l Bank of Atl.*, 751 F.2d 1193, 1209 (11th Cir. 1985)).  *See also Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986) ("Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions").  Here, the Court correctly found that "Plaintiffs acted in bad faith and for an improper purpose by 'collusively filing a lawsuit with claims subject to multiple dispositive defenses solely to provide cover for a collusive settlement,'"  DE 106 at 43, and concluded that "[t]he Parties used the existence of federal litigation as a means of conferring legitimacy upon a course of action that they were unwilling to subject to judicial review."  *Id*. at 52.  On that basis "the Court expressly [found]

6

that Plaintiffs acted in bad faith." *Id.* Given those findings, restricting the parties' ability to capitalize on their bad faith in official proceedings by claiming that their collusive agreement is a "settlement" of a valid federal litigation is a remedy precisely tailored and no broader than necessary to redress the parties' sanctionable conduct.

Indeed, the sanction is surgical in its precision. It imposes no restriction whatsoever on the parties' speech *outside* official proceedings. Insofar as this Order is concerned, the parties and their counsel may make whatever claims suit them about the arrangement in the media and otherwise.[1] *Cf.* DE 114 at 14 (citing prior restraint cases that restrict news media and publishers from widespread publication). Nor does the Order constrain the parties from submitting the results of their arrangement, or referring to or relying on its provisions, in any official proceeding. Thus, it is simply not true, contrary to Plaintiffs' assertion, that the Order restricts their ability to "invoke [it] as a release, defense, compromise, satisfaction, or other legally operative fact." *Id,* at 15. The Order simply prohibits the parties from claiming that the terms reflected in the documents labeled "Settlement" and the "Addendum" are "*evidence of a 'settlement' reached in this matter*." DE 106 at 47 (emphasis added). That restriction is precisely tailored to redress the parties' bad faith effort to use their collusive lawsuit "as a means of conferring legitimacy" and "cover" for the collusive transaction. *Id.* at 52, 43. This restriction operates much like collateral estoppel which prohibits re-litigating an issue of fact or law that "was actually litigated and essential to a prior judgment that is valid and final." Restatement (Second) of Judgments § 29 (1982). That restriction obviously does not violate the First Amendment. Here, the Court has concluded that the purported settlement was not a valid

---

[1] In fact, since the Court's Order, Acting Attorney General Todd Blanche has discussed the arrangement in a social media post as the "May IRS settlement." *See* Todd Blanche (@DAGToddBlanche), X (Aug. 2, 2026, 10:15 AM), https://x.com/DAGToddBlanche/status/2084114427813437897. Such a statement outside of official proceedings does not offend the Court's Order.

7

settlement between adverse parties and the Order, therefore, forbids Plaintiffs from presenting it as such in future official proceedings. DE 106 at 38.

The Eleventh Circuit has made clear that courts can exercise their inherent authority to uphold the integrity of the justice system through prefiling injunctions—entirely barring a litigant from filing future suits absent prior permission—without offending the First Amendment. *See Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1317-18 (11th Cir. 2021).  The injunction at issue here is far more modest than a prefiling injunction and – in redressing bad faith, collusive conduct – serves an even more fundamental purpose.  Moreover, courts have repeatedly upheld narrowly tailored permanent injunctions in the context of speech that was defamatory, obscene, or incident to other tortious conduct.  *Lothschuetz v. Carpenter*, 898 F.2d 1200, 1208 (6th Cir. 1990) (J. Wellford, concurring in part and dissenting in part) ("false and libelous" speech) (the dissent becoming "the opinion of the court on this issue," *id*. at 1206); *Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 444 (1957) (obscene speech); *Balboa Island Vill. Inn, Inc. v. Lemen*, 40 Cal. 4th 1141, 1158 (2007), as modified (Apr. 26, 2007) (defamatory speech); *Saadi v. Maroun*, No. 8:07CV01976T24MAP, 2009 WL 3617788, at *3 (M.D. Fla. Nov. 2, 2009) (defamatory speech); *Gold & Diamond Buyers*, *LLC v. Friedlich*, No. 11-21843-CIV, 2011 WL 13322791, at *2-3 (S.D. Fla. Sept. 26, 2011) (defamatory speech and speech incident to "tortious interference with a business relationship").  Here, the Court's sanction restricts only speech that would falsely present, as if they were a legitimate settlement of federal litigation, these collusive arrangements based on a collusive suit.[2]  Because the injunction is precisely tailored to redress that offense to

---

[2] Indeed, speech intended to mislead official tribunals may entirely lack First Amendment protection. See *United States v. Alvarez*, 567 U.S. 709, 721 (2012) (perjured statements are not protected speech because they "undermine[] the function and province of the law and threaten[] the integrity of judgments that are the basis of the legal system").

