**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, DONALD J. TRUMP JR., ERIC TRUMP, AND THE TRUMP ORGANIZATION, LLC,<br><br>    *Plaintiffs*,<br><br>v.<br><br>INTERNAL REVENUE SERVICE AND U.S. DEPARTMENT OF THE TREASURY,<br><br>    *Defendants*. | No. 1:26-cv-20609-KMW |

**PLAINTIFFS' AND THEIR ATTORNEYS' REPLY IN SUPPORT OF THEIR
EXPEDITED MOTION TO STAY THE SANCTIONS ORDER AND RELATED
PROCEEDINGS PENDING APPEAL**

Plaintiffs President Donald J. Trump, Donald J. Trump Jr., Eric Trump, and The Trump Organization, LLC ("Plaintiffs"), with their attorneys Alejandro Brito and Daniel Epstein ("Attorneys," and, together with Plaintiffs, "Movants"), respectfully file this Reply in further support of their Expedited Motion to Stay the Sanctions Order and Related Proceedings Pending Appeal, D.E.114 ("Motion").

Movants sought expedited consideration of the Motion because the erroneously issued Sanctions Order's operative provisions are in effect now, and are inflicting immediate constitutional, professional, and reputational harm each day they remain in force. Movants therefore specifically requested a ruling by August 5, 2026, and expressly advised that, absent such a ruling, they would seek relief from the Eleventh Circuit, pursuant to Fed. R. App. P. 8(a)(2), to protect their rights and avoid the continuing and irreversible harm resulting from the error-ridden Sanctions Order.

On August 1, 2026, the Court entered an Order directing the court-appointed *amici*, D.E.43, to respond to the Motion. D.E.115. The court-appointed *amici* have not filed a response, and instead obtained an enlargement of time, through August 14, 2026, to do so. D.E.119, D.E.120. That briefing schedule extends beyond the date by which Movants advised they would seek appellate relief. Meanwhile, the wrongful Sanctions Order remains fully operative, and continues to inflict the very harm that prompted Movants to seek expedited relief in the first place.

Nevertheless, on August 4, 2026, the Thirty-Five Former Federal Judges ("Former Judges"), who have repeatedly and improperly injected themselves into this litigation, filed a Response. D.E.117. Movants therefore submit this Reply to address the Former Judges' arguments, while contemporaneously seeking relief in the Eleventh Circuit. Movants are thus proceeding as contemplated in the Motion. Should the court-appointed *amici* file a merits response by August 14, 2026, Movants expressly reserve the right to address any arguments raised therein.

## **INTRODUCTION**

The Response filed by the Former Judges, D.E.117, does not warrant a response because they are not parties and never requested the sanctions that the Court chose to impose *sua sponte*. In addition to that fact, the Former Judges' filing demonstrates precisely why a stay of all proceedings is warranted. The Former Judges fail to answer any of Movants' core arguments. They do not even attempt to explain how presidential supervision of executive agencies eliminates Article III adversity in a personal-capacity suit. They do not address, let alone distinguish,

precedents such as *United States v. Nixon*, in which the President and the United States were found to be adverse. They completely ignore the independent claims of Donald Trump Jr., Eric Trump, and The Trump Organization—who exercise zero authority over the IRS. They identify no individualized finding of knowing misconduct by any specific Movant. Nor do they explain how disagreement over a question the Court itself called "unprecedented" can possibly constitute sanctionable bad faith, which it does not. The Former Judges cannot answer Movants' critiques of the Sanctions Order—because there are no sound answers.

Rather than engage with the Motion's actual arguments, the Former Judges begin by refuting a claim Movants never made—that the Court lacked any authority to impose sanctions after voluntary dismissal. They attempt to rewrite the Court's unconstitutional gag order to make it appear more "surgical." They also continuously refer back to the Sanctions Order as though it were self-validating—quoting its findings as independent evidence, treating its conclusions as premises, and trying to argue that the Sanctions Order is correct because the Sanctions Order says so. Echo chambers may be commonplace in certain political circles, but they have no place in the courts of justice. The Sanctions Order is indefensible and highly unlikely to withstand appellate review. A stay pending appeal should issue.

