**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

PRESIDENT DONALD J. TRUMP, DONALD J. TRUMP JR., ERIC TRUMP, AND THE TRUMP ORGANIZATION, LLC,

*Plaintiffs*,

v.

INTERNAL REVENUE SERVICE AND U.S. DEPARTMENT OF THE TREASURY,

*Defendants*.

No. 1:26-cv-20609-KMW

**PLAINTIFFS' AND THEIR ATTORNEYS' REPLY IN SUPPORT OF THEIR EXPEDITED MOTION TO STAY THE SANCTIONS ORDER AND RELATED PROCEEDINGS PENDING APPEAL**

Plaintiffs President Donald J. Trump, Donald J. Trump Jr., Eric Trump, and The Trump Organization, LLC ("Plaintiffs"), with their attorneys Alejandro Brito and Daniel Epstein ("Attorneys," and, together with Plaintiffs, "Movants"), respectfully file this Reply in further support of their Expedited Motion to Stay the Sanctions Order and Related Proceedings Pending Appeal, D.E.114 ("Motion").

Movants are not required to respond to arguments advanced by court-appointed *amici* who have no legal interest in these proceedings, when no party sought the sanctions at issue, and no party now seeks to defend them. Out of an abundance of caution, however, Movants address *Amici*'s meritless arguments in order to further demonstrate why these extraordinary sanctions were never appropriate, and why a stay should already have issued. The Court has had ample opportunity to consider Movants' request for a stay, and Movants are now seeking relief from the Eleventh Circuit. *Amici*'s effort to supply new arguments, procedures, and *post hoc* justifications only further confirms why the unlawful Sanctions Order should not remain operative pending appellate review.

## INTRODUCTION

*Amici*'s forty-page Response, D.E.127, confirms why a stay is necessary. Long on hyperbole, conjecture, and conclusory statements, it is decidedly short on actual facts and precedent. Indeed, *Amici* advance no grounds justifying the Sanctions Order entered here, which was a severe, post-dismissal sanctions order imposed without an evidentiary hearing, that purports to unconstitutionally dictate what the sitting President, federal agencies and officials, private parties, counsel, and sweeping categories of agents and affiliates may say about a matter of obvious public concern in future official proceedings. That silence from the *Amici* is telling. Rather than defend the anomalous Sanctions Order the Court actually entered, *Amici* repeatedly try, and fail, to rewrite it into something more conventional. They recast its unprecedented Article III premise as ordinary "factfinding," even though no factfinding proceeding occurred and the Sanctions Order expressly, and wrongly, held (without support) that President Trump and the Government constituted "one, a fully realized unitary interest" because of the President's supervision of the Executive Branch. D.E.106 at 37-38. They supply a First Amendment analysis the Court never performed, propose narrowing the improper injunction already entered, and suggest new notice, evidence, hearings, and findings to repair a sanctions process that has already produced operative, wrongful sanctions. Forty pages later, *Amici* still identify nothing remotely comparable to what

happened here. They do not (because they cannot) defend or justify the Sanctions Order as entered; it must be stayed.

## **ARGUMENT**

### I. The Eleventh Circuit Has Appellate Jurisdiction Over the Sanctions Order

*Amici* contend the Eleventh Circuit has no jurisdiction to take up the sanctions order. That is false. There is no jurisdictional obstacle to appellate review. The Sanctions Order contains an operative injunction. Congress expressly authorizes interlocutory appeals from orders "granting, continuing, modifying, refusing or dissolving injunctions." 28 U.S.C. § 1292(a)(1); *see Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128-29 (11th Cir. 2005) (recognizing § 1292(a)(1) jurisdiction over an injunction); *cf. Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1559 (11th Cir. 1997) (before entry of judgment, exercising appellate review over an interlocutory order restricting an attorney's ability to appear *pro hac vice*); *Adkins v. Christie*, 227 F. App'x 804, 806 (11th Cir. 2007) (finding that district court failed to afford due process before disciplinary referral); *Spolter v. SunTrust Bank*, 403 F. App'x 387, 391 (11th Cir. 2010) (reviewing disciplinary referral). *Amici* themselves treat the Sanctions Order as a speech injunction, devoting seven pages to defending its nonexistent constitutionality as a prospective restriction on speech and petitioning activity. D.E.127 at 14-21. They cannot plausibly dispute that § 1292(a)(1) supplies appellate jurisdiction over the main, operative portion of the Sanctions Order.

