**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 26-20609-CV-WILLIAMS**

PRESIDENT DONALD J. TRUMP, *et al.*,

Plaintiffs,

v.

INTERNAL REVENUE SERVICE, *et al.*,

Defendants.
_______________________________________/

**ORDER**

**THIS MATTER** is before the Court on Plaintiffs' and their Attorneys' Expedited Motion to Stay the Sanctions Order and Related Proceedings Pending Appeal (DE 114) ("***Motion to Stay***"). For the reasons set forth below, the Motion to Stay (DE 114) is **DENIED**.

## I. BACKGROUND[1]

On January 29, 2026, Plaintiffs President Trump ("***Lead Plaintiff***"), Donald J. Trump Jr., Eric Trump, and The Trump Organization, LLC (collectively, "***Plaintiffs***") filed their complaint against the IRS and the Treasury Department (collectively, "***Defendants***"). On April 17, 2026, three days before Defendants' time to respond to the Complaint lapsed, Plaintiffs filed a consent motion seeking to extend Defendants' response time by 90 days, which the Court granted. (DE 40; DE 41). Shortly thereafter, the Court *sua sponte* inquired into the Court's subject matter jurisdiction, requiring the Parties to file memoranda detailing whether a case or controversy existed between the parties. (DE 41). The Court

[1] The terms defined in the Court's Order (DE 106) are adopted herein. The term "Parties" refers to Plaintiffs and Defendants.

also appointed *amici curiae* "to assist the Court in identifying the applicable law governing an analysis" of its jurisdiction.[2] (DE 43). *Amici* filed their memorandum of law on May 14, 2026. (DE 45). Notably, the Parties did not file any memoranda to address the Court's concern regarding subject matter jurisdiction, nor did counsel for Defendants ever file an appearance.

Instead, on May 18, 2026, Plaintiffs filed a Notice of Voluntary Dismissal with Prejudice (DE 52). On that same day, the Department of Justice issued a press release, noting that a "settlement" had been reached in this matter.[3] The DOJ also published a purported "settlement agreement"[4] ("***settlement agreement***") where the Parties agreed to certain terms, including the creation of a $1.776 billion-dollar Anti-Weaponization Fund to redress the claims of individuals who "suffered weaponization and lawfare."[5] A day later, in a standalone memorandum signed only by Defendants' counsel, then-Acting Attorney General Todd Blanche ("***then-AAG Blanche***")[6] granted Plaintiffs and various affiliates blanket immunity from various matters including those that were currently

---

[2] The Court again acknowledges and thanks Court-appointed *amici* for their continued willingness to review the unique issues presented by this case. The comprehensive memorandum (DE 127) submitted to the Court is a testament to their unwavering dedication to the rule of law.

[3] *Press Release*, *Justice Department Announces Anti-Weaponization Fund* (May 18, 2026), https://www.justice.gov/opa/pr/justice-department-announces-anti-weaponization-fund.

[4] *Settlement Agreement, Trump v. Internal Revenue Serv.*, U.S. DEP'T OF JUSTICE (May 18, 2026), https://www.justice.gov/opa/media/1441201/dl?inline.

[5] *See supra* n.4.

[6] Todd Blanche was sworn in as the 88th Attorney General of the United States on August 10, 2026. *See* Staff Profile, *Attorney General Todd Blanche*, U.S. DEP'T OF JUSTICE (Aug. 14, 2026), https://www.justice.gov/ag/staff-profile/meet-attorney-general.

pending or could be pending before Defendants or other agencies and departments of the federal government.