8

the system of justice, Plaintiffs are unlikely to prevail on their claim that this aspect of the Order offends the First Amendment.

### 5.  Plaintiffs Will Not Suffer Irreparable Harm Absent a Stay

Plaintiffs also offer no support for their irreparable harm arguments, for which they bear the burden.  As movants for extraordinary relief, Plaintiffs must demonstrate that they would suffer not only a "possibility of irreparable injury"—which is insufficient, *Nken*, 556 U.S. at 434 (citations omitted)—but that they will suffer "'imminent'" irreparable harm in the absence of a stay, *Wreal, LLC v. Amazon.com, Inc*., 840 F.3d 1244, 1249 (11th Cir. 2016) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)).  Plaintiffs, who have advanced no evidence, cannot carry their burden.

Take, for instance, Plaintiffs' claim that a stay is necessary to prevent irreparable harm to Mr. Brito and Mr. Epstein's "professional standing" from bar disciplinary referrals.  DE 114 at 16.  Plaintiffs assert that "[o]nce a bar referral is made and disciplinary proceedings initiated, the damage to an attorney's professional reputation is immediate and irreversible—regardless of the ultimate outcome."  DE 114 at 17.  But the bar disciplinary referrals had already been sent out by the Clerk before Plaintiffs filed the instant motion.  Clerk's Notice of Compliance, DE 107.  To the extent Plaintiffs can even support their claims that the consequences of such a referral are "immediate and irreversible," DE 114 at 17, which they have not done with any evidence, the point is self-defeating.  A stay cannot prevent Mr. Brito and Mr. Epstein's bar disciplinary referrals, which have already occurred.  It is notable in that connection that the Department of Justice lawyers subject to referrals required in the Court's Order, Mr. Blanche and Mr. Woodward, have not appeared to object or seek a stay of the Order.  Plaintiffs also claim that the sanction preventing Mr. Epstein's pro hac vice admission in the Southern District of Florida for one year will cause him irreparable harm.  *Id.*  Yet Mr. Epstein has not offered any evidence

suggesting he intends to pro hac vice into any cases in the next year.  Thus, he cannot demonstrate that he will suffer "imminent" irreparable harm.

Likewise, Plaintiffs' claim that being prevented from referring to the settlement in official proceedings will cause them irreparable harm, *id* at 16-17, is similarly unsupported by any evidence.  Putting aside the merits problem with their First Amendment claim, see supra point 4, Plaintiffs have proffered nothing to suggest that there *are* any imminent judicial, administrative, regulatory or other official proceedings where Plaintiffs intended to refer to the purported settlement "as evidence of a 'settlement' reached in this matter," DE 106 at 47.  Nor is it at all clear how being prohibited to point to these documents as *evidence* of a settlement of this litigation—while remaining free to invoke the provisions themselves without that misleading characterization—impairs any legally protected interest.

Absent any "specific present object harm or threat of specific future harm," *Laird v. Tatum,* 408 U.S. 1, 14 (1972), Plaintiffs' claims of First Amendment irreparable injury must fail. DE 114 at 16-17. *See Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 766 F.2d 715, 722 (2d Cir. 1985) ("a party must articulate a 'specific present objective harm or a threat of specific future harm' to establish a cognizable claim based on the chilling of first amendment rights" (quoting *Laird ,* 408 U.S. at 14)).  *Elrod* is not to the contrary.  In *Elrod*, in stark contrast to this case, "First Amendment injuries were 'both threatened and occurring at the time of respondents' motion.'" *Anderson v. Davila*, 125 F.3d 148, 164 (3d Cir. 1997) (quoting *Elrod v. Burns,* 427 U.S. 347,374 (1976)).  In short, Plaintiffs cannot rely on the First Amendment as a basis for irreparable injury when there is zero evidence that they will be prohibited from uttering protected speech during the pendency of the appeal.

Finally, Plaintiffs do not even suggest that the fee proceedings would pose irreparable harm, instead suggesting that the proceedings should be "held in abeyance." DE 114 at 19. Because this claim is untethered to Plaintiffs' heavy burden to prove likelihood of success and irreparable harm, *see supra*, it should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for stay should be denied.