## ARGUMENT

### I.     The Former Judges Do Not Meaningfully Defend the Sanctions Order's Core Error

The most revealing feature of the Former Judges' Response is that they fail to defend the Sanctions Order's erroneous core premise. The Sanctions Order rested centrally on the legal conclusion that the sitting President, when suing in his individual capacity, cannot be adverse to the agencies he supervises in his official capacity—a premise the Former Judges themselves describe as the Order's "most crucial[]" predicate. D.E.117 at 5; D.E.114 at 8-11 (showing why that premise is wrong). That premise is unequivocally wrong. Yet the Former Judges make no serious effort to defend that incorrect conclusion. They do not explain how presidential supervision of Executive Branch agencies eliminates adversity when the President sues to vindicate his personal rights; they do not address *United States v. Nixon*, which squarely demonstrates that the President and the Executive Branch can, indeed, stand adverse to one another in federal court; and they simply ignore the independent claims of Donald Trump Jr., Eric Trump, and The Trump Organization—just as they ignore claims brought by Hunter Biden during his father's term in office. D.E.114 at 9. The Former Judges' silence confirms why a stay must issue:

2

The Order's core legal premise is indefensible; but even if it were defensible, which it is not, disagreement over an unsettled constitutional question can never serve as a basis for punitive, career-altering sanctions. *Id.* at 10-11. Allowing sanctions because counsel advanced a good-faith legal position that a court later rejected would pose an obvious danger to zealous advocacy and to the adversarial system of justice itself. A stay must issue.

## II.     The Former Judges Instead Focus on Uncontested Issues Not Raised in the Motion

Rather than engage with Movants' actual arguments—and the Sanctions Order's real and obvious defects—the Former Judges instead devote their opening argument to the simple proposition that a court theoretically retains authority to consider sanctions after a voluntary dismissal. D.E.117 at 1-2. That point is not in dispute. Whether the Court *could* impose sanctions and whether it *properly did so* are quite different questions. Movants have never argued that a court *categorically* lacks jurisdiction to consider sanctions in appropriate cases following dismissal. Instead, Movants challenge whether the sanctions imposed here were substantively correct, procedurally sound, and constitutionally permissible. They were not.

## III.    The Former Judges' Notice Arguments Do Not Cure the Court's Errors

The Former Judges incorrectly argue that the Court's May 29 Order, D.E.65, supplied adequate notice because it referenced Rule 11, summarized *amici*'s allegations, and directed Plaintiffs to respond. D.E.117 at 2-4. That argument fails. The inquiry is not whether the May 29 Order mentioned sanctions or repeated broad, false, accusations of collusion. It is whether the Order gave the persons ultimately sanctioned fair notice of the specific conduct the Court later used as premise for the sanctions. *See In re Mroz*, 65 F.3d 1567, 1575-76 (11th Cir. 1995). It did not.

Rule 11(c)(3) requires the Court to "order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." That requirement was not satisfied here. The May 29 Order directed *Plaintiffs* to respond to the Former Judges' filing. It did not order Mr. Brito or Mr. Epstein to show cause. It did not identify them as potential sanction subjects. It did not state that professional sanctions, monetary sanctions, bar referrals, or unconstitutional speech restrictions were under consideration. Nor did that Order direct Mr. Brito or Mr. Epstein to explain why their own conduct violated Rule 11.

The May 29 Order also failed to describe the conduct for which sanctions were ultimately imposed. The Sanctions Order wrongly condemned Plaintiffs' statute-of-limitations position, the

damages demand, counsel's professional relationships, alleged conflicts and recusal obligations, Compensation Clause arguments, the Settlement Agreement's future enforceability, and entered an unlawful speech injunction. None of this appeared in the May 29 Order as a potential basis for sanctions or a possible remedy. Nor did the Former Judges themselves seek Rule 11 sanctions, professional discipline, monetary penalties, a bar referral, or an injunction.