Any contention that the unresolved fee proceedings defeat jurisdiction is equally flawed. The Eleventh Circuit "may address nonappealable orders if they are inextricably intertwined with an appealable decision or if review of the former decision is necessary to ensure meaningful review of the latter." *Tillis v. Brown*, 12 F.4th 1291, 1297 (11th Cir. 2021) (internal quotation marks omitted) (exercising pendent jurisdiction). That principle applies here. The fee proceedings derive entirely from the same erroneous and unsupported findings of collusion, improper purpose, and bad faith presently on appeal. Indeed, *Amici* baldly mischaracterize the posture in suggesting that the Court "has not yet imposed any inherent power sanctions." D.E.127 at 2. The Sanctions Order already erroneously found subjective bad faith, and expressly determined that "monetary sanctions [are] appropriate under its inherent authority." D.E.106 at 52-53. Monetary sanctions are inherent power sanctions. What remains is the derivative process of fixing the amount and recipients. *See Coquina Invs. v. TD Bank, N.A.*, 760 F.3d 1300, 1308 n.6 (11th Cir. 2014) (exercising pendent jurisdiction over a sanctions order even though the court had not yet awarded fees because "the

sanction imposed in this case deems as established two factual allegations that are 'inextricably intertwined' with the judgment on the merits"). At minimum, the injunction and the inextricably intertwined nature of the Court's findings present substantial appellate questions sufficient to support a stay.

## II. *Amici* Cannot Recast the Sanctions Order's Erroneous Legal Premise as "Factfinding"

*Amici* attempt to improperly recast the Sanctions Order as though it resulted from conventional factfinding concerning (nonexistent) collusion. It did not. Any suggestion otherwise is misleading and wrong. One immutable fact here is that the Court conducted no actual factfinding: there was no evidentiary hearing, no testimony, no cross-examination, and no contested evidentiary record. More importantly, *Amici* cannot rewrite the Sanctions Order's reasoning to mainstream it, and make it something that it is not. The Court expressly grounded its adversity determination in the baseless proposition that President Trump's supervision of the Executive Branch made President Trump and the Government "one, a fully realized unitary interest," rendering the action "non-adversarial, collusive, and jurisdictionally improper." D.E.106 at 37-38. That is an indefensible legal rule, not a finding of historical fact. Indeed, the initial *amici*, Former Government Officials and Public Interest Organizations, concede the obvious reality that *Amici* here bend over backwards to avoid: that the Court's jurisdictional ruling rested primarily on "the President's control over the federal agencies he sued." *Trump v. Thirty-Five Former Federal Judges*, No. 26-12692, Dkt. 21-2 at 8 (11th Cir. Aug. 14, 2026). *Amici* here (and there) cite no authority holding that presidential supervision collapses distinct legal interests into a single Article III interest. *Contra United States v. Nixon*, 418 U.S. 683, 693, 696-97 (1974). Nor do they cite any authority for the proposition that the President's supervision of the Executive Branch erases the distinct interests of additional private plaintiffs, such as Donald Trump Jr., Eric Trump, and The Trump Organization. The Court's contrary view on this concededly "unprecedented" issue was wrong, and surely not a basis for sanctions. D.E.106 at 2.

## III. *Amici*'s *Post Hoc* Constitutional Analysis Cannot Salvage the Unconstitutional Injunction

*Amici* do not (because they cannot) meaningfully defend the constitutionality of the actual Sanctions Order. They invoke *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 765 (1994), to falsely characterize the injunction here as narrowly tailored. D.E.127 at 17. But that is not reality: The Sanctions Order is an unprecedented content- and *viewpoint*-based prior restraint

against leading public officials on a matter of profound public concern. *See* D.E.114 at 14-15. Despite forty pages of runway, *Amici* utterly fail to identify even a single sanction remotely close to the unlawful gag order at issue here, covering and purporting to silence public officials on matters of public interest.