In light of the serious irregularities presented by this matter, on May 27, 2026, thirty-five non-party movants ("***Thirty-Five Former Federal Judges***") filed an amicus brief urging the Court to reopen this case pursuant to Federal Rule of Civil Procedure 60 and investigate whether there was a genuine underlying case or controversy. (DE 63). On May 29, 2026, rather than reopen the case pursuant to Rule 60, the Court ordered, pursuant to its authority under Federal Rule of Civil Procedure 11, that Plaintiffs detail their position on "(1) the charges of collusion and whether the Parties are truly adverse; (2) the assertion that the dismissal in this case was premised on deception by the Parties; and (3) the question of whether the case should be reopened because the Court was the victim of a fraud." (DE 65 at 3).[7] Plaintiffs responded on June 12, 2026. (DE 89). On July 13, 2026, the Court issued its Order setting forth its findings and imposing sanctions for Plaintiffs' bad faith conduct and misuse of the judicial system. (DE 106) ("***Sanctions Order***").[8] Thereafter, Plaintiff and their attorneys—Alejandro Brito and Daniel Epstein (together with Plaintiffs, the "***Movants***")—filed the instant Motion to Stay.

## II. LEGAL STANDARD

"A stay [pending appeal] is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal quotation marks

[7] The Court uses the CM/ECF pagination, which appears in the headers of all filings.

[8] The Movants primarily challenge the Court's imposition of three sanctions: (1) Attorney Brito's referral to the Florida Bar; (2) Attorney Epstein's ability to seek *pro hac vice* admission; and (3) the restriction limiting reference to the "settlement agreement" as evidence of a "settlement" reached in this matter. (DE 114 at 7–20).

omitted). Instead, it is "an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Id.* (internal quotation marks omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34 (internal quotation marks omitted). The factors a court must weigh when analyzing a request for a stay pending appeal include: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434. "The first two factors of the traditional standard are the most critical." *Id.* (citations and internal quotation marks omitted).

## III. DISCUSSION

The Court disagrees with the Movants' assertion that a stay pending appeal of the Sanctions Order is warranted. The Motion to Stay does not demonstrate the requisite likelihood of success or irreparable harm to grant such extraordinary relief. Nor does the Motion to Stay undermine the Court's conclusion and detailed findings set forth in the Sanctions Order as to the Parties' lack of adverseness and their bad faith. As discussed below, the Court considers the factors relevant to its determination.

### ***A. The Movants have not demonstrated the likelihood of success on the merits.***

First, the Motion to Stay and the Movants' Reply do not demonstrate that the Sanctions Order is immediately appealable. Second, "[i]t is not enough that the chance of success on the merits be better than negligible." *Nken*, 556 U.S. at 434 (internal quotation marks omitted). The Movants advance three main arguments to demonstrate a likelihood of success on the merits: (i) the Sanctions Order is substantively flawed in its conclusion

regarding lack of adverseness; (ii) the Sanctions Order is procedurally defective; and (iii) the Sanctions Order imposes an overbroad speech injunction. (DE 114 at 7–17). The Court finds each argument unpersuasive. Accordingly, for the reasons set forth below, the Court finds that the Movants have not demonstrated a likelihood of success in their appeal.

**1. The Movants have not satisfactorily demonstrated that the Sanctions Order is Immediately Appealable.**

To establish a likelihood of success on the merits of their appeal, the Movants must first show that the Sanctions Order is immediately appealable. *See Ross v. Chisolm*, 2006 WL 8432325, at *5 (S.D. Fla. Mar. 23, 2006) ("Whether Defendants are likely to prevail on the merits in their appeal turns on whether the Eleventh Circuit Court of Appeals has jurisdiction over the appeal."). To be appealable, an order must be a final decision. 28 U.S.C. § 1291. The party seeking to appeal has the burden of establishing finality and appellate jurisdiction. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1423 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) (dismissing the plaintiffs appeal for "having shown no applicable exception to the final judgment rule . . . ."). The Movants have not made a satisfactory showing that the Sanctions Order is immediately appealable.