Dated: August 4, 2026

/s/ Matthew J. Platkin
Matthew J. Platkin*
Angela Cai*
Ravi Ramanathan*
Aaron E. Haier*
Conor Bradley*
**PLATKIN LLP**
413 Washington Ave.
Unit 174
Belleville, NJ 07109
Phone: (973) 561-1951
Email: mplatkin@platkinllp.com

Neal S. Manne*
Justin A. Nelson*
Stephen Shackelford, Jr.*
Davida Brook*
Daniel J. Shih*
Zach Savage*
Glenn Bridgman*
Jillian Hewitt*
Nick Carullo*
Russell Rennie*
**SUSMAN GODFREY L.L.P.**^
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: 1-713-653-7802
Email: jnelson@susmangodfrey.com

*Counsel for Movants / Amici Curiae Judge Michael Luttig (Ret.) and Judge Nancy Gertner (Ret.) only*

Respectfully submitted,

Norman L. Eisen*
David W. Ogden*
Stephen A. Jonas*
**DEMOCRACY DEFENDERS ACTION**
600 Pennsylvania Ave. SE #15180
Washington, D.C. 20003
(202) 594-9958
Email: norman@democracydefenders.org

**RIVERO MESTRE LLP**
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: dtenjido@riveromestre.com

By: /s/ Andrés Rivero
Andrés Rivero
Florida Bar No. 613819
Daniela Tenjido-Eljaiek
Florida Bar No. 1031531

*Counsel for Movants / Amici Curiae 35 Former Federal Judges*

*admitted pro hac vice

^primary office listed

11

## APPENDIX: LIST OF MOVANTS / *AMICI CURIAE*

Judge Michael Luttig, U.S. Circuit Judge, U.S. Court of Appeals for the Fourth Circuit (Ret.)

Judge Nancy Gertner, U.S. District Judge, District of Massachusetts (Ret.)

Chief Judge John W. Bissell, U.S. District Judge, District of New Jersey (Ret.)

Judge Geraldine Soat Brown, U.S. Magistrate Judge, Northern District of Illinois (Ret.)

Chief Judge Rubén Castillo, U.S. District Judge, Northern District of Illinois (Ret.)

Chief Judge U.W. Clemon, U.S. District Judge, Northern District of Alabama (Ret.)

Judge Susan E. Cox, U.S. Magistrate Judge, Northern District of Illinois (Ret.)

Judge Morton Denlow, U.S. Magistrate Judge, Northern District of Illinois (Ret.)

Judge David K. Duncan, U.S. Magistrate Judge, District of Arizona (Ret.)

Chief Judge Sheila Finnegan, U.S. Magistrate Judge, Northern District of Illinois (Ret.)

Judge Jeremy Fogel, U.S. District Judge, Northern District of California (Ret.)

Judge James C. Francis IV, U.S. Magistrate Judge, Southern District of New York (Ret.)

Judge Steven M. Gold, U.S. Magistrate Judge, Eastern District of New York (Ret.)

Judge A. Benjamin Goldgar, U.S. Bankruptcy Judge, Northern District of Illinois (Ret.)

Judge Paul W. Grimm, U.S. District Judge, District of Maryland (Ret.)

Chief Judge Robert Harlan Henry, U.S. Circuit Judge, U.S. Court of Appeals for the Tenth Circuit (Ret.)

Judge Thelton Henderson, U.S. District Judge, Northern District of California (Ret.)

Judge Richard J. Holwell, U.S. District Judge, Southern District of New York (Ret.)

Judge Ellen Segal Huvelle, U.S. District Judge, District of Columbia (Ret.)

Judge John E. Jones III, U.S. District Judge, Middle District of Pennsylvania (Ret.)

Judge Barbara M. G. Lynn, U.S. District Judge, Northern District of Texas (Ret.)

Judge Roanne L. Mann, U.S. Magistrate Judge, Eastern District of New York (Ret.)

Judge A. Howard Matz, U.S. District Judge, Central District of California (Ret.)

Chief Judge Paul Michel, U.S. Circuit Judge, U.S. Court of Appeals for the Federal Circuit (Ret.)

Judge Kathleen O'Malley, U.S. Circuit Judge, U.S. Court of Appeals for the Federal Circuit (Ret.)

Judge Brian Owsley, U.S. Magistrate Judge, Southern District of Texas (Ret.)

Judge Philip M. Pro, U.S. District Judge, District of Nevada (Ret.)

Judge Victoria A. Roberts, U.S. District Judge, Eastern District of Michigan (Ret.)

Judge Shira A. Scheindlin, U.S. District Judge, Southern District of New York (Ret.)

Judge Fern M. Smith, U.S. District Judge, Northern District of California (Ret.)

Judge John D. Tinder, U.S. Circuit Judge, U.S. Court of Appeals for the Seventh Circuit (Ret.)

Judge Ursula Ungaro, U.S. District Judge, Southern District of Florida (Ret.)

Judge T. John Ward, U.S. District Judge, Eastern District of Texas (Ret.)

Judge Mark L. Wolf, U.S. District Judge, District of Massachusetts (Ret.)

Judge Lee Yeakel, U.S. District Judge, Western District of Texas (Ret.)

2a

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of August 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which automatically serves all counsel of record for the parties who have appeared.

By: /s/ Andrés Rivero
Andrés Rivero