The Former Judges' reliance on a purported "flexible standard" under *Kaplan v. DaimlerChrysler, A.G.*, does not cure the fatal defect. D.E.117 at 3-4. Flexibility in form does not excuse specificity in substance. In *Kaplan*, the Eleventh Circuit actually reversed sanctions where there was a "material variance" between the conduct identified in the show-cause notice and the broader conduct actually sanctioned. 331 F.3d 1251, 1256-57 (11th Cir. 2003). That is precisely the problem here. The Sanctions Order rests on grounds never identified in the May 29 Order and, in several instances, on matters that were not even at issue when that Order was entered. The gap between what the May 29 Order communicated and what the Sanctions Order ultimately imposed is therefore not a technical defect or merely imperfect compliance with Rule 11. It is the very notice failure that *Kaplan*, Rule 11(c)(3), and due process prohibit.

Any contention that Plaintiffs "actually briefed" the propriety of Rule 11 sanctions is also wrong. D.E.117 at 4. Plaintiffs argued only that Rule 11 was procedurally inapplicable. D.E.89 at 13-15. Arguing that a mechanism does not apply is *not* the same as receiving notice that sanctions are under consideration, much less notice of the specific conduct ultimately (and incorrectly) deemed sanctionable. The problem is unavoidable: neither Plaintiffs nor their counsel received notice of the grounds on which sanctions were ultimately imposed, and therefore had no meaningful opportunity to respond.

## IV. A Record Was Established Through Improper Judicial Notice

The Former Judges stipulate that the Federal Rules of Evidence do not "necessarily apply to factfinding in the context of sanctions," suggesting that the Court was somehow free to rely on extrarecord materials to resolve disputed questions of motive and intent. D.E.117 at 5 (citing *Jensen v. Phillips Screw Co.*, 546 F.3d 59, 66 n.5 (1st Cir. 2008)). The Sanctions Order itself forecloses that argument. The Court *sua sponte* took "judicial notice of articles reporting on relevant events attendant to this case, dockets of other cases, and statements the Parties made" pursuant to Federal Rule of Evidence 201. D.E.106 at 3 n.3. Given that the Order expressly

4

invoked and relied upon Rule 201 to consider the extrarecord materials, the Former Judges cannot seriously contend that the Federal Rules of Evidence are irrelevant.

The Former Judges cannot identify a single sanctions decision in which a court purported to resolve contested factual questions based solely on judicially noticed newspaper accounts and sensational media coverage.  That omission is unsurprising.  Binding precedent imposes exacting standards before sanctions may be awarded.  *Sua sponte* Rule 11 sanctions require an even "higher standard" that is "akin to contempt," *Kaplan*, 331 F.3d at 1255, while inherent-authority sanctions require proof of subjective bad faith, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991); *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223-24 (11th Cir. 2017).  Those standards cannot be satisfied, and are definitely not satisfied here, by treating news articles, public commentary, and other extrarecord materials as evidence of the truth of disputed facts, much less disputed facts bearing on a party's subjective intent.

The Former Judges also incorrectly claim that Movants "fail to identify even one" improperly noticed fact, and falsely allege that the Court's findings are supported by evidence independent of news sources.  D.E.117 at 5.  That misses the point.  The Sanctions Order did not merely take judicial notice of articles, filings, and public statements.  It improperly used those materials to decide disputed questions of motive, intent, internal deliberations, and litigation strategy.  By way of illustration only: the Court improperly relied on media descriptions of a purported 25-page IRS memorandum that, by the Court's own acknowledgment, "has yet to be published by the Government."  D.E.106 at 8-9 & n.17.  Having never seen the memorandum itself, the Court nevertheless relied on The New York Times's characterization of its contents and significance to wrongly conclude that Defendants knowingly suppressed defenses.  *Id.*  The Court also improperly relied on Mr. Epstein's *pro hac vice* filings in other cases to "surmise" that Mr. Epstein "was aware that he would never need to appear and litigate the merits of Plaintiffs' claims."  *Id.* at 8-9, 30-31.  That was not a judicially noticeable fact—it was a contested inference regarding counsel's subjective beliefs, which established nothing about his expectations at filing.  That inference has struck even commentators otherwise critical of the Settlement Agreement as "uncharitable."  Adam Unikowsky, *The Zombie Anti-Weaponization Fund*, Adam's Legal Newsletter (July 28, 2026), https://adamunikowsky.substack.com/p/the-zombie-anti-weaponization-fund.