The injunction's text makes its extraordinary breadth—and obvious unconstitutionality—impossible to avoid. It bars the Parties from "referring to" the Settlement Agreement and from "using, offering, admitting, or citing" any provision in any judicial, administrative, regulatory, arbitration, or "other official proceeding." D.E.106 at 47. Read literally, that prohibition would block President Trump from referring to the Settlement Agreement in a future State of the Union address; it would have barred the now-confirmed Attorney General from referring to it during his confirmation testimony; and it reaches the private Plaintiffs, and potentially an untold number of their attorneys, agents, and affiliates in future proceedings alike. *Amici* identify no remotely comparable injunction. Nor could they explain how such a restraint is purportedly "narrowly tailored" when the Court expressly acknowledged that the Settlement Agreement itself was "not before" it. *Id.* at 47 n.63. A court cannot (properly) disclaim adjudication of an agreement and nevertheless dictate, prospectively and across the governmental and judicial system, who may speak about that agreement and where. A stay must issue.

## IV. *Amici*'s Due Process Analysis Confirms the Sanctions Order's Procedural Defects

*Amici* spend eleven pages attempting to explain why Movants received all the process required by due process, Rule 11, and the Federal Rules of Evidence. D.E.127 at 21-32. Those arguments fail as well. *Amici* repeatedly acknowledge (as they must) the absence of procedures ordinarily required before severe sanctions are imposed. Rather than defend that omission (they cannot), they propose a *post hoc* effort to remedy the deficient process that produced the very sanctions now in effect and on appeal. The Sanctions Order is operative now. Due process requires protections before sanctions are issued, not afterwards. *Amici*'s own curative proposals recognize that notice was not afforded, and invite the Court to commit further errors. A stay must issue.

### A. This Court Is Divested of Jurisdiction to Revise the Sanctions Order

*Amici* propose that this Court misconstrue the Sanctions Order as an order to show cause, receive additional evidence, hold a hearing, and supplement its findings to repair the sanctions already in effect. D.E.127 at 2, 26-28. The Court lacks jurisdiction to do any of those things.

The filing of a notice of appeal is "an event of jurisdictional significance" that "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *see also Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1309 (11th Cir. 2003). Rule 62(d) permits only those measures necessary to preserve the *status quo* pending appeal. Fed. R. Civ. P. 62(d). It does not authorize a district court to alter the appealed order, create a new evidentiary record, supplement its findings, or otherwise interfere with the court of appeals' jurisdiction. *See Sammons v. Polk Cnty. Sch. Bd.*, No. 8:04-cv-2657, 2006 WL 82606, at *2 (M.D. Fla. Jan. 12, 2006) (court "lack[ed] jurisdiction" to dissolve appealed injunction, and could modify it only "to the extent necessary to maintain the status quo," not to moot the appeal or divest the appellate court of jurisdiction); *FTC v. Vylah Tec LLC*, No. 2:17-cv-228, 2017 WL 10844699, at *2 (M.D. Fla. Oct. 27, 2017). Courts of appeals enforce these jurisdictional limits through mandamus when a district court exceeds its authority. *See In re Trump*, No. 25-2603, 2025 WL 3011886, at *1 (8th Cir. Oct. 24, 2025) (granting mandamus to vacate a district-court order entered without authority).

Every curative measure *Amici* propose would improperly alter the very order now before the Eleventh Circuit on appeal. Receiving new evidence, conducting hearings, supplementing findings, or construing the Sanctions Order as a show-cause order would not preserve the *status quo*. It would create a new record, and a new sanctions proceeding designed to salvage the appealed Sanctions Order from fatal defects apparent on the existing record. Likewise, narrowing the injunction would rewrite the very order that supplies appellate jurisdiction under 28 U.S.C. § 1292(a)(1). Rule 62(d) permits none of this. The Sanctions Order is operative. The injunction is on appeal. The Sanctions Order must therefore stand or fall on the record and procedures that existed when it was entered, not on an opportunistic *post hoc* effort to supply the process that due process required beforehand. The only remaining question before this Court is whether the Sanctions Order should be stayed pending appellate review. It should. Moreover, if appellate review ultimately requires further proceedings, the extraordinary breadth of the Sanctions Order, its questionable timing, and its fundamental legal errors would warrant reassignment on remand in order to preserve the appearance of impartiality.