To start, the Movants assert that the "Sanctions Order contains an operative injunction," making it immediately appealable under 28 U.S.C. § 1292(a)(1). (DE 128 at 3). The Court disagrees. The sanction limiting reference to the "settlement agreement" does not qualify as an "injunction-related order" because it does not impose "serious, perhaps irreparable consequence[s]." *S.E.C. v. Complete Business Sol. Group, Inc.*, No. 24-12350, 2024 WL 4785772 at *1 (11th Cir. 2024) (citing *Positano Place at Naples I*

*Condo. Ass'n v. Empire Indemnity Ins. Co.*, 84 F.4th 1241, 1249 (11th Cir. 2023)). As noted below, *see infra* sections A(4) and B(3), the sanction is narrowly tailored to only affect *how* the Parties refer to the "settlement agreement" purportedly arising from this docket. It is not a categorical restriction prohibiting any reference to any agreement of the Parties. Accordingly, because the Sanctions Order imposes minimal harm, if any, the Movants have not demonstrated immediate appealability to confer appellate jurisdiction.

Additionally, the Sanctions Order is non-final as it contemplates further fee proceedings. *See Hibiscus Assoc. Ltd. v. Bd. of Trustees of Policeman and Fireman Ret. Sys. of City of Detroit*, 50 F.3d 908, 921–22 (11th Cir. 1995) ("The amount of the fee award has not been determined and, therefore, the award is not final."). The Sanctions Order did not determine the fee award and instead invited *amici*[9] to brief whether they were entitled to an award.[10] (DE 106 at 53). *Amici* filed motions for attorneys' fees outlining the basis for their request and the resources they had expended (DE 111; DE 112), and the Movants filed an Opposition (DE 116). The Court has not made a final determination regarding the amount of fees, if any, to be awarded. Thus, the Movants

---

[9] Several groups of *amici curiae* have sought leave to address the unique issues presented by this case. The initial group of *amici curiae* moved for leave to file a brief on February 5, 2026. (DE 7). On February 27, 2026, the Court granted their motion, noting that it was uncontested. (DE 28). On April 29, 2026, the Court also appointed its own *amici curiae*. (DE 43). Then, on July 27, 2026, initial *amici* and the Thirty-Five Former Federal Judges filed their briefs seeking attorneys' fees. (DE 111; DE 112). Court-appointed *amici* did not seek fees.

[10] Indeed, a court deciding whether to award "reasonable compensation" to *amicus curiae* may consider whether the *amicus* is "vitally interested in the issues which were before the Court" and whether "[i]ts counsel" contributed to the resolution. *See Russell v. Bd. of Plumbing Examiners of Cty. of Westchester*, 74 F. Supp. 2d 349, 351 (S.D.N.Y 1999). "Participation as *amicus curiae* . . . is appropriate when the party cares only about the legal principles of the case, and has no personal, legally protectable interest in the outcome of the litigation." *Id*. (citing Moore's Federal Practice Digest 3d § 24.23 [2]).

have only challenged entitlement to fees and not the as of yet undetermined amount, or even eligibility.[11]

**2. The Parties lacked the requisite adverseness to satisfy Article III.**

As detailed in the Sanctions Order, the Parties were not sufficiently adverse to satisfy Article III's case or controversy requirement. (DE 106 at 17–38). The Movants assert that adverseness exists because Lead Plaintiff "sued in his personal capacity to vindicate a personal statutory right, while the IRS and Treasury represented the sovereign's distinct interests." (DE 114 at 9). In doing so, the Movants mischaracterize the Sanctions Order as establishing a brightline rule "that a President who sues the Executive agency is necessarily suing himself." (*Id.*) This is incorrect; the Sanctions Order established no such categorical rule. On the contrary, the Sanctions Order acknowledged that Lead Plaintiff did have a right to sue and could have done so, without issue, during the lawfully specified time and while a private citizen. (DE 106 at 37). The Order limited its analysis to the specific individuals named in this matter; their current occupations; and their novel relationships.[12] (DE 106 at 13 n.21). The Sanctions Order detailed the