The bottom line is that the Court did not use judicial notice to establish facts "not subject to reasonable dispute" under Federal Rule of Evidence 201(b).  Rather, it wrongly used judicially noticed materials to draw disputed inferences about motive, intent, internal deliberations, and litigation strategy—precisely the kinds of contested facts that require evidentiary support, not judicial notice.  Again, a stay must issue.

## V.  The Speech Injunction Is an Impermissible and Unconstitutional Prior Restraint

The unconstitutional speech injunction independently warrants a stay.  The Sanctions Order prospectively and indefinitely forbids Movants from even "referring to" the Settlement Agreement.  D.E.106 at 47.  That categorical prohibition on speech and advocacy is a prior restraint of the most sweeping kind, and the Former Judges identify no authority permitting anything remotely comparable.

Rather than defend the actual unlawful gag order, the Former Judges instead attempt to justify a narrower one.  They repeatedly mischaracterize the sanction as "surgical," "modest," "precisely tailored," and one that "simply" prevents Plaintiffs (and others) from presenting the arrangement as a "settlement" in official proceedings.  D.E.117 at 7-8.  Setting aside the impermissible breadth of the hypothetical order the Former Judges describe, the actual order the Court entered is far broader:  It prohibits the parties from "referring to" the Settlement Agreement *in any setting*, in addition to "using, offering, admitting, or citing any of its provisions in any judicial, administrative, regulatory, arbitration, or any other official proceeding."  D.E.106 at 47.  That is not a "modest" restriction on speech (which would be impermissible on its own).  It is a writ large, unconstitutional prohibition on advocacy and reliance upon an existing agreement in future proceedings.

The Former Judges cite no authorities to support that extraordinary speech restriction.  Instead, they invoke inapposite collateral-estoppel principles, prefiling injunctions, and adjudicated defamation and obscenity cases.  D.E.117 at 7-8.  Each doctrine depends on circumstances absent here.  Collateral estoppel follows actual litigation and a merits determination. *Id.* at 7.  Prefiling injunctions follow a documented history of abusive litigation. *Id.* at 8.  Defamation and obscenity injunctions follow findings that particular speech is false, tortious, or otherwise unprotected. *Id.* (collecting cases).  None of these issues exist in this case.  Here, by contrast, the Court expressly acknowledged that the Settlement Agreement's validity and enforceability were "not before" it.  D.E.106 at 47 n.63.  Yet, it nevertheless wrongly prohibited

parties from invoking that agreement in future proceedings or at all, despite the fact that it is a subject of public interest and core political speech. The Former Judges cite no authority approving sanctions remotely comparable to those entered here.

Accordingly, the Order imposes an extraordinary and unconstitutional restraint on the sitting President and the federal government, categorically barring them from "referring to" the Settlement Agreement or invoking it in official proceedings. That startling intrusion on free speech and political advocacy independently warrants a stay pending appeal.

## VI.     The Movants Will Suffer Irreparable Harm Absent a Stay

The Former Judges do not meaningfully dispute irreparable harm. Nor could they. Movants remain publicly branded by an operative federal sanctions order; they remain subject to a categorical gag order barring reference to the Settlement Agreement in violation of the First Amendment; and Mr. Epstein remains barred from seeking *pro hac vice* admission in this District. Those injuries are ongoing and cannot be fully repaired by a later appellate reversal. The Former Judges do not meaningfully dispute any of that. Instead, they argue that a stay is unnecessary because the Order has already begun to take its toll. D.E.117 at 9-11. But that gets the inquiry backwards: A stay exists to halt the continuing force and consequences of an order while its validity is under appellate review. The Former Judges' argument on harm militates in favor of a stay.