### B. The Court Failed to Provide Notice of Rule 11 Sanctions

*Amici* also wrongly contend that the Court's May 29 Order, D.E.65, supplied adequate notice merely because it referenced Rule 11. Rule 11(c)(3) requires much more than notice that Rule 11 exists. When sanctions are initiated *sua sponte*, the requirements are even more stringent, and the court must identify the specific conduct believed to violate Rule 11 as well as direct the party to show cause why that conduct does not violate the Rule. Fed. R. Civ. P. 11(c)(3). The May 29 Order failed to provide adequate notice of the conduct and sanctions the Court ultimately decided. D.E.114 at 12-13. Plaintiffs' argument that a sanctions mechanism was *not* invoked and did *not* apply cannot be construed as notice that sanctions against Plaintiffs or their Attorneys were under consideration. D.E.89 at 6. Doing so would be completely backward and unjust.

*Amici*'s reliance on *Donaldson v. Clark* for a purported "flexible standard" misses the point. D.E.127 at 22. *Donaldson* does not relieve courts of their obligation to identify the conduct believed to violate Rule 11 before sanctions are imposed. To the contrary, it recognizes that questions of "improper purpose are more ambiguous and may require *more specific notice* of the reasons for contemplating sanctions." 819 F.2d 1551, 1560 (11th Cir. 1987). It also confirms that "[t]he more serious the possible sanction . . . the more process that will be due." *Id.* at 1561. The sanctions here, including the unconstitutional speech restraint and career-altering professional sanctions, demanded robust notice and hearing. The Court provided neither. Due process was violated.

*Johnson v. 27th Avenue Caraf, Inc.* is likewise inapposite. D.E.127 at 25. There, the court identified the specific conduct at issue, issued a formal written show-cause order, required document production, and held a full evidentiary hearing. 9 F.4th 1300, 1311-12 (11th Cir. 2021). The Court here did none of those things. Instead, it directed Plaintiffs to "file a response to the Motion (DE 63)." D.E.65 at 3. It never ordered Mr. Brito or Mr. Epstein to show cause. It never identified any act by either attorney as sanctionable. It never advised that their professional standing, bar status, or ability to practice in this District was at stake. Nor did it provide notice of many of the grounds on which the Court ultimately relied, disclose that it was considering monetary sanctions, or provide any notice that it might enter a sweeping, unconstitutional gag order.

*Amici* wrongly attempt to fault Movants for supposedly citing no authority requiring notice of the specific sanctions under consideration. D.E.127 at 24. That ignores both Rule 11 and

binding precedent. *See* Fed. R. Civ. P. 11(c)(3); *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1256-57 (11th Cir. 2003) (reversal required for "material variance" between notice and sanction); *United States v. Shaygan*, 652 F.3d 1297, 1319 (11th Cir. 2011) (attorneys are "entitled to know the precise rule, standard, or law that he or she is alleged to have violated and how he or she allegedly violated it"). The gap between what the May 29 Order communicated and what the Sanctions Order ultimately imposed is the very notice failure that *Kaplan*, Rule 11(c)(3), and the Due Process Clause prohibit.

**C. The Court Failed to Provide Notice of Inherent-Authority Sanctions**

*Amici*'s notice argument concerning inherent-authority sanctions fares no better. *Amici* suggest that the Court can afford additional process or treat the Sanctions Order as an order to show cause. D.E.127 at 26-28. That fails for the reasons discussed in Section IV.A above.