---

[11] Although the Movants oppose the fees requested by the Thirty-Five Former Federal Judges because "they are not parties," *see* (DE 116), the Movants seem to acknowledge the significance of *amici's* contribution by filing an appeal which names the Thirty-Five Former Federal Judges as "Interested Parties - Appellees." *See President Donald J. Trump, et al. v. Thirty-Five Former Federal Judges, et al.*, No. 26-12692 (11th Cir. docketed Aug. 3, 2026). The Court notes that the case style reflected on the Eleventh Circuit docket names the Thirty-Five Former Federal Judges instead of Defendants; this appears to be a clerical error arising from Plaintiff's initial mischaracterization of the docket.

[12] The Sanctions Order also cited the unique familial and corporate control Lead Plaintiff has over all the other plaintiffs. As observed in the Order, the additional plaintiffs do not have a divergent interest from Lead Plaintiff and do not present separate claims necessitating independent treatment. (DE 106 at 22 n. 29).

unprecedented control that Lead Plaintiff currently has over Defendants not only under longstanding Constitutional principles, but through newly issued mandates—namely, Executive Order 14215 and the recent decision in *Trump v. Slaughter*, 146 S. Ct. 2283 (2026)—both of which significantly expand Presidential oversight of the Executive branch. (DE 106 at 18–19, 21–24). In addition, the Sanctions Order discussed the President's relationship to three key individuals who oversee Defendants—Treasury Department Secretary Scott Bessent, IRS CEO Frank Bisignano, and then-AAG Blanche—and the dooming effect that his control of these individuals had on adverseness. (*Id*. at 19–21).

The Court's conclusion was underscored by the litigation strategy, or lack thereof, martialed by Defendants in this case. The Sanctions Order identifies the various ways that this lawsuit was handled in stark juxtaposition to cases involving the same defendants, the same defense counsel, and for the most part, the same issues. (*Id*. at 22–26) (discussing *Griffin v. Internal Revenue Serv.*, No. 22-cv-24023 (S.D. Fla. filed Dec. 13, 2022) and *Safe Harbor Int'l, LLC v. Booz Allen Hamilton, Inc.*, No. 25-cv-00139, (D. Md. filed Jan. 14, 2025)). Such conduct, taken together with Lead Plaintiff's uncircumscribed control over Secretary Bessent, IRS CEO Bisignano, and the DOJ, and the subsequent actions of then-AAG Blanche, regarding the creation and recission of the Anti-Weaponization Fund, demonstrate that the Parties lacked adverseness from the inception of this case.

As recognized in the Sanctions Order, the Court has an affirmative duty to evaluate its subject matter jurisdiction at every stage of litigation. *See Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997) (noting that courts have "an independent obligation to police the constitutional and statutory limits on [its] jurisdiction"). Based on

the record before the Court, the Parties were not sufficiently adverse to maintain this suit. Accordingly, the Motion to Stay does not successfully show the Movants' likelihood of success on this issue.

**3. The Sanctions Order is not procedurally defective.**

The Movants complain that the Court improperly imposed sanctions without the requisite notice and individualized findings. (DE 114 at 13–15). The Movants also take issue with the materials the Court judicially noticed. (*Id.*) The Court finds these arguments unpersuasive. As noted in the Sanctions Order, "this case presents unusual circumstances that distinguish it from the ordinary Rule 11 dispute." (DE 106 at 45). The Sanctions Order also states:

> In assessing the adequacy of a show cause order under Rule 11, the Eleventh Circuit applies a "flexible standard." *DaimlerChrysler, A.G.*, 331 F.3d at 1257. Therefore, "in many cases substantial compliance may suffice." *Id.* Here, Plaintiffs received notice of the conduct at issue and a full opportunity to respond. *See Johnson*, 9 F.4th at 1311 ("Due process requires that the attorney (or party) be given fair notice that his conduct may warrant sanctions and the reasons why.") (quoting *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995)).

(*Id*. at n. 62).