Alternatively, the Former Judges contend that the fee proceedings should not be held in abeyance because Movants have not shown irreparable harm from those proceedings independently. D.E.117 at 11. That argument misses the point. Movants do not seek a stay of an independent order; they seek abeyance of proceedings that are entirely derivative of the underlying sanctions ruling. D.E.106 at 52-53. Requiring Movants and *amici* to litigate fee amounts while the underlying sanctions determination is under appellate review is wasteful and unnecessary. No independent showing of irreparable harm is required for that relief.

## VII.    The Former Judges Lack Standing to Defend the Sanctions Order, and the Court's Enlistment of *Amici* Confirms the Need for a Stay

The Former Judges' continued participation exposes a defect that runs through these proceedings: no party seeks the relief that the Former Judges defend. The Former Judges are not parties, and their only concrete interest in this matter is the fee award the Court invited them to pursue—an interest wholly derivative of the wrongful Sanctions Order under review. A litigant must possess Article III standing for each form of relief it pursues, *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017), and non-parties without a concrete, particularized stake in

the matter may not defend an order that the actual parties challenge, *cf. Hollingsworth v. Perry*, 570 U.S. 693, 705-07 (2013).  An *amicus* is not a party and may neither initiate proceedings nor assume control of the litigation.  *See United States v. Michigan*, 940 F.2d 143, 165 (6th Cir. 1991).

The Court's August 1, 2026, request that its appointed *amici* respond to the Motion compounds the problem.  In our adversarial system, courts "rely on the parties to frame the issues for decision."  *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020) (citations omitted); *accord Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008).  In *Sineneng-Smith*, the Supreme Court vacated a judgment precisely because the panel had invited *amici* to inject and argue issues no party raised—a departure "so drastic[]" from the party-presentation principle "as to constitute an abuse of discretion."  590 U.S. at 375.  Here, no party moved for sanctions, no party opposes a stay, and every adversarial submission now before the Court exists only because the Court solicited it.  The irony should not be lost: the Sanctions Order condemned Movants for supposedly manufacturing adversity, yet the only adversity now sustaining these proceedings is adversity of the Court's own creation.

That posture bears directly on the stay factors.  Movants' appeal is pending, and the filing of the notice of appeal "divests the district court of its control over those aspects of the case involved in the appeal."  *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam).  The continued proceedings—merits briefing improperly solicited from appointed *amici* and fee litigation improperly pursued by non-parties—serve no interest that a stay would injure. Meanwhile, every day of delay entrenches wrongful sanctions whose validity the Eleventh Circuit has yet to review.

### CONCLUSION

For the reasons addressed in the Motion and herein, Movants respectfully request that the Court stay the July 13, 2026, Sanctions Order (D.E.106) in full pending appeal, hold the fee proceeding in abeyance pending appeal, and grant such other relief as is just and proper.

8

Dated: August 11, 2026

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Christopher G. Oprison*
Christopher G. Oprison (FBN 0122080)
200 South Biscayne Blvd., Suite 2500
Miami, FL 33131
Telephone: (305) 423-8522
Facsimile: (305) 437-8131
chris.oprison@dlapiper.com

*Counsel for Plaintiffs President Donald J.*
*Trump, Donald J. Trump Jr., Eric Trump,*
*The Trump Organization, LLC, Alejandro*
*Brito, and Daniel Epstein*

9

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 11, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF. I further certify that the foregoing document is being served on Defendants by U.S. Mail at the following addresses:

U.S. Department of the Treasury
Attention: Secretary of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

U.S. Attorney's Office Southern District of Florida
99 N.E. 4th Street
Miami, FL 33132

Internal Revenue Service
Attention: Commissioner of Internal Revenue
1111 Constitution Avenue, NW
Washington, D.C. 20224

*/s/ Christopher G. Oprison*
Christopher G. Oprison