The possibility of future fee proceedings does not change the analysis or the procedural posture. The Court already made the erroneous bad-faith finding on which any inherent-authority fee sanction necessarily depends, and expressly found "monetary sanctions appropriate under its inherent authority." D.E.106 at 52-53. A later proceeding may determine the amount of a monetary sanction, but it cannot retroactively provide notice that was absent before the Court entered the erroneous bad-faith determination itself. That violates basic tenets of due process. *See In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995); *Donaldson*, 819 F.2d at 1559-60. *Amici*'s proposed remedies thus underscore the central defect: the required notice and opportunity to be heard were never provided before the Court made the improper bad-faith finding.

*Amici* also wrongly suggest that Movants should have known bad faith was at issue because the May 29 Order referenced "fraud on the Court" and allegations of collusion. D.E.127 at 29-30. That is wrong. Notice that the Court was examining allegations of collusion is not notice that it was contemplating inherent-authority sanctions based on findings of subjective bad faith. *Amici*'s attempted reliance on *Fellheimer, Eichen & Braverman v. Charter Technologies*, 57 F.3d 1215 (3d Cir. 1995), and *In re DeVille*, 361 F.3d 539 (9th Cir. 2004), is misplaced. Both cases emphasized their "narrow" holdings, and cautioned that sanctions ordinarily require explicit advance notice of the precise grounds for their imposition. *Fellheimer*, 57 F.3d at 1225, 1227; *DeVille*, 361 F.3d at 549, 550 n.4. Those narrow circumstances are also absent here. In *Fellheimer* and *DeVille*, the sanctioned parties received express warnings, formal show-cause orders, evidentiary hearings, and opportunities to respond. Here, there was no adverse-party motion, no

show-cause order, no warning that bad faith or inherent authority was at issue, no evidentiary hearing, and no opportunity to contest the extrarecord materials on which the unlawful Sanctions Order relied. That is precisely the type of notice failure due process forbids.

**D. The Court Improperly Relied on Judicial Notice to Establish a Record**

As with the *amici* Former Judges, *Amici* here contend that the Court's improper use of judicial notice cannot support a stay because the Federal Rules of Evidence do not necessarily apply in sanctions proceedings. D.E.127 at 30. That argument is foreclosed by the Sanctions Order itself. D.E.106 at 3 n.3. Having expressly invoked Rule 201 as the basis for considering extrarecord materials, the Court was required to comply with Rule 201's requirements. It did not. Instead, the Court leveraged extrarecord materials to improperly draw disputed conclusions concerning motive, intent, internal deliberations, and litigation strategy. Those are paradigmatic disputed matters, not facts "not subject to reasonable dispute" within the meaning of Rule 201(b). *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (judicial notice is limited to indisputable facts and cannot be used to establish the truth of disputed assertions).

*Amici*'s alternative reliance on Federal Rule of Evidence 801(d)(2)(A) also fails. D.E.127 at 31. Rule 801 applies only to statements offered against an *opposing party*. Plaintiffs and *Amici* are not opposing parties, nor are Plaintiffs and the Court. *See Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 677 (2025) ("[P]articipation by *amici* in a court proceeding does not make the *amici* parties, even if the court invited such participation.").

**E. The Sanctions Order Made No Individualized Findings**

Finally, *Amici* wrongfully contend that individualized findings were unnecessary because Movants acted collectively. D.E.127 at 31-32. That argument merely repeats the Court's broader error to collapse distinct actors into a collective abstraction, including its treatment of the remaining Plaintiffs as "parenthetical." Collective litigation positions do not establish individual bad faith, which does not exist here in the first place. Shared arguments may explain why parties advanced the same position. They do not establish that each sanctioned Plaintiff and Attorney possessed the subjective bad faith (not in existence here) necessary to justify individualized sanctions. *See Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1224 (11th Cir. 2017) ("inherent powers sanctions require subjective bad faith"); *see also Shaygan*, 652 F.3d at 1319 (cautioning that attorneys "cannot be held responsible for the acts or omissions of others").

For these reasons, *Amici*'s due process arguments lack merit and only confirm the Sanctions Order's procedural defects. A stay must issue.