The Movants were on notice that sanctions were being contemplated when the Court explicitly stated that Rule 11 empowered the Court to determine "whether **an attorney** has abused the judicial process." (DE 65 at 1) (emphasis added) (citing *Didie v. Howes*, 988 F.2d 1097, 1103 (11th Cir. 1993)). Indeed, the Movants' own response to the Court's inquiry as to the issues raised by the Thirty-Five Former Federal Judges—all of which inform the basis of the Court's sanctions—invoked a Rule 11 discussion. (DE 89 at 6, 13–15).

Likewise, the Court is unconvinced that the Movants' appeal will be successful

because the Court took "judicial notice of articles reporting on relevant events attendant to this case, dockets of other cases, and statements the Parties made."[13] (DE 106 at 3 n.3). The Court did not rely on news articles to arrive at its conclusion. As recited in the Sanctions Order, the Court relied upon the uncontroverted facts.[14] However, the Court did appropriately refer to the docket of other cases, as well as social media statements and news accounts, to provide the architecture of this matter to give context to what transpired. *See* (DE 106 at 3 n.3). Indeed, the Parties had eschewed the opportunity to create their own record and respond to the Court's jurisdictional inquiry by dismissing this case three days before their response was due. The Movants cannot now protest citation of sources properly noticed by the Court and argue that they were not afforded due process on the very issue that compels sanctions.

The Movants also do not acknowledge that the Court's findings were made after consideration of various statements and other evidence that are unquestionably admissible. *See U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 264–67 (1954),

[13] It is unclear whether the Federal Rules of Evidence apply to sanctions proceedings. *See* (DE 127 at 42). Although the Eleventh Circuit has not decided this issue, several other courts have determined that the Federal Rules of Evidence do not apply to sanctions proceedings. (*See id.*) (citing *Sentis Grp. v. Shell Oil Co.*, 559 F.3d 888, 901 (8th Cir. 2009); *Cook v. Am. S.S. Co.*, 134 F.3d 771, 774–75 (6th Cir. 1998); and *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 349 F. Supp. 3d 298, 307 (S.D.N.Y. 2018)).

[14] The uncontroverted facts include: (1) Donald Trump is President; (2) President Trump controls the actions of the Secretary of the Treasury Department Scott Bessent, IRS CEO Frank Bisignano, and all Executive Branch actors; (3) President Trump, through Executive Order § 7, also controls the litigation strategy and interpretation of the laws guiding the Department of Justice; (4) For the 109 days that this case was pending, no attorney representing the United States filed a notice of appearance or any document indicating the government's position, interest, or awareness of this matter; and (5) Defendants' actions are consonant with the dictates of Executive Order § 7. *See* (DE 106 at 54–55).

*superseded by statute on other grounds as recognized in Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020) (acknowledging the impact of public statements on pending litigation where "the Attorney General announced at a press conference that he planned to deport certain 'unsavory characters,'" and determining that the "public announcements clearly reveal[ed] that the Attorney General did not regard the listing as a mere preliminary to investigation and deportation"). For example, the Court considered explicit party admissions from Lead Plaintiff, congressional testimony, relevant filings from other cases, and official government records (i.e., Executive Order 14215, public-facing government websites, and DOJ official communication), admissions whose accuracy has never been challenged. Additionally, the Court appropriately noticed unsworn public statements of the Parties and counsel, notice that was expressly countenanced by Defendants. *See Floyd v. Dep't of Just.*, No. 26-cv-01399, DE 62 at 4, n.1 (E.D. Va. filed June 5, 2026) ("Because the Acting Attorney General's statements were recorded, this Court can take judicial notice of them.") (citing FED. R. EVID. 201(b)(2)); *see also D.A.M. v. Barr*, 474 F. Supp. 3d 45, 55 n.12 (D.D.C. 2020) (taking judicial notice of sworn congressional testimony and "the existence of" newspaper articles).