**V. The Remaining Stay Factors Decisively Favor Movants**

The remaining stay factors independently favor a stay. *Amici*'s contrary arguments rest on the same circular premise throughout: that the Sanctions Order is valid and should therefore be enforced immediately. That premise assumes the answer to the question on appeal.

***Irreparable Harm***. *Amici* largely ignore the most obvious irreparable harm: the Sanctions Order's sweeping, unconstitutional speech restriction. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Fla. Preborn Rescue, Inc. v. City of Clearwater, Fla.*, 161 F.4th 732, 747 (11th Cir. 2025). The restraint here is shockingly broad. It binds not only the President and the private Plaintiffs, but Treasury and the IRS, and purports to reach the Parties' "agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates," and others acting under their control. D.E.106 at 47. Thus, the Sanctions Order potentially restricts an untold number of private persons and Executive Branch officials from referring to the Settlement Agreement, including in any official proceeding. Movants need not identify which of those innumerable speakers will next be silenced, or in which proceeding; the restraint itself is the injury. *See Mahmoud v. Taylor*, 606 U.S. 522, 569 (2025). That ongoing constitutional injury alone warrants a stay.

Nor does the Clerk's transmission of the improper disciplinary referrals eliminate irreparable harm (*contra* D.E.127 at 35): so long as the unlawful Sanctions Order remains operative, the referrals carry the continuing stigma and institutional weight of an unreversed federal finding of sanctionable misconduct, which a stay would materially diminish. *See In re Gonzalez*, No. 12-MC-60047, 2012 WL 12895515, at *1 (S.D. Fla. Jan. 23, 2012). The same is true of Mr. Epstein's wrongful one-year *pro hac vice* ban, which carries the ongoing professional stigma of an operative federal sanction every day it remains in force and may expire before appellate review can provide meaningful relief. *See Schlumberger*, 113 F.3d at 1562.

***Public Interest***. *Amici*'s cursory public-interest argument also fails. They contend that the public "unquestionably" has an interest in the enforcement of sanctions. D.E.127 at 37. But that assumes the Sanctions Order is lawful (it is not), which is the very issue on appeal. The public has no interest in the immediate enforcement of unlawful sanctions before meaningful appellate review

occurs. The opposite is true. The public has a substantial interest in ensuring that *sua sponte* sanctions comply with Rule 11, due process, and the First Amendment before they inflict irreversible consequences.

**VI. The Fee Proceedings Should Be Held in Abeyance Pending Appeal**

*Amici*'s response to holding the fee proceedings in abeyance largely concedes the point. They acknowledge that the Court has "broad discretion to stay proceedings," that Movants could prevail on appeal and thereby "obviate[] the need for the fee proceedings," and that a stay "would eliminate the risk that they are held unnecessarily." D.E.127 at 39. Those concessions are dispositive and should end the matter. The fee proceedings should be held in abeyance until the appeal is resolved.

**CONCLUSION**

For the reasons addressed in the Motion and Replies, Movants respectfully request that the Court stay the July 13, 2026, Sanctions Order (D.E.106) in full pending appeal, hold the fee proceedings in abeyance pending appeal, and grant such other relief as is just and proper.

Dated: August 21, 2026

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Christopher G. Oprison*
Christopher G. Oprison (FBN 0122080)
200 South Biscayne Blvd., Suite 2500
Miami, FL 33131
Telephone: (305) 423-8522
Facsimile: (305) 437-8131
chris.oprison@dlapiper.com

*Counsel for Plaintiffs President Donald J. Trump, Donald J. Trump Jr., Eric Trump, The Trump Organization, LLC, Alejandro Brito, and Daniel Epstein*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 21, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF. I further certify that the foregoing document is being served on Defendants by U.S. Mail at the following addresses:

U.S. Department of the Treasury
Attention: Secretary of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

U.S. Attorney's Office Southern District of Florida
99 N.E. 4th Street
Miami, FL 33132

Internal Revenue Service
Attention: Commissioner of Internal Revenue
1111 Constitution Avenue, NW
Washington, D.C. 20224

*/s/ Christopher G. Oprison*
Christopher G. Oprison