As it relates to the Movants' assertion that the Sanctions Order required individualized findings for all sanctioned, *see* (DE 114 at 14–15), the Court is unconvinced. District courts have broad discretion to tailor appropriate and reasonable sanctions under Rule 11. *See Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1295 (11th Cir. 2002) (citing *Donaldson v. Clark*, 819 F.2d 1551, 1557 (11th Cir. 1987)). And where individuals acted in concert and did not present separate and distinct courses of action, individualized findings were not a prerequisite to imposing sanctions. *Cf. In re Kunstler*,

914 F.2d 505, 525 (4th Cir.1990) ("Issues of individual culpability do not arise where each sanctioned party has committed the same Rule 11 violations"). Under Rule 11, "each attorney has a duty to ensure that the pleading he signed comports with Rule 11." *Id*. Notably, the Movants do not attempt to distinguish their action (or *inaction*) from one another.[15]

**4. The Sanctions Order does not impose an overbroad speech injunction.**

The Sanctions Order restricts the Parties from "referring to the purported 'settlement agreement,' or using, offering, admitting, or citing any of its provisions in any judicial, administrative, regulatory, arbitration, or any other official proceeding **as evidence of a 'settlement' reached in this matter**, Case No. 26-cv-20609-KMW (S.D. Fla. 2026)." (DE 106 at 47) (emphasis added). The Movants assert that the sanction is an unconstitutional restriction on speech and litigation conduct. (DE 114 at 15–17). However, the Movants fail to recognize that individuals do not have unfettered First Amendment protections. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32–33 (1984) (acknowledging that a litigant's First Amendment rights may be limited in the litigation context). The challenged speech must be weighed against the government's significant interest. *See N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982) ("The presence of protected activity, however, does not end the relevant constitutional inquiry. Governmental regulation that has an incidental effect on First Amendment freedoms may be justified in certain narrowly defined instances.")

---

[15] Attorney Epstein and Attorney Brito regularly practice in concert on behalf of Lead Plaintiff. *See Trump v. British Broadcasting Corporation et al*, No. 25-cv-25894 (S.D. Fla. filed Dec. 15, 2025); *Trump v. New York Times Co., et al.*, No. 25-cv-02487 (M.D. Fla. filed Sept. 15, 2025).

As illustrated by Rule 11, speech intended to mislead the judiciary and other official tribunals is not protected by the First Amendment. *See* FED. R. CIV. P. 11(b) (circumscribing the type of representations to be presented to a court). And "[a]lthough litigants do not 'surrender their First Amendment rights at the courthouse door,' . . . those rights may be subordinated to other interests that arise in this setting." *Seattle Times Co.*, 467 U.S. at 32 n.18; *see also Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1071 (1991) ("It is unquestionable that . . . whatever right to 'free speech' an attorney has is extremely circumscribed" in a judicial setting). Here, the Parties' desire to reference the "settlement agreement" in any way they choose must be weighed against the Court's significant interest in protecting the integrity of the judicial process and the public from misleading statements by lawyers and their clients. Allowing the Parties to rely on the "settlement agreement" as *evidence of* a "settlement" in this matter would perpetuate the false narrative that the agreement resolved a controversy between adversarial litigants in this Court. Such a narrative deceives the public, impedes official proceedings, and undermines confidence in the courts. Accordingly, the Court's significant interest outweighs the Parties' desire to make inaccurate assertions under the cloak of the First Amendment. *See Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 743 (1983) ("[F]alse statements are not immunized by the First Amendment right to freedom of speech.").

Moreover, the Motion to Stay misconstrues the text of the Sanctions Order by applying an overbroad reading. Specifically, the Movants argue that the sanction prevents the Parties "from asserting legal rights in future proceedings" if they ever need to invoke the "settlement agreement" as "a release, defense, compromise, satisfaction, or other

legally operative fact."[16] (DE 114 at 16). However, as previously noted, the provision narrowly prevents the Parties from referring to the "settlement agreement" **as evidence of** a "settlement" reached **in the matter brought before this Court**. (DE 106 at 47). In other words, the Parties are at liberty to reference a private agreement and the terms of that agreement because the limitation only governs *how* the Parties reference a "settlement agreement" purportedly arising from this docket. Additionally, the limitation only applies to official proceedings such as judicial, administrative, regulatory, or arbitration. Therefore, because the proscribed speech is limited in scope and context, the Sanctions Order is consonant with Constitutional principles that prohibit the restriction from being "broader than necessary to achieve its desired goals." *See Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 765 (1994).

The Sanctions Order also satisfies Rule 11 as the speech restriction is carefully "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." FED. R. CIV. P. 11(c)(4). It identifies the sanctionable conduct—Plaintiffs' improper filing of a lawsuit to validate a collusive "settlement"—and finds that the Parties acted in bad faith by using "the existence of a federal litigation as a means of conferring legitimacy upon a course of action that they were unwilling to subject to judicial

---

[16] The Court does not find this argument meaningful especially where Defendants have expressly repudiated the existence of the fund. *See Attorney General Nominee Todd Blanche Testifies at Confirmation Hearing, Day 1 Part 2*, C-SPAN (July 15, 2026), https://www.c-span.org/program/senate-committee/attorney-general-nominee-todd-blanche-testifies-at-confirmation-hearing-day-1-part-2/682984; *Questions for the Record the Nomination of the Honorable Todd Blanche to be Attorney General of the United States*, U.S. Senate Committee on the Judiciary (July 17, 2026), https://www.judiciary.senate.gov/imo/media/doc/98781d53-bdcc-75d8-c507-1b1bca492142/2026-07-15_QFR-Responses_Blanche_687007f1-363d-40d9-b7da-356b52dc448d.pdf ("As I testified at my confirmation hearing, **the Fund is dead**.") (emphasis added).

review." (DE 106 at 43, 52). To that end, the sanction imposed deters repetition of such conduct by frustrating the legitimacy imputed to the document and demonstrating the consequence of similarly contemplated actions by any other litigant before any other court. Accordingly, under Rule 11, the Court was entitled to sanction improper references to the "settlement agreement." *See Riccard*, 307 F.3d at 1295 ("The selection of the type of sanction to be imposed lies with the district court's sound exercise of discretion.").

***B. The Movants have not established irreparable harm.***

To prevail, the Movants must demonstrate more than a possibility of irreparable harm. *See Nken,* 556 U.S. 434–35 ("By the same token, simply showing some 'possibility of irreparable injury,' . . . fails to satisfy the second factor.") (citation omitted). The contemplated harm must be "actual and imminent." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). Here, the Motion to Stay argues that the Sanctions Order "is already inflicting immediate constitutional, professional, and reputational" harm. (DE 114 at 17). However, the Movants do not demonstrate actual or imminent harm warranting a stay.

The Motion to Stay focuses on three aspects of the Sanctions Order: (1) the Court's referral of Attorney Brito to the Florida Bar; (2) Attorney Epstein's ability to seek *pro hac vice* admission; and (3) the restriction limiting reference to the "settlement agreement" as evidence of a "settlement" reached in this matter. The Court addresses each in turn.

1. <u>Referral to the Florida Bar</u>

The Court's decision to refer Attorney Brito to the Florida Bar does not establish actual and imminent reputational harm. Indeed, it does not establish the possibility of

reputational harm because a referral "simply indicates that in its view, conduct of the attorneys merits further examination by the disciplinary committee, which may or may not result in a sanction." *Adkins v. Christie*, 227 Fed. App'x 804, 806 (11th Cir. 2007). The Movants merely posit the possibility of irreparable harm. *See* (DE 114 at 18) (noting that the "mere pendency of a bar complaint . . . **may** create malpractice insurance consequences, and **may** affect the attorney's ability to retain existing clients or attract new ones.") (emphasis added). Such speculation about the possible ramifications of an undetermined outcome does not meet the threshold of "actual and imminent" harm. *Siegel*, 234 F.3d at 1176.

2. *Pro hac vice* admission.

The one-year ban on Attorney Epstein's *pro hac vice* admission likewise does not cause irreparable harm. The Movants generally assert that the sanction "has already resulted in significant, unfounded public attacks on his reputation and professional standing" but have not provided any evidence to substantiate their assertion. The Motion to Stay does not establish actual and imminent harm to Attorney Epstein, as the Sanctions Order applies only to "future applications" and does not affect Attorney Epstein's current representation of clients. (DE 106 at 47). Furthermore, the Motion to Stay does not establish that Attorney Epstein is impacted by the Sanction Order because it does not address whether he has sought, or intends to seek, *pro hac vice* admission into the Southern District of Florida. Even so, the Sanctions Order is narrowly tailored. Attorneys not admitted into the Southern District of Florida cannot engage in "general practice," which the district presumes to be "more than three motions to appear pro hac vice within

a 365-day period." S.D. Fla. L. R. 4(b)(2).[17] Therefore, Attorney Epstein's representation would be affected by the sanction in three matters, at most, and would not result in irreparable harm. This conclusion is underscored where the Parties do not assert that Attorney Epstein plans to seek pro hac admission in any additional matters within the next year.

3. Restriction relating to the "settlement agreement."

The prohibition on referring to the "agreement" as evidence of a "settlement" of this matter falls short of causing irreparable harm. The Movants have not identified a concrete and ongoing harm that flows from the present restriction. And though the Movants assert that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," (DE 114 at 17) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976), as noted above, *supra* § A(4), they cannot demonstrate that such freedoms are at risk under the First Amendment where the Court has a significant interest in protecting the integrity of the judicial process. *See Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1206 (11th Cir. 1985) ("In the realm of litigation, a fair and just result often presupposes restraints on the speech of the parties."). The Movants do not assert that they are experiencing imminent harm because there are ongoing official proceedings in which they seek to refer to the "settlement agreement" *as evidence of* a "settlement" in this matter. Without such evidence, the Movants fail to establish irreparable harm.

***C. The remaining two factors do not support imposition of a stay.***

The Court finds that the remaining factors also counsel against granting a stay

[17] Attorney Epstein has already appeared once in this district on behalf of Lead Plaintiff. *See Trump v. British Broadcasting Corporation et al*, No. 25-cv-25894 (S.D. Fla. filed Dec. 15, 2025). This representation remains unaffected by the Sanctions Order.

pending appeal. The Movants have the extraordinary burden of establishing whether issuance of the stay will substantially injure other parties interested in the proceeding and where the public interest lies. *Nken*, 556 U.S. at 434. Since the Movants have not satisfied the two most critical factors (success on the merits and irreparable harm), *see id.*, the Court's analysis of these factors will be brief.

First, the factor concerning injury to other parties does not support a stay. The Movants have not identified any other parties who may be impacted by the Court's decision. Nor have the Movants identified what type of harm, if any, will befall these unidentified parties were the Movants' request for a stay be denied. Second, Individuals seeking to vindicate their rights through the judicial system have a significant interest in knowing that the judiciary is fair and that the same rules apply equally to all litigants, regardless of one's title, position, economic circumstances, or political affiliation. Imposing a stay does more harm to the public than good, because a stay pending appeal undermines the legal effect of a court order and diminishes the public's confidence in the judiciary's ability to impose binding legal consequences.

## IV. CONCLUSION

For the reasons set forth above, it is **ORDERED AND ADJUDGED** that Plaintiffs' and their Attorneys' Expedited Motion to Stay the Sanctions Order and Related Proceedings Pending Appeal (DE 114) is **DENIED**.

**DONE AND ORDERED** in Chambers in Miami, Florida, on this 14th day of September, 2026.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE